## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Arthur L. Davis
194 Carnival Court
Vallejo, California 94589
     and
Jimmie Gilbert
7251 S. Vernon Ave.
Chicago,  Ill 60619
     and
James D. Moses
1662 Cyrene Drive
Carson, California 90746

     For themselves and
     All others similarly situated

     Plaintiffs

       v.

DAVID M. WALKER
Comptroller General of the United States,
Government Accountability Office (GAO)
441 G St., N.W.
Washington, DC 20548

     and

Michael Wolf, Chair
The Personnel Appeals Board of the GAO,
     (as a Necessary Party)
820 first Street, N.E.
Washington, D.C. 20002

     Defendants.

## COMPLAINT
**(Employment Discrimination in violation of the Age Discrimination in Employment Act, ADEA; Equal Pay Act and Equal Access to the Law)**

**Nature of this Case and Parties:**

1        This is an action by three present and former professional level employees who were or are auditors, designated at their place of employment "evaluators".  They bring this action for themselves and all similarly situated "evaluators and evaluator support persons" against David M. Walker, Comptroller General of the United States, the chief executive of the Government Accountability Office (GAO).  They seek to become class representatives for a class or classes of employees similarly situated to their own complaints.  They invoke the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") and seek to make it a class action under the provisions of Federal Rule of Civil Procedure 23.

They also allege violations of federal regulations and the Constitution to the extent they, and the classes they seek to represent were denied equal protection of the laws and due processing of their frustrated complaints.  These later violations involve the failure of GAO's own personnel oversight agency, the PAB, to perform its statutory oversight function.

The PAB, has the statutory duty to investigate, and correct violations which deprive GAO employees of equal protection of the laws and in particular, age discrimination.  Information in the hands of the PAB for many years strongly indicated a universal bias against older workers. Nevertheless it failed to perform its statutory function to correct violations which it well knew existed.  The reason for this is quite simple, GAO totally controls the budget, and the membership of the PAB.  And GAO would not tolerate any such investigation or correction. Management of GAO perceived the necessity for age discrimination as a matter of its own national personnel policy.

These plaintiffs seek to remedy (GAO's) intentional unlawful actions of the use of age of

2

professional level auditors, called evaluators and evaluator support persons, over about 45 years of age and older, as a determinative detrimental factor in personnel decisions.  As a matter of unwritten GAO policy and  practice, age is, and has been for many years, used by GAO as an adverse determinative factor in all aspects of professional level employment on an across-the-board basis affecting ratings, advancements, pay scale and terminations.  This policy and practice is a continuing violation of ADEA and other federal law.

The allegations herein are largely based upon personal observations of these three plaintiffs.  These three plaintiffs each were "evaluators" the term used at GAO to describe its staff auditors and investigators.

But in addition to their regular duties, each of these three employees had years of experience in voluntary positions involving many other employees for whom they performed civil rights counseling services.  Moses and Gilbert were voluntary civil rights counselors for their respective offices of GAO, Los Angeles, and Chicago.  But Davis, for six years, was chair of the GAO Advisory Committee of Civil Rights (ACCR).  A part of that committee's duties was to review all civil rights complaints for the entire nationwide organization.  He thus has hundreds of actual observations of complaints alleging facts similar, if not identical to the complaints of these three individual senior African American evaluators.

These three plaintiff/class representatives thus bring to this complaint many man years of observed examples of actual complaints of hostility and discrimination against older protected workers based upon age.  In addition they have a combined observation of hundreds of examples of the very type of complaint that ultimately affected their own employment status (one they themselves reached the disfavored age).  The fact that these plaintiffs are the first to attempt to

3

join the generalized age class action against the GAO demonstrates the universality of the bias, which is across the board, all races, all national origins, and both men and women.

Most recently, the manipulation of the "band system" has been used by management to purportedly justify announced de-facto demotions of persons over 50. The pattern of demotions and dismissals of persons over the age of 50 is consistent and without material exception, also on an across the board basis. Mr. Moses allegations detail those violations of ADEA and its effect upon him.

**PARTIES**

2.      The named Plaintiffs are citizens of the United States who were or are employed by defendant as career professional auditors, evaluators, or in evaluator-related positions. Mr. Moses remains an employee. Mr. Davis was constructively discharged on June 1, 2004. Mr. Gilbert was constructively discharged in 1999. All three have given GAO a timely 30 day notice of intent to sue, and thereafter sought to intervene in the related case of ***Chennareddy et al v. Walker***, USDC DC case No 87-3538 JGP, without success.

At the time of the occurrences complained of herein, plaintiffs were all over the age of 40 and paid within GAO's "Band II" as professional evaluators and auditors. All persons similarly situated are also victims of the pattern of across the board continuing violations against older professional level auditors and evaluators. Those similarly situated persons are, on information and belief all over the age of 50, and have been or are about to be demoted into the lower strata of "band 2" at the GAO. That lower strata, or division, is designated Band 2a.

On information and belief at least 300 persons either have been recently terminated for reasons involving their age, or are about to be terminated because of the overt and blatant bias

4

against older employees which is a part of the policy at the GAO to lower the median age of its work force for discriminatory reasons.

