## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

Arthur L. Davis, et al )
    and all others similarly situated )
  )
**PLAINTIFFS,** )
  )     **CASE NO: 06 1002 (JGP)**
  )
**DAVID M. WALKER** )
**Comptroller General of the** )
**United States c/o United States General** )
**Accountability Office (GAO)** )
    **and** )
**Michael Wolf, Chairman** )
**United States Government Accountability Office** )
**Personnel Appeals Board (PAB)** )
  **DEFENDANTS.** )

---

## PLAINTIFF'S OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs through counsel oppose Defendant's Motion to Dismiss this putative class action on the grounds of lack of subject matter jurisdiction and failure to state a claim. Plaintiffs request that this Motion be denied as without merit. In an accompanying Motion for Preliminary and Permanent Injunctive Relief Plaintiffs request that inequitable conduct by GAO be addressed by the Court and consideration be given to immediate and irreparable harm resulting from GAO's misconduct with respect to these Plaintiffs in related cases and in this Motion.

## I. PRELIMINARY STATEMENT:

Defendants base their claims on untimeliness and/or failure to exhaust administrative remedies as well as a failure to state a claim (Defs. Memo. pg 1, ¶ 1). These claims are factually incorrect and fail to take into account GAO's flawed administrative process. Further, GAO's

continuing failure to be candid with the Court concerning the true facts prevents addressing the

real issues within the purportedly simple framework set forth by the GAO. That is the GAO

failed to disclose facts, and in fact denied that evidence memorializing existence of those facts

exist which are contrary to GAO's official position. Those facts, contained in a hidden data base

system disclose an overall continuing violations pattern and practice of disparate treatment

resulting in age discrimination at the GAO.

That evidence was contained in William Mowbray's Deposition of June 27, 2002 in *Vant*

*Leven, et al v. Walker*, Civil Number 00-2686 JGP (Attachment 3) :

If as Plaintiffs allege, and have proven herein, those facts exist, which evidence the

pattern and practice of continuing violations, this Motion to Dismiss is not just erroneous, it is

yet another attempt by GAO to mislead the Court. For no statute of limitations or untimeliness

applies under equitable principles of Equitable Estoppel and Equitable Tolling where a party has

not acted equitably himself. These facts are discussed in some detail following. The details of

this evidence is contained in Attachments 1-3 hereto.

The most important parts of this testimony follows:

**Mr. Mowbray** described the contents and capabilities of the system starting at page 8 of

his deposition:

*(Page 8)*

Q. Okay. So you built this database. Is there a description somewhere of the elements in

that database?

A. There's not a written one.

Q. Not anywhere?. There must be come kind of system definition ---

2

*(Page 9)*

A.  Yes.

Q.  – – as to what the fields are?

A.  Well, yes, I can run—it's a SAS database.  I can run contents at any time, and it will tell me precisely which variables exist in the database.

Q.  Okay.  Has that database remained roughly consistent from the beginning until now?

A.  Yes.

            ****

Q.  So there is a separate database for each year, starting in 1989?

A.  That's correct.

*(Pg. 10)*

A.  SAS is Statistical Analysis System.  It's a programming language.

Q.  "Do you have a slightly different program for each year?

A.  Obviously, any program which requests some analysis of variables from that dataset, we have to name what those variables are.  So, to the extent that there may be slightly different variables names from year to year, then the access program would differ slightly.

Q.  So if anyone requested you to perform an analysis on any particular year, I presume you would have to use the program for that year?

A.  Or modify another program.

Q.  Are they easily done?

A.  It's not difficult.

*(Pg. 11)*

Q.  Is this data base maintained even as we speak?

A.  Yes, it exists.

Q  And is it still under your maintenance and control?

A.  That's correct.

Q.  You do it all alone?

A.  Yes, I do.

Q.  .... approximately how many variables there are in this database?

A.  I would have to guess.  I would say maybe 60 to 90; I don't know, something like that.

*(Pg. 20)*

Q.  So you get input from that data base–you get other input also?

A.  Exactly.

Q.  What is your other input?

A.  All of the demographic data such as race, gender

*(Pg 21)*

org. code, date of birth,...Social Security number of each person.  So by merging that,

those files, with files from the NFC system, which do have all that demographic data, I

can combine those two and add in the variants.

Q.  What is the official name of the databases, each year's database that you maintain that

we've been talking about?

A.  There is no official name.  Maybe "Bob's database" is it.

*******

Thus, defendant's representations that no employee profile data exists in database format, and no programs to analyze and extract data exist, as would be relevant [and quite possibly determinative] evidence in this case for all purposes are simply not accurate.

**GAO's Equal Employment Administrative Process is Defective, Non-functional, Meaningless; and Incorrect:**

GAO's administrative process, particularly with respect to age based complaints, is defective and meaningless. Putative class representative James D. Moses attempted to exhaust administrative remedies several times. He complained, went to counseling, and although the process was begun and investigated, twice, no report or notice of right to sue has ever been rendered as to him. Another employee, and putative class representative Arthur L. Davis was counseled several times, and his claims were investigated. But no report, written notice of his rights, or notice of right to sue was ever rendered.

