EXHIBIT 2

TRANSCRIPT OF HEARING

Status Call on March 10th, 2005 Before the

Honorable United States District Judge

JOHN GARRETT PENN

1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
                                  .
          VENKAREDDY CHENNAREDDY,        .
                              . Docket No. CA-87-3538
               Plaintiff,        .
                                  .
               vs.              .
                                  .
          DAVID WALKER,              .
                              . Washington, D.C.
               Defendant.        . Thursday, March 10, 2005
                              . 10:40 a.m.
_____


                    TRANSCRIPT OF A HEARING
          BEFORE THE HONORABLE JOHN GARRETT PENN
                UNITED STATES DISTRICT JUDGE


          APPEARANCES:

          For the Plaintiff:    WALTER T. CHARLTON, Esquire
                                230 Kirkley Road
                                Annapolis, MD 21401

          For the Defendant:    MARINA UTGOFF BRASWELL, Esquire
                                US ATTORNEYS OFFICE FOR THE
                                DISTRICT OF COLUMBIA
                                555 Fourth Street, NW
                                Room 10-413
                                Washington, DC 20530

          Court Reporter:    Elaine A. Merchant, RPR, CRR
                                Official Court Reporter
                                333 Constitution Avenue, NW
                                Room 6822
                                Washington, DC 20001
                                (202)289-1571


          Proceedings recorded by machine shorthand, transcript
produced
          by computer-aided transcription.

2    1                        P R O C E E D I N G S

2              THE CLERK:  Civil Action 87-3538, Venkareddy

3    Chennareddy versus David Walker.

4              Walter Charlton for the plaintiff.  Marina Braswell

5    for the defendant.

6              THE COURT:  Good morning, counsel.

7              MR. CHARLTON:  Good morning, Your Honor.

8              MS. BRASWELL:  Good morning, Your Honor.

9              THE COURT:  Ms. Braswell, I'm happy to see that

10    you've gotten through your, whatever it was, your little

11    medical procedure.

12              MS. BRASWELL:  It was cataract surgery, Your Honor.

13    Thank you.  It went fine.

14              THE COURT:  Mr. Charlton, I think we're here on your

15    motion.

16              MR. CHARLTON:  Yes, Your Honor.  And I observe you're

17    looking well.

18              THE COURT:  Thank you.

19              MR. CHARLTON:  I've had a few medical problems.  Not

20    myself, but in my family, recently.

21              THE COURT:  We won't mention age, but that's all

22    right.

23              MR. CHARLTON:  Well, that --

24              THE COURT:  What's that?

25              MR. CHARLTON:  That is not part of my problem, Your

3    1    Honor, so far.

2    THE COURT:  Well, maybe I'm referring to mine, but go

3    ahead.

4    MR. CHARLTON:  Well, I won't comment.  I don't know

5    whether we're in a race or not.

6    Your Honor, I asked for this status call for a number

7    of reasons.

8    The first one is that my clients are also getting

9    older and one of them died about ten days ago.  And we want to

10    expedite the case to the extent possible.

11    I --

12    Initially, let me start off by saying I very much

13    appreciate Your Honor's delaying final decisions on some of

14    these matters; in particular, the motion to certify the class.

15    That is, it's been denied a number of times without prejudice.

16    And I think that was, in the light of recent events, very, very

17    wise, and I appreciate it.

18    I had adopted the attitude, and I believe I've

19    expressed it in this court, that I did not wish to proceed with

20    trial in this case until matters I had in process with the

21    Kansas City group were over.  And, in fact, as you know, I've

22    dropped out of that case.  And in the process of doing that a

23    body of new evidence was discovered.

24    THE COURT:  What was discovered?

25    MR. CHARLTON:  A whole bunch, a whole body of new

4    1    evidence.

2         And that new evidence is extremely relevant to this

3    case, which is a related case, as you know.

4         And it is my wish to --

5         There are --

6         Let me back up a minute.

7         There are I think several pending motions by the

8    plaintiffs.  This body of new evidence impacts greatly our

9    third amended complaint, which is the live complaint now before

10    the Court.

11    It also impacts to, perhaps, a lesser extent the

12    other two matters which are pending, which are to intervene

13    three Black professional level same class of folks; that is,

14    same grade as the other 19 plaintiffs, who have suffered the

15    identical problems.  I believe the last time we were here one

16    of those gentleman, Arthur Davis, was with me.

