UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ARTHUR L. DAVIS, et al.               )
                                      )
                    Plaintiffs,       )
            v.                        )        Case No: 06-1002 (JGP)
                                      )
DAVID M. WALKER,                      )
Comptroller General of the           )
U.S. Government Accountability Office,)
et al.                                )
                                      )
                    Defendants.       )
_____)

### REPLY IN SUPPORT OF DEFENDANTS' MOTION
### TO DISMISS AND SUPPLEMENT TO MOTION TO DISMISS

The Defendants, David M. Walker, Comptroller General of the United States,

Government Accountability Office ("GAO") and GAO's Personnel Appeals Board ("PAB"),

through counsel, submit this reply in support of Defendants' motion to dismiss for lack of

subject matter jurisdiction and failure to state a claim.  Three plaintiffs commenced this action

under the Age Discrimination in Employment Act of 1964 ("ADEA"), 29 U.S.C. § 633a (2006),

the Constitution, and other federal laws and regulations, alleging age discrimination in

performance appraisals, advancements, pay and terminations and a failure to process

discrimination complaints.

### ARGUMENT

**I.      Defendants are not Equitably Estopped from Raising the Exhaustion or the Statute
        of Limitations Defense**

Equitable estoppel "is not, in itself either a claim or a defense.  Rather, it is a means of

precluding a litigant from asserting an otherwise available claim or defense against a party who

has detrimentally relied on that litigant's conduct."  Int'l Union v. Clark, No. 02-1484, 2006 WL

2598046, *11 (D.D.C. Sep. 11, 2006) *quoting* <u>ATC Petroluem, Inc. v. Sanders</u>, 860 F.2d 1104,

1111 (D.C. Cir. 1988). In this jurisdiction, the elements of equitable estoppel are: "(1) conduct

amounting to a false representation or concealment of material fact (2) made with actual or

constructive knowledge of the true facts, and (3) with the intention that another person act in

reliance upon it; (4) the other person's lack of knowledge and of the means of knowledge

concerning the truth of the representation, (5) and his reliance upon the misrepresentation, (6)

causing him to act so as to change his position prejudicially." <u>Int'l Union</u>, 2006 WL 2598046 at

*11 *quoting* <u>Cassidy v. Owen</u>, 533 A.2d 253, 255 (D.C. 1987); <u>see</u> <u>also</u> <u>Moore v. Blue Cross and</u>

<u>Blue Shield of Nat. Capital Area</u>, 70 F. Supp. 2d 9, 31 (D.D.C. 1999).

      This Court has noted "neither the Supreme Court nor this Circuit has ever upheld a

finding of equitable estoppel against the Government." <u>United States v. Philip Morris et al.</u>, 300

F. Supp.2d 61, 70 (D.D.C. 2004); <u>see</u> <u>also</u> <u>Office of Personnel Management v. Richmond</u>, 496

U.S. 421, 427 (1999) (noting "not a single case has upheld an estoppel claim against the

Government for the payment of money."). While the Supreme Court has so far declined to

"embrace a rule that no estoppel will lie against the Government in any case," it has noted that

the arguments for such a rule are "substantial." <u>Id</u>. at 425; <u>see</u> <u>also</u> <u>Heckler v. Cmty. Health Serv.</u>

<u>of Crawford County, Inc.</u>, 467 U.S. 51, 59 (1984). In particular, the Supreme Court warned in

<u>Richmond</u>, that "[t]o open the door to estoppel claims would only invite endless litigation over

both real and imagined claims of misinformation by disgruntled citizens, imposing an

unpredictable drain on the public fisc." 496 U.S. 433.

      The Court of Appeals for the District of Columbia has expressed perhaps even stronger

scepticism about the application of equitable estoppel in claims involving the Government. It

2

has held that "estoppel's application to the Government should be rigid and sparing." ATC
Petroluem, Inc., 860 F.2d at 1111.  Notably, given the instant facts, the D.C. Circuit has
interpreted "the Supreme Court's powerful cautions against the application of the doctrine to the
[G]overnment ... as normally barring its use to undercut statutory exhaustion requirements."
Rann v. Chao, 346 F.3d 192 (D.C. Cir. 2003).

        Applying these principles, the Court should conclude that the Defendants are not
equitably estopped from asserting the exhaustion defense in this case.  There is a clear
presumption in this Circuit against invoking the doctrine against government actors in any but
the most extreme circumstances. See ATC Petroluem, Inc., 860 F.2d at 1111.  The specific
"misconduct" Plaintiffs allege cannot overcome that presumption.  Plaintiffs claims that "GAO's
administrative process is defective and meaningless" and that although they went to counseling,
there were no final agency decisions, report or notices of right to sue, and notices of
"administrative options."[1]  Plaintiff's Response at 5, 10.  Such alleged misconduct is insufficient
to support the application of equitable estoppel in this case.  In Int'l Union, 2006 WL 2598046,
despite Plaintiffs' claim that Defendant's misconduct constituted either negligence or erroneous
written and oral advice evidence, the Court denied applying equitable estoppel.  The Court found
that equitable estoppel would not be appropriate even if it were true that 1) Defendant incorrectly
informed Plaintiffs that the contracts in dispute provided no appeals process and 2) Defendant

_____

        [1]  While Plaintiff Davis' claims that he never received notice of Order 2713.2, which sets
forth GAO's discrimination complaint processing regulations, Pl.'s Opp'n at 15, this is disputed
by his receipt of a January 5, 2004 Notice of Right to File a Discrimination Complaint, a copy of
which is attached as Exhibit 2.  That notice, signed and dated by Plaintiff Davis, specifically
referred him to GAO Order 2713.2.  Id.

