IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Arthur L. Davis, et al<br>    and all others similarly situated<br><br>PLAINTIFFS,<br><br>DAVID M. WALKER<br>Comptroller General of the<br>United States c/o United States General<br>Accountability Office (GAO)<br>    and<br>Michael Wolf, Chairman<br>United States Government Accountability Office<br>Personnel Appeals Board (PAB)<br>   DEFENDANTS. | )<br>)<br>)<br>)<br>)   CASE NO: 06 1002 (JGP)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS
SUPPLEMENT TO MOTION TO DISMISS**

**OBJECTIONS:**

**(1)** Plaintiffs Object to the Supplement to the Motion to Dismiss filed by both Defendants. The rules do not provide for a supplement to a Motion to Dismiss.

**(2)** Plaintiffs reassert the obvious conflict of interest as between the two defendants and the use of the same counsel for representing both of those interests. The Court is requested to note as a technical matter that the Congress established the PAB as an ***independent federal agency***, and the fact of its independence is the whole purpose for the PAB's creation and existence. See the defining case on this subject. ***General Accounting Office v GAO Personnel Appeals Board,*** 698 F.2d 516, 523(D.C. Cir. 1983)[1].

---

[1]The Personnel Appeals Board was created by, and its authority derived from, the General Accounting Office Personnel Act of 1980 (GAOPA), Pub. L. 96-191 (1980), 31 U.S.C. Secs. 732 and 751-795. The purpose of the GAOPA is to give employees of GAO substantive and procedural rights comparable to those enjoyed by executive branch employees under the Civil Service Reform Act of 1978. In enacting the GAOPA, Congress has given the PAB the combined responsibilities of the MSPB, the Federal Labor Relations Authority, and the Equal

Whether or not the PAB is in fact independent, where it has admitted that GAO controls its budget and Board members is one of the important issues in this case.

### REBUTTAL TO GAO'S SUPPLEMENT TO MOTION TO DISMISS

### COUNTER STATEMENT OF FACTS

**1. Background to the Filing of this Case**:

The three named plaintiffs herein were all GAO employees at branch offices of the Agency. All had worked for GAO essentially all of their lives. All were evaluator/analysts for the agency. All began to experience age discrimination problems when they reached a mature age. Those problems began to be more severe as they passed age 45 and began to have benefits removed or diverted to younger persons. Their ratings fell for no discernable or objective reason. All three (all African Americans) had worked as voluntary counselors and were therefore generally familiar with their own civil rights.

Mr. Arthur L. Davis (Davis) had served as elected committee member, vice chairman and chairman of the GAO Employees Committee on Civil Rights. At the request of employee constituents, Davis brought to the attention of management age discrimination complaints employees had brought to him. He was told to "back off." Davis did not back off. When Davis did not follow those instructions, the employee GAO authorization for the committee was

---

Employment Opportunity Commission. In order to achieve the purposes of the GAOPA, Congress has given the PAB broad discretion to promulgate regulations and design appropriate procedures for processing appeals before the PAB. Ibid.

withdrawn and the committee disbanded.  The Comptroller General then formed his own hand picked committee. Reprisals started.

All of this started years ago.  At that time (1999) Davis, Moses and Gilbert contacted each other and retained undersigned counsel.  The three plaintiffs began attempting, through counsel, to intervene in an on-going case before this Court.  That case is Dr. Venkareddy Chennareddy, et al v. David M. Walker, Comptroller General of the United States, Case No. 87-3538.

**2. The Defendant Errs in Reporting Filing Dates and Facts Relevant to Administrative Exhaustion:**

The Defendant is in error in reporting filing dates for this case.  The facts pertaining to the various attempts of the three plaintiffs to properly exhaust their administrative remedies, and to give GAO the required notice of intent to sue in this case are somewhat confusing.  The Defendant has misconstrued and misstated those facts.  In order to clarify this matter, the declaration of James D. Moses, who personally did most of these filings and notices is produced verbatim herein following.  Mr. Moses Declaration on this subject follows.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No   06-1002 (JGP)

DECLARATION OF JAMES D. MOSES NOVEMBER 29, 2006

Declaration under oath by James D. Moses, Plaintiff on Defendant's
Motion to Dismiss Complaint No 06-1002.

