UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTHUR L. DAVIS, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GENE L. DODARO, Acting Comptroller )<br>General of the United States Government )<br>Accountability Office, et al., )<br>)<br>Defendants. )<br>) | Civil Action Number 06-1002 (EGS) |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Arthur Davis, Jimmie Gilbert, and James Moses allege that the Government Accountability Office ("GAO") discriminated against them based on their age in violation of the Age Discrimination in Employment Act of 1964 ("ADEA") and the Equal Pay Act. Specifically, they contend that the GAO favored employees under the age of 40 when making decisions relating to promotions, pay, and terminations. The plaintiffs also allege that the agency's Personnel Appeals Board ("PAB") failed to investigate claims of age discrimination. They allege that, in doing so, the PAB violated their constitutional rights.

As the defendants demonstrate below, the Court should dismiss all of these claims. Plaintiffs' ADEA claims fail because (1) they did not file a Notice of Intent to Sue within 180 days of a discriminatory employment practice occurring, and (2) they waited longer than 90 days after filing their Notices of Intent to Sue to file the instant Complaint. The Court should dismiss the plaintiffs' Equal Pay Act claims because that statute does not cover age-based discrimination. Finally, the Court should dismiss the claims against the PAB because it is well-settled that claims based on the handling of a discrimination complaint are not cognizable.

**BACKGROUND**

The Complaint alleges pervasive discrimination at the GAO against employees over the age of 40 during the past twenty years, but contains hardly any factual allegations regarding the employment of Davis, Gilbert, and Moses. The allegations that relate to the plaintiffs' employment at the GAO generally do not identify any specific dates on which the discrimination occurred or the individuals who discriminated against them. Rather, the Complaint contains vague assertions of unfavorable treatment that occurred at uncertain times.

Davis alleges that he received favorable ratings and was a group leader on projects until he reached the "generally disfavored age bracket (about 50)," at which point he began to be subjected to "generalized and unwarranted abuse." (Compl. ¶ 10.) He contends that upon raising questions with management about age bias, he received unwarranted decreases in his evaluations and was assigned to work as a subordinate to younger persons of substantially less ability. (*Id.*) Davis alleges that his retirement on June 1, 2004 constituted a "de-facto forced retirement." (*Id.* ¶¶ 2, 10.) Davis does not identify any particular performance appraisals, job assignments, promotions, or pay decisions that were discriminatory. He also does not provide any time-frame for when the alleged discriminatory events occurred.

Gilbert alleges that he was a GAO evaluator/auditor in the Chicago Regional Office for 26 years. (*Id.* ¶ 11.) He claims that he observed age discrimination as a problem early in his career and that upon reaching the age of 43, he observed a "subtle shift" in his performance ratings and a failure of the agency to recognize his achievements. (*Id.*) Gilbert contends that the GAO constructively discharged him in June 1999. (*Id.*) Gilbert does not identify any specific performance appraisals, promotions, or compensation decisions that he considered

discriminatory. (*Id.*) He references only one instance in which he claims to have received a rating of "merely meeting standards" on an assignment concerning a university's accounting practices, but he provides no date for that alleged event. (*Id.*)

Moses is a current GAO analyst in the Los Angeles Office. (*Id.* ¶ 12.) He claims that until reaching "his mid 50's," he received highly favorable ratings and was promoted to the GS-14 level based on his leadership and accomplishments. (*Id.*) Moses alleges that once he became a member of the "disfavored age group," however, his ratings fell. (*Id.*) He further asserts that in December 2005 and January 2006, the GAO restructured the pay structure for "Band II" analysts. (*Id.*) He alleges that the restructuring resulted in his being placed in the lower of two pay categories and also resulted in his being denied a cost of living increase. (*Id.*)

All three plaintiffs also allege that the PAB has failed to investigate allegations of age discrimination or to take corrective action based on such complaints. (*Id.* ¶ 16.) They do not appear to allege that the PAB failed to investigate a complaint that they personally filed.

