ATTACHMENT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Dr. Venkareddy Chennareddy, Roger Carroll, A. Eugene Ramey, Sandra Thibault, Louis Lucas, Jagdish C. Narang, Hector Rojas, Henry Q. Jeong, William A. Mullen, James B. Dowd, Vincent De Santi, and Dr. James Cantwell,** | ) ) ) ) ) |
| **PLAINTIFFS** | ) **CASE NO: 87-3538 (EJS)** |
| | ) |
| **AND THREE INTERVENORS** | ) |
| **Arthur L. Davis,** | ) |
| **194 Carnival Court** | ) |
| **Vallejo** | ) |
| **CA 94589,** | ) |
|     **And** | ) |
| **James David Moses** | ) |
| **1662 Cyrene Drive** | ) |
| **Carson, CA. 90746** | ) |
|     **And** | ) |
| **Jimmie Gilbert** | ) |
| **7251 South Vernon Ave.** | ) |
| **Chicago, Ill 60619** | ) |
|     **For themselves and all others** | ) |
|     **Similarly Situated** | ) |
| | ) |
| **INTERVENORS** | ) |
|     **v.** | ) |
| | ) |
| **DAVID M. WALKER** | ) |
| **Comptroller General of the United States** | ) |
| **c/o United States Government Accountability Office** | ) |
|     **"GAO"** | ) |
| **441 G. St. N.W.** | ) |
| **Washington, D.C. 20548** | ) |
| | ) |
| **DEFENDANT.** | ) |

## FOURTH AMENDED COMPLAINT

### 1. Nature of This Case:

Plaintiffs/Intervenors were GAO employees, over 40, at the time of the discriminatory

occurrences described herein. These complainants, and the class they seek to represent make up

the majority of professional auditors and specialists, currently known as "analysts," at the United States Government Accountability Office (GAO). Plaintiffs allege that intentional, discriminatory (hence illegal) decisions of GAO management to pass-over, sideline, demean, demote, fail to promote, unfairly rate, terminate, and/or constructively discharge these older experienced persons, violate merit selection principles and applicable anti-discrimination law.

The violations alleged include a core claim of age discrimination in federal employment, as well as collaterally occurring discrimination on the basis of race, gender and/or national origin.

GAO has represented to the Court that the pattern alleged by plaintiffs has a "meritorious foundation or basis". However, GAO has failed to articulate any meritorious reason for its facially discriminatory employment practices.

GAO represented to plaintiffs and the Court, for over 20 years upon numerous occasions, that the uniformity of apparently discriminatory results (nearly no promotions over the age of 43, rising to 50 in later years) simply could not exist because of GAO's decentralized ratings and promotions system. When plaintiff requested during pre-class certification discovery the data base systems and statistics on GAO's personnel, defendant claimed that such data and systems did not exist.

All employee data and statistics available to plaintiffs[1] indicated the impact of the allegations of age discrimination were not only true, but were and are universal throughout this agency for the entire relevant period of time 1983 to date. Knowing this pattern was real, plaintiffs continued to press their claims. GAO, for more than 20 years has had its own fully developed statistical system known as the "Bob Mowbray" system. (See electronic record of excerpts of the deposition of William (Bob) Mowbray, submitted into the record of this case -at

---

[1] GAO furnished raw employee data files, from this plaintiffs complied there own statistics for the early years of this complaint, 1986-1992 for use in motions to certify the class. Later, in 1999, the PAB published a report containing its own analysis for the years 1991-1995. Recently plaintiffs received data on ages of the persons denied cost of living increases in 2005-2006.

Docket # 332).  The employee data records described in that deposition, properly disclosed, compiled and analyzed, will eliminate all factual issues of this case and lead to early resolution of this case and related cases.  That result is what plaintiffs urge herein.

Plaintiffs allege that for the entire term if this case GAO has maintained a policy and practice (which may be measured in detail by the existing GAO system) creating a "glass ceiling" barring advancement older protected professionals.  That "glass ceiling" creates, as uniformly applied in every GAO office, an absolute bar to promotions, once the age of exclusion is reached.  That "age of exclusion" begins at about 43 in 1986, and has risen gradually to about 50 now.

GAO's discriminatory policies have also resulted in great impact upon the efficiency of GAO's mission to "ensure the accountability of the federal government for the benefit of the American people."

The effect of these policies and practices, is that GAO's most valuable employees, its experienced staff, are forced out.  With the loss of these employees, GAO has lost, and continues to lose, the vast accumulated corporate knowledge, and the wisdom, skills and integrity of these older experienced specialists.  Overall, the performance of the agency has been greatly adversely impacted.  That impact upon the agency is demonstrated by GAO's failure to apprise Congress, or to properly exercise GAO's statutory power over errant agencies or, through exercise of its "warrant power" to control the flow of government funds where an agency fails to cooperate with GAO's oversight and audit function over governmental operations.

Thus, what happens to these employees has a disproportionate impact upon the overall welfare of this nation's government.


## 2. Administrative Exhaustion, Dismissed and  Reversal

This case began in 1985 as an administrative class action complaint, alleging age discrimination in federal employment.  In 1987 an action was filed in this Court.  Timely notices of intent to sue

2

as a class action were filed by the original class complainant.  Upon appeal, the U. S. Court of

Appeals for the District of Columbia Circuit reversed (Attachment # 1) Judge Penn's dismissal

of the instant case for failure to exhaust administrative remedies.[2]  Jurisdiction, failure to state a

claim under ADEA and venue were not challenged by defendant GAO, and therefore were not

addressed by the Court of Appeals.

### 3.  Plaintiffs, Intervenors and the Class

Upon remand, the additional complainants have been allowed to intervene and joined the

original cases over the years, to reflect 12 plaintiffs as the proposed class representatives.  When

taken together, these plaintiffs collectively seek to represent essentially all GAO analysts

protected by the age discrimination in employment act (ADEA).  It is alleged that this group have

been damaged by the actions of GAO who excluded them from benefits given to younger

employees.

It is alleged that a class or sub-class in each grade level and employment description are

similarly situated to at least one of the named plaintiffs herein.  In addition to the original group

of 12 employees named in the amended complaint, three new intervenors sought to join the class

action as complainants and putative class representatives.   Beginning in the year 2000, by

motions to intervene, Arthur L. Davis, James D. Moses, and Jimmie Gilbert sought to be added

---

[2] The Court held on page 1of its opinion, reversing the dismissal by this Court on grounds of failure to exhaust administrative remedies:

"The GAO regulations in effect at the time Chennareddy filed suit in the District Court did not require exhaustion of administrative remedies; therefore, we reverse and remand the case for consideration in accordance with this opinion."  *Chennareddy v. Bowsher*, Page 935 F. 2d 315, 315 ( D.C. Cir. 1991).

Later the Court opined:

"We are troubled by GAO's failure to bring 4  C. F. R.  Sec. 28.51© to the District Court's attention.  An agency of the United States, like an attorney practicing before the court, has an affirmative duty to inform the court of controlling precedents, including the agency's own rules and regulations.  We hope GAO's failure to apprise the District Court of its regulations governing ADEA claims in the present case was an oversight and not an attempt to either gain a strategic advantage over Chennareddy on appeal by arguing waiver, or to mislead the District Court.  Nonetheless, we find GAO's failure to cite its own regulations before the District Court another reason to reject GAO's waiver argument."  *Chennareddy, supra*, at 320..... *emphasis supplied*.

as plaintiffs and class representatives. They seek relief from similar, if not identical acts of discrimination barring their advancement and retention as senior professional employees.

