**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| Arthur L. Davis, et al | ) |
|    and all others similarly situated | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | )    **CASE NO: 06 1002 (EJS)** |
| | )              **MAG (DAR)** |
| **DAVID M. WALKER** | ) |
| **Comptroller General of the** | ) |
| **United States c/o United States General** | ) |
| **Accountability Office (GAO)** | ) |
|    **and** | ) |
| **Michael Wolf, Chairman** | ) |
| **United States Government Accountability Office** | ) |
| **Personnel Appeals Board (PAB)** | ) |
|    **DEFENDANTS.** | ) |

_____ )

**PLAINTIFF'S OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

**PRELIMINARY STATEMENT:**

     Plaintiffs through counsel oppose Defendant's Motion to Dismiss (which is in reality a

Motion for Summary Judgment, by Conversion[1]) this putative class action on the grounds of lack

of subject matter jurisdiction and failure to state a claim. Plaintiffs request that this Motion to

dismiss be denied as without merit. In the context of a Motion for Summary Judgment, many

determinative facts are in dispute, not the least of which is the very nature of this complaint.

This case is a complaint for a continuing "unlawful employment practice" of maintaining a

---

[1] This motion should be deemed to be a motion for summary judgment by conversion and operation of law. The defendant has attached 18 pages of exhibits to their Motion. In a prior filing, the plaintiff has attached 9 exhibits to the opposition. Therefore this motion should be deemed converted, and should be decided in accordance with the standards for summary judgment. That is all facts should be taken to most favor the non-moving parties, the plaintiffs.

1

hostile work environment for all professional level employees who reach a protected age.  Under ADEA that age is 40, however, the facts of this case indicate that the start of the discriminatory bar to promotions and the hostile work environment began at about age 43 in 1983.  Now the discriminatory age is alleged to be about 50.  Once the ceiling is reached, that condition renders, by management edict, creates a bar to fair ratings and promotion.

Facts as recent as last Friday's deposition of William (Bob) Mowbray have already demonstrated that GAO has in place an information system and data hitherto denied to exist. Other centralized management procedures enforce adherence to the will of management.  Access to the existing statistics now enables full measurement of the extent of the bias over the 20 year period of the related cases.  That data and anecdotal evidence, plaintiffs allege, will demonstrate that at GAO a "hostile work environment"against ADEA protected analysts has existed for the entire 20 year period of time.  It still exists.  Over the short history of this case, the facts continue to expand and evolve.

The full extent of the bias, and methodology GAO uses to effectively exclude 100% of its older analysts from the promotion process is presently mostly known.  Striking is the extent of the uniformity of the bias.  This plaintiffs allege will be more apparent once the "Mowbray data" has been furnished and analyzed.  That effort, as mentioned to the Court is ongoing.

However, in the interim, in the event this Court determines that plaintiffs' claims are not sufficiently detailed in plaintiffs "short and plain" statement of the facts in their complaint to support a "hostile work environment" claim, then, in that event, these plaintiffs request leave to amend their complaint.  Many details have been learned since the complaint was filed about two

years ago.  Some of the determinative facts were acquired on March 13 of this year (2008)[2], and more were elicited at the deposition of Mr. William (Bob) Mowbray held just last Friday, May 16th, 2008[3].

**Where, As Here, There is a "Hostile Work Environment" the Systemic Pattern of Invidious Discrimination is Considered to be One Event:**

The Court stated in ***National Railroad Passenger Corporation v. Morgan***, 536 U.S. 101, 110 (2002):

> "**The critical questions, then, are: What constitutes an "unlawful employment practice" and when has that practice "occurred"?  Our task is to answer these questions for both discrete discriminatory acts and hostile work environment claims.  The answer varies with the practice." (Majority Opinion of Clarence Thomas, J, pg. 110).**

---

[2]  Transcripts of testimony at Congressional hearings on March 13, 2008 are not yet available.  The Comptroller General, defendant in this case, resigned on March 12, 2008.  Joint sub-committee hearings were held on March 13th, 2008 on subjects complained about by plaintiffs herein and relevant to the allegations of this case.  For example, the General Counsel of the PAB testified to the effect that she does not independently investigate any violations of systemic violations alleged unless a complaint is brought to her office.  Plaintiffs herein allege that office is a totally captive de-facto subsidiary of the GAO.  Those facts support the allegations of a lack of independence of the PAB from GAO and a finding granting relief under the principle of Paul F. Tyrrell, plaintiff, v. City of Scranton, 134 F supp.2d 373, 379 (M.D. Pa March 2, 2001) that:

> Congress's clear purpose to prohibit invidious workplace discrimination requires that the third party also be subject to federal employment discrimination liability should it misuse the authority it has been delegated.  Potential Title VII and ADEA liability should accompany the transfer of the employer's control and authority.

[3]  On Friday May 16th, 2008 a deposition of Mr. William (Bob) Mowbray was taken.  Notice of that deposition was given to each of the opposing counsel in the related cases.  At that deposition evidence was elicited that plaintiffs herein allege will prove their allegations of a hostile work environment for these plaintiffs and all similarly situated older workers.  The facts elicited in that deposition demonstrate conclusively that GAO has withheld evidence for more than 15 years from opposing counsel and the Court.  Moreover, the substance of that evidence (which defendants aver is still intact), plaintiffs allege, will demonstrate that all of the requirements of a "unlawful employment practice", a bar to favorable ratings and promotions has existed since about 1983 at GAO.  Thus, if these facts are found to exist by the Court, as expected from the preliminary data, no part of this Motion to dismiss is supported by fact.