3.      Defendant is an employer within the meaning of the ADEA, 29 U.S.C. § 633a(a).  The defendant, David M. Walker, is the Comptroller General of the United States and the chief executive of the United States Government Accountability Office (GAO).

**JURISDICTION**

4.      Jurisdiction of this Court is founded on 29 U.S.C. § 633a (c).  Jurisdiction is also founded upon the Equal Pay Act and the due process and equal protection of the law clauses of the fifth and fourteenth amendments to the Constitution of the United States of America.  On information and belief, jurisdiction will also be found to exist under Title VII, 42 U.S.C. Sec 2000 e, et seq., as amended as reprisals for protected activities of these plaintiffs and many if not all of those persons similarly situated.  The plaintiffs are contemporaneously filing a motion for a preliminary injunction and a motion for class certification under Rule 23.  The allegations in those motions are incorporated by this reference.

5.      As to jurisdictional amount of plaintiffs claims, although presently inapplicable as a bar because of federal question jurisdiction, the amount of damages for each plaintiff as demanded, and as demanded for each class member is $300,000 per person.

**VENUE**

6.      The District of Columbia is the proper venue for this matter pursuant to 28 U.S.C. § 1391(e).  The centralized actions of the GAO giving rise to the discrimination took place for the most part in the District of Columbia.  The main office of GAO is in the District of Columbia. The main office of the PAB is in the District of Columbia.

5

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7.    Exhaustion of Administrative Remedies for ADEA cases is not required.  However, a 30 day notice of intent to sue is required by ADEA and GAO regulations.  The three named Plaintiffs have filed two notices of intent to sue.  The first was filed in the year 2000 more than 30 days prior to their attempt to intervene in the related case.  The second was served on Defendant on *April 6th, 2005* in a letter addressed by their counsel to:

United States General Accounting Office (GAO)    BY CERTIFIED MAIL
Office of Opportunity and Inclusiveness    RETURN RECEIPT REQUESTED
451 G. Street, N.W.
Washington, D.C. 20548


8.    More than thirty days has expired since that notice to the filing of this case.

**STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S CLAIMS:**

9.  The foregoing paragraphs are hereby incorporated into this statement of facts:

**The Named Plaintiffs:**

10.  **Mr. Davis:**

Mr. Arthur L. Davis (Davis) is an African American over the age of 40.  Mr. Davis always received favorable ratings (the foundation for advancements and promotions) and was a group leader on projects until after 32 years of federal service he became a member of the disfavored age group.  Then, and only then, his rating fell.  Mr. Davis is healthy and presently in possession of all of his undiminished mental facilities.  There is no correlation to a drop in actual performance by Davis with his performance ratings.  When he reached the generally disfavored age bracket (about 50) he began to be subjected to generalized and unwarranted abuse.

Mr. Davis was, at the beginning of the discrimination against him, the elected

representative of an approved GAO employee organization, the Advisory Council for Civil

Rights (ACCR or the Committee) at the GAO for aiding in adherence to civil rights standards.

He served two three year elected terms as chair of that committee.  As chair of the committee,

one of his duties was to review all civil rights complaints.  When Davis, after about 6 years

tenure in his capacity as chair first raised the question of fairness to older employees in ratings,

promotions and advancements he was told my high management to "back off."  When he

persisted to the extent of requesting answers to piercing questions, the committee was disbanded.

Mr. Davis began to have serious problems in his own rating.  Mr. Davis, at that time had himself

reached the age where age bias had become a problem.

Contemporaneously Davis was subjected to reprisals ultimately leading to his

constructive termination through retirement.  Subsequent to his raising his question regarding age

bias, he received unwarranted and decreases in his evaluations.  He also received humiliation and

degradation in his leadership status when he was assigned as a subordinate to substantially

younger persons of substantially lessor ability and experience.  Essentially he was forced out of

his professional standing and status of many years duration.  He states that he was sufficiently

humiliated to create a de-facto forced retirement.

11. **Gilbert.**

Mr. Jimmie Gilbert is an African American former evaluator/auditor at GAO who worked

for that agency as an evaluator 26 years, from 1973 to 1999.  He was 32 years of age when he

began his employment at GAO.  For many years he served as a civil rights counselor for the

Chicago Regional Office.  Early in his career he observed age discrimination as a problem in the

agency.  Regional staffing decisions were generally made by white male supervisors in their late

thirties or early forties.  Ratigs and recognitions given for superior performance for the older non-white staffers were consistently lower than the ratings for the other staffers.

Once he reached the age of about 43, he observed a subtle shift in his ratings and failure to recognize his achievements and acknowledgments of superior performance.  As one example, although his efforts led a major university to change its accounting practices to more accurately reflect the receipt and disbursement of government funds, he was rated as merely meeting standards.  High profile jobs were consistently given to younger staff.

He observed in his own position and as observer of complaints filed by others in the office, while he was serving as civil rights counselor, the fact that complaints of age discrimination were given short shrift.  Complaints of age discrimination were nearly always dismissed as performance issues, citing the underlying incorrect and biased ratings.   Younger staff even in routine assignments with little novel or large results in a task assigned to them routinely yielded superior job performance ratings, high recognition and promotions.  This subtle and wrong adverse rating process continued throughout his career.