Another employee, Jimmie Gilbert complained and counseled with his regional manager, but was never advised of his rights pursuant to the requirements of GAO Order # 2713.2 (Attachment 9)[1]. Mr Gilbert acted as a counselor himself, but was unaware of the actual requirements of notice and his various administrative options and his right and duty to either

---

[1] GAO personnel policy and procedures by custom and practice are contained in a series of GAO "orders". The current version of GAO's purported civil rights regulations is contained in Order # 2713.2, dated 1997 (Attachment 9). According to the GAO "office of inclusiveness" (OOI), the most current version of GAO's civil rights procedural regulations is this Order. It is notable that GAO has not followed its own regulations with respect to the administrative processing of these three plaintiffs, nor their witness who is himself a potential member of the class as described in this complaint.

    Apparently GAO takes a cavalier attitude as to the application of its own regulations to it, while requiring exact compliance from its employees.

invoke the administrative process or file a "notice of intent to sue", as a preliminary step to filing a District Court lawsuit.

These failures are but a few examples which disclose that GAO disregards EEOC and GAO regulations concerning the administrative processing of age discrimination complaints. (See details contained in Statement of Facts for each of the three Plaintiffs, Section II, following).

**Plaintiffs Allegations:**

These three Plaintiffs all allege continuing across-the-board age based violations beginning as early as 1986. Details of happenings and their allegations are contained in the complaint as filed, and also in more detail in three affidavits accompanying this opposition. Two of those affidavits are from complainants Moses and Davis, and a third from Dr. V. Chennareddy, who is a now retired former GAO PHD/Statistician and Economist. Chennareddy himself experienced similar treatment in GAO's defective administrative process. Dr Chennareddy also has historical knowledge of the abuses of GAO in failing to respond candidly to discovery relevant to the overall pattern and practice alleged by all of these complainants. That pattern consists of an on-going discriminatory bias against older persons on an across-the-board basis.

Under the continuing violations doctrine, each new violation starts a new limitations period. And for these plaintiffs and the class, there are many new violations each year consisting of the same pattern and practice of disparate treatment. Therefore, for so long as the pattern continues, the discriminatory events have no applicable statute of limitations. Each of these three Plaintiffs attempted to take their claims directly to the District Court <u>after</u> the expiration of the

applicable statutory 30 day period for filing of a notice of intent to sue had expired and before any statute of limitations was applicable.

After having received no administrative relief in the pre-complaint processing of their claims, these three plaintiffs then attempted to intervene in an on-going putative class action case with identical issues.  But they were unsuccessful because of GAO's misrepresentations during the pre-certification discovery process as well as GAO's arguments before the Court pertaining to class certification and as to allegations by these three plaintiffs..

GAO failed to disclose facts pertaining to the existence of available data and systems for readily measuring the pattern and practices alleged by these Plaintiffs in attempting to intervene. The case into which they sought intervention is the related action, Chennareddy, et al v. Walker, (case No. 87-3538 (JGP)).  Plaintiffs argue that if truthful responses had been made by GAO, the court would have deemed the intervention appropriate, and this new case would not have been necessary[2].

These three Plaintiffs have been attempting to bring their claims before this Court since June 10th, 1999 when they filed, through undersigned counsel, notices of intent to sue[3].  They then applied on May 3, 2000 as applicant intervenors, into on-going case number 87-3538 (JGP). That case was then and is still before this Court.  They filed another notice of intent to sue[4] on

_____

[2]  By Motion filed today (9/11/06) in that related case the Chennareddy plaintiffs and these three plaintiffs request reconsideration and renew their Motion to file and amended complaint, containing the renewed request for these Plaintiffs to intervene, effective with their initial intervention application.  If plaintiffs prevail in that Motion, the results of this Motion in this case become moot.

[3]  No response to that initial notice of intent to sue was  received.

[4]  No response or action by the GAO was ever received for this notice also.

April 6th, 2005 again alleging continuing violations after denial of their long-standing Motion to Intervene was denied by the Court deeming it withdrawn.

Plaintiffs filed this lawsuit on May 31, 2006, more than 30 days after the 30 day notice of intent to sue was filed with the GAO. The age based continuing violations persisted after Plaintiffs filed this case on May 31, 2005, into 2005 and 2006. Plaintiffs allege that their District Court filing was timely as within 180 days of the alleged violations for three reasons.

(1) All three plaintiffs had attempted to invoke GAO's in-house administrative process by timely complaints to GAO's Civil Rights Office (Now the Office of Opportunity and Inclusiveness)(OOI); (2) GAO failed to follow its own regulations and applicable law as to timely written notices to plaintiffs of their rights and duties under the law; and (3) GAO acted in bad faith during the plaintiffs several years of attempts by these plaintiffs to bring a District Court action through intervention in case ***Chennareddy, supra***.

**GAO's Bad Faith and Falsities to the Court:**

That GAO has acted in bad faith is evidenced by its insistence that it does no possess a centrally controlled personnel management system, when in fact it does have its own multiple data bases containing essentially all of the data necessary to measure the bias and discrimination alleged to exist by all of these plaintiffs. That system was, and is, sufficiently complete to allow analysis of its existing 60 to 90 data elements for the entire relevant period of time (over 20 years). And thereby GAO is able to measure whether or not the age bias charged existed. Had GAO acted in good faith, and in accordance with its duty to be candid with the Court, all of these

8

cases would have been over long ago.  As a disputed factual matter, either the bias alleged exists

or it does not.  Candid responses clearly would have allowed resolution of this simple factual

measurement of existing data.