17    Mr. Davis has since, essentially, been forced to take

18    early retirement, which he did.  And, to my knowledge, the

19    other two African-American gentlemen are still with the agency.

20    No, that's wrong.  Jimmy Gilbert is not with the agency either,

21    but Jim Moses was the last time I talked to him.

22    But, in any event, the new body of evidence is to the

23    effect that the Court has been misled by GAO's representations,

24    and not just a little bit.

25    As you may recall, back when we had our hearings on

5    1    the motions to certify the class, the plaintiffs were forced to

2    build up by hand, essentially, a bunch of statistics, which

3    were presented to Your Honor.  And representations were made by

4    the GAO that there was no common database in their hands of

5    statistics that would support or refute, either one,

6    plaintiff's claims of age discrimination.  And that their

7    defense was there was no commonality and typicality.

8    Now, this body of evidence we discovered is that that

9    is and has been wrong.  That leaves plaintiffs in this

10    position.  I certainly don't want the Court to go ahead and

11    rule on pending motions are based on obsolete information and

12    data, and wrong information and data.

13    And, secondly, I do want to proceed, and my clients

14    want to proceed as quickly as Your Honor's schedule can

15    accommodate completion of this case.

16    So I don't know how long or into what detail you want

17    to go today.  But I'm prepared to discuss, perhaps, for an hour

18    all these matters.  But what I request is that you grant a

19    short period, a relatively short period of discovery.

20    Now, we've had, as you may recall, we've had

21    precertification discovery many years ago.  And we've had no

22    scheduling order, we've had no discovery, pretrial discovery to

23    date.  I don't know exactly what I want to call this kind of

24    discovery.  But I want, perhaps, discovery opened to July 31,

25    and would intend to go into these subjects.

6     1          And, as I say, this has already been to a large part

2     explored in the Kansas City discovery, which I am privy to and

3     which I have.  And they are all --

4     Essentially, I was operating that case under the

5     umbrella of the Chennareddy case as a matter of my own

6     processing.

7     But, anyway, the subjects that I wanted to go into

8     are the common database that GAO has in hand known as Bob

9     Mowbray's database, which is a database, according to my

10     recollection, of the testimony of Bob Mowbray.  It goes back

11     to --

12          THE COURT:  Bob who?

13          MR. CHARLTON:  Bob Mowbray, M-O-W-B-R-A-Y, I believe

14     is how you spell it.  A Dr. Bob Mowbray of GAO.

15          The database goes back in machine manipulable form to

16     approximately 1985 and has been consistently maintained ever

17     since, a fact that was denied by GAO.

18     In addition to this database, there are a whole

19     series of computer programs that extract data from the database

20     to find out, essentially, anything anybody wants to know about

21     the contents and history of GAO employment activities over the

22     years.

23     The second thing, I want to explore that system and

24     get that data, because it's highly relevant, if not

25     determinative, of Your Honor's leaving the motion to certify

7     1    the class open, and at least to the extent that it was not with

2    prejudice.

3         THE COURT:  So that's relevant as to the class

4    issues?

5    MR. CHARLTON:  It's relevant as to the class issues.

6    But it's also relevant to the status of each one of these 19,

7    plus three, complaining folks.  And let me tell you why.

8    I've had a number of cases against GAO.  And I've

9    researched all of them on Lexis recently.  And it is extremely

10    difficult to prove age discrimination in an environment such as

11    we have here without relevant statistics.

12    That is, if there's an overall pattern and practice

13    of discriminating against older folks -- and in that sense I'm

14    talking about people over, in our case, 43 and it's risen to

15    perhaps 50 now -- if there is such an overall pattern, then the

16    excuses of getting rid of 100 percent of those folks that are

17    in that category, which is, essentially, our situation, or

18    99.8 percent, rings hollow, those excuses ring hollow.

19    In terms of the burden of proof, it's a body of

20    information.  Along with instances and examples of disparate

21    impact it would show the adverse impact and disparate impact of

22    the system in place itself.  So I want to gather that data and

23    move it over into this case and explore it to the detail

24    necessary.

25    And along with that, I would plan to present the

8

1    Court with a parsed detailed summation in individual instances

2    of where this information was improperly withheld.  And clearly

3    the law requires such information to be maintained because of

4    the representations that GAO made to the Congress when they

5    created the GAO Personnel Act of 1980.  And it parallels the

6    operations of the EEOC.