3

failed to provide information regarding its internal Equal Employment Opportunity process. Int'l Union, 2006 WL 2598046.

In determining whether a plaintiff is entitled to equitable estoppel, the courts may also consider the plaintiff's diligence in pursuing his claim.  For example, in Cristwell v. Veneman, 224 F. Supp.2d 54 (D.D.C. 2002), the District Court rejected the plaintiff's argument for equitable estoppel where he claimed that he had failed to timely file an administrative appeal with the EEOC because agency officials had engaged in insincere negotiations as a means to delay him in bringing his claims.  The court noted that the plaintiff could not point to "active steps" the agency took to prevent the plaintiff from making a timely filing.  Id.  In contrast, the court in Smith-Haynie noted that equitable estoppel might be appropriate where the defendant prevents the plaintiff from filing suit in time by promising not to plead the statute of limitations. See Smith-Haynie, 155 F.3d at 580.  In the instant case, Plaintiffs have made none of the showings required to invoke equitable estoppel to toll the ADEA statute of limitations or the deadlines for filing a Notice of Intent to Sue.

Moreover, the alleged defects in GAO's administrative process have no connection to the Plaintiffs' lack of timely filing of their Notice of Intent to Sue.  ADEA procedures allow for filing in federal court with virtually no contact with an agency's internal complaint processing office.  Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991).  Thus, Plaintiffs did not need to rely on the administrative process as a precursor to the filing of a Notice of Intent to Sue in district court.  Further, Plaintiffs had their own legal counsel and were cognizant of how to file Notices of Intent as early as June 10, 1999.  Plaintiff's Response at 7.  Coupled with their

claimed long-standing roles as EEO counselors at GAO[2], this demonstrates that Plaintiffs clearly

had an awareness of the procedures for filing their claims in district court.  Thus, GAO's alleged

defects in the administrative process provide no basis for a grant of equitable estoppel.

Finally, Plaintiffs' main argument for granting equitable estoppel is their claim that, in a

separate case, Chennareddy v. GAO, No. 87-3538JGP, the agency allegedly deceived the court

by not revealing the existence of a database.  Pl.'s Opp'n at 18.  They contend that the "hidden

data base" would disclose an overall "continuing violation and pattern and practice of disparate

treatment" of GAO employees with regard to age.  Pl.'s Opp'n at 18.  They assert that if the

Chennareddy Court had understood this, the Court would have permitted plaintiffs to intervene

and the instant late-filed action would not have been necessary.

As a practical matter, the allegation concerning the so-called "hidden data base" has been

fully briefed in a Motion for Additional Discovery in Chennareddy.  GAO has strongly denied

the allegations, and they provide no basis for equitable estoppel.  More significantly, Plaintiffs

cannot show that they relied to their detriment upon statements by GAO regarding the database.

In fact, it appears from their opposition brief that they have not relied on GAO's statements at

all, and are in disagreement with GAO's position.  While Plaintiffs believe that the Chennareddy

court should have permitted their intervention, there is nothing to show that GAO either kept the

Plaintiffs from moving to intervene or induced Plaintiffs not to file a complaint.  Further, there is

---

[2]  Plaintiff Moses was a civil rights counselor for the Los Angeles Office.  Complaint at 9.  Plaintiff Gilbert was a civil rights counselor for the Chicago Regional Office.  Complaint at 7. Plaintiff Davis was "the elected representative of an approved GAO employee organization, the Advisory Council for Civil Rights.  As chair of the committee, one of his duties was to review all civil rights complaints."  Complaint at 7.  Given their roles in the administrative process, Plaintiffs cannot claim lack of knowledge of the administrative process.

nothing that prevented the Plaintiffs from timely filing the instant action while also moving to intervene.  In short, Plaintiffs did not rely on GAO's action to their detriment.  The database dispute in <u>Chennareddy</u> is a red herring and provides no basis for an equitable tolling of Plaintiffs' ADEA filing requirements.

## II.      Plaintiffs' Continuing Violations Claim Fails

Plaintiffs claim that based on the continuing violation theory, they should not be bound by any particular time requirements for filing an ADEA complaint in district court.  They contend that there have been continuing violations of age discrimination at GAO dating back twenty years, and therefore it was not necessary to make a timely filing for the specific instances of alleged age discrimination.  Their argument reflects a fundamental misunderstanding of the law on the continuing violation theory.   As set forth in Defendants' Motion to Dismiss, under the Supreme Court's 2002 holding in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), acts of the sort about which plaintiffs complain - - promotions and discharges - - constitute separate and discreet acts, each of which must be the subject of a specific and timely filed action.  <u>Id.</u> at 114.  Plaintiffs' alleged constructive discharges and the Band II placement also meet the Supreme Court's definition of discrete events.  Thus, the Court should dismiss the claims of continuing violation as the Plaintiffs not only failed to file timely notices of intent to sue but failed to file a complaint within the statute of limitations period.