Defendant Erroneously States that Plaintiff Moses failed to timely file a notice on
intent to file suit (page 8 of Defendants' Motion)

Comments :

In order to support a claim of not timely, there first must be established an effective date of the alleged unlawful practice. The Defendants do not state the effective date of the unlawful practice, apparently to confuse the issue. The two separate cases here involved are cases no. 06-1002 and 06-01712. Case no. 06-1002 was filed by three complainants, Davis, Moses and Gilbert alleging a long term continuing series of violations about which we had been complaining and trying to intervene in Chennareddy, et al for about six years. The violations continued each year with each ratings period.

We had not been granted intervention, and were worried that we would run afoul of the statute of limitations. For this reason we, the three prospective intervenors in 87-3538 filed a new notice of intent to sue on or about April 11, 2005. When nothing happened but more instances of age discrimination we filed a separate lawsuit on May 31, 2006. By that time Davis and Gilbert had left the agency.

In the meantime, as a similar matter, but with a slightly different tack, the CG had determined to make the Band II split, a down-grade for myself and about 340 other analysts. That move, which affected mostly persons over 50, was effective in my paycheck on February 16th, 2006 and every paycheck thereafter. I have been downgraded to Band II a, the same as the other people similarly situated. That complaint is a separate one, filed for myself and all others similarly situated on October 4th, 2006 after giving notice of intent to sue on August 9th, 2006.

To be timely under GAO's Order # 2713.2, a Notice of Intent to Sue must be filed within 180 days after the alleged unlawful practice occurred. After filing notice, plaintiffs must wait at least 30 days before commencing suit. Defendants claim that Plaintiff Moses August 2006 Notice of Intent to Sue was untimely with regard to both of these time limitations. According to Defendants, Plaintiff August 2006 Notice was filed more than two months after the filing date of this lawsuit

4

(meaning the lawsuit filed by Plaintiff Moses on May 31, 2006, No 06-1002).

In addition, Defendants claim that Plaintiff Moses was notified on February 2, 2006 of the Comptroller General's decision not to grant Plaintiff Moses' request to be placed in Band II B: thus the 2006 Notice was filed 188 days after the alleged unlawful action. <u>The Defendants are wrong on both accounts about timeliness.</u>

First, the August 9th, 2006 Notice of Intent to Sue was made specifically to meet the time-frame set by the GAO Administrative process requirements for case number 06-01712. No lawsuit was filed under Plaintiff Moses August 9th 2006 Notice until October 4th, 2006, the date 06-01712 was filed. Therefore, Plaintiff Moses waited more than 30 days before commencing that lawsuit which clearly meets the legal requirements.

Second, as to the lawsuit filed on May 31, 2006, this is the case for which the Motion to Dismiss was filed and is now in question. In that case, the previous notice of intent to sue was filed on April 6th, 2005. Thus, the May 31st 2006 lawsuit # 06-1002 was filed about 14 months after the notice of intent to sue was filed. That lawsuit was filed for Moses, Davis and Gilbert and all others similarly situated alleging continuing violations based upon age, and other wrongs which were first subjected to a notice of intent to sue in about 1999.

To my knowledge, that motion to intervene is still pending for all three of the original applicants for intervention. But those wrongs did not include the downgrades which occurred effective with the paycheck on February 16th, 2006. Those complaints were included in my separate class action lawsuit not filed until October 4th, 2006.

In his February 2, 2006 letter to Plaintiff Moses, the CG gave Plaintiff Moses an opportunity to personally meet with him to discuss his decision. In a letter to the C G dated February 7, 2006, Plaintiff Moses asked the CG for a personal meeting to further discuss his decision not to place him in Band IIB. The CG did not grant a personal meeting but did grant Plaintiff Moses a meeting by telephone. The CG made his final decision denying that Moses' request for canceling of the

down-grade after that telephone meeting. Therefore, the CG's final decision to not place Plaintiff Moses in Band II B would have to be on or after February 16, 2006. Consequently, Plaintiff Moses Notice of Intent to Sue dated August 9, 2006, is timely. Plaintiff Moses Notice was filed 173 days after the alleged unlawful practice occurred.