## LEGAL STANDARD

This Court may dismiss the Complaint pursuant to Rule 12(b)(6) if the plaintiffs have failed to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support the plaintiffs' claims for relief. In deciding a motion to dismiss, "the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Sullivan-Obst v. Powell*, 300 F. Supp.2d 85, 91 (D.D.C. 2004). In ruling on a motion to dismiss under Rule

3

12(b)(6), the Court may consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT

The plaintiffs' claims under the ADEA must be dismissed for two reasons. First, the plaintiffs failed to exhaust their administrative remedies by timely filing a Notice of Intent to Sue. Second, the plaintiffs failed to file the instant Complaint within the applicable statute of limitations period. Plaintiffs' Equal Pay Act and constitutional claims, as well as their claims against the PAB, should also be dismissed for failure to state a claim.

## I. PLAINTIFFS DID NOT COMPLY WITH THE ADEA'S NOTICE REQUIREMENTS

The ADEA permits federal employees to file a complaint directly with a United States District Court.[1] *See* 29 U.S.C. § 633a(c); Lex K. Larson, 8 *Employment Discrimination* (2d ed.) § 140.08, at 140-32 (1998). However, the aggrieved employee must first file a Notice of Intent to Sue with the GAO's Office of Opportunity and Inclusiveness.[2] *See* 29 U.S.C. § 633a(c)-(d). The employee must file this Notice within 180 days after the alleged discriminatory practice occurred. *Id.*; *see also Stevens v. Dep't of Treasury*, 500 U.S. 1, 5-6 (1991). The failure to file the Notice within 180 days precludes a suit in federal court. *Id.* As the GAO demonstrates below, the plaintiffs' ADEA claims are barred because none of them filed a Notice of Intent to Sue within 180 days of an alleged discriminatory practice.

---

[1] Alternatively, employees may pursue administrative remedies by filing a complaint with the agency.

[2] Most federal employees would file the notice with the Equal Employment Opportunity Commission.

### A. Jimmie Gilbert

Gilbert alleges that he filed two Notices of Intent to Sue. (Compl. ¶ 7.) He alleges that he filed the first Notice sometime "in the year 2000" and the second Notice on April 6, 2005.[3] (*Id.*) However, Gilbert concedes that he "took early retirement" in "June 1999." (*Id.* at ¶ 11.) Thus, even assuming that the Notice filed "in the year 2000" was filed on January 1, 2000, the Notice would have been filed more than 180 days after Gilbert ceased working at the GAO.[4] *See* 29 U.S.C. § 633a(d); *Stevens*, 500 U.S. at 5-6. Gilbert's assertion that the GAO "constructively discharged" him in June 1999 would not change this calculation. Gilbert's April 6, 2005 Notice is also untimely, as it was submitted more than **five years** after he ceased working at the GAO.

### B. Arthur Davis

Davis also contends that he filed two Notices of Intent to Sue, the first sometime "in the year 2000" and the second on April 6, 2005.[5] (Compl. ¶ 7.) But Davis does not identify any discriminatory practice that occurred within 180 days of his (alleged) filing of the 2000 Notice. (*Id.* at ¶ 10.) Davis's general complaints about the manner in which the GAO treats employees over the age of 40 (*Id.* ¶¶ 15-40) are insufficient. *Ledbetter v. Goodyear*, 127 S. Ct. 2162, 2167 (2007) ("[W]e have stressed the need to identify with care the specific employment practice that

---

[3] Defendants note that they have no record of Gilbert filing a Notice of Intent to Sue in 2000. In addition, the April 2005 Notice belies his contention that he filed a Notice in 2000. The 2005 Notice specifically refers to Gilbert for the first time and describes him as an "additional" person who will either "file a lawsuit individually or join" a pending case against the GAO. (Ex. 1.)

[4] GAO's records show that Gilbert retired on July 2, 1999. However, his 2000 Notice of Intent to Sue would still be untimely because 180 days from July 2, 1999 is December 30, 1999.