By motion to be filed before February 3, 2008 and in accordance with the permission of the Court, these intervenors/prospective plaintiffs renew their motion(s) to intervene. They are thus included in the caption of this case at this time. The patterns of discrimination and facts those intervenors allege are essentially the same as the original complainant. The granting of that motion to intervene will effectively moot previously filed motions to consolidate follow-on cases into this, the original class action. An additional benefit is prospective coverage of present GAO employees will be continued without lapse. Because Mr. Moses is the only one of 15 persons who remains employed by GAO, he seeks to maintain this action as representative of all present employee/class members. Mr. Moses also alleges that he has recently substantially prevailed in the adverse actions taken against him in 2006. His demotion, to band II A, and COLA denials were de facto rescinded, by the grating to him of a "promotion" back to his original status, before the demotion occurred.

### 4. Core Claims-Simplification

Plaintiffs central claims in this case allege the existence of a single pattern of age discrimination, against the entire class and all of the named complainants herein. This group of employees were denied fair ratings and a share of promotions. The essence of those claims are that once an analyst reached the pre-determined age, he or she was deemed "too old," and all good ratings ceased, as well as promotions. Plaintiffs allege that this "too old" age status created a glass ceiling through which no older person could overcome.

Promotions correlated to age were measured by plaintiffs for the early years, 1986 -1992. The bar to promotions in those years began at about age 43, and rose beginning in 1992 to about 50 at the present time. The raising of the bar apparently is correlated to the aging of the analyst population at GAO.

Plaintiffs allege, that GAO's personnel and management records, including GAO's own electronic databases and statistics[3], show and have shown since 1986, a pattern and practice of bias and discrimination on the basis of age as well as collateral discrimination, based upon race and gender.

For example, the evidence withheld, now known to be contained in employment data, is expected to demonstrate that a pervasive pattern of age bias exists. Yet, GAO has consistently denied the existence of ti own data base and statistical material to be gleaned therefrom.

**5. GAO Factual Mis-representations, Request for Immediate Relief- Sanctions:**

At the inception of this case, plaintiffs have sought statistical data supporting their position granting class certification. While Judge Penn repeatedly denied class certification he consistently ruled the denials were "*without prejudice to renew those motions*". In doing so, Judge Penn relied upon GAO's repeated misrepresentations to plaintiffs and the court that no statistics and no data bases systems existed. Accordingly, plaintiffs to date have been denied the ability to pursue their claims under Rule 23.

The plaintiffs seek sanctions and costs, including attorney's fees for the resulting delay of this case pursuant for violations of F.R. Civil P. Rules 11 and 26 and the massive waste of judicial resources and damages resulting from the delays caused by those knowing actions of the defendant in this case. This overriding misrepresentation has cost plaintiffs and the class more than 15 years of delay in the resolution of this case, along with massive costs and attorney's fees.

**6. Appropriate Actions Simplifying Case:**

In the light of the foregoing a simplification of the entire action is sought by respectfully requesting the following actions to be taken by the Court:

(1) A ruling, granting the intervention of Messrs. Davis, Moses and Gilbert, retroactively into

---

[3] Evidence hitherto falsely denied to exist.

5

this case. That action moots requests for consolidation since all necessary parties would be already in the case from the beginning. This action is requested by separate motion filed contemporaneously with this Fourth Amended Complaint, with the prior permission of this Court to file whatever is necessary before February 3, 2008 (Court's Order of December 10th, 2007).

(2) A finding that for purposes of relief to all employees, both the named plaintiffs and the putative class, any prospective relief for violations of the standards and norms of administrative processing of employment discrimination cases may be corrected by a single Order directed at the GAO.

(3) A ruling that GAO shall forthwith disclose all available personnel statistical data and systems described in the evidence contained in the deposition of GAO employee Mr. William (Bob) Mowbray now in evidence in this case. The Court should rule further, that GAO must cooperate fully and completely in extracting and analysis of all of the evidence available from the Mowbray systems database(es) in furtherance of full disclosures of this evidence to this Court.

(4) Grant plaintiffs leave to file within 30 days a motion for appropriate monetary sanctions for the failure of GAO to be candid and forthcoming with the Court. That Order should cite the specific ruling by the U.S. Court of Appeals in this case (Attachment # 1) of the duty for candidness of a federal agency and the failure of the GAO to heed that admonition.

### 7. Jurisdiction of This Court:

This Court has jurisdiction to hear a complaint of age discrimination in employment (ADEA) under 29 U.S.C., §§ 621 et seq., (as amended). Plaintiffs and each of them, and also the applicant intervenors, filed timely "notices of intent to sue" more than 30 days prior to filing the lawsuit or the motions to intervene which were granted by the District Court as to the named plaintiffs (excepting only the instant applicant intervenors).

The jurisdiction of this Court over this suit has also already been determined by the U. S. Court of Appeals for this Circuit. This Court, therefore, has jurisdiction to hear all factual

matters causing, or contributing to the prohibited discrimination alleged to have occurred herein. Previous orders of Court allowing intervention of the original 12 plaintiffs have not been challenged by the GAO.

Additional complainants Davis, Moses and Gilbert should thus be allowed to join/intervene in this lawsuit under the principles of liberal leave to intervene, and joinder enunciated in F.R. Civ P. 20. Further, the facts detailing Davis, Moses and Gilbert's allegations of violations are inextricably intertwined with the primary violation, across-the-board employment discrimination based upon age. Given the patterns expected to emerge as proof from the data systems disclosures, there is no need to process those claims separate from those of the original 12 complainants.

### 8. Class Actions- Federal Employer, Rule 23 Proceeding Under ADEA:

The Court has jurisdiction to hear a class action brought by federal government employees under 29 U.S.C., § 633a(f) (Supp. III, 1979). Suits brought by federal employees are exempt from the class action restrictions of ADEA[4].

### 9. Summary of the Purposes of Plaintiffs' Fourth Amended Complaint:

The instant Fourth Amended Complaint:

(1) seeks to conform the complaint to facts discovered since the last amended complaint was filed. Those new facts include evidence (a) of GAO's centrally controlled personnel management system by which it directed the patterns and practices of discrimination complained of herein,

---

[4] See, *Moysey v. Andrus*, 481 F. Supp. 850, 853, 21 FEP 836, 838-39 (D. D.C. 1979). Federal Rule of Civil Procedure 23 is thus applicable to this lawsuit. This Court should decide this case under the new evidentiary standards created by the Civil Rights Act of 1991.

7

(2) It also includes allegations of a continuation of the policy of biased assignments leading to biased ratings and promotion discrimination complained of in earlier versions;

(3) It also includes allegations that the named plaintiffs, and the putative class are intentionally denied access to a mandatory meaningful administrative process at both GAO's "Office of Inclusiveness" and its purported oversight agency, the United States Government Accountability Office Personnel Appeals Board (the PAB).  In its study for the period 1991-1995, the PAB found indications of bias, but did nothing about it, never followed those finding up, and never conducted any subsequent study of age bias at all.

(4) This complaint also contains new violations concerning reductions in status of older persons and denials of cost of living increases.  These events occurred in 2004, 2005 and 2006. Intervenors Davis, Moses, and Gilbert began attempting to join the suit in 1999.  Under the rules of joinder and intervention, they seek to represent employees injured during their tenure as employees.[5]

(5)  This fourth amended complaint also seeks injunctive relief.

   Plaintiffs and Intervenors renew their for demand for injunctive relief to terminate continuous discriminatory policies and practices causing immediate and irreparable harm to persons over 43. A material aspect of this request for injunctive relief is to rectify the failure of GAO's personnel oversight agency, the Personnel Appeals Board (PAB) to do its job as an independent entity apart from GAO.  The lack of independence from GAO destroys the PAB's ability to fairly decide civil rights claims, which is mandated by Congress.