Here, new facts continue to bulwark and support their complaints of hostility in the workplace which has existed for over 20 years applicable to each of these plaintiffs (and also the class of persons over the age of 43 they seek to represent.   In a previously filed motion, dismissed without prejudice to renew, was plaintiffs' Motion for Preliminary and Permanent Injunctive Relief.  But immediate and irreparable harm is continuing.  Plaintiffs continue to request that inequitable conduct and ongoing irreparable harm of plaintiffs and the classes they seek to represent be immediately addressed by the Court.  Consideration should be given to immediate and irreparable harm resulting from GAO's continuing misconduct with respect to these Plaintiffs and the classes they seek to represent.  Clear incidents of contact by GAO of putative class members and misinformation to those persons has occurred, and is continuing. Incident to the assertion of the power of this Court to manage this case, this matter should be addressed at the Court's earliest convenience.  Plaintiffs so request.

## I.  PLAINTIFFS' CLAIMS:

Defendants base their motion to dismiss (albeit a Motion for Summary Judgment) on a "lack of subject matter jurisdiction and failure to state a claim", (Def. Motion pg 1, ¶ 1).  These argument are factually incorrect, apply inapplicable strictures of law in this situation, one of intentional systemic unlawful use of age as a discriminatory bias and fail to take into account GAO's flawed administrative process and the fact that GAO's management intentionally bars older experienced employees from all aspects of advancement.  This is an invidious practice which has been ongoing for over 20 years.

Delays in these related cases has occurred, not through any fault of the plaintiffs.  These delays occurred because the facts regarding the pattern and practice of intentional exclusion from

the advancements and promotions process were intentionally withheld from plaintiffs, the PAB, and this Court.  These cases should-- by any measure have been long over but for GAO's failure to be candid with the Court, the plaintiffs and their own oversight agency the PAB.  Further, GAO's  continuing failure to be candid with the Court concerning the nature and evidence supporting plaintiffs allegations conceals the real issue, even to this date.

Evidence of concealment of material and relevant discoverable evidence was contained in William Mowbray's Deposition of June 27, 2002 in *Vant Leven, et al v. Walker*, Civil Number 00-2686 JGP (Attachment 3, hereto).  On Friday, May 16th, 2008 another deposition of Mr. Mowbray was noticed in all related cases and taken[4].  Although analysis of that evidence and information is incomplete (an expedited transcript was received in time for the May 20th, 2008 hearing).  It now appears that virtually all of plaintiffs expectations of determinative facts are indeed present in the evidence readily available through Mr. Mowbray's data and system.  That evidence is contained in four data files, that is four data files for each of the 20 + years.  Plaintiffs allege that this evidence, along with anecdotal explanations will demonstrate without question,

---

[4]  The deposition of Mr. William (Bob) Mowbray was taken on May 16th, 2008 just prior to a pending motions hearing on plaintiffs' motion in this case to intervene into Chennareddy, et al, case # 3538.  The hearing on plaintiffs' motion to intervene was cancelled by the Court.  That cancellation makes this Motion to Dismiss, the first dispositive Motion to become fully briefed.  Plaintiffs contend that it is nevertheless out of sequence.  If the Motion to intervene is granted, this Motion to dismiss is simply inapplicable.  That is because intervenors do not have to exhaust administrative remedies, one of the defendants main claims.

The deposition was with the consent of opposing counsel in the underlying case, 87-3538 and notices in all related cases.  Counsel from GAO and the DOJ attended the deposition.  Although generally it is discouraged to file discovery materials with the Court, this particular deposition is material and relevant to all outstanding issues.  For that reason the entire transcript is attached as Exhibit 10).  This deposition demonstrates the existence of data which plaintiffs allege will prove that performance ratings and promotions are based, not upon merit, but upon age.  And that the ratings and promotions directly correlate with age.  The older your are the worse your chances.  Once you reach a certain age, you cannot achieve a promotion, no matter what your skills or your achievements in your profession at GAO.  That age is believed to be about 43 in 1986 and about 50 now.  The rise in the "glass ceiling" is alleged to be nearly absolute.  This is what all samples of the data now available have shown.  Anecdotal evidence supports this conclusion.

the existence of systemic violations amounting to a "unlawful employment practice" meeting the requirements of a continuing invidious practice (as defined by Morgan, supra) intentionally designed to harm these plaintiffs and all older employees. The harm is taking their rights to leadership roles they earned, at a time when they were equally or better qualified then the persons favored by reason of their younger age. These acts are no mere promotion disputes. The bias is universal and intentional. By this process, plaintiffs and the class viability and worth in their chosen careers was effectively intentionally destroyed. What indeed could be more hostile than that process which was accompanied many times by insulting remarks as to "old age", (over 43).

If as Plaintiffs allege, and have averred herein, those facts exist, which evidence the pattern and practice of continuing violations, this Motion to Dismiss is not just erroneous, it is yet another attempt by GAO to mislead the Court. For no statute of limitations or untimeliness applies under equitable principles of Equitable Estoppel and Equitable Tolling where a party has not acted equitably himself. These facts are discussed in some detail following. The details of this evidence is contained in Attachments 1-3 hereto.

The most important parts of this testimony follows:

**Mr. Mowbray** described the contents and capabilities of the system starting at page 8 of his deposition:

*(Page 8)*

Q. Okay. So you built this database. Is there a description somewhere of the elements in that database?

A. There's not a written one.

Q. Not anywhere?. There must be come kind of system definition —

6

*(Page 9)*

A.  Yes.

Q.  – – as to what the fields are?

A.  Well, yes, I can run—it's a SAS database.  I can run contents at any time, and it will tell me precisely which variables exist in the database.

Q.  Okay.  Has that database remained roughly consistent from the beginning until now?

A.  Yes.

**** 

Q.  So there is a separate database for each year, starting in 1989?

A.  That's correct.

*(Pg. 10)*

A.  SAS is Statistical Analysis System.  It's a programming language.

Q.  "Do you have a slightly different program for each year?

A.  Obviously, any program which requests some analysis of variables from that dataset, we have to name what those variables are.  So, to the extent that there may be slightly different variables names from year to year, then the access program would differ slightly.

Q.  So if anyone requested you to perform an analysis on any particular year, I presume you would have to use the program for that year?