Gilbert states that from his observation, the banding process instituted by GAO facilitates the discrimination against older evaluators.  Older staffers are assigned to younger staffers who themselves are competing for the same limited promotions that become available.  He recalls that from 1995 to 1999, in his region, Chicago, a large office, no 50 or older staff member was ever promoted to Band III, the highest band (Grade) level at GAO.  Only younger staff received the Band III promotions.

After years of mental anguish and frustration preventing fair recognition, fair ratings and universally blocking promotion for older staff members, in June 1999, Mr. Gilbert took early

retirement.   He states that he felt he had no choice because of the overt hostility toward older

workers with no hope of redress of his complaints.  Under these circumstances Mr. Gilbert's

retirement was actually a constructive discharge.

12.  **Mr. Moses**.

Mr. James D. Moses (Moses) is an African American evaluator over the age of 40 in the

Los Angeles office of GAO.  Moses always received highly favorable ratings (the foundation for

advancement and promotions in GAO) and was a high level group leader on multiple projects

until he reached his mid 50's.  His leadership and accomplishments led to his final promotion, to

GS-14, the second highest line manager position in the field at that time (1984).  Not only was

Moses the group manager for a major issue area with 10 people reporting to him, he was also the

Civil Rights Counselor, and Grievance Examiner for the Los Angeles Office.  In that position, he

to has observed the age discrimination in process as applied to many persons he has counseled.

Moses was performing assigned tasks, receiving high ratings and was generally viewed

by management and his co-workers as a model professional level evaluator.  However, with the

passage of time he automatically, with no change in performance, became a member of the

disfavored age group.  Then, and only then, did his rating fall.  Moses was relegated in job

assignments to reporting to younger staff.  He along with two other African American colleagues

attempted to intervene into an ongoing related case alleging age discrimination, ***Chennareddy et

al v. Walker***, USDC DC 87-3538.  No relief was ever granted in that case.  Intervention was

heretofore denied.

Frustrated and angered by further actions of his superiors, and continuation of the

demeaning and intentional mis-treatment, designed to cause his resignation, Mr. Moses filed a

discrimination complaint with GAO's civil rights office (now the office of opportunity and inclusiveness).  That internal complaint was filed on 1/18/02 on the basis of age and  race.  In addition he alleged retaliation for having attempted to intervene in the afore-cited ***Chennareddy v. GAO*** case.  Investigation of the complaint revealed that Mr. Moses was not treated fairly.  The complaint was never resolved and GAO has never issued a final decision.  The discrimination continued.

In December 2005 and January 2006, GAO adopted a new series of actions designed to eliminate older persons from the staff.  These actions were named "Band II Restructuring".  This new plan worked as follows.  Band II's were split into two groups, Band II B (the highest) and Band II A.  The determining criteria were stated by management using the standard terminology for subjective ratings of personnel with the added factor being considered most important, that of "role model".  Since GAO's ongoing policy was to downgrade all older employees, and Moses had been continually subjected to being downgraded in leadership roles to a subservient position (along with all older persons similarly situated) it was inevitable that Moses would be downgraded into the lower category.

In accordance with the intent of the scheme, in December 2005, he was notified that he had been placed in Band II A, the lower group.  Moses appealed to David M. Walker, Comptroller General about being placed in this lower category and asked the Comptroller General (CG) to reconsider his decision.  On 2/7/06, he received the CG's decision not to change his position of placing Moses in Band II A.

Moses next asked Mr. Walker for a meeting in person to discuss his position on this issue.  Mr. Walker did not grant the personal meeting but spoke to Moses by telephone on

2/16/06. During this 45 minutes telephone meeting, Moses informed Mr. Walker that he believed that he had been treated wrong in being placed in II A.

Moses informed the CG of his history of satisfactory employment and undiminished ability. Walker was informed that Moses had achieved a GS-14 level prior to being grouped into Band II with younger and less experienced GS-13's; that he was treated wrong then, and, again, unfairly and incorrectly with the split and further downgrading . Moses stated that he felt hostility, embarrassment and hurt by the demotion, and was psychologically devastated.

With no positive results from Mr. Walker, and knowing he had no chance of relief in normal complaint channels, and knowing that the GAO's own personnel system is dysfunctional, he filed a discrimination complaint with the office of opportunity and inclusiveness on 2/17/05 on the basis on age and race.

Moses alleges based upon his own information and knowledge that the Band II split has had negative impact on him and about 300 hundred others who were and are similarly situated with him on the band II split demotion. All of those persons are 50 years old or older. Not only have virtually all of those older workers been embarrassed, demoted, and psychologically hurt, they were also denied a cost of living increase. That denial, standing alone is a denial of equal treatment of the law and, he believes, a discriminatory event. But the entire continuing process is one that has been of long standing and represents nothing less that overt intentional discrimination based upon age.

Mr. Moses, on information and belief, and his own observations, alleges that the hostility against older employees is uniform among his co-workers, and the extent of the bias is nearly 100%. He believes that available statistics will confirm the universal bias he has personally

observed since he reached the age of about 45.  Mr. Moses is also aware of the flawed process of

GAO's internal personnel oversight agency which has refused to investigate the age

discrimination pattern and practices herein alleged as is its statutory duty.