Further, PAB, GAO's own external watchdog entity, came to the conclusion that there

were indications of agency wid age discrimination, but GAO disregarded such findings.

Besides the plaintiffs' assertion of GAO's continuing violations and bd faith during

discovery, plaintiffs submit that the Court should also invoke the principles of equitable estoppel

to prevent GAO from benefitting from its own inequitable actions.


**Recent Events-Continuations of the Age-Based Disparate Treatment:**

As to employee, James D. Moses, and about 300 other similarly situated older protected

employees, the age bias continues.

Beginning in late 2005 and effective with the paycheck of February 16th, 2006, Mr. Moses

and about 310 other "Band II" employees were downgraded and denied cost of living increases

(Colas).  Moses again timely complained and was counseled.  No report has been rendered for

that complaint either.

On August 9th, 2006 Moses, in the interest of caution, and as the only remaining putative

class representative remaining employed at GAO, filed through counsel with GAO's Office of

Inclusiveness (OOI) yet another "Notice of Intent to Sue" (Attachment 8).  In the new notice

Moses alleged new violations consisting of class complaints for age based discrimination.  His

new notice on behalf of himself and all others similarly situated, incorporates previous notices

and alleges that new violations occurred in his downgrade for the "Band II split" and associated

cost of living denials (cola).  Moses complained immediately (see following details) but received

no relief.  The filing of his new notice of intent to sue was within 180 days of the effective date

of the downgrade and the cola as they were reflected  in his paycheck of February 16th, 2006.

No final agency decision has ever been received addressing any one of Moses's or

Davis's administrative complaints.  The complaints were received, they were apparently

processed, they were investigated, an investigators report rendered, but that was all.  The agency

simply refused to respond to the problem, leaving the entire administrative process as a big zero.

Therefore, as to both Moses and Davis, they allege that although their filings were in

accordance with GAO Order # 2713.2, the administrative complaint process was a useless

exercise wasting time, money and effort, and resulting in no action by GAO to date.  That is,

GAO has taken no action to either to mitigate or stop its failures to process complaints in

accordance with government civil rights administrative processing standards.  In other words

GAO's process does not follow the intent of the law.

A viable timely administrative process is mandatory for all federal government agencies

under ADEA.  However, at GAO the internal administrative process is in reality a sham, a

nullity, contrary to its GAO's duties under applicable law and under its own regulations as

contained in GAO Order # 2713.2 (Attachment 9).


**GAO Has Continually Misled the Court, the PAB, and Plaintiffs as to Centrally Controlled Discriminatory Employment Practices, and the Existence of Key Employee Profile Data and Statistics:**

At all relevant times during these events GAO has misled the Court in the underlying

putative class action, Chennareddy et al v. Walker, case # 87-3538.  The Court was misled as to

the non-existence of a centrally orchestrated scheme for ratings and promotions with age as a primary determining factor.  The Court was misled as to the non-existence of a computerized SAS data base system containing all relevant employee data.  The court was misled as to the standardized use of those systems in the ratings, promotion, and retention process.  The way the data was used to measure the average age of the staff, and make "adjustments" in promotions to favor younger persons actually was a part of the cause of the discrimination which resulted.

The age of older employees was available in that data base system, and was regularly used as a determinative factor in all employee assignments, ratings, and promotions throughout the 20 year period the underlying case has been pending.   That period of time during which the Court was misled included the dates plaintiffs sought to become intervenors in that related case. They began that effort in 1999 and 2000.  Throughout that time and to date, all of the issues were identical as between the Chennareddy Plaintiffs, these three plaintiffs and the class they seek to represent.  These issues were and are the same, including matters pertaining to class certification affecting Davis, Moses and Gilbert as applicant intervenors and members of the putative class.

Younger employees are alleged to be preferred in assignments, ratings, advancements and promotions on an across the board basis.  Had GAO been candid, a simple measurement from the existing data would have disclosed the universal bias in all of the important aspects of employment.  But GAO falsely denied such historical data even existed.  That denial disenabled effective analysis because of the sheer size of the data base.   These denials persisted as "truth" until 2002 when the fact of the data and statistical systems existence was discovered (Attachment 1).

11

Because of these misrepresentations by GAO, as to the non existence of a data base system during discovery, the Chennareddy plaintiffs and these three applicant intervenors were unable to demonstrate to the satisfaction of the Court the commonality and typicality of their claims for class certification purposes.  A similar effect and the overall confusion resulting from the determinative nature of these disputed pattern and practice facts undoubtedly caused the denial of intervention by the three plaintiffs herein.

As a result, the Court repeatedly denied class certification (which would have included these three Plaintiffs and the identical class they seek to represent) although always making its ruling "without prejudice" to renew the request.

The Court also denied a second intervention attempt by these three plaintiffs after a lapse of several years on identical or similar grounds.  Despite all of these procedural difficulties, these three plaintiffs persisted to take their claims directly to this Court as they are entitled to do under applicable law.  Further, their claims are timely under the equal pay act with its 2 and 3 year limitations.  Their claims are also timely  under ADEA as an exception to invoking the statute of limitations following the continuing violations doctrine.  That doctrine is applicable to these plaintiffs because the plaintiffs allege that the pattern of discrimination and disparate treatment has been the same for the last 20 years.  Plaintiffs are confident that the data systems, and contents will confirm their observations on that subject.