7    So, anyway, that's one thing I wanted to look at.

8         The second thing I want to explore is discovery

9    involving the --

10        THE COURT:  Well, let me stop you just for a moment.

11        How long do you estimate this would take on that

12    issue?

13        MR. CHARLTON:  Well, if I did nothing else, I'm

14    talking about maybe five depositions.  Certainly we could do it

15    in 60 days, assuming Ms. Braswell is available and the GAO

16    folks we need to subpoena are available.  Some of them may have

17    already retired, but I don't think so.

18    I don't think it's a big task, because the thing

19    that's been, frankly, driving me crazy all these years is the

20    inability to get hands on the data.  Now we find the data is

21    there, the systems are there that manipulate it, and the facts

22    then become crystal clear to the Court.  I already know what

23    the facts are, but in this way we can prove them with the GAO's

24    own data.

25     To answer your question specifically, 60 days would

9    1    certainly be enough.  I asked for until July 31, but I'm

        2    presuming other things will be happening also.

        3        THE COURT:  All right.

        4        MR. CHARLTON:  Now, the second subject I wanted to

        5    inquire into is the failure, the alleged failure of the General

        6    Accounting Office personnel appeals board to carry out its

        7    statutory mandate.

        8    There is a case on the subject which discusses the

        9    duties of the GAO personnel appeals board.  And the case is the

     10    case where, a 1983 case, where GAO actually sued its own PAB.

     11    And as a matter of the structure of the GAO Personnel Act of

     12    1980, the personnel appeals board was set up by statute as a

     13    separate agency, having all other responsibilities as to GAO,

     14    with respect to GAO, that all of the executive branch agencies

     15    had and were contained in the Equal Employment Opportunity

     16    Commission, the Labor Department, the Merit Systems Protection

     17    Agency, et cetera.  They were all rolled into the functions of

     18    the PAB.

     19    And one of the functions of the PAB was to make sure

     20    that GAO itself did not discriminate.  And the particular

     21    person who had this responsibility was the general counsel of

     22    the PAB, who at the time it was set up, and a fine gentleman I

     23    worked with, by the name of Carl Moore.  Well, I don't want to

     24    get too detailed into this, but the history would show, and

     25    does show, with respect to our plaintiffs in this case and our

10

1    class, if such is granted, that anybody that raised their

2    finger or voice and raising the subject of age discrimination

3    at the GAO, Arthur Davis, or in the personnel appeals board,

4    Carl Moore, were dispensed with.  And I have a couple of

5    witnesses that will show and data that will show that, in fact,

6    the PAB in particular with respect to age discrimination is,

7    essentially, an agency totally under control.

8    As Your Honor commented the last time we were here,

9    their budget is set by GAO.  And there came a time halfway

10   through the period of our case about where the PAB wasn't doing

11   exactly what GAO wanted, so the GAO, who also appoints the

12   judges of the PAB, just didn't appoint any members of the PAB

13   for a while, a couple of years.

14   So, anyway, I want to explore all of that.

15   And it's relevant again to our case, because my

16   clients and the class they seek to represent, the older folks,

17   have been denied on an across the board basis certain rights.

18   These rights are statutory rights residing in the general

19   counsel of the PAB and the PAB itself to have their claims

20   processed.

21   Now, another quirk in this law that --

22   Well, there are two laws that govern what I'm about

23   to say.

24   The first one is the Reorganization Act, the Court's

25   Reorganization Act, which essentially says that when, and with

11.    1    respect to GAO it says, as contained in the GAO Personnel Act,

2    it says that if there is Title 7 racial national origin or race

3    discrimination at GAO, the employee must first go to the PAB.

4    And that's because it's under Title 42 of the U.S. Code.

5     At GAO, in the case of an age discrimination

6    complaint, the employee can either go to the PAB, give him 30

7    days notice like we did, and then file in the U.S. District

8    Court like we did.

9     But the other interesting thing is that if you decide

10    to go to -- if you have racial discrimination involved and you

11    decide to go to the PAB, you don't ever get to go to the United

12    States District Court.  Any appeals are to the Court of Appeals

13    for the Federal Circuit and not to the United States Court of

14    Appeals for the D.C. Circuit.

15    So what the PAB does in terms of processing,

16    following its mandatory duties, as set forth in the code and

17    this case of GAO versus GAO/PAB, which is at 698 Fed.2d 516,

18    D.C. Circuit, 1983, what the PAB does and whether they function

19    correctly or not is of enormous importance to my clients.  And

20    if the PAB has been suborned, as we, or at least controlled via

21    the process so that none of their age complaints are ever

22    processed properly, then they are deprived of substantial

23    rights, they are deprived of their elections to decide whether

24    they want to come to U.S. District Court or not.  And, of

25    course, they're also deprived of a situation, a fair situation

12    1    involving a jury trial.