## III.     The Court Should Dismiss Plaintiff's Equal Pay Act Claims

Plaintiffs cannot maintain their EPA claim in this Court because a) they allege age discrimination and not sex discrimination and b) they seek relief exceeding the $10,000 jurisdictional amount.  The Equal Pay Act "prohibits payment of unequal wages for equal work

on grounds of sex [.]" 29 U.S.C. § 206 (d).  Here, Plaintiffs allege age discrimination and do not

allege any discrimination based on gender.  Therefore, Plaintiffs' EPA claims are fundamentally

defective.

Furthermore, claims brought pursuant to the Equal Pay Act must satisfy the jurisdictional

requirements of the Tucker Act. 28 U.S.C. § 1491.  See e.g., Barnes v. Levitt, 118 F.2d 404, 410

(5th Cir. 1997) cert denied, 523 U.S. 1136 (1998) ("[A] plaintiff asserting an EPA cause of action

must bring the action in the Court of Federal Claims if the claim, including the fees sought,

exceeds $10,000.").  Section 1346(a)(2), commonly referred to as the "Little Tucker Act,"

expressly limits the jurisdiction of this Court to any non-tort civil action or claim against the

United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any

Act of Congress."  28 U.S.C. § 1346(a)(2).  See, e.g., Doe v. Dep't of Justice, 753 F.2d 1092,

1101 (D.C. Cir. 1985); Wiggins v. Powell, No. Civ.A.02-1774, 2005 WL 555417, * 11 (D.D.C.

Mar. 7, 2005); Schrader v. Tomlinson, 311 F. Supp.2d 21, 25 (D.D.C. 2004)("it is well

established that claims brought pursuant to the Equal Pay Act must satisfy the jurisdictional

requirements of the Tucker Act, 28 U.S.C. § 1491") (internal quotations and citation omitted).

Plaintiffs seek damages "in a sum no less than $90,000,000" including $300,000 per person.

Compl. at 5, 27.  If Plaintiffs have any bonafide EPA claims, it must be brought in the Court of

Federal Claims.  Thus, this Court should dismiss Plaintiffs' EPA claims.

## IV.    Plaintiffs Failed to Exhaust their Administrative Remedies

In Plaintiffs' Opposition, Plaintiffs Davis and Moses claim that because they have filed

administrative actions and received no final decisions, this Court now has jurisdiction to hear

their claims under GAO's Order 2713.2.  GAO's Order 2713.2 states that administrative

7

remedies are considered to be exhausted if 180 days have passed since the filing of an administrative action and no final decision has been issued.  See Colantuoni v. Macomber, 807 F.Supp. 835 (D.D.C. 1992).  Both Plaintiffs Davis and Moses assert that they engaged in numerous filings and interactions with GAO's Office of Opportunity and Inclusiveness ("O&I") over the years but that none of their matters were brought to fruition by that office.  Because they allege that they have waited more than 180 days with respect to their complaints, they argue that they now can file a complaint in this Court.  Additionally, Plaintiffs' Opposition states that Plaintiff Moses filed a Notice of Intent to Sue, dated August. 9, 2006 and that such filing was timely.

       1)     *Plaintiff Davis has not exhausted his administrative remedies for his 2004 complaint*

In Plaintiffs' Opposition, Plaintiff Davis alleges - without specific dates - that he filed complaints with GAO.  The Defendants' records indicate that Plaintiff Davis filed only one complaint of discrimination.  Stroman Aff. ¶ 7.  Filed on January 7, 2004, the complaint concerned Plaintiff Davis' Time and Attendance records and certain computer practices.  Ex. 1.  Neither of these issues is alleged or referred to in the instant Complaint and therefore, the January 7, 2004 Complaint of Discrimination cannot be relied upon to establish that Plaintiff Davis exhausted his administrative remedies.

       2)     *Plaintiff Moses failed to timely file a notice of intent to file suit*

Plaintiff Moses filed a Notice of Intent to Sue, dated August 9, 2006, concerning the Band II restructuring.  Plaintiffs assert that this recent notice was filed in the interest of caution, in the event this Court rules that "the recent demotions and band split cost of living denials" are discrete events.  Pl.'s Opp'n at 14.  To be timely, a Notice of Intent must be filed within 180

days after the alleged unlawful practice occurred.  After filing the Notice, plaintiffs must wait at

least 30 days before commencing suit.  See 29 U.S.C. § 633a(c) and (d).  Plaintiffs' August 2006

Notice of Intent is untimely with regard to both of these time limitations.  The August 2006

Notice was filed more than two months after the start of this lawsuit, and therefore, clearly did

not provide the required 30 days notice before filing suit.  In addition, Plaintiff Moses was

notified on February 2, 2006 of the Comptroller General's decision not to grant Plaintiff Moses'

request to be placed in Band IIB; thus the 2006 Notice was filed 188 days after the alleged

unlawful action.   Def.'s Ex. 6.  For these reasons, the 2006 Notice is untimely.