This is clearly within the requirement that notice be filed within 180 days which was clearly stated in Plaintiff Moses affidavit as filed in this case. Also, Plaintiff Moses first pay check that was affected by the CG decision not to place him in Band II B was dated February 16, 2006, which is also well within the 180 days requirement.

Plaintiffs Have Not Established Prima Facie Case for Plaintiff Moses

In footnote 3 on page 10, Defendants state that Plaintiff Moses appears to have abandoned his claims regarding the award in the instant case, and is pursuing only claims regarding the performance analysis.

This is far from the truth. Plaintiff Moses is still pursuing all of his claims under the 2002 administrative complaint including performance ratings for 2000 and 2001 and not receiving an award that he should have received.

The Defendants statement on page 10, that Plaintiff Moses has not established a prima facie case under the ADEA with regards to his claims is not true. Under McDonnell Douglas a plaintiff bears the initial burden of establishing a prima facie case that (1) he/she is a member of a protected class: (2) he/she suffered from an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. Defendants claim that Plaintiff Moses cannot establish the second of these prima facie elements (adverse action) in regards to the administrative claim filed in 2002. GAO never issued a final agency decision on that complaint.. Therefore the Defendant's statement of this point is not true.

In fact Plaintiff Moses established all three of the prima facie elements including the second element, an adverse action. Plaintiff Moses was denied an

award of $300 that he should have received.  There were three members on the assignment where the award was given.  The two female members both of whom were much younger than Plaintiff Moses (one member was under 40) received the $300 award.  There is no other clear or documented reason, other than age, to not have given Plaintiff Moses the award with $300 cash.

　　　　The lower ratings that Plaintiff Moses received were also an adverse action.  Plaintiff Moses ratings were among the lowest in the entire group of 47 people, completely out of character with what he had been accustomed.  Both females received higher ratings than Plaintiff Moses with no documented reasons.  The lower ratings that Plaintiff Moses received were embarrassing and psychologically draining.  The lower ratings and not receiving the award disrespected Plaintiff Moses and caused him to lose status among his peers.  Also, these discriminatory actions against Plaintiff Moses because of his age, affected his future status and potential advancement in the GAO organization.


I declare under the penalties of perjury that the foregoing statements are true and correct.

[SIGNED BY DECLARANT]  November 29, 2006

James D. Moses

　　　　　　--ORIGINAL ON FILE IN COUNSEL'S OFFICE--



3.  **Plaintiffs Complaints Are Identical With Chennareddy et Al; they Complain About a Continuing Intentional Policy of Across-the-Board Discrimination Based Upon Age:**

　　　　These three plaintiffs complaints are about a 20 year policy of across-the board with demeaning, degrading comments, denial of consideration for high visibility assignments, not being selected as team leaders, as part of instructions from SES executives to lower management

and the *resulting* lower ratings. Ratings resulting were based upon illusory, irrelevant, entirely subjective, even fictitious criteria. The discrimination policy drives the ratings. Ratings drive the advancements and promotions that follow that policy. This case, and the other cases are definitely not about individual "-- promotions or discharges– "as erroneously stated in Defendants' brief (at page 6 ¶ 2). This case is about the disparate impact of a discriminatory policy.

Defendant thereby miscasts the entire nature of the plaintiffs, and all other complaints in the four related cases before this Court. The offensive discriminatory policy is not a hit or miss event about which the 3,000 GAO employees affected complain. Rather, it is intentional, insidious, pervasive age discrimination of the worst type. And it has been ongoing for 20 years.

This is the reason that the existence of the statistical system established by GAO in 1986 (at the beginning of the Chennareddy, et al case, and kept secret from the plaintiffs (and this Court) for the 20 years is so important, even vital to plaintiffs' case. What has occurred is that the thousands of ratings that are wrong, the thousands of raises that were received by equally or lessor qualified persons, are wrong. But all factors by which this situation can be analytically picked apart and understood are all recorded in that secret data base. The massive, pervasive nature of the discrimination based on age is there, ***starkly apparent for all to measure, see and understand***.

That system, and the information contained therein, was used to shape the entire policy of the professional staff, totally contrary to approved, verified merit protection principles set out by Congress for application to the entire federal workforce. This pervasive practice was done secretly, a new system for promotions created and creation of a management team grown, not

based upon merit principles which was the long-standing will of Congress, but rather age, without the approval of Congress, contrary to federal equal employment opportunity law as well as merit pay principles.