[5] Defendants note that they have no record of Davis filing a Notice of Intent to Sue in 2000. In addition, the April 2005 Notice refutes his contention that he filed a Notice in 2000. The 2005 Notice specifically refers to Davis for the first time and describes him as an "additional" person who will either "file a lawsuit individually or join" a pending case against the GAO.

is at issue.") Davis's failure to identify a specific employment practice that occurred within 180 days of his (alleged) 2000 Notice is fatal to his claim.

Davis also alleges that he filed a Notice of Intent to Sue on April 6, 2005. (Compl. ¶ 7.) This Notice is also untimely, however, because Davis has not identified any discriminatory practice that occurred within 180 days of April 6, 2005. Davis contends that he "was constructively discharged on June 1, 2004." (Compl. ¶ 2.) But in order for his constructive discharge claim to be timely, he would have had to file a Notice of Intent to Sue by November 28, 2004 – i.e., within 180 days after that alleged discriminatory act occurred. Davis's Notice in April 2005 is untimely.

**C.  James Moses**

Moses contends that he too filed a Notice of Intent to Sue sometime "in the year 2000" and on April 6, 2005.[6] (Compl. ¶ 7.) However, Moses does not identify any discriminatory act that occurred within 180 days of his (alleged) filing of the 2000 Notice. (*Id.* at ¶ 12.) Moses's general complaints about the manner in which the GAO treats employees over the age of 40 (*Id.* ¶¶ 15-40) are insufficient. *Ledbetter*, 127 S. Ct. at 2167. Moses's failure to identify a specific employment practice that occurred within 180 days of his (alleged) 2000 Notice is fatal. Moses also does not identify any discriminatory incidents that occurred 180 days prior to him filing the Notice on April 6, 2005. His inability to do so bars his claims. *Id.*

Moreover, Moses may not rely on his April 2005 Notice for the alleged discriminatory acts that took place *after* he filed that Notice. *Cf. National R.R. Passenger Corp. v. Morgan*, 536

---

[6] Defendants note that they have no record of Moses filing a Notice of Intent to Sue in 2000. In addition, the April 2005 Notice refutes his contention that he filed a Notice in 2000. The 2005 Notice specifically refers to Moses for the first time and describes him as an "additional" person who will either "file a lawsuit individually or join" a pending case against the GAO.

U.S. 101 (2002) (holding that a new charge must be filed for each discriminatory incident).  In particular, Moses alleges in the complaint that the GAO discriminated against him based on his age by downgrading his position during the "Band II restructuring."  (Compl. ¶ 12.)  Moses alleges that this "restructuring" occurred "in December 2005 and January 2006" – more than six months *after* he submitted the April 6, 2005 Notice.  Moses clearly could not be notifying the GAO of his intent to sue the agency in April 2005 based on a restructuring that did not take place until several months later.  In order to be able to assert claims related to the restructuring, he needed to file a new Notice.  His failure to do so bars these claims.

In an analogous context, this Court has not permitted a plaintiff to rely on subsequent events without first filing a separate charge.  In *Romero-Ostolaza v. Ridge*, 370 F. Supp.2d 139, 149 (D.D.C. 2005), for example, the court dismissed additional discrimination allegations in a Title VII failure to promote case because the plaintiff had not exhausted the separate claims.  In doing so, the court noted that requiring a plaintiff to exhaust each discrete claim of discrimination comports with the purpose of giving agencies notice and the opportunity to handle a matter internally.  *Romero-Ostolaza*, 370 F. Supp.2d at 149 (citing *Velikonja v. Mueller*, 315 F. Supp.2d 66 (D.D.C. 2004).

Although *Morgan* and *Romero-Ostolaza* involve Title VII, their reasoning applies with equal force to Moses's restructuring claim under the ADEA.  The ADEA provision for filing a Notice of Intent to Sue, 29 U.S.C. § 633a(d), contains the same terminology as the comparable Title VII provision (i.e., "filed within one hundred and eighty days after the alleged unlawful practice occurred").  Further, the intent of the notice requirement, permitting the agency to resolve the matter internally, applies equally to both statutes.  *See* 29 U.S.C. § 633a(d).  *See also*

H. Rep. Conf. No. 95-950, at 534 (1978) (noting that one purpose of the ADEA notice requirement is to provide the opportunity to eliminate the alleged unlawful practice through informal methods of conciliation). Accordingly, the Court should apply the same rule here.