   GAO's regulations require all "class complaints" to be submitted by an attorney

---

[5] **New Intervenor Plaintiffs**:
   The three applicant intervenors seek to represent a class of similarly situated persons as general class representatives.  Those new complainants are in cases filed in 2006, Arthur L. Davis, Jimmie Gilbert and James D. Moses.
   Three new applicant intervenors also seek to act on behalf of all others similarly situated.  The three applicant  intervenors renew, with permission of the Court, their original motion to intervene filed in 1999 and previously renewed that application in the year 2002.

representing the putative class. This requires expenditure and hardship to GAO employees (not required by executive branch employees). Plaintiffs request that GAO be ordered to fully fund the PAB, to cease and desist from interference and control of the actions and budget of the PAB; and to make GAO regulations conform to governmental standards forthwith. To do otherwise will result in the continued deprivation of rights complained of herein.

(6) Finally, GAO should be required to produce its personnel database and systems functional for the years in question, since 1986. (See, Testimony, Excerpts, Docket 332- Mowbray).

This action is suggested as a part of the sanctions required to purge GAO of material misrepresentations which have delayed and prevented class certification in this case. GAO has repeatedly misrepresented that no central personnel control over ratings and selections existed, and that no personnel data or data base systems exist by which such central control could be extrapolated. Further, that no commonality or typicality existed as between the named plaintiffs and the rest of the analyst staff. A full disclosure therefore, is expected to bring this action closer to a resolution once and for all.

**10. GAO's Administrative Process is in Violation of its Duties Its Employees:**

Plaintiffs allege that GAO's entire administrative process is ineffective and not in accordance with Congressionally mandated guidelines applicable to the rest of the federal workforce as applied at GAO.

Those guidelines are contained in federal regulations initially set out by the EEOC, and adopted in Federal Regulations in Title V. GAO has supposedly complied with those standards, but in its own version of the EEOC guidelines contained in Title IV, of the Federal Code of Regulations. Those regulations are modified, as GAO management sees fit, resulting in no substantial compliance with the substantive rights of equal employment for these plaintiffs (or GAO employees as a whole).

GAO promised congress that its employees would have equal treatment, in processing

complaints of employment discrimination, and in enforcing compliance.  And that is why the PAB was created in the General Accounting Office Personnel Act of 1980.

### A.  GAO's Internal Administrative Procedures as to EEO Matters Are Unworkable:

The GAO, however, has never met the normal standards required to address civil rights grievances, routinely afforded other federal employees.  Neither of GAO's administrative arms, "Office of Inclusiveness", ("OOI"), or its purported oversight agency the PAB, are effective in enforcing employee rights.

The law does not require a complainant to perform a useless task.  Here, repeated attempts by the plaintiffs and applicant intervenors to receive administrative processing simply did not take place, but not through any fault of the plaintiffs or prospective intervenors.  The agency's "office of inclusiveness" simply failed to process their claims.

For example, following the years of delay in this case, Davis, Moses (intervenors) and plaintiff Chennareddy all filed additional administrative complaints for ongoing similar allegations of violations of their equal employment rights.  None of those complaints were timely processed by the GAO Office of Inclusiveness.

Dr. Chennareddy filed two follow-on administrative complaints.  One of those complaints was eventually, but untimely, processed.  The other was not.  Neither of intervenor Moses two complaints were processed, as well as Davis's two complaints.

### B.  The PAB is Ineffective:

Neither has the PAB substantially complied with its oversight responsibilities, nor processed "class actions" as is its duty[6].  For example, while the PAB belatedly made one attempt

---

[6]  Plaintiffs and applicant intervenors aver that no full relief can be granted to the injured plaintiffs who still work at GAO while the denials of a meaningful administrative and oversight process exists at the PAB.  Plaintiffs allege that the PAB is a fully controlled de facto subsidiary of GAO, a position not in accord with the intent of Congress that the PAB be totally independent of GAO.  The Court should so rule as and element of the declaratory judgment and injunctive relief requested in this complaint.

at investigating age discrimination at GAO entitled "PROMOTIONS OF BANDED EMPLOYEES 1991-1995")(Docket # 340, Attachment 1), its report was for a very limited time frame (only five years), and published long after the events (September 30, 1999).

Nonetheless, the PAB report found evidence of age discrimination.(Docket # 340. Attachment # 1, pg. 25, ¶ 6---pg. 26, ¶ 1 ):

> The ... analysis, however reveals disparities in rates of promotion at GAO during the five years studied.  At headquarters, employees under 40, in general, were nearly twice as likely to be promoted . . . In the regions . . . employees 40 and over were promoted at approximately 2/3 the rate of ...employees under 40. Combining data, younger employees had nearly a 40% more favorable rate of promotion.

Despite these red flag findings of age disparities, the PAB has never followed up, choosing instead merely to bring their report to GAO's attention.

### C.  GAO Has Failed to Be Candid With Its Own Oversight Agency; the PAB also Fails to Effectively Perform Its Duty for these Plaintiffs:

Plaintiffs allege that GAO has failed to be forthcoming  with PAB, the plaintiffs herein, and this Court, in failing to disclose the existence of its own statistical system (the Mowbray system) which became fully functional in 1989.  That data and system furnishes full statistics and ready analysis for the entire relevant time frame of this case, 1986 to the present.  Because of the non-disclosure, the PAB had to spend money and time to prepare is own statistics.  Then, GAO argued with the PAB as to the correctness of figures, and interpretation, when all that time it had 100% of the necessary facts.  The whole exercise was nothing but a charade.

As another example, recent occurrences involving 308 denials of cost of living increases,

11

entirely to age protected employees, were not treated as a class action, and the PAB never

investigated those happenings on its own volition.  Nor did the PAB General Counsel notify

employees of the existence of *this pending case*.  PAB General Counsel had that duty in order to

fully inform each "client"(every aggrieved person of the 308 group) of the full range of his/her

options before beginning any representation.  This failure is consistent with the GAO's control

over the PAB to avoid age discrimination complaints, and particularly class actions challenging

GAO policy.  These actions are anathema under existing EEO concepts incorporated into the law

applicable to the GAO and the PAB under the GAO personnel act of 1980.  All of those lapses

and violations of duty apply to each and every plaintiff herein and the class they seek to

represent.

For these reasons, plaintiffs seek injunctive relief preventing such continuing violations

by GAO against all  to GAO employees in the future, as well as the retroactive application to

these particular plaintiffs and the class they seek to represent.


### INDIVIDUAL COMPLAINTS

### 11.  Core Claims:  The Policies and Practices Harming Individuals in Violation of ADEA:

Each and every one of the 15 plaintiffs/intervenors listed in the caption of this Fourth

Amended Complaint alleges that he/she has been individually subjected to the same virtually

identical acts of age discrimination.  The policies complained of are exactly the same, and the

pattern of down-rating and non-promotion is the same for all plaintiffs, for each period of time or

year herein described.  Plaintiffs allege that the acts and pattern carries over to each sub-division

and group at GAO and is supported by all available statistics.  The central claim of

discrimination is based upon age discrimination, that older, age protected employees starting

about age 43, cease to receive fair employment ratings, choice assignments, and ultimately are

almost always passed over for promotions.

This pattern and practice applies to each and every plaintiff and applicant intervenor, and also to each putative class member. This practice, as applied, is virtually a 100% denial of any possibility of promotion, once an employee reaches the age where the glass ceiling bar becomes effective for the affected person. The effective age of the bar started initially at 43, during the mid-1980's and later in the mid-1990's rose to about 50 where it remains today.

The typical GAO analyst (and each of these plaintiffs) had the following history:

After high school, he/she graduated from college, usually in some particular discipline. The job interview with GAO was successful. The analyst entered into a permanent employment relationship with GAO as an evaluator or analyst trainee and later completed successfully that training.