A.  Or modify another program.

Q.  Are they easily done?

A.  It's not difficult.

*(Pg. 11)*

Q. Is this data base maintained even as we speak?

A. Yes, it exists.

Q And is it still under your maintenance and control?

A. That's correct.

Q. You do it all alone?

A. Yes, I do.

Q. .... approximately how many variables there are in this database?

A. I would have to guess. I would say maybe 60 to 90; I don't know, something like that.

**(Pg. 20)**

Q. So you get input from that data base–you get other input also?

A. Exactly.

Q. What is your other input?

A. All of the demographic data such as race, gender

**(Pg 21)**

org. code, date of birth,...Social Security number of each person. So by merging that, those files, with files from the NFC system, which do have all that demographic data, I can combine those two and add in the variants.

Q. What is the official name of the databases, each year's database that you maintain that we've been talking about?

A. There is no official name. Maybe "Bob's database" is it.

**\*\*\*\*\*\*\***

8

Thus, defendant's representations that no employee profile data exists in database format, and no programs to analyze and extract data exist, as would be relevant [and quite possibly determinative] evidence in this case for all purposes are simply not accurate.

**GAO's Equal Employment Administrative Process is Defective,
Non-functional, Meaningless; and Incorrect:**

GAO's administrative process, particularly with respect to age based complaints, is defective and meaningless.  Putative class representative James D. Moses attempted to exhaust administrative remedies several times.  He complained, went to counseling, and although the process was begun and investigated, twice, no report or notice of right to sue has ever been issued as to him[5], nor any right to sue letter as required by GAO regulations.   Another employee, and putative class representative Arthur L. Davis was counseled several times, and his claims were investigated.  But no report, written notice of his rights, or notice of right to sue was ever rendered.

Another employee, Jimmie Gilbert complained and counseled with his regional manager, but was never advised of his rights pursuant to the requirements of GAO Order # 2713.2 (Attachment 9)[6].  Mr Gilbert acted as a counselor himself, but was unaware of the actual

---

[5]  The affidavit of Delores Crawford, Defendant's Exhibits (page 1 and 2 of 18) corroborates this allegation by applicant intervenor Moses.

[6]  GAO personnel policy and procedures by custom and practice are contained in a series of GAO "orders".  The current version of GAO's purported civil rights regulations is contained in Order # 2713.2, dated 1997 (Attachment 9).  According to the GAO "office of inclusiveness" (OOI), the most current version of GAO's civil rights procedural regulations is this Order.  It is notable that GAO has not followed its own regulations with respect to the administrative processing of these three plaintiffs, nor their witness who is himself a potential member of the class as described in this complaint.
     Apparently GAO takes a cavalier attitude as to the application of its own regulations to it, while requiring exact compliance from its employees.

requirements of notice and his various administrative options and his right and duty to either invoke the administrative process or file a "notice of intent to sue", as a preliminary step to filing a District Court lawsuit.

These failures are but a few examples which disclose that GAO disregards EEOC and GAO regulations concerning the administrative processing of age discrimination complaints. (See details contained in Statement of Facts for each of the three Plaintiffs, Section II, following).

**Plaintiffs Allegations:**

These three Plaintiffs all allege continuing across-the-board age based violations beginning as early as 1986. Details of happenings and their allegations are contained in the complaint as filed, and also in more detail in three affidavits accompanying this opposition. Two of those affidavits are from complainants Moses and Davis, and a third from Dr. V. Chennareddy, who is a now retired former GAO Phd/Statistician and Economist. Chennareddy himself experienced similar treatment in GAO's defective administrative process. Dr Chennareddy also has historical knowledge of the abuses of GAO in failing to respond candidly to discovery relevant to the overall pattern and practice alleged by all of these complainants. That pattern consists of an on-going discriminatory bias against older persons on an across-the-board basis.

Under the "one all encompassing violation doctrine" created in Morgan, supra, so long as a new violation occurs within the statute of limitations period, there is no bar based upon a failure of the statute of limitations. This requirement is met by these plaintiffs in that each year, as the promotion cycle proceeds, a new bar to their advancement is created, all over again. This

is exactly what the Mowbray data is expected to demonstrate.  If that is not hostile to a career, what is?

These three Plaintiffs have been attempting to bring their claims before this Court since June 10th, 1999 when they filed, through undersigned counsel, notices of intent to sue[7].  They then applied on May 3, 2000 as applicant intervenors, into on-going case number 87-3538 (JGP).  That case was then and is still before this Court.  They filed another notice of intent to sue[8] on April 6th, 2005 again alleging continuing violations after denial of their long-standing Motion to Intervene was denied by the Court deeming it "withdrawn".

Plaintiffs filed this lawsuit on May 31, 2006, more than 30 days after the 30 day notice of intent to sue was filed with the GAO.  The age based continuing violations persisted after Plaintiffs filed this case on May 31, 2005, into 2005 and 2006.  Plaintiffs allege that their District Court filing was timely as within 180 days of the alleged violations for three reasons.

(1) All three plaintiffs had attempted to invoke GAO's in-house administrative process by timely complaints to GAO's Civil Rights Office (Now the Office of Opportunity and Inclusiveness)(OOI); (2) GAO failed to follow its own regulations and applicable law as to timely written notices to plaintiffs of their rights and duties under the law; and

(3) GAO acted in bad faith during the plaintiffs several years of attempts by these plaintiffs to bring a District Court action through intervention in case ***Chennareddy, supra***.

---

[7]  No response to that initial notice of intent to sue was  received.

[8]  No response or action by the GAO was ever received for this notice also.