**Other Facts:**

13.    Recently, the use of age as a determining factor has been and is being escalated and

applied in a scheme to further downgrade virtually all older employees who remain on the staff.

The comptroller general has stated in numerous recorded statements his policy, expressed as a

necessity,  reduce the average age of persons in Band 2.  This statement, standing alone,

demonstrates age bias.  This is true because in plaintiff's profession, auditors, experience,

knowledge of the workplace, and judgment is far more important than youthful physical vigor.

Thus, age has no bearing upon the actual work performance of these plaintiffs, or the class they

seek to represent.  Yet that factor has been used as the most important factor in the rating

process.

14.    The methodology of discrimination starts by lowering ratings of older employees, then

based upon lower ratings, denying advancements, followed by failure to promote, then denial of

adequate performance, followed by sanctions.  Sanctions include denial of cost of living

increases, forced retirement and/or termination.  This process happens only to the older

employees.

**Continuing Violations of ADEA:**

15.    These new practices are but a continuation and overt escalation of the ongoing overall

bias against older, more experienced professional level auditors and evaluators has been ongoing

for over 20 years.  The impact of these policies and practices has created a hostile work

environment, well known to exist in application to all of these plaintiffs and the putative class.

The sole exception to these allegations is those employees who were selected earlier in their

careers for upper management level at GAO, the Senior Executive Service (SES). Using age as a

determinative factor violates ADEA as well as federal rules and regulations involving equal

employment rights and prohibited employment practices.

16.     Through the denial of effective redress to the PAB, a key component of the GAO

Personnel Act of 1980, these plaintiffs have been denied equal status with their counterparts in

the Executive Branch in their rights to appeal perceived discriminatory actions of management.

They have also been denied their constitutional right to equal application of the laws, equal pay,

and veteran's preference rights in promotions and retention. Administrative denial of appeal

rights occurs because the PAB, the purportedly independent appellate agency for GAO personnel

oversight is in fact totally controlled to the point where it is not allowed to question

administrative actions of GAO designed to thwart equal employment of older employees. This

denial is by the use of a number of different mechanisms of control over the PAB. Those

mechanisms include admitted budgetary control and historical failure to appoint judges who

question GAO's discriminatory actions. At one time the PAB was allowed to whither on the

vine, with no quorum for any activity at all.

17.     Age discrimination in employment has been intentionally and routinely measured,

controlled and enforced by GAO management for more than 20 years. This aspect of the

discriminatory mechanism is a hitherto secret centralized statistical measuring system for GAO's

personnel. That personnel system contains hardware, data and software systems for measuring

results of classification of employees by age group, race and all necessary elements to define and

measure any and all employees personnel profile data.  It can be and has been used to measure and plan resulting personnel actions by management, like those complained of herein based upon age as a determinative factor.

18.     The very existence of that system and its use in the ratings, promotion, and retention process resulting in the age discrimination here alleged was is hidden from all but select high level management officials.  Intentional misinformation of the non-existence of any such system was given to the courts by GAO's counsel in related cases.  That false information was designed to thwart class certification to stall the case.  That strategy worked.  The defendant's own personnel oversight agency was denied access to the data in order to hide the availability and use of these powerful tools of discrimination from disclosure, or use to shine the light of truth upon GAO's discriminatory actions.

19.     The foregoing facts and false information have impacted the rights of these three plaintiffs to be free of discrimination in that the egregious actions of GAO prevented the relief by these plaintiffs six years earlier through the denial of their intervention into the related case, as well as class certification much earlier when they were, or would have been but for the actions of GAO, class members.

20.     The United States Department of Justice has been misled, and this Court has relied upon this false testimony to deny relief based upon the false denials of the existence of existing comparative data older protected employees.  GAO's own oversight agency, the PAB, has at least passively complicity in the GAO's denials of the very existence of damning statistical files.

21.      All of these actions are illegal and overt denials of the equal employment rights of these plaintiffs and the class they seek to represent, as well as equal access to the laws, equal treatment

under the law and due process of law.

22.    A further part of the scheme to deprive older employees of equal access to the law requiring equal treatment regardless of age involves the control of GAO's sister agency, the United States Government Accountability Office Personnel Appeals Board (PAB).  Access of that agency to the secret system was prevented.  When age discrimination was suggested from an independent analysis by PAB, GAO denied the truth contained in its own (secret and hidden) statistics.  Because of utter control of the PAB in appointments and budget by GAO, it has become an utterly ineffective agency, most particularly in processing age and veteran's claims.

23.    Recent developments in splitting the band system with a stated policy of lowering the average age of the professional level employees, de facto demotions, forced retirements and constructive discharges are now ongoing and continuing.

24.    The result if these policies continue is immediate and irreparable harm for which injunctive relief is not only appropriate but essential to achieve meaningful relief.  Most egregious is the fact that defendant has not been candid either with its own oversight agency or federal courts.

25.    The most recent manifestation of those policies, the band splitting leading to demotions and termination affects about 300 staff members over the age of 50.

26.    The express intent of Congress to afford equal treatment to all GAO employees when it created the independent personnel oversight system (the PAB) for GAO employees has been intentionally evaded and obstructed by the matters outlined foregoing and the continuing pattern and practices complained of herein.