And the violations continue.  Moses has once again filed a notice of intent to sue.  On August 9th, 2006,   he filed his latest notice of intent to sue (Attachment 8).  He filed this latest notice in the interests of caution, in the event the Court rules that the recent demotions and cost of living denials of Moses and about 300 others is a discrete event different in some way from

12

the same overall pattern and practice. Although plaintiffs perceive the pattern as the same as for the past 20 years, that eventuality is now covered. Under the existing law, Moses could file yet another lawsuit as early as September 10th, 2006, making the same allegations all over again. But this action will not be required if any one of the plaintiffs motions are granted.

For all of these reasons, the Motion to Dismiss should be denied.

## II. STATEMENT OF FACTS-DETAILS OF ADMINISTRATIVE EXHAUSTION, NOTICES OF INTENT TO SUE, AND ATTEMPTS TO INTERVENE, AS TO EACH NAMED PLAINTIFF HEREIN:

**A. Mr. James D. Moses** (Moses). Relevant timing information as to Moses complaints are listed below. Moses filed class action notices of continuing violations and intent to sue, and took actions in the United States District Court as follows:

1. With the Civil Rights Office of GAO, a notice of intent to sue as an unnamed plaintiff on June 10th, 1999. No response was received by his counsel.

2. With the United States District Court, as an applicant intervenor on May 3, 2000,

3. With the GAO's Office of Opportunity and Inclusiveness, on April 6th, 2005 in a Notice and Re-Notice of Intent to Sue as an additional class representative alleging continuing violations of ADEA (Attachment 7),

4. This lawsuit was filed on in the United States District Court on May 31, 2006 alleging continuing violations of ADEA.

5. On August 9th, 2006 Moses filed a new class action notice of intent to sue (Attachment 8) with GAO's Office of Opportunity and Inclusiveness. That notice incorporated by referenced the previous notice and re-notice of intent to sue (Attachment 7). The new notice was filed in the interest of caution, in the event this Court rules that the recent demotions and band II split Cost

13

of Living Denials (COLA) for Moses (and the class of about 300 persons he seeks to represent) are discrete events and not a part of the overall pattern of age discrimination as alleged by these plaintiffs..

6.  The Band II Split demotion, and the associated COLA denial became effective with Mr. Moses paycheck on February 16th, 2006, and each paycheck thereafter.

7.  Mr. Moses timely complained, received counseling, and was investigated by official GAO investigators incident to his complaints on January 8th, 2002 and again in 2006.

8.  The investigation of 2002 started on April 12, 2002, and ended July 8th, 2002.  An investigator's report was received on July 15th, 2002 but never acted upon by GAO.

9.  No final report or right to sue letter has ever been received from those administrative actions.  Mr. Moses is informed by his office that the final reports of these investigations are about to be filed and presented to him.  Obviously, those reports are long overdue from the GAO office of inclusiveness.

10.  He has never received written notices of his rights in recent years, nor a notice of his right to file a lawsuit directly against the GAO in the United States District Court.

11.  Moses was aware of the existence of GAO Order # 2713.2, the operative policy declaration of the Comptroller General, but never was presented with that Order incident to his own counseling as required by GAO rules contained in Order # 2713.2.

12.  Mr. James Moses is employed by the GAO at the present time.


**B.  Arthur L. Davis (Davis)**.  Davis filed the following actions and notices to GAO.

1.  Davis filed with the Civil Rights Office of GAO, a notice of intent to sue as an unnamed plaintiff on June 10th, 1999, no response was received by his counsel.

2.  With the United States District Court, as an applicant intervenor on May 3, 2000,

3.  With the GAO's Office of Opportunity and Inclusiveness, on April 6th, 2005 in a Notice and Re-Notice of Intent to Sue as an additional class representative alleging continuing class violations of ADEA (Attachment 2),

4.  This lawsuit was filed on in the United States District Court on May 31, 2006 alleging continuing violations of ADEA.

5.  Davis filed complaints alleging continuing civil rights violations.  Those complaints were never investigated or resolved in accordance with GAO's duties under its own order # 2713.2.

6.  Davis was never given the results of investigations or a "right to sue" letter.  His affidavit (Attachment 5, Page 2, ¶ 2) states:

> Throughout my career with GAO, I have filed complaints with the Office of Opportunity and Inclusiveness (formerly Office of Civil Rights) more specifically in 2002 and 2003 for race and age discrimination issues.  These complaints were counseled but not resolved.  I believe Investigations were held, and witnesses contacted, but no final report or resolution was ever given to me.  In this regard, this was consistent with GAO pattern and practices of non-resolution  of issues but instead to continue its discriminatory practices under the covers of its weak investigations of these issues.  I seem to recall some oral references to timetables for complaints, but no notice to me of the existence of GAO Order Number 2713.2 was ever given, either orally or in writing.

7.  Mr. Davis has never received any written notices of intent to sue, nor any results or report of the completion of the investigations.