2    Now, in this case, I noticed in the printout, we

3    have -- the caption of the electronic printout says there is a

4    jury demand.  And, in fact, we did make a jury demand.  I made

5    that knowing full well that no jury demand was allowed in an

6    age discrimination case involving United States government

7    employees.  But I figured maybe the law would change because it

8    seems to be going that way.  And, in fact, many of the aspects

9    of the law over the pending time of this case have changed to

10    favor treatment of age discrimination with the same seriousness

11    that racial discrimination is treated.

12    So these things all kind of go together.  And what I

13    must do, I'm sure, at one time or another, is simplify these

14    matters.  And I think we are now in a position of doing that.

15    I've also, I want Your Honor to know, that I have

16    been in touch with a number of large law firms to get whatever

17    assistance I need in this effort.

18    But if this database is available and a short period

19    of discovery, perhaps ten people, ten depositions, and 25

20    interrogatories and unlimited document requests are allowed, I

21    think we can do this very rapidly given the information at hand

22    at the moment.

23    Now, there's one other thing.  All of this is,

24    obviously, obsolete.  Our existing third amended complaint,

25    which is a live complaint.  So I would need --

13    1        The cases all say that a) it's what you allege that

2    counts.  And some of these matters I've just said have not been

3    alleged in our complaint, which was filed in the year 2000, the

4    latest version, May of 2000, I believe, because we didn't know

5    it, and because we were likewise misled.

6    And that is, I think, all I would have to say, Your

7    Honor.  And I would appreciate any consideration you can give

8    us on this.

9        THE COURT:  Well, before I hear from Ms. Braswell,

10    what exactly are you asking me to do today?

11    MR. CHARLTON:  I'm asking you to defer ruling on any

12    of our pending motions until after a short period of discovery

13    is reopened on the subjects that I have talked about and

14    anything that is related to those subjects, with one exception.

15    I would like --

16    I think Your Honor has rather consistently allowed

17    intervenors to intervene.  And I would ask Your Honor, if you

18    feel it's appropriate, which we do and ask for, that you allow

19    these three African-American gentlemen to intervene and defer

20    the rest until June 30 or July 31, a period of discovery is

21    over.  And I would then be allowed to submit for the Court's

22    consideration a fourth amended complaint and a renewal of our

23    motion to certify the class.

24    Now, I'm sure Your Honor has read it before, but we

25    are here in an age discrimination case.  And that comes under

14    1    Title 27 -- Title 29 of the U.S. Code, which does not allow

2    class actions.  But by case law in this District, and I believe

3    it's Moysey versus Andrus, Judge Ritchey, class actions are

4    okay for age cases.

5    So that's what I'm asking for, reopening of discovery

6    with the limitations I outlined.

7    THE COURT:  As I recall, Mr. Charlton, there was a

8    third amended complaint, there was a request to amend the third

9    amended complaint maybe once or twice, and then in the past

10    papers there's a reference to a fourth amended complaint.

11    MR. CHARLTON:  Just now.  I don't think we've ever

12    filed a fourth one.

13    THE COURT:  No.  But there was something, a reference

14    I saw in the papers, to a fourth amended complaint.

15    So you're just talking about the third amended

16    complaint?

17    MR. CHARLTON:  Well, I don't -- I might have missed

18    it.  I went over the docket sheet.

19    THE COURT:  And there isn't a fourth amended

20    complaint?

21    MR. CHARLTON:  I don't believe.

22    THE COURT:  No.  But there is a reference to it.

23    MR. CHARLTON:  I may have had some similar discussion

24    three or four years ago, but that was prior to this gathering

25    of this new evidence.  And so, therefore, that's what I think

15    1    is appropriate to get the pleadings in the proper shape.

2    THE COURT:  And so you're asking the Court to defer

3    on all pending motions, except the motion to intervene?

4    MR. CHARLTON:  Yes, Your Honor.

5    THE COURT:  And you're asking that we rule on the

6    motion to intervene?