> 3)    *Plaintiffs failed to timely file a 1999 Notice of Intent to Sue*

In the Complaint, Plaintiffs state that they filed a Notice sometime "in the year 2000,"

Compl. at 6.  Yet, Plaintiffs state in their opposition that they filed a Notice on June 10, 1999.

Plt's Opp. at 13-16.  Even if the June 10, 1999 date is accurate, the Notice still would not be

timely filed because it would have been filed before the retirement of either Plaintiffs Gilbert or

Davis (Plaintiff Moses remains an employee), and the Complaint alleges no other events

occurring prior to that date, only broad allegations of age discrimination tied to no specific

events or dates.

V.    Plaintiffs Have Not Established Prima Facie Case for Plaintiff Moses's Exhausted Claim

Plaintiff Moses filed an administrative complaint in 2002, alleging that his performance

ratings for 2000 and 2001 were biased and he did not receive an award that he should have

received, due to retaliation and age discrimination.  See Plt's Opp. at 14; Stroman Aff. ¶ 8; Ex. 3,

4 & 5.  Because 180 days have passed since the filing of that action with no final decision having

issued from GAO, these claims are considered to have been administratively exhausted.[3]

Although exhausted, Plaintiff Moses has not established a prima facie case under the ADEA with

regard to these claims.

The ADEA requires that "[a]ll personnel actions affecting employees or applicants for

employment who are at least 40 years of age ... in executive agencies ... be made free from any

discrimination based on age." 29 U.S.C. § 2000e-16(a).  The burden-shifting framework of

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973), governs the analysis of

Plaintiffs' discrimination claims.  Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000); see also

Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (explaining that the

McDonnell Douglas framework applies to ADEA claims).   Under McDonnell Douglas, a

plaintiff bears the initial burden of establishing a prima facie case, meaning she must prove by a

preponderance of the evidence "that (1) she is a member of a protected class;  (2) she suffered an

adverse employment action;  and (3) the unfavorable action gives rise to an inference of

discrimination." Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)   Plaintiff Moess cannot

establish the second of these *prima facie* elements (adverse action) in regards to the exhausted

claim.

To establish an adverse employment action in the absence of a diminution in pay or

benefits, a plaintiff must show an action with "materially adverse consequences affecting the

terms, conditions, or privileges of employment." Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir.

---

[3]   Plaintiff Moses appears to have abandoned his claims regarding the award in the
instant case, and is pursuing only his claims regarding the performance appraisals.

1999)[4]; see also Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001) (recognizing "the 'objective tangible harm' requirement, which guards against both judicial micromanagement of business practices, and frivolous suits over insignificant slights") (internal quotation omitted).

Plaintiffs have failed to allege that Plaintiff Moses suffered an adverse employment action with regard to his 2000 and 2001 performance appraisals. Mr. Moses has not suffered any "objectively tangible harm," nor has he alleged any type of materially adverse consequence affecting the terms, conditions or privileges of his employment with regard to these two performance appraisals. Moses does not claim that the lowered appraisals resulted in a loss of salary or grade. In fact, in his 2002 complaint of discrimination, Plaintiff Moses stated that there probably would not be any monetary increases for him in the next merit pay category because of where he was in the salary scale. Ex. 3 at 4.

A lowered performance evaluation, absent an effect on the employee's salary or grade, is not sufficient to constitute an adverse employment action under the ADEA. In Brown, that Court held that the lowering of an employee's performance evaluation was not an adverse employment action because, while the evaluation may have been lower than normal, it did not affect the employee's grade or salary. 199 F.3d 446, 458 (noting the "thick body of precedent" that "refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions"); Easton v. Snow, No. 04-02038, 2006 WL 1774552, at *4 (D.D.C. June 26,

---

[4]     The concept is similar to that of the "tangible employment action," which requires a showing of a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Brody, supra, 199 F.3d at 456 (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

2006) (holding that  a lowered appraisal was not "intrinsically adverse enough to trigger ADEA protections absent some indication of objective or tangible harm").

Plaintiff Moses has not established an adverse employment action with regard to the claim he raised in his 2002 complaint of discrimination.  Therefore, Plaintiffs have failed to state a prima facie case with regard to these claims.

## SUPPLEMENT TO MOTION TO DISMISS[5]

**A.     The Court Should Deny Plaintiff's Request for A Writ of Mandamus**

Plaintiffs seek a writ of mandamus compelling PAB to perform a statistical analysis in order to determine, among other things, whether there is a "promotion system."  Compl. at 27. Plaintiffs do not specify under which statute they seek a writ of mandamus / injunctive relief. However, the Court should dismiss claims under either the Mandamus and Venue Act or the Administrative Procedure Act ("APA").