Thus, it is not a mere promotion or two about which these plaintiffs complain. Indeed, these complaints are about continuing policy and practice, and easily proven, if this Court will force the disgorgement of the data and system containing all of the damning information in accordance with the discovery provisions of the Federal Rules of Civil Procedure (Rule 26(a)(1).

Thus, correction of this basic fact as to the nature of this lawsuit places this lawsuit, and all of the related ones also, squarely within the context of the disparate impact theory of discrimination law. (See ***Equal Employment Opportunity Commission, Plaintiff(s) v. Allstate Insurance Company***, Defendant(s) Case No. 4:04CV01359 ERW, USDC, (ED Missouri, 2006 U.S. Dist. Lexis 76096, October 19, 2006)(Approving the use of the Disparate Impact theory for an age discrimination case).

4. **Moses Has Alleged Objective Tangible Harm**:

Moses' declaration (Attachment 1 and above) clearly specifies objective harm lost by the discrimination alleged (Money). However, the major parts of the harm, for a career professional analyst/auditor is not the bonus money specified. Rather, the substance of the loss is the utter exclusion from the competitive promotion process. Being stuck at Band II because of age is not just an adverse employment action (the complaints about his false, illusory and demeaning performance appraisals) is is a career disaster. What happens next is being forced out the door. It is all part of one process, and that process is the continuing process of bias in all aspects of the workplace. The policy is what is wrong, which drives all of the details.

There is no question that a bad performance rating is an adverse action in the GAO professional context. And the series of lower performance ratings, where the ratings were false, subjective and age correlated results in disparate impact which now can be measured statistically.

## ARGUMENT

**I. Equitable Estoppel, and/or Equitable Tolling is Irrelevant to the Issue of Whether These Plaintiffs Gave Notice of Intent to Sue Before they Filed this Complaint:**

The defendant at (D.Br. page 1, argument I) appears to be arguing that equitable estoppel does not apply to the federal government and therefore this case should be dismissed. But the plaintiffs do not rely upon equitable tolling or equitable estoppel either as authority for the timely filing of their complaints. They filed a "notice of intent to sue" before filing these separate claims, in both of the new cases discussed in this sur-reply brief.

In plaintiffs opposition brief, at page 2 ¶ 3, plaintiffs mentioned statutes of limitations in the context of equitable estoppel or equitable tolling. This is mentioned, not for filing reasons but because these plaintiffs have been attempting since 1999 to intervene in the ongoing lawsuit in this Court. They have been diligently alleging for them harm from the very same discriminatory policy and pattern alleged in the underlying case.

This filing, as explained in detail in Mr. Moses affidavit (above) is pursuant to the law and timing as corrected in ***Stevens v. Department of Treasury et al***, 500 U.S. 1, 6-11 (1991). Plaintiffs contend that this case does not depend in any way upon equitable tolling or estoppel.

However, the doctrine of equitable estoppel may well apply to this case. That is because all of the elements required are present with respect to these plaintiffs. Those are present in the

defendant's misleading of the court in past years while these plaintiffs were attempting to intervene in the ongoing case (*Chennareddy*, *supra*, 87-3538). The elements supporting application of equitable tolling in the presentation of untimeliness defenses are also present, but appear from the facts presented by Mr. Moses, unnecessary, as no untimeliness difficulties appear to be present, at least in these particular filings.

Since plaintiffs reasons for invocation of either equitable estoppel or equitable tolling have been fully briefed in the prior brief and need not be revisited again here.