## II. THE CONTINUING VIOLATION THEORY DOES NOT APPLY TO PLAINTIFFS' ADEA CLAIMS

Plaintiffs allege that their failure to promote, constructive discharge, and unequal pay claims are timely under the continuing violation doctrine. (Compl. at ¶¶ 15-40.) This argument is foreclosed by the Supreme Court's decisions in *Morgan* and *Ledbetter*. *Morgan*, 536 U.S. at 113-115 (holding that "discrete acts such as termination [and] failure to promote . . . are easy to identify."); *Ledbetter*, 127 S. Ct. at 2175 (applying *Morgan* rule to unequal pay claim). These cases make clear that the alleged discriminatory acts in this case against Davis, Gilbert, and Moses were discrete events, and not part of a continuing violation. *Id.*

But even assuming that the plaintiffs' claims are based on a continuing violation, at least one alleged discriminatory act must occur within the 180-day period preceding the Notice of Intent to Sue. *Cf. Morgan*, 536 U.S. at 116-17; 29 U.S.C. § 633a(d). Here, plaintiffs have not identified any specific discriminatory practice that took place within 180 days of their filing a Notice of Intent to Sue. Thus, the continuing violation theory does not save their ADEA claims.

## III. PLAINTIFFS' ADEA CLAIMS ARE UNTIMELY

Plaintiffs' ADEA claims are also time-barred because they did not file their complaint within 90 days of submitting their Notices of Intent to Sue. Plaintiffs allege that they filed their Notices of Intent to Sue sometime "in the year 2000" and on April 6, 2005. (Compl. ¶ 7.) However, they did not file the instant Complaint until May 31, 2006, which is well more than 90 days later.

Although the ADEA does not contain a specific limitations period, *see* 29 U.S.C. § 633a, the Supreme Court has held that "Congress intended to impose an appropriate period borrowed from either a state statute or from an analogous federal one."[7] *Stevens*, 500 U.S. at 7. A majority of circuit courts to consider the issue have concluded that the 90-day limitations period prescribed in Title VII is the most analogous statute to the ADEA, and therefore Title VII provides the most appropriate statute from which to borrow a limitations period. *See e.g.*, *Edwards v. Shalala*, 64 F.3d 601, 605-06 (11th Cir. 1995); *Long v. Frank*, 22 F.3d 54 (2d Cir. 1994); *Lavery v. Marsh*, 918 F.2d 1022, 1025 (1st Cir. 1990). *But see Rossiter v. Potter*, 357 F.3d 26, 35 (1st Cir. 2004) (finding 2 year statute of limitations in the Fair Labor Standards Act to be more appropriate than Title VII). These courts recognize that § 633 is patterned directly after the corresponding provision under Title VII and that both Title VII and the ADEA share the same purpose: eliminating discrimination in the workplace. *Id.*

In *Price v. Bernake*, 470 F.3d 384, 388-89 (D.C. Cir. 2006), the D.C. Circuit held that "when federal employees bring a civil action after pursuing administrative remedies under the ADEA, the action must be brought within 90 days of final agency action, the time period allowed for similar suits under Title VII." In reaching this conclusion, the D.C. Circuit specifically found that Title VII is the most analogous statute to the ADEA. *Id.* The fact that the plaintiffs in this case chose to file a Notice of Intent to Sue rather than pursue administrative remedies should not change the result. When a federal employee receives a Right to Sue letter, he is authorized to assert his age discrimination in federal court. An employee who foregoes the administrative process is similarly able to file his age claim in federal court after he submits a

---

[7] In *Stevens*, the Supreme Court did not expressly decide which limitations period applies.

Notice of Intent to Sue. An employee who chooses to proceed directly in federal court should be required to do precisely that within the same amount of time as employees who receive a Right to Sue letter.