The analyst liked the work, accepted further training and advanced through the normal training process and up the career ladder. The analyst thereby arrived at the G/S pay scale of GS 12-through GS 15. At GAO, management changed the terminology to do away with the GS rankings and substitute Bands, 1 (the lowest) through 3 (the highest). Those differences are deemed irrelevant for purposes of this complaint. That is because the alleged discriminatory conduct is throughout the rankings, and correlates primarily with age, not pay scale or rank.

During that learning process, which began at a relatively young age, relatively little experience was brought to the workplace as a government auditor/analyst. Through training, proceeding through the career ladder, and hard work, skills and knowledge each plaintiff's value and effectiveness, particularly in the government work environment improved. Normal advancement took place (with attendant benefits) including promotions and higher pay.

At regular intervals, usually once per year, performance ratings occurred. Performance ratings were always satisfactory or better. Job Assignments were routinely made during this "normal ratings" performance job history period. During this early to mid employment history and associated age, up to the age of about 43, no noticeable discriminatory bias in either ratings

13

or job assignments were observed with respect to each plaintiff's interactions with their managers, or with top management.

Then, however, everything changed. Once a "magic age"[7] (with respect to each individual plaintiff) was reached, everything changed. High visibility assignments were denied to each plaintiff, performance ratings were reduced in favor of much younger co-workers without visible cause. Fair rating ceased, preferences for veterans stopped, unwarranted criticisms began, and preferences not deserved were heaped upon younger targeted employees. The ultimate result is that the once the magic age was reached, the promotion process ceased. Age based hostile treatment was observed, all quite obviously designed to encourage the "old man or old woman" (of 43 or better) to retire.

Finally, in extreme cases, not applicable to all of these 15 plaintiffs, but in several notable instances (for example Mr. Davis, Attachment # 5), treatment became so hostile as to make professional life on the job intolerable. It is significant that of the total of 15 original plaintiffs plus intervenors, only one remains on the job. That person is James D. Moses. Mr. Moses is 66 years of age. All of the rest have left, some allege constructive discharge. All of the plaintiffs and intervenors herein receive government retirement, except Mr. Moses, who remains a full time GAO employee at this time.

Enclosed, as examples of what actually happened to each plaintiff and each class member are somewhat voluminous details of the experiences of typical plaintiffs and typical class members. The Court is requested to note that a list of about 150 additional putative class members requested to be kept apprised of happenings and to be considered "putative class members". That list is in the custody of counsel for persons who were reluctant to have their

---

[7] That "magic age" also referred to herein as the "glass ceiling" (according to raw data furnished by GAO in pre-certification discovery, and statistics created by plaintiffs themselves) for the early years of this complaint, from about 1986 to 1992, the age discrimination became applicable was about 43. More recent statistics gathered by plaintiffs indicate that the "magic age" has risen to about 50.

names known for fear of reprisals, similar as has happened to the named plaintiffs herein.

12.  Plaintiffs allege that the GAO intentionally, knowingly and willfully maintained as a continuing pattern and practice, extending over a number of years and at least as early as September 15, 1983, the practice of treating persons over the age of 43, as second-class citizens. The management policy, enforced and followed by SES managers, results in the age bar known to exist throughout GAO.  The policy is enforced by managers through their actions and expectations of their supervisory personnel.  Innocuous labels, like the "CG's Expectations Memoranda" for the upcoming year are used.  The exact mechanism remains a but unclear.  But the results are now known.  The bar exists.

Explanations for the statistical facts have been requested, but no information is forthcoming.  However, the result of that policy, which may and has been measured, is fewer promotions, longer time in grade, and less bonuses for each of these age protected plaintiffs and the class of similarly situated persons, when compared to their younger counterparts.

13.  As to each individual named plaintiff herein, each alleges at least one instance of being denied high either visibility assignments, and/or lowered performance ratings among other indicia of discrimination.

14.  Recently (in 2006) about 308 Band II employees over 40, most of whom were over 50, have been denied cost of living increases in contravention of law and the intent of Congress.

15.  The method used by GAO management for these actions was incorrect and illusory. The excuse used was a management driven but allegedly private study which GAO relied upon for support of its actions harming those 308 older employees.  The study adopted management's pre-determined position that the 308 persons were overpaid.  Managements actions denied Cost of Living Increases (COLAs) and classified the affected employees into a dead-end classification of un-promotable, Band II A.

15

In reality the decisions on these 308 persons were actually based, not upon actual or bona-fide ratings performance or value to the agency. A 100% sample of the ages of the 308 persons and promotions to Band II B showed a direct correlation with the age of the person being considered. Dr. Chennareddy computed a model based upon the 100% sample of ages of the affected persons. Dr. Chennareddy's statistical opinion determined with near certainty, that age bias was present in the selection process for the 308 persons demoted. In other words, age was a determining factor. That factor is impermissible as a determining factor in the promotions/rating process. In the context of this case, this is just more of the same discriminatory treatment.

16. This information, age, and also race and gender was and is contained in an undisclosed data system, a tool consistently used by GAO management in shaping the results of staff profiles, with age as a determining factor. This system was in use by GAO management, and through its ratings panels with respect to the 308 persons denied colas. Those decisions by management correlated to an extent of near certainty that the decisions were based upon the age of the person being rated. Those incorrect and illusory ratings resulted in demotions and denials of cost of living (COLA) increases to the about 308 "Band II" professionals.

17. Those latest particular denials were contrary to the intent of Congress which approved the COLAS for all qualified employees.

18. There has been no representation by GAO management, nor any evidence presented in any forum, that any of the affected 308 employees are not "qualified", within the technical meaning of that term at GAO. In fact the comptroller general has admitted that all of the persons whose "cola" was denied were qualified employees.

**19. For More Details, See Evidentiary Attachments, Examples Applicable to 4 Named plaintiffs, But Which Are Typical of the Members of the Class as a Whole:**

The facts and allegations contained in the following attached declarations are incorporated by this reference should the Court desire additional detailed allegations pertaining to

the universal policy and practices alleged to be the root cause of the harm to plaintiffs and the class.

      Exhibit 2, Declaration of Roger Carroll.

      Exhibit 3, Declaration of Dr. V. Chennareddy.

      Exhibit 4, Declaration of James D. Moses (As filed on October 4th, 2006).

      Exhibit 5, Declaration of Arthur L. Davis.

      Exhibit 6, Statistical Opinion of Dr. Chennareddy, with formulas and table

          (Attachment 6-1).


      Each of those declarations support the summary of facts herein alleged in this Fourth Amended Complaint.

**20.  Class Allegations:**

      The allegations of these 15 complainants, and about 150 more who have supported their cause are identical for all practical purposes.  These complainants allege that the GAO employee data system, when disclosed, will prove beyond any doubt that the policy and practice is universal.  That system will also prove that the observed disparity is ratings and promotions is totally based upon age.  When an analyst gets older, the pressure is on managers to get rid of the older employees.  It is just as simple as that.  And if that statement is true, the statistics will prove it, and all necessary elements of the age discrimination case will be proven.

**21.  Class Action Allegations, (Required to Be Included in Complaint,
Pursuant to  L. Civ. R 23.1):**

  (1)[8] This case is maintainable as a F.R. Civ. P. Rule 23 class action pursuant to ***Moysey v. Andrus***, 481 F. Supp. 850, 21 FEP 836 (D.D.C. 1979) and  Federal Rule of Civil Procedure 23 (a)(1)-(4) and 23 (b)(1)-(3).

---

[8] Numbers correspond to numbers in the local rule, L.Civ.R 23.1.

(2) (i) This class action is brought on behalf of about 2000 members of the putative class of

employees in professional level positions at the GAO.