**GAO's Bad Faith Discovery:**

That GAO has acted in bad faith is evidenced by its insistence that it does no possess a centrally controlled and maintained statistical system. GAO maintains four data files for each relevant year containing the essence of all information required to measure the bias and the bar to advancement based upon age. That system was, and is, sufficiently complete to allow analysis of its existing 60 to 90 data elements for the entire relevant period of time (over 20 years). And thereby GAO is able to measure whether (or not) the age bias charged existed. Since it failed to disclose this information an adverse inference as to what the evidence would show is warranted. Had GAO acted in good faith, and in accordance with its duty to be candid with the Court, all of these cases would have been over long ago. As a disputed factual matter, either the bias alleged exists or it does not. Candid responses clearly would have allowed resolution of this simple factual measurement of existing data.

Further, PAB, GAO's own external watchdog entity, came to the conclusion that there were indications of agency wide age discrimination, but GAO disregarded such findings.

Besides the plaintiffs' assertion of GAO's continuing violations and bd faith during discovery, plaintiffs submit that the Court should also invoke the principles of equitable estoppel to prevent GAO from benefitting from its own inequitable actions.

**Recent Events-Continuations of the Age-Based Disparate Treatment:**

As to employee, James D. Moses, and about 300 other similarly situated older protected employees, the age bias continues.

Beginning in late 2005 and effective with the paycheck of February 16th, 2006, Mr. Moses and about 310 other "Band II" employees were downgraded and denied cost of living increases (Colas). Moses again timely complained and was counseled. No report has been rendered for that complaint either.

On August 9th, 2006 Moses, in the interest of caution, and as the only remaining putative class representative remaining employed at GAO, filed through counsel with GAO's Office of Inclusiveness (OOI) yet another "Notice of Intent to Sue" (Attachment 8). In the new notice Moses alleged new violations consisting of class complaints for age based discrimination. His new notice on behalf of himself and all others similarly situated, incorporates previous notices and alleges that new violations occurred in his downgrade for the "Band II split" and associated cost of living denials (cola). Moses complained immediately (see following details) but received no relief. The filing of his new notice of intent to sue was within 180 days of the effective date of the downgrade and the cola as they were reflected in his paycheck of February 16th, 2006.

No final agency decision has ever been received addressing any one of Moses's or Davis's administrative complaints. The complaints were received, they were apparently processed, they were investigated, an investigators report rendered, but that was all. The agency simply refused to respond to the problem, leaving the entire administrative process as a big zero.

Therefore, as to both Moses and Davis, they allege that although their filings were in accordance with GAO Order # 2713.2, the administrative complaint process was a useless exercise wasting time, money and effort, and resulting in no action by GAO to date. That is, GAO has taken no action to either to mitigate or stop its failures to process complaints in

13

accordance with government civil rights administrative processing standards.  In other words

GAO's process does not follow the intent of the law.

A viable timely administrative process is mandatory for all federal government agencies

under ADEA.  However, at GAO the internal administrative process is in reality a sham, a

nullity, contrary to its GAO's duties under applicable law and under its own regulations as

contained in GAO Order # 2713.2 (Attachment 9).


**GAO Has Continually Misled the Court, the PAB, and Plaintiffs as to Centrally Controlled Discriminatory Employment Practices, and the Existence of Key Employee Profile Data and Statistics:**

At all relevant times during these events GAO has misled the Court in the underlying

putative class action, Chennareddy et al v. Walker, case # 87-3538.  The Court was misled as to

the non-existence of a centrally orchestrated scheme for ratings and promotions with age as a

primary determining factor.  The Court was misled as to the non-existence of a computerized

SAS data system containing employee data relevant to the plaintiffs' claims.  The court was

misled as to the standardized use of those systems in the ratings, promotion, and retention

process.  The way the data was used to measure the average age of the staff, and make

"adjustments" in performance ratings in order to favor younger persons in promotions is alleged

to be the root cause of the discrimination complained about herein.

The Court also denied a second intervention attempt by these three plaintiffs after a lapse

of several years.  Despite all of these procedural difficulties, these three plaintiffs persisted to

take their claims directly to this Court as they are entitled to do under applicable law.  Further,

their claims are timely under the equal pay act with its 2 and 3 year limitations.  Their claims are

14

also timely  under ADEA as an exception to invoking the statute of limitations following the

hostile work environment and "one identical violation" exceptions to the Morgan, supra doctrine.

And the violations continue.  Moses has once again filed a notice of intent to sue.  On

August 9th, 2006, Moses filed his latest notice of intent to sue (Attachment 8).  He filed this

latest notice in the interests of caution, in the event the Court rules that the recent demotions and

cost of living denials of Moses and about 300 others is a discrete event different in some way

from the same overall pattern and practice.  Under the existing law, Moses could file yet another

lawsuit as early as September 10th, 2006, making the same allegations all over again.  But this

action will not be required if any one of the plaintiffs motions are granted.

For all of these reasons, the Motion to Dismiss should be denied.

## II.  STATEMENT OF FACTS-DETAILS OF ADMINISTRATIVE EXHAUSTION, NOTICES OF INTENT TO SUE, AND ATTEMPTS TO INTERVENE, AS TO EACH NAMED PLAINTIFF HEREIN:

**A.  Mr. James D. Moses** (Moses).  Relevant timing information as to Moses complaints

are listed below.  Moses filed class action notices of additional violations and intent to sue, and

took actions in the United States District Court as follows:

1. With the Civil Rights Office of GAO, a notice of intent to sue as an unnamed plaintiff

on June 10th, 1999.  No response was received by his counsel.

2. With the United States District Court, as an applicant intervenor on May 3, 2000,

3. With the GAO's Office of Opportunity and Inclusiveness, on April 6th, 2005 in a

Notice and Re-Notice of Intent to Sue as an additional class representative alleging continuing

violations of ADEA (Attachment 7),

4. This lawsuit was filed on in the United States District Court on May 31, 2006 alleging continuing violations of ADEA.

5. On August 9th, 2006 Moses filed a new class action notice of intent to sue (Attachment 8) with GAO's Office of Opportunity and Inclusiveness. That notice incorporated by referenced the previous notice and re-notice of intent to sue (Attachment 7). The new notice was filed in the interest of caution, in the event this Court rules that the recent demotions and band II split Cost of Living Denials (COLA) for Moses (and the class of about 300 persons he seeks to represent) are discrete events and not a part of the overall pattern of age discrimination as alleged by these plaintiffs..