27.    This case is a related case to another case before this Court, ***Chennareddy et al v. David***

*Walker*, Case No 87-3538 (JGP) in that Plaintiffs herein have previously complained of the same

continuing violations, filed notices of intent to sue with the GAO, and moved to intervene in that

case. Remedial action by the District Court has been frustrated by GAO's obstructionist actions

in that case and in continuing control of the PAB which deprives all aggrieved GAO employees

of equal access to the law. Intervention by these three plaintiffs was denied necessitating this

lawsuit.

28.    Plaintiffs are entitled to file a class action in this case in that the amount in controversy is

over the lower limit set for class actions (in excess of $ 100,000 for each named plaintiff) and

federal agency employees may file class actions pursuant to Rule 23 in this court involving

federal questions, and in particular ADEA under the authority of *Moysey v. Andrus*, 481 F. Supp.

850, 21 FEP 836 (D.D.C. 1979), and later citing cases.

29.    Plaintiffs seek, for themselves and all others similarly situated, immediate injunctive

relief stopping the discriminatory process of splitting band 2 into two discriminatory subdivisions

using age as a determinative factor, back pay, front pay, revisions of the discriminatory practices

complained of herein, and meaningful relief in the form of a writ of mandamus to the PAB and

GAO to enjoin the denial of equal access to the law for themselves and all similarly situated

persons.

30.    Plaintiffs also seek relief in the form of retroactive damages for denial of relief previously

requested by these three plaintiffs and all similarly situated persons who were denied relief by the

federal court many years ago because of reliance upon GAO's false pleadings and representations

to this Court. Those misrepresentations  denied existence of the scheme of discrimination based

upon age, and the practical means to prove the results of that scheme, thought to be nearly 100

16

bias, the personnel data and statistical systems to measure those results.

31.     Plaintiffs also seek a merger with existing the on-going complaint in ***Chennareddy et al v. Walker***, USDC DC No 87-3538 at the appropriate juncture in this litigation.

32.     Plaintiffs also seek costs and attorney's fees as appropriate and as found by a court or jury to be in the interests of justice under the general powers of this Court and Rule 11, Federal Rules of Civil Procedure.

33.     Typical of each plaintiff's experience during the later years of his employment was the fact that employees who received choice assignments, and ultimately advancements and promotions were disproportionately much younger and much less-qualified than Plaintiffs. Plaintiffs each suffered degradation in their performance ratings because age was used as an important if not determinative factor in all of the important personnel decisions, starting with ratings.

34.   On information and belief, the GAO at all relevant times possessed individual data on age of persons rated, and used that data in satisfying management's goals in reducing the average age of the staff.

35.     Promotion panels at GAO are uniformly chaired by an Senior Executive Service person who has access, whenever the chair wishes, to age and years of service data on all applicants. The use of that data explains the hitherto inexplicable nearly 100% bias against older (45-55) employees.  In addition, the chair of each panel has control over other panel members in that the chair is always senior in regular rank (as an SES member) to the other non-SES members. Therefore, what the chair wants, the chair dominates to get.  This process is how, using the age statistics, the discriminatory process is the 100 % effective process that it has become during the

time these plaintiffs have served this employer and the public interest as federal employees.

36. **GAO's Disinformation and Cover-Up of the Existence of Personnel Data Base Systems:**

The GAO, in litigation in on-going related cases before this Court, has denied the existence of data and systems to utilize that data containing employee demographic information, including age, of all of its professional level employees for the relevant period of time. The data base system was denied to exist in statements to this federal Court and to GAO's own personnel oversight agency, the PAB. Thus, GAO has been materially disingenuous as to ( both) the existence of the data base system, and the substantive content of the discrimination which would be stark and obvious from the data contained in that system.

37. The result of GAO's disinformation campaign was to intentionally obstruct the flow of information to complainants and its own agency to enable it to continue to violate the ADEA. The matters complained of by these three complainants, for themselves and the class they seek to represent was the direct result of that disinformation and obstruction in that these matters have never been corrected and are on-going for over 20 years.

38. If age had not been a determinative factor in ratings, by itself a violation of ADEA, these plaintiffs and all others similarly situated would have had qualifications superior or equal to the younger employees who were selected for choice assignments, advancements and promotions. If the available statistics are disclosed those statistics will demonstrate that terminated employees, who were constructively discharged, represented to a large part employees over the age of 50 at a significantly disproportionately greater rate than those under 40 or in their early 40s.

39. GAO has engaged in prohibited personnel practices, including the use of age as a

18

determining factor by furnishing the panel chairman a list of ages of applicants when conducting

ratings panels, promotion panels, and terminations during RIF's. Those practices included

ignoring veterans rights and targeting younger employees for "fast track" preferential treatment

as compared to older more experienced employees.

40.     As a result of defendant's unlawful conduct, Plaintiffs have lost salary, pension

benefits, health insurance coverage and other benefits of employment because of defendant's

unlawful conduct.

**42.  Class Action Allegations (Under L. Civ. R 23.1):**

(1)[1] This case is maintainable as a class action pursuant to Federal Rule of Civil

Procedure 23 (a)(1)-(4) and 23 (b)(1)-(3), and ***Moysey v. Andrus***, 481 F. Supp. 850, 21 FEP 836

(D.D.C. 1979) and subsequent cases citing ***Moysey*** as precedent.