Thus, Mr. Davis's experiences support the conclusion that GAO simply does not conform to the requirements for notice and resolution of administrative complaint required by Civil Rights

regulations promulgated by the EEOC, or GAO's own version of its purported duties, Order #

2713.2.  Moreover, Order # 2713.2 is not in conformity with the requirements of government

processing of administrative complaints, and in particular class action complaints.  No one of the

Plaintiffs were notified in writing or  "given their rights" with respect to the filing of a class

action, as required by comparable EEOC regulations or implicit in GAO Order # 2713.2 (See

Attachment 9 ¶ 6c, pg 3).

**C.  Mr. Jimmie Gilbert:**

Gilbert filed:

1.  With the Civil Rights Office of GAO, a notice of intent to sue as an unnamed plaintiff

on June 10th, 1999,

2.  With the United States District Court, as an applicant intervenor on May 3, 2000,

3.  With the GAO's Office of Opportunity and Inclusiveness, on April 6th, 2005 in a

Notice and Re-Notice of Intent to Sue as an additional class representative,

4.  This lawsuit was filed on in the United States District Court on May 31, 2006 alleging

continuing violations of ADEA after expiration of the previous 30 day notice of intent to sue.

Gilbert's experiences were similar to those of Davis.  Gilbert like Moses and Davis

served as a part time civil rights counselor for GAO in the Chicago regional office.  He, like

Davis complained, but received no formal recognition of his complaints or resolution.

**B.   If the Evidence Denied to Exist by GAO Actually Exists, Supports a Continuing
Pattern and Practice of Age Discrimination, not only is The Motion To Dismiss
Unfounded and Frivolous, This Case and Related Cases Are Over:**

If, as Plaintiffs contend, those records exist (which undisputed testimony shows it does)

and the pattern of promotions contained in GAO's existing statistical system supports Plaintiffs

position (of a universal age bias-for which substantial corroborative evidence exists) the effect upon defendant case is devastating. Not only must the instant motion to dismiss be denied as unsupported as to the statute of limitations, but GAO's entire defense collapses for this case and for all related cases. The pattern and practice will then have been proven. The only issue remaining is whether there is some yet unarticulated "meritorious reason" for GAO's demonstrated bias against older protected employees.

Plaintiffs will have proven that actual discrimination has existed for more than 20 years at GAO. GAO will then have to articulate in detail that "meritorious reason" and subject it, whatever it may be to the proof process. It is clear that no such reason as yet been articulated. GAO has many times stated that budgetary reasons are not involved. This leaves as the only viable reason to grant preferences to inexperienced younger persons that older experienced auditors and analysts are somehow inferior in overall performance for these analytical tasks to young persons. That position, the only remaining alternative is beyond credibility.

Therefore, pretext will be proven and this case and all related cases will be over.

**C. The Doctrine of Equitable Estoppel to GAO's Statute of Limitations Defense:**

GAO has raised, while knowing full well that it has blocked access to the courts by unfair means, a statute of limitations defense. That defense alleges the failure of the plaintiffs to file their claims in the United States District Court within 180 days of the occurrences. Plaintiffs herein have demonstrated above that in fact (1) they did attempt to file repeatedly, (2) that GAO's administrative failures were defective and no administrative findings were ever furnished, and (3) GAO's grounds for objection to the furnishing of determinative data years ago

when these plaintiffs first attempted to bring their claims before the District Court were false. And (4), had the pattern and practice data been furnished as requested by these plaintiffs in their initial F.R.Civ P. Rule 26(a)(1) "initial disclosures request" the pattern and practices would have supported a factual finding that the continuing violations doctrine prevented any applicaation of the Statute of Limitations of 180 days of "the occurrence" to the facts of this case.

But there is an overriding reason to deny application of the statute of limitations to these plaintiffs. That is under the doctrine of equitable estoppel ***ALL*** statute of limitations defenses are waived and set aside where the defending party acts to prevent or trick the complainant into not filing or concealing evidence which would make complainants claims viable. That is precisely what happened here. The factual evidence of the age bias was denied to exist when at all relevant times it was in fact contained in GAO's massive data base system. GAO was not candid in discovery in the underlying case into which these plaintiffs sought to intervene.

GAO still persists in failing to disclose the existence and information contained in those critical data systems (See GAO Motion to Stay Discovery, accompanying this Motion to Dismiss). And also see Attachment one, which demonstrates that GAO continues to deny existence of the determinative evidence of GAO's actual practices amounting to obstruction of access to relevant and material evidence of the plaintiffs claims in this case.

Where there is a continuing pattern and practice, and where (as here) the GAO has misled the Court as to material matters (as here) the doctrine of Equitable Estoppel prevents GAO's reliance upon any otherwise applicable statute of limitations. The latest iteration of GAO's false and misleading position was presented to this Court as late as a hearing in March of 2005. In

July of last year evidentiary filings demonstrated the falsity of GAO's representations that no data systems for professional employees personnel profiles existed.

**GAO has Misled the Court as to the Non-Existence of a Fully Articulated Personnel Database System, Centered in Washington, D.C.**

*Attachment 1* hereto contains evidence excerpting the representations of:

*First*, GAO's counsel in the related case then before the court (*Chennareddy*, case No 87-3538 where the issues are identical), and *Second*, the refuting testimony of GAO official in charge of personnel data systems.