7    MR. CHARLTON:  Yes.

8    THE COURT:  On the papers that have been presented?

9    MR. CHARLTON:  I don't think there will be

10    substantial variance as to those gentlemen.  You've always

11    allowed -- I mean, I think Dr. Cantwell was the last one to

12    come in, but you've always allowed intervenors to come in.

13    They've been at GAO the whole time.  Two of them are from the

14    west coast, and one is from Chicago, so I don't even know that

15    they knew about our case.

16    THE COURT:  But with respect to those three

17    gentlemen, they fall under age discrimination?

18    MR. CHARLTON:  Yes, they do.  They have decided --

19    they reached the age where it hit them too.

20    THE COURT:  And you feel that everything we need on

21    that issue we have?

22    MR. CHARLTON:  I think so, Your Honor.

23    THE COURT: All right.  Okay.  Ms. Braswell.

24    MS. BRASWELL:  May it please the Court.

25    The first thing that I want to make clear in this

16      1      case for the record is that there is only before the Court a

2      motion for leave to file a third amended complaint.  This Court

3      has never ruled on that motion, to my knowledge.  And,

4      therefore, as far as I understand, there is no third amended

5      complaint that has actually been accepted by this Court.

6      In looking back at the record in this case, I

7      remember we had a motions hearing on May 21, 2001.  And the

8      Court allowed the plaintiff to supplement his motion for leave

9      to amend, to file a third amended complaint.  The plaintiff did

10      that, we responded.  But I believe that the Court has never

11      ruled on that.

12      So I want to make clear that we don't believe there

13      is, in fact, a third amended complaint currently in this case

14      that's been accepted by the Court.  And, indeed, we have

15      opposed it on numerous grounds, including the fact that it

16      comes way too late in the case and seeks to add entirely new

17      and different claims to this case.

18      Which, of course, has been, Your Honor, the problem

19      with this case all along, is that there has never, as this

20      Court found when it denied the motion to certify the class back

21      in 1995, I believe it was, there has never been identified by

22      the plaintiffs a common employment practice that is common to

23      all members of the class.

24      This case has been brought by plaintiff simply to say

25      we think that there is age discrimination occurring at GAO and

17    1    we want to bring every claim we can possibly have that deals

2    with age in this case.  So there are promotion claims, there

3    are transfer claims, there are evaluation claims, there are

4    work assignment claims, there are any number of claims that are

5    in this case.

6    And what happens is that every time we come before

7    this Court, Mr. Charlton gets up here and says I just need a

8    little more discovery, if you can just give me a little bit

9    more discovery, I know I put forth that common employment

10    practice that this Court found was lacking in the papers filed

11    by plaintiffs.

12    We have routinely opposed the request for additional

13    discovery.  We do so again today.  But, frankly, before we even

14    get there, this representation that there is a Bob Mowbray

15    database that exists that will somehow show the Court what the

16    plaintiffs up until today have been unable to show the Court;

17    i.e., a common employment practice, simply does not exist.

18    And, therefore, we believe that if the Court wants to

19    entertain any request for discovery in this case, the plaintiff

20    should be required to file a motion saying what kind of

21    discovery they want, why they believe that they should be

22    entitled to discovery at this point in the case.  They're not

23    calling it precertification discovery.  They're just sort of

24    saying we want discovery.

25    The government shouldn't be put to simply giving

18    1    discovery and going through that burden whenever the plaintiffs

2    want it.  They should have to come forward and demonstrate to

3    the Court this alleged finding in the Van Levon case.  I have

4    no idea what Mr. Charlton is referring to.

5    And he certainly has put nothing forward,

6    specifically to this Court, as to what supposedly has been

7    discovered in the Van Levon case that indicates that there's

8    discrimination or indicates that there's some common employment

9    practice here that should allow this case to go forward as a

10    class action.

11    He should be put to the test.  He should have to file

12    a motion for discovery, he should have to show what evidence he

13    believes he has uncovered in the Van Levon case that indicates

14    that this Court should consider allowing discovery and we

15    should have an opportunity to respond to that.

16    In terms of whether or not discovery will be quick,

17    Your Honor, the Van Levon case is your case as well, and you

18    know that the government finally moved for a protective order

19    in that case after we had something like 500 requests for

20    production of documents, endless interrogatory requests, we did

21    do depositions in that case.  So to believe that somehow this

22    request for discovery is going to be a very limited request I

23    think is simply belied by the way, certainly the way the Van

24    Levon discovery went forward.

25    So in fairness to the government, the plaintiff

19   1    should have to put -- the plaintiffs should be put to the test.