*1.     The Court should dismiss any claims under the Mandamus and Venue Act*

Under the Mandamus and Venue Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The remedy of mandamus is considered a drastic one that should be awarded only in extraordinary situations.

---

[5]  Defendants address new arguments concerning the Defendant PAB in their supplement to the motion to dismiss and therefore do not object to the Plaintiffs filing a response to the new arguments raised in the supplement.  Due to Plaintiffs' Motion to Strike Dual Representation of the Defendants filed after Defendants' Motion to Dismiss, it is clear that Plaintiffs consider Defendants to be separate entities.  Although Plaintiffs did discuss both Defendants PAB and GAO in the complaint, Plaintiffs listed only one defendant, GAO, in the complaint section entitled "Parties."  Compl. at 5.  Therefore, Defendants have supplemented their dispositive motion with more arguments specifically concerning PAB.

See Mallard v. United States District Court, 490 U.S. 296 (1989); Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980); Cartier v. Secretary of State, 506 F.2d 191, 199-200, n.8 (D.C. Cir. 1974). To be entitled to mandamus, a plaintiff must demonstrate (1) a clear right to the relief he requests, (2) a clear, non-discretionary duty in the respondent/defendant to perform the action sought, and (3) the absence of an adequate alternative remedy. Mallard, 490 U.S. at 309; see also Cartier, 506 F.2d at 199-200. The burden of showing each element is on Plaintiffs.

This case does not present the extraordinary type of situation that warrants mandamus relief. Notably, Plaintiffs have an adequate alternative remedy. Plaintiffs have a right to a *de novo* review of their claims in federal district court. Storey v. Rubin, 976 F. Supp. 1478, 1482 (N.D. Ga. 1997), aff'd, 144 F.3d 56 (11th Cir. 1998). "One critical consideration in determining the propriety of resort to a writ of mandamus is the question of alternative remedies; the writ is usually denied when such alternatives exist." Cartier, 506 F.2d at 199-200. Here, Plaintiffs are currently pursing their alternative remedy with the present lawsuit; thus, mandamus relief is not warranted. The Court should deny Plaintiffs' claims and deny the petition for a writ of mandamus.

2.    *The Court should dismiss any claims under the Administrative Procedure Act*

    a.    PAB is not covered under the APA

The Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., provides an express waiver of sovereign immunity for suits seeking relief, other than money damages, based on allegedly improper actions of a federal "agency." 5 U.S.C. § 702. GAO is not an agency under the APA pursuant to 5 U.S.C. § 701, which provides the following definition of "agency": "(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—(A) the Congress". GAO is a part of the

legislative branch, and accordingly, exempt from the APA.  See Bowsher v. Synar, 478 U.S. 714,

730 (1986) (Congress created the GAO in 1921 in the belief that it "needed an officer, responsible

to it alone, to check upon the application of public funds in accordance with appropriation").

      The Court of Appeals for the D.C. Circuit has held that the exclusion of Congress in the APA

itself applies to arms of Congress.  Ethnic Employees of the Library of Congress v. Boorstin, 751

F.2d 1405, 1416 n. 15. (D.C. Cir. 1985) (holding statutory exemption for "Congress" extends to the

Library of Congress because it is a component of the legislative branch of government); see also

Washington Legal Foundation v. United States Sentencing Commission, 17 F.3d 1446, 1449 (D.C.

Cir. 1994) (concluding that the APA exemption for "the Congress" meant the entire legislative

branch); cf. Mayo v. U.S. Government Printing Office, 839 F. Supp. 697, 700 (N.D. Cal. 1992)

(finding that because the Freedom of Information Act declares that it's definition of agency does not

include the Congress, the entire legislative branch is exempted from the FOIA).  The PAB, is GAO's

personnel appeals board and it is likewise exempt from the APA.  Therefore, Plaintiff may not bring

claims under the APA against the PAB.

      b.    The Court has no jurisdiction under the APA

      Even assuming *arguendo* that the APA did apply to PAB, the Court would still have no

jurisdiction under the APA.  Under the APA, "[a] person suffering legal wrong because of agency

action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,

is entitled to judicial review thereof."  5 U.S.C. § 702.  Yet, not all agency action comes within the

scope of the APA.  ITT Corp. v. Local 134, IBEW, 419 U.S. 428, 443-44 (1975).  Only "[a]gency

action made reviewable by statute and final agency action for which there is no other adequate

remedy in a court are subject to judicial review."  5 U.S.C.§ 702.

Here, the Court has no jurisdiction under the APA because Plaintiffs can seek a *de novo* review of their claims in federal district court and such is an "adequate remedy in a court" for purposes of the APA.  <u>Storey</u>, 976 F. Supp. at 1483 *quoting* <u>Ward v. EEOC</u>, 719 F.2d 311, 314 (9th Cir. 1983) ("The EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences [on an employee's rights] because such actions are merely prepatory to a lawsuit by either the EEOC or the charging party;  only the district court may fix liability."); <u>Steward v. EEOC</u>, 611 F.2d 679, 682-84 (7th Cir. 1979).  In <u>Storey</u>, the Court dismissed plaintiffs' claim under the APA for lack of subject matter jurisdiction where the plaintiffs challenged the processes employed by the EEOC in investigating one of the plaintiff's claims.