**II. As a Factual Matter (1) Plaintiffs Filed Timely Complaints; (2) Exhausted Administrative Remedies by Complaining (3) Filed Timely Notices of Intent to Sue, and (4) Waited the Requisite 30 Days after Filing Each of the Several Notices of Intent to Sue:**

The declaration of James D. Moses, Attachment 1 hereto (also set out verbatim above) demonstrates the factual confusion of the Defendant contained in its supplement to the Defendant's motion to dismiss. That declaration of is self-explanatory. To summarize the facts contained in the affidavits, documents and declarations of record:

The three plaintiffs gave several timely notices of intent to sue. All of those notices met the timing requirements of the ADEA statute. Each notice of intent to sue was within 180 days of the triggering event[2]. The earlier filing, on May 31, 2006 was the filing of this case. Notice of

---

[2] Plaintiffs do not concede that the events about which they complain in this lawsuit are "discrete events" within the meaning of the civil rights laws. On the contrary, they contend that the discriminatory pattern is just one pattern which has at its root an intentional policy to discriminate against all older persons repeated in every rating period. They also allege disparate impact of those policies in every other act meaningful to professional advancement, development and pay.
   Plaintiffs here, as in *Chennareddy,* allege that pattern has been essentially the same for about 20 years with respect to GAO's older protected employees. The statistics on hand, and the statistics hidden from the plaintiffs and the court, are known to show that same pattern. Therefore, this case is to be factually distinguished from the recent case of ***Prince v. Rice***, No 05-cv-0663 (USDC DC 9/16/06 (JDB)(no statistics presented in support of allegations).

11

Intent to Sue" was given 14 months earlier. That notice pertained to the (then) complaining about the latest ratings and evaluations cycle which had just happened. For years back to 1999, "Notices of Intent to Sue" were filed by these plaintiffs complaining about the continuing biased treatment.

Thus, the procedure followed was in accord with the law as set forth in ***Stevens v. Department of Treasury***, 500 U.S. 1, 6-11 (1991). Thus, defendant erred in its analysis of the filings, and dates and time here involved.

**CONCLUSION:**

Having demonstrated that the filings are timely and administrative exhaustion has occurred by the filing of timely notices of intent to sue, the arguments of the defendant on these points should be overruled and the Motion to Dismiss denied.

**III. Whether or Not the Continuing Violations Theory is Alive or Defunct has No Bearing on the Motion to Dismiss; the Disparate Impact Theory of Discrimination Controls:**

For purposes of this Motion to Dismiss, the continuing violations doctrine is irrelevant.

The plaintiffs in this case, and the plaintiffs in related cases before this Court allege, and have pled a policy of intentional bias creating a disparate impact[3] adverse to older employees. That policy has a number of identifiable effects. For one the ratings system, the advancements system and the promotions system, and the results thereof, are all affected by, in fact governed by the overwhelming bias against older professionals. This allegation of fact, which now appears

---

[3] See ***Griggs v. Duke Power Co.***, 401 U.S. 424, 431, 91 S.Ct. 849, 28L.Ed 2d 158 (1971)

certain of proof, has a number of results in the context of the allegations of these plaintiffs.

In any event, it is now clear[4] that where each "discrete" incident of discrimination or retaliation that rises to the level of an unlawful employment practice exists, a plaintiff must exhaust all administrative remedies for each such discrete event.  Plaintiffs did this in this case by filing their notice of intent to sue within 180 days of the previous promotion and rating cycle effective date. That Notice of Intent to Sue was filed on April 6th, 2005.

The question remains as to whether or not all of the intervening acts or results of discriminatory impact since 1999 is covered or not.  Plaintiffs of course allege that they are, but this would appear to be a matter of proof of damages, for a later time, not a matter critical to this Motion to Dismiss.

**IV. Equitable Tolling Has Been Applied Against the Government, and Is Routinely Applied Where there is Failure in the Civil Rights Administrative Process (As Here); However that Doctrine is Unnecessary as a Defense in This Motion to Dismiss:**

Equitable Tolling[5] applies against the Federal Government to prevent application of

---

[4]  *Nat'l R.R. Passsenger Corp. V. Morgan*, 536 U.S. 101, 122 S.Ct 2061, 153 L Ed. 2d 106 (2002); Applied in *Prince v. Rice*, CA No 05-cv-0663 (JDB)(DC DC Sept. 18, 2006 U.S.Dist.Lexis 66077.