The Court could conclude that the 90-day period does not begin to run until after the 30-day period for the GAO to address the complaint expires. *See* 29 U.S.C. § 633a(c)-(d). However, even if the Court adopts this view, the plaintiffs' claims would still be untimely. They allege that they filed the Notices of Intent to Sue in 2000 and April 2005, but they did not file the instant complaint until May 31, 2006. Their claims are, accordingly, time-barred under either approach.

## IV. MOSES'S EEO COMPLAINTS ARE INSUFFICIENT TO STATE A CLAIM

In lieu of filing an action directly in court, a federal employee may go through an administrative process by filing a complaint with the GAO's Office of Opportunity and Inclusiveness. *See* 29 U.S.C. § 633a(b). The employee may file a civil action if he is not satisfied with the relief he receives at the administrative level and 180 days have passed since he filed the complaint. *Id.* Davis and Gilbert do not allege in the Complaint that they filed a complaint with the GAO's Office of Opportunity and Inclusiveness. Indeed, they allege that "[e]xhaustion of administrative remedies for ADEA cases is not required." (Compl. at ¶ 7.) Thus, Davis and Gilbert may not avail themselves of this jurisdictional route. Moses alleges, however, that he filed complaints with the GAO on January 18, 2002 and February 17, 2006.[8] (Compl. ¶ 12.) As explained below, these complaints do not permit Moses to assert his ADEA

---

[8] Although Plaintiff Moses claims to have filed his second EEO complaint on February 17, 200_5_, (Compl. ¶ 12), this appears to be a typographical error. The basis for the February 17 complaint was the "Band restructuring" that took place in December 2005-January 2006. (*Id.*)

claims in this case.

### A. Moses's 2002 Complaint Fails To State A Claim Under The ADEA

Plaintiff Moses alleges that he filed an internal EEO complaint on January 18, 2002, alleging age discrimination and retaliation regarding his performance appraisals for 2000 and 2001. (Compl. ¶ 12.) An employee who has filed such a claim is permitted to file suit in district court once 180 days have passed, but only as to the claims asserted in the administrative complaint. *See* GAO Order 2713.2, Ch. 3, part 9(c)(1). In his January 2002 charge, Moses alleges that the GAO discriminated against him based on his age with respect to his performance evaluations in 2000 and 2001. (Ex. 1.) He further alleges that the performance evaluations were lowered in retaliation for his attempting to join another case pending against the GAO. (*Id.*)

In order to state a viable disparate treatment claim, Moses must allege that he suffered an adverse employment action. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). A reduced performance rating alone, however, is insufficient. *Brown*, 199 F.3d at 458 n.11 (rejecting argument that "formal criticism or poor performance evaluations" alone are adverse actions); *Runkle v. Gonzales*, 391 F. Supp.2d 210, 225-226 (D.D.C. 2005) (holding that "[f]ormal letters of admonishment and disciplinary notices that have no effect on an employee's grade, salary level, job title, duties, benefits, or work hours, . . . do not constitute adverse actions"); *Ware v. Billington*, 344 F. Supp. 2d 63, 76-77 (D.D.C. 2004) (same). Moses does not allege any adverse consequence as a result of his 2000 and 2001 performance appraisals. Indeed, he acknowledges in the EEO complaint itself that the evaluations did not affect his pay. (Ex. 1.) Rather, he states that, "like everybody else, [he] want[s] to be recognized appropriately for [his] work." (*Id.*) Moses's desire to be recognized by the GAO is insufficient. *Brown*, 199 F.3d at 457; *see also*

*Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

Moses's retaliation claim also fails. In order to state a viable retaliation claim, an employee must show that (1) he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by the employer; and (3) a causal connection between the two. *Burlington Northern v. White*, 548 U.S. 53 (2006); *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006). Here, Moses alleges that "he signed a declaration to become an intervenor" in another discrimination case pending in this Court. (Ex. 1.) But he fails to allege that the supervisors responsible for rating his performance knew this fact before drafting his evaluation. (*Id.*) Moses's speculation that they might have known is insufficient. *Twombly*, 127 S. Ct. at 1974.