**22. Proposed Class Definition:**

The class which this Plaintiff seeks to represent is:

Each employee or former employee of the United States Government Accountability
Office (GAO) who worked for GAO as auditors, evaluators, analysts, information technologists,
specialists, evaluator support person, or like designations, who were employed in positions in GS
Grades 12, 13, 14, or 15, or later the equivalent "band" at GAO (Bands I, II, or III) who:
    A. were at least 43 years of age during a part or all of the time period of their employment
at GAO and, who; and;
    B. were denied one or more of the following elements of equal employment opportunity
during all or part of their term as an employee at GAO:
    1. high visibility assignments, 2. fair performance ratings, 3. equal promotion
opportunity, 4. equal "pay for performance" 5. bonuses 6. passed over for promotions or cost of
living increases, or demoted in grade or ranking, 7. actually or constructively discharged; and;
    C. in favor of a younger lesser or equally qualified person(s) as the result of the policy or
practices of the GAO pursuant to an unfair, or non-equal, or subjective, and/or illusory, or biased,
discriminatory employee rating system and/or "quota system" or any other prohibited
employment practice which in actual practice and effect was dependent upon age, standing alone,
or coupled with race or gender as a determinative factor, or any combination thereof, because of
the biased ratings and promotion system(s) which were in effect at GAO during any part of the
time frame of the class member's employment at GAO, between September 15, 1983 to the date
this Court decides this case, or otherwise determines the time frame of this class action,
    D.  who were damaged by loss of earnings, or retirement value, or other monetary or
valuable benefits by denial of equal employment opportunity based upon age, coupled with race,
national origin or gender.

**23.** (ii) **Plaintiffs and Counsel Are Adequate Representatives of the Class:**

**A. The Plaintiffs:**

The Plaintiffs and applicant intervenors are all members of the protected age group, i.e.,

over 43, and have all been victims of GAO's discriminatory policies described herein who were

passed over or denied fair ratings and the resulting higher "pay for performance" in the

promotion and ratings process in favor of younger, less qualified and less experienced employees

of the United States General Accounting Office.  Plaintiffs have been harmed by one or both the

acts of disparate treatment complained of herein and the policies of GAO resulting in the adverse

impact of the GAO biased promotion system then in effect at the GAO.

The Plaintiffs and their counsel have demonstrated by their persistence over the intervening 20 years, and the material expenditure of funds involved in statistical gathering and discovery that they are adequate representatives of the class. Plaintiffs and three new prospective intervenors have essentially challenged all aspects of the ratings and promotion system at GAO as biased, unfair and in violation of ADEA. They have demonstrated their ability to handle a problem of this scope by the mere fact that they are still here, after 20 years of stonewalling by the GAO.

**B. Plaintiffs' Counsel:**

Undersigned counsel is a former Certified Public Accountant well versed in computerized systems and data base use for high volume applications. He is a former auditor who has unique knowledge of the environment and knowledge required to function effectively in an analysts position, having been one himself for 20 years. He also, after switching professions to that of full time attorney, has substantial relevant accumulated knowledge as to the facts of this case, having represented these plaintiffs for more than 20 years. In addition, a number of firms and individual attorney's have furnished back-up to the extent deemed necessary to fully process all information and legal questions anticipated in this case, including nationwide notification of the putative class members.

**24.** (iii) All of the questions of law and fact as claimed in this lawsuit are common to the class. The detailed allegations contained throughout this complaint are incorporated by the reference, and in addition those questions are summarized herein as follows:

**Questions of Law and Fact Are Common to the Class**

a. Whether the GAO maintained an undocumented, silent or oral policy of bias against all older persons, affecting GAO's ratings, definitions, systems, procedural policies and practices applicable in hiring, promotion, forced retirement, retention or termination in reduction in force situations for its professional level employees that created a pervasive pattern and practice of

19

discrimination against persons over 40 (the protected age), and particularly those over 43, by setting quotas for promotion based upon prohibited factors, age, race, gender, or national origin in favor of younger persons;

b.  Whether in virtually all rating and promotion decisions, age, or age coupled with race, gender or national origin was used as a determinative factor;

c.  Whether the management of GAO used data base systems to intentionally measure age, race and gender for individuals and groups subject to the ratings and promotion process, and gauge the results of promotions processes to effect discriminatory policies upon the staff, as individuals and groups.

d.  Whether the "goals and timetables" and other specifically labeled systems were or are in reality a "quota" system illegally based upon age and other criteria that are prohibited by Federal Code, or existing regulations applicable to the GAO and the PAB, and/or prohibited by Supreme Court precedent.

e.  Whether GAO's representation of some "meritorious" reason for its actions, otherwise attributable to an age bias have some material truth or correlation to actual performance on the job, whereby young persons should actually receive preferences.

f.  Whether GAO intentionally misled the Court, the plaintiffs, and its own employees as to the non-existence of statistical and management systems to evade the law in the processing of this case; and whether that evidence, if found to be true, is determinative of the result in this case.

g.  Whether the GAO's mandated adherence to that ratings and statistical reporting system resulted in the exclusion from high profile tasks, the reduction of scores on performance reports, the elimination or reduction of promotions and earnings, or loss of tenure and retirement benefits of each class member in favor of young persons via the "PFP" system for the Plaintiffs and members of the class resulting in inequality in opportunity solely because of the acts complained of, and the system in effect complained of in this case.

20

h.  Whether the GAO maintained a quota system designed to favor a class or classes of preferred employees, said preferences based on illegal criteria, age, sex and race in violation of civil rights law for all or part of the term of this case.

i.  Whether the PAB participated in the design and/or maintenance of that illegal quota system, for a part or all of the time period covered by this complaint (1983 to date).

j.  Whether the mandate of Congress for the PAB to furnish oversight on GAO's activities and the failure of the PAB to enforce adherence by GAO to equal employment opportunity law for protected older persons creates an actionable right by members of the class enforceable by this Court for which injunctive or other relief is appropriate.

k.  Does the existing employee database system at GAO furnish all data elements necessary for a determination that a pattern exists of discrimination based upon age or other prohibited factors.

l.  Does the existing employee database system at GAO furnish all data elements sufficient to compute for each aggrieved employee the magnitude of the damage in denial of equal employment rights as required to make that employee financially "whole" but for the discrimination he/she suffered while at GAO.

**25.**  (iv) **A Class Action Is Superior to Other Forms of Action That this Case May Take, Questions of Law and Fact (Both) Predominate over Questions Affecting Only the Individual Plaintiffs:**

(1)  The discriminatory practices complained of by these plaintiffs and applicant intervenors require a class complaint to address in any reasonable fashion the allegations of the plaintiffs herein to be any part effective to curing the problem.  This is because the bias is not a separate decision as to any one individual, rather, it is a policy driven effect.

The bias about which plaintiffs complain is a result of a management perception that older persons are inferior as to accomplishing the aims and objectives of the GAO.  The biased policy in turn, drives the various forms of implementation against individuals because of a biased

21

ratings process.  The actual ratings process is not based upon merit, but is goal driven to achieve preconceived objectives.  Those preconceived objectives are "expectations" set out in formal memoranda by the Comptroller General each year with age as the most important determinative factor.  For a large part of the period of time of this case, illegal quotas were set for SES managers in "reshaping the profile" of the professional staff.  That reshaping was uniformly based upon prohibited criteria, predominately age.

(2)    If plaintiffs factual allegations are true, or even half true, no practical method of curing this massive deviation from the policies set by our government (Congress) is possible other than as a group, whether it be a class action or a collective action.  No other methodology has proven effective in our court system or system of justice.

Thus, a class action is not just superior to other means of the violations noted, it is the *only* solution to the policy of exclusion of older employees from the ratings and promotion process, which is universal at GAO.