6. The Band II Split demotion, and the associated COLA denial became effective with Mr. Moses paycheck on February 16th, 2006, and each paycheck thereafter.

7. Mr. Moses timely complained, received counseling, and was investigated by official GAO investigators incident to his complaints on January 8th, 2002 and again in 2006.

8. The investigation of 2002 started on April 12, 2002, and ended July 8th, 2002. An investigator's report was received on July 15th, 2002 but never acted upon by GAO.

9. No final report or right to sue letter has ever been received from those administrative actions. Mr. Moses is informed by his office that the final reports of these investigations are about to be filed and presented to him. Obviously, those reports are long overdue from the GAO office of inclusiveness.

10. He has never received written notices of his rights in recent years, nor a notice of his right to file a lawsuit directly against the GAO in the United States District Court.

11. Moses was aware of the existence of GAO Order # 2713.2, the operative policy declaration of the Comptroller General, but never was presented with that Order incident to his own counseling as required by GAO rules contained in Order # 2713.2.

12. Mr. James Moses is employed by the GAO at the present time.

**B. Arthur L. Davis (Davis)**.  Davis filed the following actions and notices to GAO.

1. Davis filed with the Civil Rights Office of GAO, a notice of intent to sue as an unnamed plaintiff on June 10th, 1999, no response was received by his counsel.

2. With the United States District Court, as an applicant intervenor on May 3, 2000,

3. With the GAO's Office of Opportunity and Inclusiveness, on April 6th, 2005 in a Notice and Re-Notice of Intent to Sue as an additional class representative alleging continuing class violations of ADEA (Attachment 2),

4. This lawsuit was filed on in the United States District Court on May 31, 2006 alleging continuing and repeated violations of ADEA.

5. Davis filed complaints alleging continuing civil rights violations.  Those complaints were never investigated or resolved in accordance with GAO's duties under its own order # 2713.2.

6. Davis was never given the results of investigations or a "right to sue" letter.  His affidavit (Attachment 5, Page 2, ¶ 2) states:

> Throughout my career with GAO, I have filed complaints with the Office of Opportunity and Inclusiveness (formerly Office of Civil Rights) more specifically in 2002 and 2003 for race and age discrimination issues.  These complaints were counseled but not resolved.  I believe Investigations were held, and witnesses contacted, but no final report or resolution was ever given to me.  In this regard, this was consistent with GAO pattern

17

and practices of non-resolution of issues but instead to continue its discriminatory practices under the covers of its weak investigations of these issues. I seem to recall some oral references to timetables for complaints, but no notice to me of the existence of GAO Order Number 2713.2 was ever given, either orally or in writing.

7. Mr. Davis has never received any written notices of intent to sue, nor any results or report of the completion of the investigations.

Thus, Mr. Davis's experiences support the conclusion that GAO simply does not conform to the requirements for notice and resolution of administrative complaint required by Civil Rights regulations promulgated by the EEOC, or GAO's own version of its purported duties, Order # 2713.2. Moreover, Order # 2713.2 is not in conformity with the requirements of government processing of administrative complaints, and in particular class action complaints. No one of the Plaintiffs were notified in writing or "given their rights" with respect to the filing of a class action, as required by comparable EEOC regulations or implicit in GAO Order # 2713.2 (See Attachment 9 ¶ 6c, pg 3).

**C.  Mr. Jimmie Gilbert:**

Gilbert filed:

1. With the Civil Rights Office of GAO, a notice of intent to sue as an unnamed plaintiff on June 10th, 1999,

2. With the United States District Court, as an applicant intervenor on May 3, 2000,

3. With the GAO's Office of Opportunity and Inclusiveness, on April 6th, 2005 in a Notice and Re-Notice of Intent to Sue as an additional class representative,

4. This lawsuit was filed on in the United States District Court on May 31, 2006 alleging continuing violations of ADEA after expiration of the previous 30 day notice of intent to sue.

18

Gilbert's experiences were similar to those of Davis. Gilbert like Moses and Davis served as a part time civil rights counselor for GAO in the Chicago regional office. He, like Davis complained, but received no formal recognition of his complaints or resolution.

**B. If the Evidence Denied to Exist by GAO Actually Exists, Supports a Continuing Pattern and Practice of Age Discrimination, not only is The Motion To Dismiss Unfounded and Frivolous, This Case and Related Cases Are Over:**

If, as Plaintiffs contend, those records exist (which undisputed testimony shows it does) and the pattern of promotions contained in GAO's existing statistical system supports Plaintiffs position (of a universal age bias-for which substantial corroborative evidence exists) the effect upon defendant case is devastating. Not only must the instant motion to dismiss be denied as unsupported as to the statute of limitations, but GAO's entire defense collapses for this case and for all related cases. The pattern and practice will then have been proven. The only issue remaining is whether there is some yet unarticulated "meritorious reason" for GAO's demonstrated bias against older protected employees.

Plaintiffs will have proven that actual discrimination has existed for more than 20 years at GAO. GAO will then have to articulate in detail that "meritorious reason" and subject it, whatever it may be to the proof process. It is clear that no such reason as yet been articulated. GAO has many times stated that budgetary reasons are not involved. This leaves as the only viable reason to grant preferences to inexperienced younger persons that older experienced auditors and analysts are somehow inferior in overall performance for these analytical tasks to young persons. That position, the only remaining alternative is beyond credibility.

Therefore, pretext will be proven and this case and all related cases will be over.