(2) (i) This class action is brought on behalf of 300 +  members of the putative class of

employees in professional level positions at the GAO.  That number has been derived by a count

of similarly situated persons over 50 who have been adversely affected by the GAO's plan to

restructure and/or demote and/or terminate band II employees as described foregoing.

**43.  Class Definitions and Allegations Pursuant to Rule 23, F. R. Civ. P.:**

**Proposed Class Definition:**

The class which this Plaintiff seeks to represent is:

Those employees of the United State Government Accountability Office (GAO)

who worked for GAO during a part or all of the period of time from January 18, 1996 to

date, (a date three years preceding the date these plaintiffs initially complained to this

---

[1]  Numbers correspond to numbers in the local rule, L.Civ.R 23.1.

Court) who were or are employed in positions in GS Grades 12, 13, 14, or 15, or the
equivalent "band" at GAO, in Bands I, II, or III, who were at least 40 years of age during a
part or all of the time period of their employment at GAO who were denied A.
promotions, and/or B. denied correct "pay for performance", and/or C. denied fair
employment ratings, and/or D. denied high visibility assignments, and/or E. actually or
constructively discharged, and/or suffered *de facto* demotions by denial of cost of living
increases, in favor of younger equally or lessor qualified persons as the result of the
unfair, biased and discriminatory employee rating system using age, and/or a combination
of age and race as a determining factor, and/or the integral "quota system" favoring
younger applicants for positions and/or advancements and/or any combination thereof, in
effect at GAO during the time frame of his/her employment as an evaluator or evaluator
support person at GAO.


(ii) **Plaintiffs Are Adequate Representatives of the Class (or Classes):**

The Plaintiffs are all members of the protected age group, i.e., over 40, and have all been
passed over or denied fair ratings and the resulting higher "pay for performance" using age or age
and race combined, in the promotion and ratings process in favor of younger, less qualified and
far less experienced employees of the United States Government Accountability Office.
Plaintiffs have been harmed by both the acts of disparate treatment complained of herein and the
adverse impact of the GAO promotion system.

The Plaintiffs and their counsel have demonstrated by their persistence and patience over
the 7 year, period of time from when they first sought to intervene in the related case their

20

dedication to the truth and validity of their claims. Their counsel has been litigating this case and

the related putative class action for more than 20 years. Large expenditures of funds have been

required, in large part resulting from GAO's stonewalling of truthful reporting of its known age

discriminatory policies and failure to candidly provide statistics which would long ago have

proven these plaintiffs allegations.

These three plaintiffs essentially challenge all aspects of the ratings and promotion system

at GAO as biased and unfair and in violation of ADEA. To undertake such a challenge standing

alone demonstrates the adequacy of their representation. They have pledged to adequately

protect the interests of the class, as has their counsel.

(iii) All of the questions of law and fact as claimed in this lawsuit are indeed common to

the class. The detailed allegations contained throughout this complaint are incorporated by the

reference, and in addition those questions are summarized herein as follows:

a. Whether the GAO maintained a ratings system and policy applicable in hiring,

promotion, forced retirement and retention or termination in reduction in force situations for its

professional level employees that created a pervasive pattern and practice of discrimination

against persons over 40, and particularly those initially over 43, who are now over 50, by setting

quotas for promotion based upon prohibited age, or age and race factors, in favor of younger

persons; whether the "goals and timetables" system is in reality a "quota" system illegal based

upon criteria that are prohibited by Federal Code, Existing Regulations applicable to the GAO

and the PAB, and prohibited by Supreme Court precedent?

b. Whether the GAO's mandated adherence to that system resulted in the exclusion from

high profile tasks, the reduction of scores on performance reports, the elimination or reduction of

promotions and earnings, or loss of tenure and retirement benefits in favor of young persons via

the "PFP" system for the Plaintiffs and members of the class resulting in inequality in

opportunity solely because of the acts complained of, and the system in effect complained of in

this case?

c.  Whether the GAO maintained a quota system designed to favor a class or classes of

preferred employees, said preferences based on illegal criteria, age, sex and race?

d.  Whether the discriminatory system in effect was known to be illegal, and whether that

discrimination based upon age was intentional?

e.  Whether the PAB participated in the design and/or maintenance of that illegal quota

system, for a part or all of the time period covered by this complaint (1983 to date)?

f.  Whether the mandate of Congress for the PAB to furnish oversight on GAO's

activities  and the failure of the PAB to enforce adherence by GAO to equal employment

opportunity law for protected older persons creates an actionable right by members of the class

enforceable by this Court and for which relief is appropriate?

g.  Whether the recent split in the band system, and denials of cost of living increases is

part and parcel of the continuing violations by GAO of equal rights of employment of its older

employees represented by these three plaintiffs and the class or classes they seek to represent.