The Evidence presented to this Court in Attachment 1 is incorporated by this reference.

This factual matter is of the essence of all matters before this court in this case. Upon this question rests the determination of whether or not an across-the-board central practice of age discrimination and manipulation of ratings and promotions based upon age actually ever happened or not.

The importance of the information now contained in the evidence of record in Chennareddy, bears repeating in this case as evidence of GAO's continuing bad faith representations to this Court. Relevant pages of that reply brief excerpted herein are reproduced herein as *Attachment 1*, pages 1-5. A summary of those incorrect representations by GAO follows

**From Transcript, Status Hearing, in Chennareddy, et al, v. Walker (Comptroller General) case No 87-3538 (JGP), March 10, 2005:**

19

"But there's no sort of existing database per se"(Counsel for GAO, Braswell, DOJ);.

And the refutation of those denials by William Mowbray, the GAO official in charge of the central personnel data systems.

**From Deposition Transcript,**
**William Mowbray, GAO Systems Manager (June 27, 2002)**
**(Related case, Vant Leven, et al v. Walker, case No. 00-2686 (JGP):**

Q.  So there is a separate [personnel information] database for each year, starting in 1989?

"A.  That's correct.

***(Pg. 10)***

A.  SAS is Statistical Analysis System.  It's a programming language" (Mowbray).

***(Pg. 20)***

Q.  So you get input from that data base-you get other input also?

A.  Exactly.

Q.  What is your other input?

A.  All of the demographic data such as race, gender ***(Pg. 21)***, org. code, data of birth......Social Security number of each person.  So by merging that, those files, with files from the NFC system, which do have all that demographic data, I can combine those two and add in the variants.

Q.  What is the official name of the databases, each year's database that you maintain that we've been talking about?

A.  There is no official name.  Maybe "Bob's database" is it.

20

Therefore, as a factual matter, this exchange establishes that the data base system does exist, and that it has remained functional since at least 1989.  GAO's representations to the contrary are simply false.  This revelation has relevance and materiality on all aspects of this case.

### III.  ARGUMENT

**I.  The Plaintiffs Have Timely Filed Their Complaint(s):**

**A.  The Statute of Limitations Rules Pertaining to Equal Pay Act Claims:**

Plaintiffs Equal Pay Act claims are subject to a two year statute of limitations, and three years if the violations are willful.  These limitations are contained in the Equal Pay Act and repeated in GAO policy directive Order # 2713.2, page 12, paragraph 10.  Therefore, the GAO's motion, as to claims under that purported statute of limitations, is simply erroneous.

**B.  The Statute of Limitations Applicable to ADEA claims (By these Plaintiffs and the Class they Seek to Represent) Is Inapplicable:**

The statute of limitations is not applicable to block any one of the Plaintiffs access to the Federal Courts for several separate but interrelated reasons.

First, the failure of mandatory administrative actions of GAO, in this case, and in the related underlying case of ***Chennareddy, et al v. Walker, supra***, are sufficiently egregious, obstructionist and dilatory to invoke the equitable jurisdiction of this Court and apply the

21

principles of Equitable Estoppel.  Where the defendant has benefitted from his inequitable

conduct,

> Equitable estoppel takes the statute of limitations out of plan for as long as is
> necessary to prevent the defendant from benefitting from his misconduct.
> ***Chung v. U.S. Dept. Of Justice, et al*** 357 U.S. App. D.C. 152; 333 F3d 273, 279
> (D.C. Cir 2003), citing ***Currier v. Radio Free Europe***, 333 U.S. App. D.C. 50,
> 159 F.3d 1363, 1367 (D.C. Cir. 1999);***Cada v. Baxter Healthcare Corp***. 920 F.
> 2d 446, 450-452 (7th, Cir. 1991).

Had not the GAO acted in such an obstructionist manner this case, as well as the related

case in which these three plaintiffs timely sought to intervene, relief would have been granted

and this case would have been over, years ago.

Second, each of the three Plaintiffs did in fact notify the Civil rights department of GAO

(the Civil Rights Office) on multiple occasions of their intent to sue.

Third, they also attempted to sue on three occasions.  They attempted to gain access to the

Federal Court by intervention twice.  This occurred once in early 2000, and once in 2002.  They,

after being frustrated in their attempted intervention by GAO's incorrect and disingenuous

assertions, that filed this separate case in their own names on May 31, 2006.

Fourth, the experiences of these Plaintiffs and co-worker Chennareddy demonstrate (See

Affidavits, (Attachments 4, 5, 6) to the effect that the Civil Rights department of GAO (GAO's

Office of Inclusiveness) was itself obstructionist, did not follow its own regulations, did not

notify Plaintiffs of their rights with notices of applicable deadlines in writing at the first

counseling session, and never informed them of the applicable rules of procedure as required by

their own regulations.  Those regulations are contained in GAO Order # 2713.2 (Attachment 9).

Fifth, two of the Plaintiffs, Moses and Davis, did in fact file formal complaints.  Davis's was never processed.  Moses's two administrative claims, although processed and investigated have never been finished as of the date of this opposition after being more than two years in the administrative process.  In the case of a filed administrative complaint, the existence of which here cannot be challenged, the statute of limitations does not begin to run until the administrative processing is completed.  Under these facts, once the 180 days of reasonable time allowed for timely administrative processing has run (as in the case of both Davis and Moses), the employee may elect to file his lawsuit directly in the United States District Court once he has given his 30 day notice of intent to sue.  That is what happened here.