2    They should have to move for leave to take additional

3    discovery, they should have to put forward whatever they have

4    that they think supports bringing such a motion at this stage

5    in the case, and we should be given an opportunity to respond

6    to that.

7    With respect to, for example, one of the things, Your

8    Honor, that the plaintiff said they want is that they want to

9    explore the failure of PAB, the Personnel Appeals Board, to

10    carry out its statutory mandate.

11    Well, as this Court may recall, in their motion for

12    leave to file a third amended complaint, they sought to add the

13    PAB as a party.  And we oppose that.  And we set forth specific

14    reasons why they cannot add the PAB as a party, not the least

15    of which is that there is no waiver of sovereign immunity to do

16    so.  So they're asking for discovery about how the personnel

17    appeals board acts when, in fact, the personnel appeals board

18    would never be properly a party to this case.

19    And as the Court may recall, after the May 21, 2001

20    motions hearing, the Court allowed the plaintiff to supplement

21    why the plaintiff thought that the PAB should be allowed in as

22    a party defendant, and we oppose that as well.  So certainly

23    they shouldn't be allowed discovery dealing with an issue that

24    certainly as of right now is not even properly before the

25    Court.

20    1    So, again, we believe that with respect to the

2    deferral we really think that the Court should rule on the

3    latest motion for reconsideration to certify the class.  That

4    motion should be denied again.  This case, Your Honor, could go

5    forward with the plaintiffs claims, the individual claims.  But

6    we think that we really need to get past this issue of the

7    motion to certify the class.

8    We have demonstrated over and over again why that

9    should be denied.  This Court has denied not only the motion to

10    certify the class, but also previously denied one motion for

11    reconsideration of that.  So we're on a second motion for

12    reconsideration of the class certification decision.  And we

13    think the time has come to deny that motion.

14     Notwithstanding that position, if the plaintiff wants

15    to be able to try and put forward their motion for leave to

16    take discovery, we certainly would agree that the Court could

17    defer ruling on the second motion to reconsider the class

18    certification denial until the plaintiff puts forward a motion

19    for discovery.  Because the plaintiff is claiming that if they

20    can get this discovery, that has an effect on the class

21    certification.  We don't believe so.

22    And so we think that in terms of how the case should

23    proceed, perhaps the answer is to give the plaintiffs a certain

24    date to file a motion for leave to take discovery, we respond

25    and then after the Court rules on that, if the Court denies the

21      1      motion for leave to take discovery, then we think certainly the

        2      issue of the motion for reconsideration on class certification

        3      is ripe and should be decided.

        4      If there are any questions that I can answer, Your

        5      Honor, I'm happy to do so.  But we do want to make clear that

        6      as of right now it is our understanding that the only complaint

        7      before the Court is the second amended complaint, that that's

        8      the only one that has been accepted in this case, and that was

        9      from 1992.

        10     THE COURT:  Are you familiar with this, I'm trying to

        11      think of the name, the Bob Mowbray matter?

        12     MS. BRASWELL:  Yes, Your Honor.  And I apologize.  We

        13      just responded to some additional interrogatories in Van Levon.

        14      And my recollection is that there was a specific request for

        15      that database and that we said there is no such thing as a Bob

        16      Mowbray database.

        17      What happens is that based on requests that he gets

        18      from higher officials at GAO, he can run certain types of

        19      databases.  But there's no sort of existing database per se.

        20      That's my recollection of our response in Van Levon.

        21      Your Honor, if I go back as soon as this is over and

        22      find that I have mistakenly remembered that, I will immediately

        23      file something with the Court, but that is my recollection.

        24      And, of course, if the plaintiff moves for leave to

        25      take discovery, that gives us an opportunity to respond to that

22    1    and to show the Court whether or not the database he claims

2    exists does, in fact, exist.  But the representation I'm making

3    to the Court is my memory is that we were asked about this in

4    Van Levon and that we said there is no such thing as a sort of

5    fixed finite Bob Mowbray database, unless he's talking about

6    anything that Bob Mowbray would ever have on his computer,

7    which would be unreasonable.

8        THE COURT:  All right.  Mr. Charlton, anything

else?

9        MR. CHARLTON:  Yes.  Just briefly.

10        Your Honor, Ms. Braswell is completely correct on the

11        status of the third amended complaint.