> When reviewing an agency action under the APA, a primary portion of the Court's analysis focuses on whether the agency action has any "determinate consequences for the party to the proceeding.  <u>ITT Corp.</u>, 419 U.S. at 443.  Plaintiffs' claim under the APA loses sight of the fact that Plaintiff Storey's rights are not in any specific administrative proceeding or the manner in which it is carried out.  Rather, Plaintiff Storey has a right to an employment setting free of discrimination based on color, race, and sex.

<u>Storey</u>, 976 F. Supp. at 1483.

Similarly, here Plaintiffs challenge the PAB's processing of their complaints.  However, Plaintiffs can seek and are seeking a review of their claims in federal district court.  Because Plaintiffs have an adequate remedy in this Court, the Court should dismiss any claim under the APA for lack of subject matter jurisdiction and deny Plaintiffs' petition for injunctive relief.

**B.     Plaintiffs' ADEA Claims Against the PAB Fail**

*1.     The Court has no subject matter jurisdiction over ADEA claims against PAB*

Federal Courts are courts of limited jurisdiction and may hear a case only if it is authorized to do so by a congressional grant of jurisdiction.  <u>Insurance Corp. of Ireland, Ltd v. Compagnie des Bauxites de Guiness</u>, 456 U.S. 694, 702,(1982); <u>Aldinger v. Howard</u>, 427 U.S. 1 (1976).  Congress

has not created a right of action against the EEOC or any other agency based upon the handling of

an administrative complaint of discrimination, thus an alleged failure to process an administrative

claim properly is not actionable under the ADEA.  E.g., Storey v. Rubin, 976 F. Supp. at 1483-84

(finding ADEA does not confer jurisdiction over an action "challenging any aspect of the

administrative processes (or any application of that process) by which complaints of discrimination

are investigated and resolved."); Oxford Medical Group v. Vossoughian, M.D., 154 F. Supp2d 782,

785 (S.D.N.Y. 2001) (ADEA does not provide for a claim to be brought against the EEOC); see also

Packer v. Garrett, 735 F. Supp. 8, 9-10 (D.D.C. 1990) (only "right" Title VII establishes is to be free

of discrimination; this right is served even if errors are made in processing the charge, by the right

to a trial de novo), aff'd, 959 F.2d 1102 (D.C. Cir.) (table), cert. denied, 506 U.S. 1036 (1992);

Young v. Sullivan, 733 F. Supp. 131, 132 (D.D.C. 1990) ("Title VII creates only a cause of action

for discrimination.  It does not create an independent cause of action for the mishandling of an

employee's discrimination complaints."), aff'd, 946 F.2d 1568 (D.C. Cir. 1991) (table), cert. denied,

503 U.S. 918 (1992); Anthony v. Bowen, 848 F.2d 1278 (D.C. Cir. 1988) (denying claim for

attorney's fees under Title VII where fees were incurred to challenge processing of EEO complaint),

cert. denied, 489 U.S. 1011 (1989).

In Storey, the Court analyzed the remedial scheme of the ADEA and concluded that the

Federal Courts lacked subject matter jurisdiction to hear claims regarding the mishandling of an

employee's discrimination complaint during the administrative process:

> While federal courts generally have subject matter jurisdiction over claims arising under
> Title VII and the ADEA, this subject matter jurisdiction typically arises from one of the five
> specific code sections in these two remedial schemes through which Congress explicitly
> created rights of action, namely:  (1) 42 U.S.C. § 2000e-5(f)(3) (Title VII) (authorizing the
> EEOC, Attorney General, and aggrieved employees to bring civil actions in federal court);
> (2) 42 U.S.C. § 2000e-6(b) (Title VII) (authorizing three judge district courts for pattern and

16

practice cases of general importance brought by the Attorney General or the EEOC); (3) 42 U.S.C. § 2000e-16 (Title VII) (authorizing federal employees or applicants to bring civil actions); (4) 29 U.S.C. § 626 (ADEA) (authorizing aggrieved employees and applicants to bring a cause of action); (5) 29 U.S.C. § 633a (authorizing federal employees and applicants to bring a cause of action).  None of these five sections creates a right or action or confers on this Court jurisdiction over a claim by a federal employee against the EEOC, or any other agency, challenging any aspect of the administrative processes (or any application of that process) by which complaints of discrimination are investigated and resolved.[6]

Storey, 976 F. Supp. at 1483-84.