[5]  Defendants mislabel the plaintiffs' reliance to "Equitable Estoppel" (D. Brief, pg. 1, ¶ I).  Plaintiffs, in their brief at pg. 2 ¶ 3 invoked BOTH "equitable estoppel and equitable tolling" Pl's Brief pg. 2) as reasons why the statute of limitations should not be invoked.  There can be no doubt that the actions of the Defendant delayed the filing of the two separate cases by delaying the resolution of the entire original class action for nearly 20 years.  While the defense of Equitable Estoppel may well apply to the instant situation, here plaintiffs aver that they did timely complain, Davis and Gilbert to the civil rights office, and Moses both to the civil rights office and the Comptroller General himself.  They not only met all deadlines but timely filed three separate notices of intent to sue.  Plaintiffs herein primarily rely upon "equitable tolling", NOT "equitable estoppel".  Moreover, they were in fact timely.
   Contrary to the argument of defendants, equitable tolling is routinely applied against the Federal Government where, as here, civil rights procedural difficulties are cause by actions of the federal agency "or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." (as here) *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 93-96.   See also, **John D. Norman,** Appellant v. *United States of America and Erie Insurance Group*, Appellees, No 04 cv 01208, 6 (D.C. Cir October 31,

deadlines and the statute of limitations where filing has been prevented by wrongful action or negligent action of the defendant agency.

Plaintiffs allege, and support their allegations with affidavits, that they pursued a diligent course of conduct attempting to follow the instructions of the GAO civil rights office (Renamed OOI) in filing these claims.  These details are fully set out above and need not be repeated here.


**IV.  GAO Makes Plaintiffs Case for a Writ of Mandamus Against the PAB:**

Defendant has proceeded to quote the exact authority for this District court to act to compel the PAB to do the duty it owes to all GAO employees.  It is supposed to insure a discrimination free workplace.  GAO is anything but, and no investigations of age discrimination are being made.

Defendant quotes:

> "the mandamus and Venue Act,'district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.' " (reply brief, pg. 12 *1*.)

The whole purpose of the PAB is not to protect GAO from its employees.  It is for the PAB to guarantee the GAO employees civil rights to a discrimination free workplace on a par with all other government agencies.  The purpose of the PAB General Counsel is to investigate claims against GAO by its employees, and represent them in appropriate cases.  Moreover and most importantly, the PAB General Counsel has, like the General Counsel of the EEOC, independent investigative authority.  He may inquire into matters of general interest, like for

---

2006)(but reasonable diilgence is required); *Larry D. Barrett, Claimant-Appellant v. R. James Nicholson, Secretary of Veterans Affairs, Respondent-Appellee*, No 05-7113, 2 ¶ 1, Fed. Cir. October 11, 2006 (Reversed and Remanded on equitable tolling motion).

example age discrimination ongoing for 20 years where the GAO has not been candid with the Courts, as here.

In short, and in sum that organization has simply not done its job. And the reason is clear. It has admitted it is dominated entirely by the GAO. That admission was made before this Court by counsel for the GAO and acknowledged by this Court. After admitting to the Court that the budget for the PAB was controlled by GAO, the Court the Honorable Judge Penn commented, "what more does it need?

Plaintiffs herein allege that the PAB has done nothing whatever to either investigate or correct age discrimination which is rampant at the GAO since its lone belated study of the period 1991-1995. While finding indications of age bias and reporting same in that study, the finding was never either enforced or followed-up. Part, if not all of the reason this case is here is that very failure. It is unquestioned that the PAB owes a duty toward all GAO employees to insure a discrimination free workplace. It is the sole reason for the PAB's existence.

The failures of the PAB to perform its mandated oversight are ongoing, as are GAO's constant actual use of age as a negative determinative factor in all attributes of employment. This makes the matter of injunctive relief and mandamus ripe for decision at this time.

Respectfully submitted,

/s/ charltonw 2428

Walter T. Charlton, D.C. Bar # 186940
Counsel for the Plaintiffs and the Class
They Seek to Represent
230 Kirkley Road,
Annapolis, Maryland 21401
Telephone 410 571 8764
Email, charltonwt@comcast.net

**Certificate of Service**

    I hereby certify that I mailed, first class postage prepaid, a copy of this Plaintiffs Opposition to Defendants' Motion to Dismiss on this 30th , day of September, 2006 to counsel for the Defendants:

Andrea McBarnette, AUSA
Judiciary Center Building
555 4th, Street, N.W.
Washington, D.C. 2001.

    /S/ Charltonw 2428
_____

Walter T. Charlton