Moreover, Moses does not allege any adverse consequence as a result of these evaluations. Simply receiving feedback from a supervisor that is not as favorable as an employee would like is not the type of materially adverse action that would dissuade a reasonable employee from filing a discrimination claim. *Cf. Rattington v. Gonzales*, 503 F. Supp.2d 56, 72-76 (D.D.C. 2007).[9]

**B. Moses Has Not Exhausted The Administrative Remedies For His 2006 Complaint.**

An employee who submits an administrative complaint may file suit in district court after 180 days has passed. *See* GAO Order 2713.2, Ch. 3, part 9(c)(1). Moses alleges that he filed an administrative complaint on February 17, 2006 based on a "Band II restructuring" at the GAO. (Compl. ¶ 12.) However, he filed the instant complaint on May 31, 2006, which is less than 180

---

[9] Defendants do not assert that a negative performance evaluation can never be a materially adverse action. Rather, Defendants contend that the performance evaluations in this case are not materially adverse actions because they did not have any negative affect on Moses.

days later.  A plaintiff may not file suit before 180 days has passed.  *Cf. Martini v. Nat'l Mort. Ass'n.*, 178 F.3d 1336, 1338 (D.C. Cir. 1999).  Claims brought before the 180-day period lapses are not considered timely filed.  *Id.*; *Tariq v. Director of Court Servs.*, 2006 WL 2380688, * 2-3 (D.D.C. Aug. 14, 2006).  Thus, Moses has not exhausted his administrative remedies with regard to his 2006 EEO complaint.

### V. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE EQUAL PAY ACT

Plaintiffs seek relief under the Equal Pay Act for the alleged age-based discrimination that they endured.  (Compl. at 1.)  However, plaintiffs cannot maintain an Equal Pay Act claim for two reasons.  First, the Equal Pay Act does not apply to claims of age discrimination.  *See* 29 U.S.C. § 206(d) ("prohibiting [the] payment of unequal wages for equal work on grounds of sex[.]").  Here, Davis, Gilbert, and Moses allege *age* discrimination; they do not allege that the GAO discriminated against them based on their sex.  Thus, they cannot seek relief under the Equal Pay Act and their claims under that statute should be dismissed.  *Id.*

Second, venue over the plaintiffs' Equal Pay Act claims is improper in this Court because the plaintiffs seek relief exceeding $10,000.  *See* 28 U.S.C. 1491 (the Tucker Act).  Claims brought pursuant to the Equal Pay Act must satisfy the jurisdictional requirements of the Tucker Act.  *See, e.g.*, *Barnes v. Levitt*, 118 F.2d 404, 410 (5th Cir. 1997) ("[A] plaintiff asserting an EPA cause of action must bring the action in the Court of Federal Claims if the claim, including the fees sought, exceeds $10,000.")  Section 1346(a)(2), commonly referred to as the "Little Tucker Act," expressly limits the jurisdiction of this Court to claims "not exceeding $10,000 in amount."  *See, e.g.*, *Doe v. Dep't of Justice*, 753 F.2d 1092, 1101 (D.C. Cir. 1985); *Schrader v. Tomlinson*, 311 F. Supp.2d 21, 25 (D.D.C. 2004) (noting that "it is well established that claims

brought pursuant to the Equal Pay Act must satisfy the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491"). Plaintiffs seek damages of "$300,000 per person." (Compl. at 5.) This amount plainly exceeds the jurisdictional limit of the Little Tucker Act. Assuming their Equal Pay Act claims are viable, they must be brought before the Court of Federal Claims.

## VI. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE CONSTITUTION OR OTHER LAWS

Plaintiffs attempt to seek relief under other federal laws, federal regulations, and the Constitution concerning the alleged age discrimination by the GAO. (Compl. at p. 2, 5, 13.) However, the D.C. Circuit has held that "the ADEA provides the exclusive remedy for a federal employee who claims age discrimination." *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991); *see also Ward v. Kennard*, 133 F. Supp. 2d 54, 58 (D.D.C. 2000). Therefore, Plaintiffs' claims under the Constitution and other laws and regulations should be dismissed.