### 26. Class Action Requirements: Numerosity, Common Questions of Law and Fact; Adequacy of Representation:

### (1) Numerosity:

Plaintiffs herein allege that the class is so numerous that joinder of all members is impracticable.  This allegation has not been challenged by GAO.  The data furnished by GAO in the initial pre-certification discovery indicates about two thousand (2,000) employees to be entitled to membership in the putative class, or classes represented by the 12 plaintiffs and three applicant intervenors.  All races and genders are represented by one or another of the plaintiffs.  About 150 persons have previously indicated support of the court case by requesting to be informed of important happenings.  About 308 persons are adversely affected by the actions in late 2005 and 2006 demoting them and denying COLAS.

22

**(2) Common Questions of Law and Fact Exist:**

There are common questions of law and fact common to the class. The facts are essentially the same for each and every plaintiff herein, and each and every class member. They all have been subjected to the same discriminatory policy carried out by the same hierarchy of management using the same policy and "expectations" set forth by the Comptroller General. The common questions have been addressed immediately above.

**(3) The Representative Parties Will Fairly
and Adequately Protect the Interests of the Class.**

These plaintiffs through their counsel have continued to prosecute this case since it began as administrative complaints in the early 1980s. They now have been joined by the three applicant intervenors. All have persisted in the face of determined resistance. It is completely reasonable to expect continuance to the completion of this case, with all of its ramifications by these plaintiffs.

Counsel for the class has enlisted all of the aid necessary to complete the task at hand, including counsel experienced in nationwide class action discrimination cases. Forced disclosure by GAO of the comprehensive GAO data base system, with analysis by the plaintiffs and counsel (who are trained statisticians and accountants) will enable the full plaintiffs to present to the Court a full and comprehensive picture of the damages, what needs to be done to protect reoccurrences for the future, and the actual computed damages for each plaintiff and each class member.

**(4) Evidence Supporting Class Certification:**

GAO has to date prevented access to the statistical data describing all of the ratings and promotion processes for the entire time frame of this case. That information, is well known to be damning in nature as to proof of the existence of the bias alleged is obtainable by plaintiffs under F.R.Civ. P. 26(a)(1).

**(5) Plaintiffs are Adequate Representatives of the Class:**

Plaintiffs are adequate representatives of the class and are willing, and have already expended time, money, and effort to adequately represent the class.

Nearly all of the named Plaintiffs have retired. As retirees, those persons have adequate resources and time available to expend on behalf of the class. Mr. Moses continues to work at GAO and thus, is a "live' and active representative for the remaining GAO employees. Each of the 15 complainants have experienced several instances of the application of the overall pattern of bias to them. They thus, are able to relate to the problems of the class.

27. Each of the afore-described Plaintiffs are members of the protected age group, i.e., over the glass ceiling alleged as 43+ age as of the date of each alleged act of discrimination. Each named plaintiff, on numerous occasions, has been passed over in one or more promotions in favor of younger employee(es) of GAO. Each of the afore-described Plaintiffs have been harmed by <u>both</u> the acts of disparate treatment complained of herein <u>and</u> the adverse impact of the GAO promotion system. Each Plaintiff alleges that he or she has complaints that involve common questions of law and fact as to the members of the class (or sub-class) that they each seek to represent.

28. **Targeting:**

The most obvious and overt example of disparate treatment comes in the process of selection for promotions and the related gerrymandering and manipulation of the "best qualified lists" (For examples, See Carroll Declaration, Attachment 2, and Chennareddy Declaration, Attachment 3, incorporated by this reference). Each of the 15 foregoing named complainants, solely because of their age, have been passed over in preference for younger, less experienced and generally less qualified employees of the General Accounting Office. Plaintiffs allege that it is the standard practice of superiors to require "raters" (those persons assigned to "rate" in a time period just prior to an available promotion) of older employees to down-grade the older

24

employees in favor of younger employees pre-targeted for promotion by upper management.

The targeting of employees for promotion is a prohibited practice but, at GAO happens consistently in favor of younger employees.  Supervisors are routinely encouraged to improperly influence selection panel members in favor of younger employees.  The "older" age employees have overheard that factor (older age) improperly discussed as a negative factor during their own selection process while the selection panel was sitting in determination of the fate of the older employee.

29.  Each and every one of the results as listed above is a direct consequence of the "quota system" that has been and is, on information and belief, still in effect. That quota system was established by a small cadre of senior management officials, maintained in seventh floor offices of the GAO and enforced by the process of the panel selection system whereby each selecting panel was chaired and effectively dominated by a "boss" who was the SES person charged with responsibility for each particular decision affecting advancement or assignment.

**30. Time Period Applicable to This Complaint
and the Remedies Requested:**

The cycle of discrimination on the basis of age repeats itself every year because every year a new rating cycle with discriminatory bias that takes place each year.  A two year statute of limitations applies under ADEA and the equal pay act, except in the event the Plaintiff proves that a "willful" violation of his rights had occurred, then it is three years.  The Plaintiffs hereby allege that GAO management has, over the relevant years, conducted a knowing and willful discrimination against members of the protected class.  No other explanation will explain the uniform and persistent nature of the observed statistical bias.

31.  Each plaintiff herein also alleges that although it is now known and admitted under oath by the GAO official in charge of maintaining those statistics, that the GAO has maintained at all times relevant to this case a statistical database system containing all of the personal data

and professional ratings, containing about 93 different data elements for each employee, for all GAO professional level employees.

38.  Each plaintiff also alleges that he/she is aware that the uniformity of the pattern of denial of benefits to older persons was previously known to exist.  However, until knowledge of the existence of those statistics, and their use by promotions and ratings panels became known in this case, the root cause of the observed uniformity of the bias was unknown.  It is now believed that one of the root causes of the discrimination observed, is the use of that data system by top management as a tool to predict, act upon policies and practices, and measure later results of implementation of that action.

## CONCLUSION AND RELIEF REQUESTED

**39.  Mootness of Claims, Defenses and Multiple Cases; Discovery:**

The detailed allegations contained in this complaint, the multiple cases, and the intervention by joinder of the three new class representatives, Moses, Davis and Gilbert may well be all be mooted by *one relatively simple action by the Court which is well within the Court's discretion*.  For all of the above reasons the following relief is requested.

**40.  Scheduling Order:**

That act is the Ordering that GAO forthwith conform to its duty under the federal rules of discovery contained in F.R. Civ. P. 26(a)(1) by full, complete and continuing disclosure of the existing system and its readily available analysis and reports.  Plaintiffs request that the Court simply order that GAO disclose fully, with complete access to Mr. William (Bob) Mowbray, and the personnel systems he maintains.  If class certification is granted, and the class is certified as defined herein, only the small optimum number, suggested as three (3) class representative (Moses, Davis and Chennareddy) would be necessary to be intervened/joined as a class representative.  Then there would be no need to maintain the other 12 named plaintiffs as class

representatives.

C.  Overall, a great simplification of the case would occur simply because all of the underlying factual issues would dissolve, with the production of the full statistical database for all employees for all years.

**41.    GAO Has Articulated No "Meritorious Reason" for its Discriminatory Policy and Practice:**

Civil rights law requires as a procedural matter, that once a prima facie case has been articulated by the plaintiff, an articulation of a bona-fide business or other reason by the defendant justifying the discriminatory action, if such valid reason in fact exists.  GAO has not been required to articulate any such reason.  Plaintiffs allege that one does not exist.

It is generally recognized that auditors, analysts and investigators gain experience over the years, and that experience generally contributes to their effectiveness.  Further, GAO has denied on multiple occasions that budgetary considerations drive the desire to terminate older employees.

**42.   Evidence of the Discrimination Alleged:**

Plaintiffs recognize that a complaint, even an amended complaint, is not required to present evidence supporting those allegations.  Attachments are not permitted under Rule 5, unless they are essential to the complaint.  Here, however certain key evidence may be deemed appropriate, even essential to the clarity of the complaint.  Here, a venerable government agency being accused of intentional age bias for more than 20 years.  The scope of that allegation, and shocking nature of the revelations, would appear to warrant some specificity in the complaint. That is why these somewhat voluminous materials are presented.