19

**C.  The Doctrine of Equitable Estoppel to GAO's Statute of Limitations Defense:**

GAO has raised, while knowing full well that it has blocked access to the courts by unfair means, a statute of limitations defense.  That defense alleges the failure of the plaintiffs to file their claims in the United States District Court within 180 days of the occurrences.  Plaintiffs herein have demonstrated above that in fact (1) they did attempt to file repeatedly, (2) that GAO's administrative failures were defective and no administrative findings were ever furnished, and (3) GAO's grounds for objection to the furnishing of determinative data years ago when these plaintiffs first attempted to bring their claims before the District Court were false. And (4), had the pattern and practice data been furnished as requested by these plaintiffs in their initial F.R.Civ P. Rule 26(a)(1) "initial disclosures request" the pattern and practices would have supported a factual finding that the "continuing violations doctrine"[9] would have prevented any application of the Statute of Limitations of 180 days of "the occurrence" to the facts of this case.

Each promotion cycle brings a new violation where plaintiffs were barred from advancement by intentional age bias.  But there is another overriding reason to deny application of the statute of limitations to these plaintiffs.  That is under the doctrine of equitable estoppel and equitable tolling no statute of limitations is appropriate where action of a party prevents resolution of claims.  This doctrine applies to prevent reliance upon *ALL* statute of limitations. Those defenses are deemed by the Court to have been waived and set aside where the defending

---

[9]  Morgan did not entirely eliminate the "continuing violations" concept, but rather replaced it with a "single violations over a long period of time theory.  This is essentially what these plaintiffs allege.  However, this change in the law dis not occur until mid 2002 with the opinion in Morgan.  Thus, equity should require the GAO to not benefit from a delay in the resolution of this case based upon its own failure to act in accordance with its own regulations in effect at the time of the initial violations alleged by these plaintiffs.

party acts to prevent or trick the complainant into not filing or concealing evidence which would make complainants claims viable. That is precisely what happened here. The factual evidence of the age bias was denied to exist when at all relevant times it was in fact contained in GAO's massive data base system. GAO was not candid in discovery in the underlying case into which these plaintiffs sought to intervene.

GAO still persists in failing to disclose the existence and information contained in those critical data systems (See GAO Motion to Stay Discovery, accompanying this Motion to Dismiss). And also see Attachment one, which demonstrates that GAO continues to deny existence of the determinative evidence of GAO's actual practices amounting to obstruction of access to relevant and material evidence of the plaintiffs claims in this case.

Where there is a continuing pattern and practice, and where (as here) the GAO has misled the Court as to material matters (as here) the doctrine of Equitable Estoppel prevents GAO's reliance upon any otherwise applicable statute of limitations. The latest iteration of GAO's false and misleading position was presented to this Court as late as a hearing in March of 2005. In July of last year evidentiary filings demonstrated the falsity of GAO's representations that no data systems for professional employees personnel profiles existed.

**GAO has Misled the Court as to the Non-Existence of a Fully Articulated Personnel Database System, Centered in Washington, D.C.**

*Attachment 1* hereto contains evidence excerpting the representations of: *First*, GAO's counsel in the related case then before the court (*Chennareddy*, case No 87-3538 where the issues are identical), and *Second*, the refuting testimony of GAO official in charge of personnel data systems.

The Evidence presented to this Court in Attachment 1 is incorporated by this reference.

This factual matter is of the essence of all matters before this court in this case.  Upon this question rests the determination of whether or not an across-the-board central practice of age discrimination and manipulation of ratings and promotions based upon age actually ever happened or not.

The importance of the information now contained in the evidence of record in Chennareddy, bears repeating in this case as evidence of GAO's continuing bad faith representations to this Court.  Relevant pages of that reply brief excerpted herein are reproduced herein as *Attachment 1*, pages 1-5.  A summary of those incorrect representations by GAO follows

**From Transcript, Status Hearing, in Chennareddy, et al, v. Walker**
**(Comptroller General) case No 87-3538 (JGP), March 10, 2005:**

"But there's no sort of existing database per se"(Counsel for GAO, Braswell, DOJ);. And the refutation of those denials by William Mowbray, the GAO official in charge of the central personnel data systems.

**From Deposition Transcript,**
**William Mowbray, GAO Systems Manager (June 27, 2002)**
**(Related case, Vant Leven, et al v. Walker, case No. 00-2686 (JGP):**

Q.  So there is a separate [personnel information] database for each year, starting in 1989?

"A.  That's correct.

*(Pg. 10)*

A.  SAS is Statistical Analysis System.  It's a programming language" (Mowbray).

**(Pg. 20)**

Q.  So you get input from that data base-you get other input also?

A.  Exactly.

Q.  What is your other input?

A.  All of the demographic data such as race, gender **(Pg. 21)**, org. code, data of

birth......Social Security number of each person.  So by merging that, those files, with files from

the NFC system, which do have all that demographic data, I can combine those two and add in

the variants.

Q.  What is the official name of the databases, each year's database that you maintain that

we've been talking about?

A.  There is no official name.  Maybe "Bob's database" is it.


Therefore, as a factual matter, this exchange establishes that the data base system does

exist, and that it has remained functional since at least 1989.  GAO's representations to the

contrary are simply false.  This revelation has relevance and materiality on all aspects of this

case.

### III.  ARGUMENT

**I.  The Plaintiffs Have Timely Filed Their Complaint(s):**

**A.  The Statute of Limitations Rules Pertaining to Equal Pay Act Claims:**

Plaintiffs Equal Pay Act claims are subject to a two year statute of limitations, and three

years if the violations are willful.  These limitations are contained in the Equal Pay Act and

repeated in GAO policy directive Order # 2713.2, page 12, paragraph 10.  Therefore, the GAO's

motion, as to claims under that purported statute of limitations, is simply erroneous.


**B.  The Statute of Limitations Applicable to ADEA claims (By these Plaintiffs and the Class they Seek to Represent) Is Inapplicable:**

The statute of limitations is not applicable to block any one of the Plaintiffs access to the

Federal Courts for several separate but interrelated reasons.