**(iv) A CLASS ACTION IS SUPERIOR TO OTHER FORMS OF ACTION THAT
THIS CASE MAY TAKE, QUESTIONS OF LAW AND FACT (BOTH) PREDOMINATE
OVER QUESTIONS AFFECTING ONLY THE INDIVIDUAL PLAINTIFFS:**

44.    Plaintiffs, for themselves and the class(es) allege that the practices resulting in the

depriving of their right to equal employment opportunity, and to be free of discrimination based upon their age was, for the entire time frame of this complaint universal in application. It is an observed fact, based upon a 100% analysis of the promotions for the bulk of the time frame for the class, and well published comments by GAO management, that older persons just did not and do not get promoted, at the GAO. The statistical principle of "the inexorable zero" is believed to be applicable to the extent of the exclusionary process for older persons at GAO in all of the positive attributes of employment. That is virtually none (zero) get promoted or get equal treatment under the applicable policy and rules at their employment at GAO.

45.    The root cause of this universal exclusionary process has been discovered. It was the maintenance and mandatory enforcement of a system of setting quotas for promotions, hiring and advancement in order for each SES person to comply with the directives of GAO management to increase representation of minorities and females at all levels at GAO. The result of that system was the total exclusion from any meaningful consideration for high profile tasks, and for promotions to management positions of all persons over the age of 45-50. Now the extension of those policies have resulted in a new manifestation of the discrimination, the band split with de factor demotions to each older (over 50) employee considered.

46.    Plaintiffs herein allege that (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact common to the class; and (3) the representative parties will fairly and adequately protect the interests of the class. The common questions of law and fact are consistent and universal to each of the Plaintiffs and the other members of the class. The homogeneity of data and facts is such that the only practical handling of this case is via a class action.

47.    Plaintiffs hereby incorporate by reference the additional allegations contained in the contemporaneously filed Motion for Preliminary and Permanent Injunctive Relief, and Motion to Certify the Class.

## STATEMENT OF CLAIMS

### COUNT I
#### (Injunctive Relief Halting Promotions and Terminations At GAO Pending Correction of the System)

48.  Each and every preceding allegation of this is hereby incorporated by this reference.

49.  The maintenance of a biased promotion and retention system acting as a *de facto* bar to the advancement, promotion, denial of cost of living increases, and pressures resulting in early terminations  of all employees over 45 during the time period of this complaint violates ADEA, 4 CFR parts 2 and 29, and constitutes a prohibited personnel practice in violation of GAO's entire scheme of purported adherence to Merit System principles and equal pay for equal performance at GAO.

50.  The denial of equal protection of the laws to GAO's older employees by the failure of the PAB to adhere to its statutory duties, and be subverted by GAO's budgetary control over its operations violates Constitutional Principles subsumed into Title VII.

WHEREFORE, Plaintiffs herein pray that a preliminary and permanent injunction be issued enjoining the United States Government Accountability Office from hiring, promoting any employee, or transferring any employee under the age of 40 in order to evade the applicable Reduction in Force regulation in GS grades12 through 15, or equivalent bands, I through III, inclusive, as being in violation of the individual rights of each of the class members herein.

Further, any denial of cost of living increases to any member of this putative class, or the class

when certified shall be prohibited. Said injunction to continue until such time as the practices

complained of cease and are rectified as to future promotions, cessation of forced retirement and

termination of older persons in favor of young persons; and that a preliminary and permanent

injunction be issued to each and every office of the United States Government Accountability

Office enjoining that agency from promoting any employee under age 40 of the United States

Government Accountability Office or terminating any employee over 40, as being in violation of

the civil rights of any member of the afore-described putative class until such time as the entire

promotion and ratings system, and the quota system creating bias in promotions is corrected to

the satisfaction of this Court.

### COUNT II
**(Declarative and Injunctive Relief, a Finding of Violations of ADEA,
for themselves and the class or classes they seek to represent,
Intentional Discrimination Based Upon Age, Bad Faith in Litigation and Request for
Attorney's Fees and Costs)**

51.    The facts contained in paragraphs preceding are hereby incorporated by this reference..

52.    Defendant's constructive termination of plaintiffs' Davis and Gilbert's employment was

motivated by their age. Age is also the determining factor in the adverse and incorrect ratings and

assignments of each of these three plaintiffs and the class they seek to represent.

53.    The pattern and practice of age discrimination has been an on-going pattern and practice

for many years, and continues even today.

54.    The most current scheme by GAO to downgrade and terminate older employees involves

a splitting of "Band 2", the most numerous evaluator band into two sub-groups. Those rated

lower (which by illegal policy includes disproportionately the older employees) are not given cost

of living increases, and are on the road out the door at GAO. Thus, the policies and practices complained about in the earliest complaint of these three senior workers continues and increases.

55.    Because of defendant's actions, plaintiffs, and all persons similarly situated have suffered and continue to suffer major economic injury in that they were terminated from their positions at GAO, and lost pay and other benefits.

56.    Those damages involve failures to advance, failures to promote on a par with younger similarly situated employees who were not subjected to the discriminatory conduct and bias.

57.    GAO's in house statistical system, which has existed for the entire term of these employees employment at GAO would show, and may be used to determine the extent of the bias over the entire term of employment of plaintiffs and the class they seek to represent.

58.    On information and belief damages to each named plaintiff herein is at least $ 300,000 over accruing over the term of their employment and thereafter as increased retirement benefits.

59.    The bad faith by GAO in misleading the PAB, denying the administrative appeal rights of each employee, and misleading the United States District Court as to the non-existence of facts and methods to present those facts constitutes bad faith litigation for which sanction are warranted in the interests of justice.