Moreover, since all three of these plaintiffs seek to file as class representatives, only one need be successful for this lawsuit to remain "live".  Therefore, under the facts of this case, no part of the statute of limitations in for untimeliness in filing is applicable.  This is true ***even if*** the continuing violations doctrine for civil rights cases ***and/or*** if the doctrine of equitable estoppel is found inapplicable here.

Sixth, it appears from the affidavit of Dr. Chennareddy, Attached hereto as Attachment 6 that the standard practices in GAO's Office of Opportunity Inclusiveness are designed to thwart timely filings.  For example, Dr. Chennareddy finally received on July 26th, 2006, the results of investigation of his 3 ½ year old complaint.  In that notice, although he was informed of his appeal rights, he was not given a copy of the detailed timing and procedures required to be followed as contained in GAO Order # 2713.2.

Seventh and finally, the continuing violations doctrine does in fact apply to the facts of this case. GAO's actions in all of these related cases are just one long identical pattern of excuses to get rid of the old folks as so succinctly stated in the Affidavit of Arthur L. Davis (Attachment 5, page 3, ¶ 5).

> My efforts were aimed at constructive correction of GAO management's blatant across the board attempts, unfortunately largely successful, to first discredit, then terminate by pressure and personal affronts essentially all older experienced employees. Those "older experienced employees" were those who had reached by that time a mature age, and a knowledge of "company policy" as distinguished from "company propaganda".

The affidavits of Moses, Davis and Chennareddy, hereto attached attest to the nature of the claims of these three Plaintiffs. It is also worthy of note that Chennareddy, although himself a complainant in the underlying original case, 87-3538, is by definition of the class herein, a member of the class of this case (in the event the class is certified as defined herein). These affidavits, in the context of the entire history of these related cases, and the expected pattern to be reported upon by the now available GAO statistical system would appear to prevent, as a determinative factual matter, any valid argument that the continuing violations pattern does not exist. This is particularly true unless and until the GAO is forced to disgorge the information it has held secret for over 20 years and misled the Court to the effect that such information never did exist.

It is also worthy of note that by accompanying motion, GAO seeks once again to block access to the key pattern and practice data via its Motion to Stay Discovery. This action is typical of GAO's obstructionist behavior. Since all available information demonstrates that the discrimination is universal, clear and massive, GAO's actions become understandable.

However, those actions are not just illegal, they represent an intentional long standing criminal obstruction of justice.  For this reason, the accompanying Motion for an evidentiary hearing is considered to be of the essence of Plaintiffs' case and is hereby requested to occur forthwith prior to any determination as to the merits of GAO's Motion to Dismiss in this case.  The requested hearing is expected to demonstrate the pervasive nature of GAO's misrepresentations to date.  That hearing would as a by-product result in refuting the claims contained in GAO's Motion to Dismiss, and end this decades long litigation by refuting GAO's illegal preferences of younger persons at the expense of its older professional staff.

### C. ADEA Claims by a Federal Employee Are Subject to Two Separate Routes:

The **Stevens** case, cited earlier, also clarified the meaning and construction of the ADEA statute as it applies to federal employees.  The Court in **Stevens v. Department of the Treasury**, 500 U.S. 1, 7 stated:

> **ADEA** provides two alternative routes for pursuing a claim of age discrimination. An individual ***may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies***. See *29 U. S. C. § § 633a*(b) and **[*6]** (c). A federal employee complaining of age  discrimination, however, does not have to seek relief from his employing agency or the EEOC at all. ***He can decide to present the merits of his claim to a federal court in the first instance.*** See § 633a(d). [emphasis added]

Here, both Davis and Moses attempted to enter the administrative route, but were frustrated by the inaction and lateness of the investigative process coupled with the refusal of the United States District Court to allow their original unquestionably timely attempts at intervention into the Chennareddy putative class action.  But even so, their actions, when waiting for the

administrative route to furnish relief were valid, since they waited more than the required 180 days before filing their individual lawsuit.

But again, given the inactions of GAO's administrative process and failure to follow its own time limitations, equitable estoppel should excuse any possible interpretation of untimeliness as due to GAO's failures to timely act, and failure to inform the Plaintiffs of their duties to be timely as the act and EEOC regulations, and even GAO's own regulations require.


## IV.  CONCLUSION

The Court is requested to:

1.  Deny the Defendants' Motion to Dismiss the Complaint.

2.  To deny the Defendants' Motion to Stay Discovery.

3.  The Court should Order forthwith Order Injunctive Relief in the form of production of full system descriptions, full data, full system report descriptions, and to cooperate fully with a total disgorgement of all information contained in that system relevant to the actual patterns and practices alleged by Plaintiffs in these related cases for the past 20 years, back to 1985.

4.  To Order the consolidation of this case, and all Chennareddy cases into one umbrella case, with appropriate subdivisions or classes as necessary to grant full relief.