12        Now, as to Bob Mowbray's database --

13        THE COURT:  Well, with respect to the third amended

14    complaint then, as I recall, as I said, there was a motion to

15    amend it at one point.  I guess a motion to modify it, or I'm

16    not sure what I would refer to it as.  Either one or two.

17        MR. CHARLTON:  As I recall, and I think I got it

18    exactly right, we filed a third amended complaint.  It had some

19    typographical errors in it, minor matters that were wrong.  I

20    filed a corrected one.  And then after that we moved to amend

21    it, rather than file a fourth.  So I believe that is correct.

22    But, in any case, when you take all of those, whatever they

23    are, and put them together, they are now --

24        THE COURT:  It's ready.

25        MR. CHARLTON:  They have not been ruled upon by the

23    1    Court.

2    THE COURT:  And it's ready.

3    MR. CHARLTON:  It is not ready.

4    THE COURT:  Well --

5    MR. CHARLTON:  I'm saying that was in 2000.

6    THE COURT:  Right.

7    MR. CHARLTON:  And this body of information I have,

8    including Bob Mowbray's databases, plural databases and plural

9    systems, were denied, as Ms. Braswell semantically skirted the

10    problem here today, or denied back then.

11    Now, this is vital to our case.

12    I took Dr. Mowbray's, Bob Mowbray's deposition.  And

13    as I recall that deposition, the essence of it was --

14    THE COURT:  You took it in this case?

15    MR. CHARLTON:  In the Van Levon case.

16    THE COURT:  Oh, the Van Levon case, all right.

17    MR. CHARLTON:  There are a number of computerized

18    databases at GAO.  The specific number was never specifically

19    identified.  But the databases at GAO on the personnel data by

20    race, by age, by date of hire, by promotions, by ratings.  And

21    all of that is comprehensive.  It starts at a point in time and

22    continues even as we speak.

23    And those databases, I call them databases,

24    semantics, there are files, computer files that are machine

25    manipulable, and they have a bunch of programs that can go into

24    1    whatever databases are there and furnish management with

2    whatever information they need or ask for.  And it is my

3    information that, in fact, they did, they, GAO, management,

4    promotion folks, did that routinely over all of the years of

5    our case.

6    Now, semantically I say that is a database and that

7    is a series of programs.  But the important thing is that the

8    data and the information as an admission of a party opponent is

9    there and we can get it with the Court's leave.  And that's

10    what I want to do.  I think we're entitled to it.  So that --

11    And the first deposition I would take in such an

12    effort would be of Dr. Bob Mowbray all over again and get this

13    exact point nailed down.  And if Dr. Mowbray comes forth and

14    says, well, no, we don't have any such information, it's

15    directly contrary to his prior testimony.  It won't happen.

16    And it's there and it's the easy way to get rid of this case,

17    is proceed through that data processing task, which is,

18    essentially, routine.

19    MS. BRASWELL:  May I respond just one moment, Your

20    Honor, please?

21    Your Honor, it would be manifestly unfair to open up

22    discovery based simply on a representation that data, quote,

23    unquote, is there.  If Mr. Charlton believes that having taken

24    the Mowbray deposition he can show that not only discovery

25    exists, but that would be relevant to the claims in this case,

25    1    then he should have to do that with some kind of showing, by

2    moving for a leave to take discovery, attaching whatever

3    portions of the Mowbray deposition he thinks are relevant.

4    But he should be required to show how this discovery

5    he seeks is relevant to the claims that are properly in this

6    case and not simply make representations that it's there.  I

7    mean, I don't know how to respond to it's there by saying it's

8    not there.  I mean, he needs to be able to make some specific

9    showing so that we can have a right to respond to that with our

10    own specific showing as well.

11        Thank you, Your Honor.

12        THE COURT:  Well, Mr. Charlton, with respect to that

13    point, I'm inclined to agree with the defendant.  And that is

14    that you should prepare a motion, if you wish, making the

15    request with respect to discovery and everything that you rely

16    upon as to its relevance or whatever.  And the government would

17    have an opportunity to respond to that, and you would file a

18    further reply.  And then at that point we can rule on it. It's

19    hard to do it when it's just presented in court like this.  And

20    I think this has happened before.

21        But the second thing is with respect to the amended

22    complaint, if the third amended complaint is not before us, I

23    understand you to say that it's ready at this point to be ruled

24    upon, is that right?