2.     *Plaintiffs fail to state a claim under the ADEA against the PAB*

Assuming *arguendo* that the Court does have subject matter jurisdiction over Plaintiffs' claims under the ADEA, the Court should still grant dismissal for Plaintiffs' failure to state a claim because Plaintiffs are not PAB employees.  See Fed. R. Civ. P. 12(b)(6).  "Title VII and the ADEA create causes of action against only the employers of individuals injured by acts of discrimination in the workplace."  Storey, 976 F. Supp. at 1484; see 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 633a.[7]

**C.     Plaintiffs have Neither Express nor Implied Cause of Action against PAB**

Even assuming *arguendo* that the court has subject-matter jurisdiction over the plaintiff's complaint, the court would have to dismiss the complaint under Rule 12(b)(6) because the D.C. Circuit and circuits across the county have held that Congress has not authorized, either expressly or impliedly, a cause of action for the alleged negligence or other malfeasance in processing an employment discrimination charge.  See e.g., Smith v. Casellas, 119 F.3d 33, 34 (D.C. Cir. 1997); Baba v. Japan Travel Bureau Int'l. Inc., 111 F.3d 2, 4 (2d Cir. 1997); Scheerer v. Rose State College,

---

[6]  In Storey, the Court noted that "the remedial scheme of the ADEA parallels the remedial scheme of Title VII.  Thus, the analysis of Plaintiffs' claims under these statutes is identical."  976 F. Supp. at 1483.

[7]  Thus, assuming *arguendo* that this Court did have subject matter jurisdiction and Plaintiffs' Complaint did state a claim, the head of the agency (here, Defendant Walker) involved is the only appropriate defendant.  Storey, 976 F. Supp. at 1484.

950 F.2d 661, 663 (10th Cir. 1991); McCottrell v. Equal Employment Opportunity Comm'n, 726

F.2d 350, 351 (7th Cir. 1994); Uberoi, 180 F. Supp.2d 42, 45 (D.D.C. 2001); Storey, 976 F. Supp.

at 1484 ("it is well settled that charging parties do not have an implied remedy against the EEOC

or any other agency arising from the handling of a charge or a decision."). Thus, the Court should

dismiss Plaintiffs' claims against the PAB for improper processing of their discrimination claims.

**D.    The Court Should Dismiss Constitutional Claims against PAB**

*1.    ADEA provides the exclusive remedy for age discrimination claims.*

The Court of Appeals for this Circuit holds that "[i]t is undisputed that the ADEA provides

the exclusive remedy for a federal employee who claims age discrimination." Chennareddy v.

Bowsher, 935 F.2d 315, 318 (D.C. Cir. 1991); see Ward v. Kennard, 133 F. Supp. 2d 54, 58 (D.D.C.

2000); Sykes, 2005 WL 3544294 at *4. Therefore, Plaintiffs' claims under the Constitution should

be dismissed.

*2.    Sovereign immunity bars Plaintiffs' Constitutional Claims.*

Moreover, Plaintiff's constitutional claims should be dismissed for lack of subject matter

jurisdiction on the grounds of sovereign immunity. The United States enjoys immunity from suit

except where it has expressly consented to be sued, FDIC v. Meyer, 510 U.S. 471, 474 (1994), and

that consent cannot be implied but must be express. Nordic Village, Inc., 503 U.S. at 33-34; United

States v. Mitchell, 445 U.S. 535, 538 (1980). The United States has not waived its sovereign

immunity from suits seeking monetary damages for alleged violations of the Constitution. Meyer,

510 U.S. at 477. Thus, to the extent that Plaintiffs seek monetary damages, the government's

sovereign immunity bars claims that the United States violated Plaintiffs' constitutional rights. See

D'Alessandro v. EEOC, 2006 WL 560134 (D. Del. Mar. 7, 2006) (finding sovereign immunity

18

barred plaintiff's 5th Amendment due process violation claim against the EEOC); Clissuras v. EEOC, 1990 WL 96754, *4 (S.D.N.Y. July 5, 1990); Newsome v. EEOC, 1998 WL 792502 (N.D. Tex Nov. 5, 1988); but cf. e.g., Storey, 976 F. Supp. at 1485 (finding failure to state a claim where plaintiffs alleged EEOC violated 5th Amendment due process rights) ; Stewart v. EEOC, 611 F.2d 679, 681-82 & n.2 (7th Cir. 1979) (same).

To the extent that Plaintiffs seek injunctive relief under the Constitution, sovereign immunity likewise bars claims that the PAB violated Plaintiffs' constitutional rights.  In Uberoi, the Court dismissed claims against the EEOC on the grounds of sovereign immunity where plaintiff alleged that the EEOC had violated its statutory duty in processing his discrimination complaint and where the plaintiff requested that the EEOC be ordered to serve the plaintiff's charge and withdraw its Dismissal and Notice of Rights.  180 F. Supp.2d 42.  The court determined:

> The only conceivable indication that the government has waived immunity for non-monetary suits against the EEOC is the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et. seq., which allows judicial review of agency actions when those actions have "determinate consequences for the party to the proceeding."  See ITT v. Electrical Workers, 419 U.S. 428, 442 (1975).  Yet the APA is inapplicable to challenges of EEOC investigations, for "[t]he EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit by either the EEOC or the charging party in federal district court[, and] only the district court may fix liability."  Ward v. EEOC, 719 F.2d 311, 313-314 (9th Circ. 1983) Moreover, as discussed above, when a court is uncertain whether the government has waived sovereign immunity, the court *must* assume that immunity has not been waived.  See, e.g., Lane [v. Pena], 518 U.S. [187,] 192.  This court therefore assumes that the government retains immunity from the plaintiff's suit against the EEOC.