## VII. PLAINTIFFS' CLAIMS AGAINST THE PERSONNEL APPEALS BOARD FAIL

Plaintiffs allege that the PAB has not properly investigated and corrected age discrimination at the GAO. (Compl. at ¶¶ 62-68.) They contend that the PAB violated the ADEA as well as their due process and equal protection rights under the Constitution. (*Id.*) As the PAB demonstrates below, these claims fail as a matter of law.

**A. The Court lacks subject matter jurisdiction over ADEA claims against the PAB**.

Congress has not created a right of action based on the handling of an administrative complaint of discrimination. *See, e.g.*, *Storey v. Rubin*, 976 F. Supp. 1478, 1483-84 (N.D. Ga. 1997) (finding ADEA does not confer jurisdiction over an action "challenging any aspect of the administrative processes (or any application of that process) by which complaints of

discrimination are investigated and resolved."); *Oxford Medical Group v. Vossoughian*, 154 F. Supp.2d 782, 785 (S.D.N.Y. 2001) (same). In *Packer v. Garrett*, 735 F. Supp. 8, 9-10 (D.D.C. 1990), for example, this Court recognized that the anti-discrimination statutes only establish a "right" to be free of discrimination, and that this "right" is served even if errors are made in processing a complaint of discrimination. *See also Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990) ("Title VII creates only a cause of action for discrimination. It does not create an independent cause of action for the mishandling of an employee's discrimination complaints.")

In this case, Davis, Gilbert, and Moses can – and have – asserted claims under the ADEA based on the alleged discrimination by the GAO. However, they may not assert claims against the PAB based on its alleged failure to investigate complaints of age discrimination properly.

**B. Plaintiffs have neither an express nor implied cause of action against the PAB.**

Even assuming *arguendo* that the court has subject-matter jurisdiction over the plaintiffs' claims against the PAB, the court should still dismiss those claims under Rule 12(b)(6) because the D.C. Circuit and other courts have held that Congress has not authorized, either expressly or impliedly, a cause of action for the alleged negligence or other malfeasance in processing an employment discrimination charge. *See, e.g.*, *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997); *Baba v. Japan Travel Bureau Int'l. Inc.*, 111 F.3d 2, 4 (2d Cir. 1997); *Scheerer v. Rose State College*, 950 F.2d 661, 663 (10th Cir. 1991); *McCottrell v. Equal Employment Opportunity Comm'n*, 726 F.2d 350, 351 (7th Cir. 1994).

**C. Plaintiffs do not state a due process claim against the PAB.**

The plaintiffs allege that the manner in which the PAB conducted the administrative process violated their due process rights. However, courts have routinely rejected such efforts to

couch claims of inadequate processing of claims as due process violations. *See Stewart v. Equal Employment Opportunity Comm'n*, 611 F.2d 679, 681-82 & n.2 (7th Cir. 1979) (no implied right of action under Fifth Amendment for Commission's processing of charges); *Francis-Sobel v. University of Maine*, 597 F.2d 15, 18 (1st Cir. 1979) ("even arbitrary and capricious denial of the investigative and conciliatory benefits the EEOC can provide to a charging party [do not] transgress[] the Due Process Clause[.]")

**D. Plaintiffs do not state an equal protection claim against the PAB.**

Plaintiffs cannot establish an equal protection violation by the PAB because they have not alleged that the PAB treated their claims any differently than it treats those of other, similarly situated complainants. *Storey*, 976 F. Supp. at 1485; *Mitchell v. Equal Employment Opportunity Comm'n*, 888 F. Supp. 710, 713 (E.D. Pa 1995). Their failure to do so is fatal to this claim. *Id.*

## CONCLUSION

For the foregoing reasons, the defendants request that the Court dismiss the plaintiffs' Complaint in this action.

Respectfully submitted,

JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/ Harry B. Roback
HARRY B. ROBACK, D.C. Bar # 485145
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
Tel: 202-616-5309
April 22, 2008                 harry.roback@usdoj.gov