**43.   Evidence of Record of the Disparate Treatment and Adverse Impact GAO's Policy of Age Discrimination (a-d following):**

The evidence of age discrimination in ratings and promotions of its older

27

employees is all one sided, but as yet incomplete.  It will remain such until the full data and

system are disclosed.  A short history of the body of evidence now existing (covering the period

of 1985 to 2006) is appropriate and hereby alleged to be supported by the evidence of record.

    a.  Affidavit of Record--Expert- Richard J. Lurito, Ph.D., based upon plaintiffs

    unchallenged hand developed statistics[9] (period 1984 - 1992)

That opinion states, in the final paragraph on page 4:

> "It must also be emphasized that the comparisons that have been made in this
> affidavit, relate to person of very homogeneous education and training who have
> attained a grade 12 or higher at the GAO.  The one constant determinative factor
> that seems to explain their likelihood of promotion is their age.  Employees under
> 40 years old consistently and persistently have a far greater likelihood of
> promotion to a position of higher grade then their counterparts over age 40 who
> are competing for the same position and grade regardless of GS grade or year.
> This pattern is similar for the eleven (11) prospective class representatives, the
> 180 sample and the 100% sample for the GAO as a whole".
>     [Signed]  Richard J. Lurito, Ph.D.

    b.  A second body of evidence appears in the Report and Opinion of the PAB

    (covering the period of time from 1991 -1995) entitled "Promotions of Banded

    Employees-1991-1995).

That report states on page 26, ¶ 3:

> "Ten years later, the Board's study reveals race, gender, and age disparities
> in time-in-Band and promotion rates.  Because the reasons for these disparities are
> not readily discernible from the statistics alone, the Board recommends that the
> Agency further investigate the disparities revealed by this study to ascertain their
> underlying causes.  If improper selection methods, rather than merit, are found to
> the be the cause of the disparities, GAO should institute appropriate changes."

[note: no follow up by GAO was done as recommended, and the PAB never enforced any

---

[9]  The data for these statistics was furnished in non-machine manipulable form and processed for
presentation to the Court by William A. Mullen, a retired GAO information technician and analyst.  That data is
contained in about a hundred high density 4 1/4" disks.  The accuracy of that data has never been challenged by
GAO, even though it is now known that GAO at the time had its own fully operational, but undisclosed database
system.  That data disclosed a nearly universal exclusion from promotions of persons over 43 years of age.  All
recent data confirms the accuracy of that data and Mr. Mullen's accompanying data processing opinion.

part of its recommendations or conducted any further studies]

    c.  A third body of evidence is contained in the allegations and evidentiary support of affidavit by Venkareddy Chennareddy, Ph.D., plaintiff and statistical and economics expert, attached hereto (Attachment 3, hereto) covering the period of time from 1984 to 1992.  In that opinion Dr. Chennareddy found:

> "In other words, the chance of refuting age discrimination (or asserting age non-discrimination) is 1 in 312 or practically zero"...

> "My conclusion based on the results in the attached Table [Attachment 6-1] is that the probability of age-based non-discrimination in the selection process for promotions in GAO was virtually zero, i.e., without doubt."  (Conclusion in the Attachment 6 based on Attachment 6, Table 1)..

    d.  In the pending related case of Moses v. Walker, CA 06 - 01712 (EJS) access to the age data for  Mr. Moses, and all of the 308 other older analysts denied COLAS in the "Band II Split Process", which occurred in 2006 has been acquired.

     Dr. Chennareddy was asked to prepare a statistical opinion of that action with respect to the data and ages of the persons rejected.  His opinion found that there was to a virtual certainty, of age bias in that selection process also.

Thus, to the extent evidence exists, it all points strongly in support of plaintiffs allegations of a uniform pattern of age bias in the entire selection process, with no countervailing evidence at all known to exist at this time.

**44.  Specification of Damages; Demand for Relief:**

Plaintiffs named herein, and each member of the putative class, has suffered, is suffering, and will continue to suffer, immediate and irreparable harm for which there is no adequate remedy at law as a result of the continuing discriminatory practices alleged herein.  In addition to

the irreparable harm each of the individual Plaintiffs, and each member of the putative class has suffered a loss of back pay, loss of promotions, and benefits for which there is an adequate remedy at law.

The approximate magnitude of the damages relating to each promotion denied, excluding any damages suffered other than for promotions, is applicable to each such aggrieved person.  On information and belief, the number of promotions improperly denied the about 2000 persons who, because of the bias, did not receive their fair share of advancements and promotions exceeds 1500 such denied promotions over the 20 years this case has been pending.

The value of each such promotion, is estimated at no less than $ 150,000 for each of the 15 named plaintiffs, and on information and belief, no less than $ 150,000 for each of the other denied promotions, computed on an actuarial basis.  As a rough estimate, in the absence of actual figures, and averaged for one half of the 20 year term of this case, the result would be as follows.

Summing these figures, plaintiffs now demand the sum of not less than (1500 X $ 150,000  = $ 225,000,000.

Therefore, Plaintiffs demand, in addition to the injunctive relief requested, monetary relief, or alternatively adjustment in retirement benefits of $ 225,000,000, or such other relief as the Court or a jury may award in the interests of justice, plus Attorney's fees and Costs of this action, including expert witness fees and clerical costs incurred to date.

Plaintiffs separate counts, detailing appropriate and just relief follow.


## COUNT I
### (Injunctive Relief Stopping Promotions At GAO Pending Correction of the System)

**45.**  Each and every allegation of this Fourth Amended Complaint is hereby incorporated by this reference.  Plaintiffs allege and request injunctive relief prohibiting GAO from:

A. Continuing to maintain a biased ratings, promotion and retention system acting as a *de*

30

*facto* bar to the advancement and promotion of all employees over 43, violates ADEA, 4 CFR parts 2 and 29.  Further, it constitutes a prohibited personnel practice in violation of GAO's mandatory adherence to Merit System principles with equal pay for equal performance at GAO.

B. Continuing the denial of equal protection of the laws to GAO's older employees by the failure of the PAB to adhere to its statutory duties, and to require discontinuance of GAO's budgetary control over PAB operations.

C. A declaratory judgment that the existing practices  violate Constitutional Principles subsumed into Title VII with respect to maintaining a meaningful administrative process.

### COUNT II
### (Injunctive Relief Requiring GAO To Perform the Analysis and Functions Required by Statute To Correct the System and Analyze Damages To The Class of Plaintiffs)

46.  Each and every foregoing factual allegation is incorporated by this reference.

47.  Plaintiffs request an Order for injunctive and mandamus relief requiring that:

(1) GAO produce forthwith the data, systems descriptions and capabilities for analysis of its entire database management system for personnel from its inception in approximately 1985, to date.

(2) GAO be ordered to cooperate fully with disgorgement of all relevant data, with such safeguards in place as to protect the confidentiality of all employee personnel data to non-authorized disclosure.

(3) GAO be Ordered to furnish full and complete access to its expert personnel in charge of those data systems, i.e., William (Bob) Mowbray, and/or others, who should be Ordered to cooperate in the utilization of the existing systems and data to analyze the effect and relevant results of the biased system in place for the entire term of this case and its effect upon all plaintiffs and the class herein to whatever extent is necessary to fully compute all damages, prospective and retrospective to the plaintiffs and the class or classes they represent.