First, the failure of mandatory administrative actions of GAO, in this case, and in the

related underlying case of ***Chennareddy, et al v. Walker, supra***, are sufficiently egregious,

obstructionist and dilatory to invoke the equitable jurisdiction of this Court and apply the

principles of Equitable Estoppel.  Where the defendant has benefitted from his inequitable

conduct,

> Equitable estoppel takes the statute of limitations out of plan for as long as is necessary to prevent the defendant from benefitting from his misconduct.
> ***Chung v. U.S. Dept. Of Justice, et al*** 357 U.S. App. D.C. 152; 333 F3d 273, 279 (D.C. Cir 2003), citing ***Currier v. Radio Free Europe***, 333 U.S. App. D.C. 50, 159 F.3d 1363, 1367 (D.C. Cir. 1999);***Cada v. Baxter Healthcare Corp***. 920 F. 2d 446, 450-452 (7th, Cir. 1991).

Had not the GAO acted in such an obstructionist manner this case, as well as the related

case in which these three plaintiffs timely sought to intervene, relief would have been granted

and this case would have been over, years ago.

Second, each of the three Plaintiffs did in fact notify the Civil rights department of GAO

(the Civil Rights Office) on multiple occasions of their intent to sue.

Third, they also attempted to sue on three occasions.  They attempted to gain access to the Federal Court by intervention twice.  This occurred once in early 2000, and once in 2002.  They, after being frustrated in their attempted intervention by GAO's incorrect and disingenuous assertions, that filed this separate case in their own names on May 31, 2006.

Fourth, the experiences of these Plaintiffs and co-worker Chennareddy demonstrate (See Affidavits, (Attachments 4, 5, 6) to the effect that the Civil Rights department of GAO (GAO's Office of Inclusiveness) was itself obstructionist, did not follow its own regulations, did not notify Plaintiffs of their rights with notices of applicable deadlines in writing at the first counseling session, and never informed them of the applicable rules of procedure as required by their own regulations.  Those regulations are contained in GAO Order # 2713.2 (Attachment 9).

Fifth, two of the Plaintiffs, Moses and Davis, did in fact file formal complaints.  Davis's was never processed.  Moses's two administrative claims, although processed and investigated have never been finished as of the date of this opposition after being more than two years in the administrative process.  In the case of a filed administrative complaint, the existence of which here cannot be challenged, the statute of limitations does not begin to run until the administrative processing is completed.  Under these facts, once the 180 days of reasonable time allowed for timely administrative processing has run (as in the case of both Davis and Moses), the employee may elect to file his lawsuit directly in the United States District Court once he has given his 30 day notice of intent to sue.  That is what happened here.

Moreover, since all three of these plaintiffs seek to file as class representatives, only one need be successful for this lawsuit to remain "live".  Therefore, under the facts of this case, no

part of the statute of limitations in for untimeliness in filing is applicable.  This is true ***even if*** the continuing violations doctrine for civil rights cases ***and/or*** if the doctrine of equitable estoppel is found inapplicable here.

Sixth, it appears from the affidavit of Dr. Chennareddy, Attached hereto as Attachment 6 that the standard practices in GAO's Office of Opportunity Inclusiveness are designed to thwart timely filings.  For example, Dr. Chennareddy finally received on July 26th, 2006, the results of investigation of his 3 ½ year old complaint.  In that notice, although he was informed of his appeal rights, he was not given a copy of the detailed timing and procedures required to be followed as contained in GAO Order # 2713.2.

Seventh and finally, the one systemic intentional hostile work environment theory does in fact apply to the facts of this case.  GAO's actions in all of these related cases are just one long identical pattern of excuses to get rid of the old folks as so succinctly stated in the Affidavit of Arthur L. Davis (Attachment 5, page 3, ¶ 5).

> My efforts were aimed at constructive correction of GAO management's blatant across the board attempts, unfortunately largely successful, to first discredit, then terminate by pressure and personal affronts essentially all older experienced employees.  Those "older experienced employees" were those who had reached by that time a mature age, and a knowledge of "company policy" as distinguished from "company propaganda".

The affidavits of Moses, Davis and Chennareddy, hereto attached attest to the nature of the claims of these three Plaintiffs.  It is also worthy of note that Chennareddy, although himself a complainant in the underlying original case, 87-3538, is by definition of the class herein, a member of the class of this case (in the event the class is certified as defined herein).  These affidavits, in the context of the entire history of these related cases, and the expected pattern to be

reported upon by the now available GAO statistical system would appear to prevent, as a

determinative factual matter, any valid argument that the continuing violations pattern does not

exist.  This is particularly true unless and until the GAO is forced to disgorge the information it

has held secret for over 20 years and misled the Court to the effect that such information never

did exist.

The accompanying request for an evidentiary hearing is considered to be of the essence of

Plaintiffs' case and is hereby requested to occur prior to any determination as to the merits of

GAO's Motion to Dismiss in this case.  That hearing should address the failure of GAO to

candidly disclose its statistical data and the central mechanism where by the astounding near

100% bar to promotions of older employees is made absolutely effective.

### C.  ADEA Claims by a Federal Employee Are Subject to Two Separate Routes:

The ***Stevens*** case, cited earlier, also clarified the meaning and construction of the ADEA

statute as it applies to federal employees.  The Court in ***Stevens v. Department of the***

***Treasury***, 500 U.S. 1, 7 stated:

> **ADEA** provides two alternative routes for pursuing a claim of age discrimination.
> An individual ***may invoke the EEOC's administrative process and then file a***
> ***civil action in federal district court if he is not satisfied with his administrative***
> ***remedies***. See *29 U. S. C. § § 633a*(b) and  **[*6]**  ©. A federal employee
> complaining of age  discrimination, however, does not have to seek relief from his
> employing agency or the EEOC at all. ***He can decide to present the merits of his***
> ***claim to a federal court in the first instance.*** See §  633a(d). [emphasis added]

Here, both Davis and Moses attempted to enter the administrative route, but were

frustrated by the inaction and lateness of the investigative process coupled with the refusal of the

United States District Court to allow their original unquestionably timely attempts at intervention

27

into the Chennareddy putative class action.  But even so, their actions, when waiting for the administrative route to furnish relief were valid, since they waited more than the required 180 days before filing their individual lawsuit.