60.    Plaintiffs hereby request this Court consider sanctions pursuant to the rules of court as deemed appropriate.

61.    **DEMAND FOR RELIEF**

Plaintiffs hereby request a declaratory judgment be entered making each plaintiff herein and each class member in each class certified as proper, discriminatory conduct by the Defendant herein and his predecessor, bad faith conduct in previous litigation as between these parties, and

damages to each plaintiff and each member of the class individually in such sum as the Court or

a jury finds just and proper.  Plaintiffs hereby demand for each of them, front pay, back pay,

increased retirement benefits as would result from a finding in accordance with their demands, in

a sum not less than $ 90,000,000 with costs and attorneys's fees as deemed just and proper.


## COUNT III

**(Injunctive Relief Against the PAB, A Writ of Mandamus Requiring That Agency To Perform the Analysis Demanded To The Release of Plaintiff to Conform to the System and To Its Statutory Duties)**

62.  Each and every foregoing factual allegation is incorporated by this reference.

Wherefore, Plaintiffs pray that this Court issue an Order requiring the PAB to perform a

scientific statistical analysis for each and every year since 1983 of GAO personnel files, and to

do such data analysis as is necessary to obtain machine manipulable data from which such a

scientific analysis can be accomplished, and to determine the validity or non-validity of the

existence of the promotion system, or factors within that system which give the results reported

upon by the Plaintiffs herein, and confirmed for the partial years study performed by the PAB;

and further to perform such analysis as is necessary to determine by logical groupings the actual

damages to each and every Plaintiff and putative class member as alleged by the Plaintiffs herein

and confirmed by the partial analysis of the PAB.


## COUNT IV.

**(Denial of Due Process, Equal Protection of the Laws and Equal Access to the Law)**

63.  Each and every allegation contained foregoing is incorporated by this reference.

64.  The actions of GAO in denial of a process of equal access to the law for its employees, is a violation of the essence of the intent of Congress when it enacted the GAO Personnel Act of 1980, et seq.  Congress expressed the specific intent to not diminish its employees access to equal treatment under the law with all other federal employees.

65.    GAO, in its actions controlling its puppet the PAB has for over 20 years taken the most basic rights of appeal from its employees.  The actions resulting in that control were overt, invasive of employees constitutional rights of due process and equal protection of the laws.  66.

When belatedly, the PAB prepared a report from its own data, relevant data having been withheld by GAO in contravention of its duties under Title VII to fairly report and maintain statistics, GAO quashed dissent (see allegations of Davis, infra) and intentionally misinformed the Federal Court in related cases that no relevant employee statistics or systems to make those data understandable existed.

67.    Injunctive relief is appropriate to correct these manifest injustices and damages and prohibit such activities in the future by denial of these plaintiffs equal protection of the laws and due process as to their appellate rights which were and are being denied by the malfunction of the PAB created by GAO's interference with that Agency's functions.

68.    Plaintiffs request a finding of bad faith where appropriate, and request attorney's fees and costs incurred in the prosecution of this lawsuit, along with such other relief as this Honorable Court or a jury may deem just and proper.


WHEREFORE, plaintiffs request that the Court grant the following relief:

(a) Enter judgment for each individual plaintiff and the class they seek to represent, and against

28

defendant on their claim of age discrimination in violation of the ADEA in the amount demanded

in the amount of $ 300,000 per plaintiff and each member of the class they seek to represent;

(b) Award Plaintiffs and the class they seek to represent monetary damages, including back pay

and interest under the Back Pay Act, in an amount to be determined at trial to compensate them

for the economic losses they suffered because of the Defendant's discriminatory actions;

(c) To the extent practical, Order defendant to place each plaintiff illegally terminated into

positions of Auditor, Evaluator and/or Evaluator-related positions, comparable to the position

each Plaintiff held at the time of termination, retroactive to the date of termination, with all

appropriate back pay, benefits and other emoluments of the positions; for those for whom such

relief is impractical, make them whole by monetary relief commensurate with the damages found

to exist.

(d) Enter a finding of intentional violations of ADEA for the time frame of the actual violations

found to have occurred; and to the extent these plaintiffs have suffered from GAO's bad faith

pleading in this Court, and civil obstruction of justice to the extent supported at a trial or other

resolution of this case, including intentional violation of ADEA, and award plaintiffs the costs of

maintaining and bringing this action, including attorney's fees and expert witness fees under the

ADEA and the Back Pay Act; and;

(e) Provide such other and further relief as the Court deems just and proper.

**69. DEMAND FOR A JURY TRIAL:**

Plaintiffs hereby demand a jury trial for each and every factual allegation for which they

have that right under the law, either Title VII; or the Constitution of the United States; or if then

available under ADEA, pursuant to the applicable statute or constitutional right for which a

violation herein is alleged.


Respectfully submitted,

Signed, *charltonw2428*

Walter T. Charlton, Attorney for Plaintiffs
D.C. Bar # 186940
Walter T. Charlton & Associates
1156 15th, Street N.W. LL 10
Washington D.C., 20005-1704
Phone 410 571 8764, Fax 410 897 0471
charltonwt@comcast.net
Counsel for Plaintiffs and the Putative Class