5.  As a sanction, to issue a Show Cause Order as to why GAO should not be found to have deliberately misled the Court for more than 20 years as to the existence of a centrally located personnel management system covering promotions and ratings, and a system for measurement

of the staff profile and rates of advancements for each and every separate subdivision of

protected person to include, but not limited to:

    a.  Veterans.

    b.  Disabled Veterans.

    c.  Racial minorities.

    d.  Persons over the age of 40.

    e.  Women.

    f.  Persons with disabilities.

6.  Order that GAO should bear the cost of this effort and in addition should be required to pay

for the monitoring of the GAO effort by Plaintiffs' expert to insure that no repetition of the

misleading statements to the Court occur.  Costs and interim attorney's fees should be granted in

this case for the preliminary injunctive relief granted, as a sanction to prevent further obstruction

of justice, and further obstruction of the discovery process and the filing of motions having no

merit for the purpose of delay.

**OTHER MATTERS:**

    (1)  A hearing on this motion is respectfully requested:

    (2) The accompanying objection to the representation by the United States Department of

Justice of two separate agencies of the United States Government having inherent, apparent and

real conflicts of interest, is incorporated by this reference.

27

(3)  Plaintiffs have previously requested a jury trial.  That request is renewed as to any disputed facts subject under existing law to a jury determination, as for example the effect of allegations of violations of the equal pay act.

Respectfully submitted,

/s/ charltonw 2428

Walter T. Charlton, D.C. Bar # 186940

Counsel for the Plaintiffs and the Class

They Seek to Represent

230 Kirkley Road,

Annapolis, Maryland 21401

Telephone 410 571 8764
Email, charltonwt@comcast.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Arthur L. Davis, et al ) | |
|     and all others similarly situated ) | |
| ) | |
| **PLAINTIFFS,** ) | |
| ) | **CASE NO: 06 1002 (JGP)** |
| ) | |
| **DAVID M. WALKER** ) | |
| **Comptroller General of the** ) | |
| **United States c/o United States General** ) | |
| **Accountability Office (GAO)** ) | |
|     **and** ) | |
| **Michael Wolf, Chairman** ) | |
| **United States Government Accountability Office** ) | |
| **Personnel Appeals Board (PAB)** ) | |
|   **DEFENDANTS.** ) | |
| ) | |

**INDEX OF ATTACHMENTS TO OPPOSITION TO MOTION TO DISMISS**

Attachment 1- Excerpt of Status Hearing March 10, 2005, With explanatory material.
        And, Excerpt of William (Bob) Mowbray Deposition in related case
        taken on June 27, 2002.

Attachment 2-Transcript Status Hearing Chennareddy et al, case No 87-3538
        March 10, 2005.

Attachment 3-Transcript of Mowbray Deposition in related case, June 27, 2002.

Attachment 4- Declareation of Mr. James D. Moses, September 2006

Attachment 5-Affidavit of Arthur L. Davis, September 2006

Attachment 6- Affidavit of Dr. Venkareddy Chennareddy, September 2006

Attachment 7-Notice and Re-Notice of Intent to Sue, April 6, 2005

Attachment 8-New Notice of Intent to Sue, August 9, 2006 (for recent ADEA violations)

Attachment 9-GAO Order # 2713.2, dated 1997 (the "live" Order re notices,
        and Administrative Procedures for GAO civil rights cases.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| Arthur L. Davis, et al ) | |
|     and all others similarly situated ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | **CASE NO: 06 1002 (JGP)** |
| ) | |
| DAVID M. WALKER ) | |
| Comptroller General of the ) | |
| United States c/o United States General ) | |
| Accountability Office (GAO) ) | |
|     and ) | |
| Michael Wolf, Chairman ) | |
| United States Government Accountability Office ) | |
| Personnel Appeals Board (PAB) ) | |
|     DEFENDANTS. ) | |

---

**ORDER**

Upon consideration of Defendants' Motion to Dismiss, and it appearing that:

1.  Plaintiffs have attempted to timely file their complaints to bring them before this Court in accordance with the time constraints of the several statutes here involved; and

2.  Each of the three plaintiffs herein complained to their employer in a timely manner, were denied access to the administrative process through no fault of their own, indeed it appears that the GAO administrative process was never completed by GAO through fault in its own in-house system.

1

3.  GAO has misstated to the Plaintiffs and this Court facts leading to conclusions that these three plaintiffs were not entitled to intervene in an ongoing case with the same issues now before this Court.

4.  The misstatements are of long standing origin, and if indeed these three plaintiffs were late in any respect in filing their claims in this Court the lateness may be fairly attributed to delay resulting from actions of the Defendant, not the Plaintiffs herein.

5.  The Court therefore, hereby invokes the principles of equitable estoppel and denies application of any consideration of the statute of limitations to bar the claims of these plaintiffs.

Wherefore, premises considered, the Motion to Dismiss is Denied.

_____

John G. Penn, United States District Judge

2

**Certificate of Service**

I hereby certify that I mailed, first class postage prepaid, a copy of this Plaintiffs

Opposition to Defendants' Motion to Dismiss on this 11th , day of September, 2006 to counsel for

the Defendants:


Andrea McBarnette, AUSA

Judiciary Center Building

555 4th, Street, N.W.

Washington, D.C. 2001.


    /S/ Charltonw 2428

_____

Walter T. Charlton

3