25        MR. CHARLTON:  No.

26    1         THE COURT:  No.  You want me to withhold?

2         MR. CHARLTON:  I want you to withhold and let me

3    further supplement the third, or I think it would be cleaner

4    just to file a fourth.

5         THE COURT:  Because you did indicate that you wish to

6    have the Court rule on the motion to intervene.  That's ready?

7         MR. CHARLTON:  I think so.  That one I think is

8    ready.

9         THE COURT:  Well, it is?

10         MR. CHARLTON:  It is ready.

11         THE COURT:  It is ready for a ruling?

12         MR. CHARLTON:  Yes, Your Honor.

13         THE COURT:  I'm going to enter an order setting forth

14    our requirement.  But you are going to have to file a written

15    request motion with respect to the issue of discovery, what you

16    need it for, its relevance, who you wish to take discovery of,

17    and so forth, so that the government will have an opportunity

18    to see that and then respond to it, and the three of us will

19    know exactly what you're looking for.

20         MR. CHARLTON:  Yes, Your Honor.

21         THE COURT:  I will not rule on the third amended

22    complaint.  I will only ask that you keep in mind that, as I

23    say, it's my recollection that at some point you, although you

24    had filed a motion to file a third amended complaint, you made

25    some modifications.  And I don't know how they relate to your

27    1    motion to amend now.

2        MR. CHARLTON:  Perhaps I should just withdraw the

3    motion for leave to file the third amended complaint.  That

4    would clean it up.

5        THE COURT:  Well, is that what you're doing?

6        MR. CHARLTON:  That's what I'm doing.

7        THE COURT:  You wish to withdraw the motion to amend

8    the third amended complaint?

9        MR. CHARLTON:  Yes, I do, except I can't remember

10    whether I filed a separate motion to intervene or not.  I think

11    it might have been part -- I want these three individuals in,

12    if it's at all possible.  I'll have to check that, Your Honor.

13    I just don't recall.

14        THE COURT:  I'll give you an opportunity to do that.

15    And I'll put that in the order.

16        MR. CHARLTON:  That's fine, Your Honor.  I very much

17    appreciate this.

18        THE COURT:  Now, how much time do you think you need

19    to file something, because I take it you intend to file a

20    motion re discovery?

21        MR. CHARLTON:  Yes.

22        THE COURT:  And also a motion with respect to the

23    third amended complaint?

24        MR. CHARLTON:  Yes.  Thirty days.

25        THE COURT:  Thirty days.  All right.

28    1      So that's 30 days for everything?

2      MR. CHARLTON:  For everything.

3      THE COURT:  All right.  That would be around

4    April 10.

5      Anything else?

6      MR. CHARLTON:  Nothing else, Your Honor.

7      THE COURT:  Ms. Braswell?

8      MS. BRASWELL:  Your Honor, if the Court is going to

9    put a date in there, could we have 30 days to respond?

10      THE COURT:  Could you come up to the microphone,

11    please.

12      MS. BRASWELL:  I'm sorry.  Of course.

13      If the Court is going to put a date in there, could

14    we have 30 days to respond to that motion, since I don't know

15    what it will entail?

16      THE COURT:  You may.

17      MS. BRASWELL:  It seems like it will be more than

18    just a motion on discovery.

19      Thank you, Your Honor.

20      THE COURT:  And I would like to set the matter down,

21    set a status date, just so it's on the docket.  Perhaps that

22    should be in May.  What are your calendars in May?

23      MS. BRASWELL:  Any time in May for now, Your Honor.

24      MR. CHARLTON:  May is all right, Your Honor.

25      THE COURT:  What about May 17, 1:30?

29  1          MS. BRASWELL:  That will be fine, Your Honor.

2          MR. CHARLTON:  Fine, Your Honor.

3          THE COURT:  May 17.

4          All right.  Thank you, counsel.

5          MR. CHARLTON:  Thank you, Your Honor.

6          MS. BRASWELL:  Thank you, Your Honor.

7          THE COURT:  Have a good day.

8          (The hearing concluded at 11:30 a.m.)

9

10

11                    CERTIFICATE OF REPORTER

12          I certify that the foregoing is a correct
transcript

13    from the record of proceedings in the above-entitled
matter.

14

15

_____

16                    ELAINE A. MERCHANT, RPR, CRR

17                    Official Court Reporter

18

19

20

21

22

23