Uberoi, 180 F. Supp.2d at 45 .  Therefore, the Court should dismiss Plaintiffs' constitutional claims on the grounds of sovereign immunity.

3.     *Plaintiffs do not state a claim for due process violation against PAB.*

19

Assuming *arguendo* that Plaintiffs' due process claims were not precluded by the ADEA or barred by sovereign immunity, these claims would still fail. Plaintiffs allege that the manner in which Defendants conducted the administrative processes violated Plaintiffs' due process rights.[8] However, courts have routinely rejected such efforts to couch claims of inadequate processing of claims as due process violations supporting an implied damage remedy. See Stewart, 611 F.2d at 681-82 & n.2 (no implied right of action under Fifth Amendment for Commission's processing of charges); Francis-Sobel v. University of Maine, 597 F.2d 15, 18 (1st Cir. 1979) ("even arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party [do not] transgress[] the Due Process Clause in a way that would support the implication of a damage remedy"); Storey, 976 F. Supp. at 1485 ("plaintiff cannot bring a Fifth Amendment due process claim against the EEOC ... based on its investigation or resolution of a claim of discrimination").

The Supreme Court has recognized that federal agencies may be liable for due process violations committed in the course of performing their functions if those functions are adjudicatory. See Hannach v. Larche, 363 U.S. 420, 442 (1960). Here, Plaintiffs cannot state a claim against the PAB for denial of due process because the PAB's actions were not adjudicative and did not ultimately affect their rights. None of the PAB's actions are binding and the Plaintiffs may seek (and are seeking) a *de novo* review of their claims of discrimination in federal district court.

---

[8] The Court should construe Plaintiffs' due process and equal protection rights claims for relief under the Fifth Amendment to the United States Constitution. See Rutherford v. United States, 702 F.2d 580, 582 and n.4 (5th Cir. 1983) (holding that the Fourteenth Amendment's restrictions on the powers of the states do not apply to the federal government, but that analogous limitations on federal action are embodied in the Fifth Amendment); Storey, 976 F. Supp. at 1486; U.S. Const. Amend. XIV.

Chandler v. Roudebush, 425 U.S. 840, 861 (1976).  For this reason, numerous courts have

determined that a plaintiff cannot bring a Fifth Amendment due process claim against the EEOC or

any other agency based on its investigation or resolution of a claim of discrimination.  See e.g.,

Francis-Sobel, 597 F.2d at 18 ("There remains to be considered any interest appellant may have lost

which proper EEOC processing might have provided.  Because a determination of reasonable cause

is nonbinding and nonfinal, investigative and not adjudicative, we cannot say that the failure to

receive such a determination represents any loss that implicates the Due Process Clause.");

McCottrell v. E.E.O.C., 726 F.2d 351, n1. (7th Cir 1983) ("Plaintiff has no right under the

Constitution to challenge the EEOC's adverse determination").  Therefore, the Court should dismiss

the Plaintiffs' claims of due process violations.

> 4.     *Plaintiffs do not state a claim for equal protection violation against PAB.*

Plaintiffs can not establish an equal protection violation by the PAB because Plaintiffs have

not alleged that the PAB treated their claims any differently than it treats those of other, similarly

situated complainants.  Storey, 976 F. Supp. at 1485; Mitchell v. EEOC, 888 F. Supp. 710, 713 (E.D.

Pa 1995); see Dowling v. Commonwealth of Pa. Liquor Control Bd., No. 88 Civ. 7568, 1992 WL

328840, at *6 (E.D.Pa Oct. 27, 1992) (equal protection claim requires proof of purposeful

discrimination, which entails demonstration that plaintiff "received 'different treatment from that

received by other individuals similarly situated.' ") *quoting* Andrews v. City of Philadelphia, 895

F.2d 1469, 1478 (3d Cir. 1990).  Here, Plaintiffs claim that "GAO's administrative process is

defective and meaningless." Plaintiffs' Response at 5, 10.  However, even if the PAB's processing

of complaints were "defective and meaningless," that alone would not violate Plaintiffs' equal

protection rights.  Plaintiffs do not allege that PAB treated other similarly situated GAO employees

differently.  For example, Plaintiffs have not alleged that the PAB treated GAO employees who complained of race, gender, disability or national origin discrimination differently than PAB treated the Plaintiffs.  Consequently, Plaintiffs do not state a claim for equal protection violation.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court grant Defendants' Motion

to Dismiss.

October 10, 2006                    Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

Government Accountability Office
Staff Attorney
Cherie Owen

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendants' Reply in Support of Motion to

Dismiss and Supplement to Motion to Dismiss was mailed first class postage prepaid, this 10th day

of October, 2006 to:


Walter T. Charlton & Associates
Attorney at Law, Washington, D.C.
230 Kirkley Road
Annapolis, Md 21401

_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153