31

(4) That the GAO and the PAB be Ordered to divest themselves of any and all indicia of control or cooperation one to the other with the goal that the intent of congress as expressed in the GAO personnel act of 1980 be made effective as to the full and complete protection of the independence of GAO employees to interference from any source based upon a violation of their equal employment rights;

(5) and that further the PAB shall take whatever steps are necessary to effect the will and intent of Congress that each and every GAO employee has access to the full range of PAB power and oversight responsibility, including studies and prosecutions by the General Counsel of the PAB from now henceforth;

(6) and that the person of the General Counsel of the PAB shall not ever be a former administrative judge of the PAB, nor shall the General Counsel ever succeed to the position of an Administrative Judge of the PAB;

(7) And that the GAO shall revise its regulations governing the PAB, and its own Civil Rights Office, OOI or by whatever name called, to conform to the standards set forth for the rest of the Federal Government by the EEOC, as contained in the Code of Federal Regulations, parts 1614 et seq, and be ordered to not deviate substantially therefrom for a period of not less than 15 years from this date.

(8) And that the GAO shall reverse forthwith the downgrading which took place in 2005 which reduced the status of any member if the class here represented, with restoration of the COLAS denied effective on or about February 16, 2006.

(9) And preliminary and permanent injunctive relief should be granted for each plaintiff and each member of the class or classes, to calculate each member's additional financial compensation as if the bias in ratings and promotions had never occurred according to appropriate actuarial principles and under the guidance of plaintiffs' experts with full concurrence of office of General Counsel of the PAB, under the general supervision of this

32

Court. This aspect of the relief should begin forthwith, and be completed within 180 days of the Order specifying that relief be granted.

(10) Interim relief in the form of costs and attorney's fees should be granted, with an initial submission of a request for costs and fees submitted within 60 days of this Order.

(11) And that henceforth, for the next 15 years, on at least an annual basis, beginning with the completion of the analysis required by (9) above the PAB shall be required to perform a scientifically accurate and complete statistical analysis of each years equal employment performance of GAO, and to perform such data analysis as is necessary to obtain machine manipulable data from which such a scientific analysis can be accomplished, and to determine the validity or non-validity of the existence of the ratings and promotion system, or factors within that system which insure the non-occurrence of the discriminatory bias complained about herein.

(12) the PAB should be Ordered to co-operate with the plaintiffs and their experts to the fullest extent to insure that the analysis of the ratings and promotions results since 1983 are accurately completed from the viewpoint most favorable to a GAO employee, with all decisions as to questionable items resolved in favor of the employee's position. The Court should Order that GAO shall protect its own interests in insuring the calculations are correct and bring any disputed items to the attention of this Court for resolution.

(13) The Court should Order that each and every member of the class who claims to have been constructively discharged or otherwise improperly separated from employment at the GAO be given the opportunity to present his/her claims to be made whole for the violations complained of herein. To that effect full notice of the orders of this Court shall be sent under the direction of plaintiffs' counsel with the preparation of forms, addressing and postage paid by the defendant herein.

(14) The Court should Order that the illegal quota policy for ratings and promotions and all systems carrying out that process be forthwith disbanded; and its effects throughout the GAO

employment system be forthwith disbanded, and each SES employee at that agency be subjected to  Preliminary and Permanent Injunctions prohibiting any <u>de facto</u> continuation of that system.

(15) The Court should Order that the PAB be required to update its statistical analysis of the effect upon the Plaintiffs of GAO's discriminatory practices about which the PAB has reported, and to recommend to this Court an enforcement and relief package that will make each and every member of the class "whole" and to continue that functioning, with monitoring by the Plaintiffs or their representative for an indefinite time in the future to prevent a re-occurrence of these acts in the future.

(16)  Plaintiffs herein and the applicant intervenors respectfully request that preliminary and permanent injunctions be issued enjoining the United States General Accounting Office from promoting any employee, or transferring any employee to avoid a Reduction in Force who is under age 40 in Grades 12 through 15 inclusive as being in violation of the individual rights of each of the class members herein, said injunction to continue until such time as the practices complained of cease and are rectified, as to the relief requested above, future promotions, cessation of forced retirement and termination of older persons in favor of young persons; and that a preliminary and permanent injunction be issued to each and every office of the United States General Accounting Office enjoining that agency from promoting any employee under age 40 of the United States General Accounting Office or terminating any employee over 40, as being in violation of the civil rights of any member of the afore-described putative class until such time as the entire promotion and ratings system, and the quota system creating bias in promotions is corrected to the satisfaction of this Court.

### COUNT IV
### (Damages To the Named Plaintiffs and Each and Every Class Member)

**48.**  Each and every foregoing factual allegation is incorporated by this reference.

**49.**  Each and every Plaintiff herein has been damaged to the extent their individual

earnings have been diminished by being passed over for promotions given to equally or lessor

qualified persons on the basis of age or other illegal promotion consideration including

prohibited personnel practices for the time period applicable to each such employee.  On

information and belief the cumulative damage to all Plaintiffs and all members of the putative

class is $225,000,000 or such greater sum as is determined to be the cumulative damage to

earnings, retirement, fringe benefits and the ancillary rewards and damages resulting from the

treatment of persons over 43 as second class citizens.  This estimate of damages is calculated at a

the estimated minimum of 1500 promotion denials resulting from the discriminatory bias, times

the reasonable estimated amount of damages to each such person subjected to the discriminatory

treatment of $ 150,000 each without considering the ancillary but applicable damages resulting

from humiliation and emotional damages.

    **50.**  Plaintiffs request that each Plaintiff and each class member they seek to represent be

awarded retroactive promotions, awards, and other employment benefits to which he or she

would have been entitled but for the violation of rights secured to him or her under ADEA, or the

money equivalent for past violations, and/or which will make each class member whole, and/or each

member of the putative class be awarded a share of the sum of at least two hundred-twenty five

million-dollars ($225,000,000) or such other and greater sum as the Court or a jury determines is just

and proper, with additional interest or damages to allow for the time lapse to date, and/or the amount in

back pay and other benefits to which he/she would have been entitled but for the violations, and/or that

each member of the class be awarded an increase in grade, salary and accumulated retirement benefits

which would be required in order to place each such employee in a position which would make

her/him whole but for the act of employment discrimination prohibited by ADEA; and that preliminary

and permanent injunctions be issued prohibiting the United States General Accounting Office from

treating its older employees as "second-class citizens" in any work related action including working

assignments, work space assignment, and such other instances of disparate treatment as are proven at

trial.

       Plaintiffs also request attorney's fees and costs incurred in the prosecution of this lawsuit,

along with such other relief as this Honorable Court or a jury may deem just and proper.

                        Respectfully submitted,

                        /s/ CharltonW 2428

                        Walter T. Charlton, D.C. Bar #186940
                        Attorney for Named Complainants and
                        Attorney for the Putative Class
                        230 Kirkley Road
                        Annapolis, Maryland 21401

                      CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that I filed a copy of the foregoing Fourth Amended Complaint, in the
ECF system for automatic delivery to the following counsel on this 3rd day of January, 2008 to:

Christopher Blake Harwood
christopher.harwood@usdoj.gov
Assistant United States Attorney
Judiciary Center Building
Room 4120, 4th Floor
555 4th Street, N.W.
Washington, D.C.  20001


   CharltonW 2428

## INDEX OF ATTACHMENTS TO FOURTH AMENDED COMPLAINT

| | Attachment Number |
|---|:---:|
| Opinion of United States Court of Appeals for the District of Columbia Circuit (In this case), Case no 89-5408, 89-5409, June 11, 1991, 935 F.2d 315 | 1 |
| Declaration of Roger Carroll | 2 |
| Declaration of Venkareddy Chennareddy, Ph.D, Personal Experiences at GAO | 3 |
| Declaration of James D. Moses, October 4, 2006 | 4 |
| Declaration of Arthur L. Davis | 5 |
| Declaration of Venkareddy Chennareddy, PhD, Statistical Opinion | 6 |
| Statistical Table, Ages and Promotions | 6-1 |