But again, given the inactions of GAO's administrative process and failure to follow its own time limitations, equitable estoppel should excuse any possible interpretation of untimeliness as due to GAO's failures to timely act, and failure to inform the Plaintiffs of their duties to be timely as the act and EEOC regulations, and even GAO's own regulations require.

## IV.  CONCLUSION

The Court is requested to:

1.  Deny the Defendants' Motion to Dismiss the Complaint.

2.   The Court should Order forthwith Order Injunctive Relief in the form of production of full system descriptions, full data, full system report descriptions, and to cooperate fully with a total disgorgement of all information contained in that system relevant to the actual patterns and practices alleged by Plaintiffs in these related cases for the past 20 years, back to 1985.

**OTHER MATTERS:**

(1)  A hearing on this motion is respectfully requested:

(2) The previously filed objection to the representation by the United States Department of Justice of two separate agencies of the United States Government having inherent, apparent and real conflicts of interest, is incorporated by this reference.

28

(3)  Plaintiffs have previously requested a jury trial.  That request is renewed as to any disputed facts subject under existing law to a jury determination, as for example the effect of allegations of violations of the equal pay act.

(4)  Plaintiffs hereby request a hearing on this Motion, which is in reality a motion for Summary Judgment, with witness as to any key evidentiary matters.

Respectfully submitted,

/s/ charltonw 2428

Walter T. Charlton, D.C. Bar # 186940

Counsel for the Plaintiffs and the Class

They Seek to Represent

230 Kirkley Road,

Annapolis, Maryland 21401

Telephone 410 571 8764
Email, charltonwt@comcast.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Arthur L. Davis, et al ) | |
|    and all others similarly situated ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | **CASE NO: 06 1002 (EJS)** |
| ) | Mag.    (DAR) |
| DAVID M. WALKER ) | |
| Comptroller General of the ) | |
| United States c/o United States General ) | |
| Accountability Office (GAO) ) | |
|    and ) | |
| Michael Wolf, Chairman ) | |
| United States Government Accountability Office ) | |
| Personnel Appeals Board (PAB) ) | |
|   DEFENDANTS. ) | |
| ) | |

**INDEX OF ATTACHMENTS TO OPPOSITION TO MOTION TO DISMISS**

Attachment 1- Excerpt of Status Hearing March 10, 2005, With explanatory material.
       And, Excerpt of William (Bob) Mowbray Deposition in related case
       taken on June 27, 2002.

Attachment 2-Transcript Status Hearing Chennareddy et al, case No 87-3538
       March 10, 2005.

Attachment 3-Transcript of Mowbray Deposition in related case, June 27, 2002.

Attachment 4- Declaration of Mr. James D. Moses, September 2006

Attachment 5-Affidavit of Arthur L. Davis, September 2006

Attachment 6- Affidavit of Dr. Venkareddy Chennareddy, September 2006

Attachment 7-Notice and Re-Notice of Intent to Sue, April 6, 2005

Attachment 8-New Notice of Intent to Sue, August 9, 2006 (for recent ADEA violations)

Attachment 9-GAO Order # 2713.2, dated 1997 (the "live" Order re notices,
        and Administrative Procedures for GAO civil rights cases.

Attachment 10-Transcript of Deposition of William (Bob) Mowbray,
        May 16th, 2008.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **Arthur L. Davis, et al** | ) |
|     **and all others similarly situated** | ) |
| | ) |
| **PLAINTIFFS,** | ) |
| | )     **CASE NO: 06 1002 (JGP)** |
| | ) |
| **DAVID M. WALKER** | ) |
| **Comptroller General of the** | ) |
| **United States c/o United States General** | ) |
| **Accountability Office (GAO)** | ) |
|     **and** | ) |
| **Michael Wolf, Chairman** | ) |
| **United States Government Accountability Office** | ) |
| **Personnel Appeals Board (PAB)** | ) |
|    **DEFENDANTS.** | ) |

---

**ORDER**

Upon consideration of Defendants' Motion to Dismiss, and it appearing that:

1.  Plaintiffs have attempted to timely file their complaints to bring them before this Court in accordance with the time constraints of the several statutes here involved; and

2.  Each of the three plaintiffs herein complained to their employer in a timely manner, were denied access to the administrative process through no fault of their own, indeed it appears that the GAO administrative process was never completed by GAO through fault in its own in-house counseling personnel to complete their investigation and administrative decisions.

1

3.  Plaintiffs have alleged that GAO has misstated to the Plaintiffs and this Court facts leading to conclusions that these three plaintiffs were not entitled to intervene in an ongoing case with the same issues now before this Court.

4.  The Plainti8ffs allege that the misstatements of fact by GAO to this Court are of long standing origin, and if indeed these three plaintiffs were late in any respect in filing their claims in this Court the lateness may be fairly attributed to delay resulting from actions of the Defendant, not the Plaintiffs herein.

5.  The Court therefore, hereby invokes the principles of equitable estoppel and equitable tolling and denies application of any consideration of the statute of limitations to bar the claims of these plaintiffs.

Wherefore, premises considered, the Motion to Dismiss is Denied.


_____

Deborah A. Robinson, Magistrate Judge

2

**Certificate of Service**

I hereby certify that I mailed, first class postage prepaid, a copy of this Plaintiffs

Opposition to Defendants' Motion to Dismiss on this 11th , day of September, 2006 to counsel for

the Defendants:


Harry Roback, AUSA

Judiciary Center Building

555 4th, Street, N.W.

Washington, D.C. 2001.


        /S/ Charltonw 2428
_____

Walter T. Charlton