## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Arthur L. Davis, et al** ) | |
| **and all others similarly situated** ) | |
| ) | |
| **PLAINTIFFS,** ) | |
| ) | **CASE NO: 06 1002 (JGP)** |
| **v.** ) | |
| ) | |
| **DAVID M. WALKER** ) | |
| **Comptroller General of the** ) | |
| **United States c/o United States General** ) | |
| **Accountability Office (GAO)** ) | |
| **and** ) | |
| **Michael Doheny, Chair** ) | |
| **United States Government Accountability Office** ) | |
| **Personnel Appeals Board (PAB)** ) | |
| **DEFENDANTS.** ) | |
| ) | |

### AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS
### AND IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF
### - MR. JAMES D. MOSES
(Presently Band II A, GAO Employee/Auditor/Evaluator)

After first being duly sworn in accordance with law, I hereby state under the penalties of

perjury as follows:

### I.  IDENTIFICATION AND KEY PERSONNEL DATA.

My name is James D. Moses.  I am 64 years old; my date of birth is December 20, 1941.

I am an African American male.  I was hired by GAO on March 3, 1967.  I have been at this job

for nearly 40 years.

My highest G/S classification was  Program Manager GS 14.  I was reorganized to an

equivalent band designation in 1989, GAO Band II.  Recently I was reclassified to the lower

division of Band II, Band II (a).  This is a demotion in rank.  I was a senior member of Band II.

Now I am a junior member of Band II.  This is because Band II (b) is higher in rank than

1

Band II (a).

My Technical job description is Senior Analyst, Financial Management and Assurance, Los Angeles, California.  I have held this title since  2003.


## II.  VERIFICATION OF COMPLAINT AS FILED

I have read carefully the complaint filed in the United States District Court for the District of Columbia, in case No 06 1002 JGP, and all of the statements contained therein are true and correct to the best of my present knowledge, information, and belief. The facts upon which I base this statement follow.


## III. DETAILS OF IMMEDIATE AND IRREPARABLE HARM TO ME AND MY PROFESSIONAL STANDING AT GAO IN THE PAST 6 MONTHS:

### A.    Statement of Facts as to Timing of My Complaints about the Band II Restructuring and the Associated Cost of Living (COLA) Denials:

The proposed Band II Restructuring became effective on about January 8, 2006.  The series of events progressed as follows:

1.  About the first week in January, 2006 I was informed by the FMA Managing Director that I was placed in Band IIA.

2.  Before January 20, 2006, I asked the Comptroller General (CG) to reconsider his decision to place me in Band IIA instead of Band IIB..

3. On February 7, 2006, I received the CG's response dated February 2, 2006, denying my request to be placed in Band IIB.

4.  On February 7, 2006, I wrote the CG a letter acknowledging his decision to not place

2

me in Band IIB and asked to meet with him personally.

    5.  The CG granted me a telephone meeting with him on February 16, 2006.  After about 40 minutes of talking with me, he did not grant my request to be placed in Band IIB.  (The CG was accompanied by Ms. Barbara Sember)

    6.  On February 17, 2006, I contacted a counselor in the Office of Opportunity and Inclusiveness (OOI) about filing a discrimination complaint against the Band II Split.  At that time, my initial contact with a counselor for this complaint, I was not informed in writing of my right to file a class complaint as required by GAO Order # 2713.2.

    7.  March 30, 2006, filed a formal discrimination complaint with OOI.  I did not state the complaint in writing to include the fact that I wished to make it a class complaint because I was never informed by OOI that this was necessary.

    8.  On April 25, 2006, the OOI Managing Director acknowledged my complaint of discrimination.   There was not any recognition that it was or was not a class action complaint.

    9.  On June 5, 2006, I applied for promotion to Band IIB.

    10.  On June 26, 2006, I was notified that I did not make the BQ list for the promotion.

    11.  On  July 6, 2006, I sent an email to OOI to amend my complaint and add race and age discrimination and retaliation for the Band IIB promotion denial.

    12.  As of today, September 9th , 2006 I have not received the result of the investigation, for the complaint filed in 2006, however I did receive notices of ongoing investigations of the 2006 clams.  I received the results of the 2002 investigation, but I have never received any right to sue letters or formal notices of denial of my claims as contemplated and required by the pertinent Official GAO Order, Order # 2713.2.

    13.  My first paycheck with the restructured pay, with cola denial was on February 16[h].

2006. All persons similarly situated with me, that is Band IIA analysts, over 40 years of age who were denied their status as full band II members, and thereafter placed in subordinate positions to the younger persons who received Band IIB status, were likewise notified in accordance with the foregoing schedule.

14. Notices of Intent to Sue and Motions to Intervene in On-Going Court Proceedings: I have filed notices of intent to sue through my counsel, Walter T. Charlton, of Washington D.C. on the following dates. June 10th, 1999, as an unnamed Plaintiff; On May 3, 2000 as an applicant intervenor in Chennareddy, et al Class action, Case Number 87-3538 USDC DC; on April 6th, 2005 in a Notice and Re-Notice of Intent to Sue as an additional class representative, and intervenor and finally, on August 9th, 2006 my counsel filed for me another notice of intent to sue as a class action. I am informed by my counsel that the certified mail delivery occurred on August 14th, 2006. The tracking number is 7005 3110 0001 4015 5920.

### B.    My Experience and Training Are Being Wasted by GAO's Discriminatory Policies:

The expertise and experience that I have developed over close to 40 years with the Government Accountability Office (GAO) is a valuable asset. Those experiences and training are being wasted by my being sidelined to make way for younger persons. I and my peers, also persons over 50, also believe that our experience in governmental analysis, and along with it a maturity in judgment, are valuable assets to this organization and the government functioning as a whole. GAO's age discriminatory practices contravene proper and efficient use of this experience.

In addition, policy of demotions in rank and elimination of any possibility of leadership

rolls for the older employees is not based upon any merit or actual leadership qualification criteria, but rather based primarily upon age.  GAO's ratings system is entirely quota driven. What GAO does is decide what they want to do to "shape the staff profile", using age as the primary criteria, which is  entirely subjective ratings criteria to achieve the desired result.  The criteria used have nothing at all to do with either past performance or actual job production or accomplishments.

The result is ratings that are entirely politically based and which, I am sure the data will show, track nearly one-for-one the policy of getting rid of the older workers, and pushing hard for much younger replacements.  As to the most recent events, which include the downgrading of employees over 50, about 300  persons similarly situated to me were similarly affected by the same acts.

### III.  THE SECRET GAO STATISTICAL SYSTEM WOULD VERIFY THESE ALLEGATIONS:

I have recently learned that GAO has its own in-house statistical and data base system which it has maintained for over 20 years.  This system has been so secret that it was denied to exist by GAO in cases before the United States District Court.  One of those cases was the case in which I attempted to intervene before this case was filed.  *Chennareddy v. Walker*, 87-3538, a case which has been in the court system more than 20 years.  I am informed by my counsel that GAO denied the existence of that system both in formal discovery and in open court by miss-statements to the Federal Court Judge.

I am confident that observations I personally experienced as an individual, and as a counselor for many other GAO employees who came to me in my capacity as counselor, will be

verified by the data in that system, if and when the Court grants access to that system and its

data. Those observations are to the effect that there has existed for more than 20 years an

identical pattern and practice of age discrimination at GAO. That pattern is pervasive in that it

affects all nuances of employment and personnel decision making. This statement includes

hiring, ratings, bonuses, advancements and promotions, among others. One pervasive practice is

to place untrained persons in charge of jobs in order to place the older experienced persons in a

subservient position.

My highest role as a GS-14 Audit Manager was special because I earned it through hard

work, accomplishments, staff development, and competition against my peers. In 1984 I was

placed in charge of an entire issue area with more than 10 staff people reporting to me. I gained

a reputation of being able to work effectively with hard to manage staff and had several assigned

to my area. I was able to effectively manage all of the staff assigned to me and was able to get

maximum productivity and accomplishments out of those persons GAO had effectively written

off as ineffective and non-productive. This situation continued during the period 1984 to about

2000.

Then, in the late 1980's GAO dropped the GS system and adopted a broader Band

System. GS-13 and 14 were combined into one band (Band II). As a GS-14, I realized this was

a demotion, and I and many others fought hard against this consolidation, but in the end we lost.

The result was that myself and others like me in the higher end of the newly created "Band"

(GS-14's) lost their higher job classification previously contained in the GS grades (GS 14s

higher than the 13s). However, many former GS 14s maintained their roles as managers of an

issue area. I was one of those lucky ones. This reorganization had the effect, for me, of a de-

facto demotion with the same responsibilities. My observation was that it adversely affected the

older employees to a much greater extent than persons under 40.

## IV.  RECENT EVENTS AND ACCELERATION OF AGE DISCRIMINATION:

Now, in 2006, GAO has decided and accomplished another purported "restructuring" with similar results.  Older employees get demoted by management with management's ultimate and obvious objective of their termination.  The method is purported to be fair, with a  complete reevaluation of each employee in Band II, however with the result actually dependent entirely upon age.  This is the same result as earlier restructuring, only the method is new.  The Comptroller General's  "re-shaping of the staff" is indeed working.  The result is foregone in its conclusion, that is "get rid of the old folks" is the theme, and that part has not changed over the last 20 years.  The end result is the same; a demotion of the older employees with a lowering of both pay and status.  And it is done, contrary to the prerequisite of unsatisfactory performance, without regard to actual performance over the years, or capability now of a particular employee.

Again, I am sure that the statistics from the secret system that GAO maintains will validate these observations.

Band II staff were split into Band II B, for leaders and managers with higher pay scales and Band II A, persons classified via their predetermined (based upon age) ratings as merely average or below workers.  I was placed in Band II A, based upon very recent and suddenly lower ratings even though my production and value remained the same.

I was shocked, embarrassed and humiliated by being placed in this lower Band, along with nearly my entire peer group, the older employees.  We were all psychologically drained.

 This pattern is basically the same as in the earlier "reorganization".  Money-wise the effect paralleled the ranking demotions.  My opportunity for promotion was taken from me by the split and my status and role as a manager was taken by creation of the "Bands" substituting

for GS grades.  Now, it is taken again in the split of the bands into high and low pieces.  In addition, my status and role downgrade resulted in a denial of any further government-wide Cost of Living Adjustment (COLA).

My  performance actually has always remained satisfactory or better.  And my official ratings always have been "satisfactory or better".  Therefore, the downgrade in rank is contrary to law.  Also, the denial of the COLA is contrary to law in that the denial violated the strictures placed upon the Comptroller General in public law H.R. 2751, as not applicable to those who perform satisfactorily.

But it was nevertheless applied, to more than 300 other persons similarly situated.  I believe that this violates the new rules set out by the Congress as well as is a blatant violation of ADEA, based upon my own knowledge of what the statistics will undoubtedly prove.

The Comptroller General, Mr. Walker, told me in a telephone conversation that legally I was not demoted because I didn't lose any money.  This is untrue. I did lose money in the last "restructuring". But more importantly, what actually happened with both of the foregoing moves, was a reduction in rank, followed by a virtually automatic reduction in ratings, followed by the second reduced ranking all pointing the way to the door for me and other older GAO employees.

I believe all of these machinations by GAO results in an unmistakable pattern of down with the oldsters, up with the youngster subordinates.  That pattern blots out all other factors combined.  Also, I did lose money immediately as well as for the rest of my life as indicated below.  More importantly, my professional status has been destroyed and rendered dead end, not because of failure to perform, but rather because of preconceived illegal rating criteria based upon age.

8

I also informed Mr. Walker that the performance evaluation system that he put in place had not been validated as fair and equitable, and that some minorities, especially older African Americans, were not being equitably rated.  One area of the rating system where older African Americans and others were falling short was in the "role model" category.  I informed him that I believed older African Americans and others were receiving a disproportionate number of role model on performance evaluations, myself included.

For example, under the old performance evaluation system I almost always received the highest rating marks, outstanding, in leadership and critical thinking, but I have never received a role model rating mark in any rating category under the new system.    Mr. Walker told me that he would check into both of these issues—the rating system in general and role model in particular—that I brought up.  .

In essence, the last  "reorganizations" effectively ended any chance I had for promotions in the future, and placed me as subservient to many younger and less qualified employees.  Since this pattern applies nearly exclusively to older employees, this appears to me to clearly violate the anti-discrimination policy of GAO, is a prohibited personnel practice, and it violates ADEA.


## V. GAO'S RATING SYSTEM IS DISCRIMINATORY:

**The Definition of Role Model In GAO is Age Discrimination Per Se**

In normal English usage a Role model is defined as "a person whose behavior in a particular role is worthy of imitation by others."   In general, naturally, you would expect the role models to be the older, more experienced, and seasoned veteran of the organization with outstanding technical expertise.  This is not true at GAO.

In fact, I believe that at GAO you will find that older more experienced employees are

9

receiving less role model rating marks than the younger less experienced staff.  This would seem to be totally opposite of what a reasonable person would expect.  I believe that the withholding of role model rating marks had significant negative impact on older GAO employees causing a disproportionate number of them to be placed in the lower Band IIA level during the split and is continuing to have negative impact when competing for promotion to Band IIB.  For example, after my telephone meeting with Mr. Walker on 2/16/06, I was very optimistic about my chance of getting a Band IIB in the first round of promotions after the split.  Mr. Walker told me that I didn't get a Band IIB during the split because of my rating score, but that I would receive a bonus for being in the top 20th percentile of my peer group.  I did receive that bonus.  HE also told me that my last rating was good and that I needed to continue getting good marks prior to the June promotion and that I should be alright.  Honestly I had considered not applying for the Band IIB promotion because I really didn't want to endure more embarrassment.  But after my discussion with Mr. Walker I thought I should test the water, so to speak.  Well I did apply and didn't even make the Best Qualified (BQ) List.  The feedback given to me was that I was very close to making the BQm but I "fell a little short".

While the rating mark of role model had devastating impact on older more experienced GAO employees during the Band II Split, causing a disproportionate number of them to be placed in the lower Band IIA level, it was not the only factor.  The entire process was designed to ensure that a representative number of older more experienced staff would not receive the Band IIB level.  For example, three criteria were used; the last 3 years of rating marks (which were under the new  rating system that had not been validated), roles and responsibilities for those 3 years and future potential for carrying out leadership roles.  Those criteria completely threw out all experience, accomplishments and ratings except the last three years.

This, in essence, means that equal credit was given to someone with less than 5 years of experience with GAO and someone with up to 40 years of experience. Also, roles and responsibilities for the last 3 years were not reflective of prior significant roles. Further, GAO management recognizes, because of the large number of complaints that the criteria used in the Band II split was not fair to older more experienced staff and is already trying to fix it. For example, in a recent SES off-site meeting most of the time was spent on performance appraisal data and diversity issues and future changes to the performance management system which were used for the Band II split.

In addition, at the time of my phone conversation with Mr. Walker I did not realize that this indeed was the next to last step in a forced retirement. That event for me has not yet occurred, but only because I have decided to file this lawsuit to protect my rights and the rights of all others similarly situated.


## VI. GAO'S SECRET PERSONNEL DATA BASE SYSTEM:

Further, I have learned that GAO maintains a secret personnel system containing, among other key data, the age of each employee. GAO uses this system during the ratings and promotion process to achieve its policy aims. Those are to rid itself of persons of mature age. Of course, those persons are also those persons who are the most knowledgeable and with the greatest "corporate knowledge" of governmental functions they have been auditing and evaluating for their entire careers. I understand that GAO has not been candid with the Federal Court in still denying the very existence of that data base and systems. If access to that system and data could be gained, I believe my observations would be confirmed by GAO's own data and that data would demonstrate once and for all, with conclusive effect, the across the board

nature of GAO's age discrimination for the last 20 years, and including the present form of that discrimination.

In 2004, GAO was granted additional personnel action flexibly based on the Comptroller General's commitment to Congress to continue providing an across the board pay increase to all GAO employees who "meet expectations."  But as put into practice GAO failed to meet this commitment.  It appears to me that the Comptroller General did not follow his commitment to Congress when he enacted the flexibility provisions contained in the GAO Human Capital Reform Act of 2004.  I have instructed my counsel to furnish more details on these failing in a separate argument in this filing.

## VII.  DETAILED COMPUTATION OF THE FINANCIAL IMPACT OF THE PAY CUTS UPON ME:

According to the GS Salary Table, my pay was cut about $3,900 for 2006.  But the overall and long-term monetary impact is much greater than this when one considers the cumulative effect on retirement.  For example, if I retired this year, the $3,900 that I lost because of the split would not be included in my highest 3 years earnings (the high 3).  Thus my high 3 would be reduced by $1,300 ($3,900 ÷ 3).  My retirement would be computed at 75% of the average of my high 3, so I would lose about $1,000 a year for the rest of my life.  Also, the impact on my retirement would be compounded *for each additional year that I do not receive a COLA*.  Thus, the impact of this one thing alone, denial of Colas, is quite material.  And my rating at all times to date was that I did "meet expectations".  Thus, GAO's actions toward me are not authorized by H.R. 2751.  I believe that similar violations apply to most, if not all of t-he persons who did not receive COLAS this year.

## VIII. RATINGS ARE BIASED AGAINST OLDER EMPLOYEES:

I always received highly favorable ratings (the foundation for advancement and promotions in GAO) and was a high level group leader on multiple projects until I reached my mid 50's. My leadership and accomplishments led to my final promotion, to GS-14, the second highest line manager position in the field at that time (1984). Not only was I the group manager for a major issue area with 10 people reporting to me, I was also the Civil Rights Counselor, for the Los Angeles Office for more than 20 years until about 2000 when central management in Washington, D.C. took over the function of counselors in the field. As a counselor, I was personally involved in many cases dealing with age discrimination across GAO. Over those 20 years I gained what I believe is a through understanding of the *actual* promotion and ratings process as distinguished from what GAO claims that process to be.

An analyst's personal advancement progress and *capability for tasks* at GAO typically starts with a learning curve which continues to increase as experience is gained in the particular field or fields to which he/she is assigned and the methods used to do GAO work. So long as an employee retains his/her health and mental awareness, the capability generally increases with time and experience in his/her particular duties at GAO.

For the early years of the learning process, the *ratings curve* is much the same as the actual learning process (discussed immediately foregoing), reflecting that same increasing curve. But once a "top age" is attained, all of this changes. The change is not the result of diminishing abilities of the employee with age, but rather based upon two factors driven by management policy.

## IX. TOPPING OUT IN RATINGS:

Two factors, driven not by any fair evaluation, but rather are driven by management's

13

well known but unwritten desire to favor young persons. These factors cause older employees' ratings to top out at about age 50. The two factors are, (1) by letting it be well known that oldsters should not be favored for promotions; and (2) the giving of choice and high visibility assignments to those young persons pre-selected for advancement.

The result of these actions as to fairness in ratings is that ratings are biased and based not upon production or achievements but rather the two foregoing factors.

The automatic result is that young persons get the great bulk of all promotions, at all levels. Upon reaching that "top age", generally starting at about 50 now, and about 43 in earlier years, management has made it perfectly clear to the SES staff, the raters, that oldsters should be gotten rid of and that youngsters must be promoted. And because of the inherent bias of the process, the ratings become a self-fulfilling and foregone conclusion.

But this system, to be at all workable requires that the young persons gain some semblance of experience in difficult matters. This problem is solved by the demeaning and lowering of status of the older experienced analysts who are assigned to work for the young persons, who then get all of the glory and prestige of the efforts of the older experienced analysts. The result is that the young persons get promotions and ratings that they do not deserve.

By design, those young persons selected for advancement are given the choice assignments, resulting in higher ratings (as expected by the self-fulfilling policy) and resulting preferences in jobs, ratings, and retention. The raters, themselves middle management persons, endeavor to please upper management and garner favor with upper management by showing that they know how to downgrade the oldsters, and upgrade the youngsters. This system of intentional age bias has been in effect, to my knowledge since at least 1986.

Early in my career, I was performing assigned tasks, receiving high ratings and was generally viewed by management and my co-workers as a model professional level evaluator/analyst. However, with the passage of time I automatically, with no change in performance, became a member, over 50, of the disfavored age group. Then, and only then, did my rating fall. I was relegated in job assignments to reporting to younger staff.

After tolerating this blatant discrimination as long as I could, I attempted to intervene into an ongoing related case alleging age discrimination, *Chennareddy et al v. Walker*, USDC DC 87-3538. My intervention was heretofore denied, and no relief has ever been granted in that case although the case is still on-going.

On January 18, 2002, frustrated and angered by further discriminatory actions of my superiors, and continuation of the demeaning and intentional mistreatment, designed to cause my resignation, I filed an administrative discrimination complaint with GAO's Civil Rights Office (now the Office of Opportunity and Inclusiveness). That complaint was again filed on the basis of both age and race. In addition, I alleged retaliation for having attempted to intervene in the afore-cited *Chennareddy v. Walker,* case.

Based upon information passed on to me by the independent investigator, investigation of the complaint revealed that I was not treated fairly or in accordance with the applicable rules. However, the complaint was never resolved and GAO has, contrary to its duty for timely resolution, failed to issue a final agency decision. The discrimination has continued unabated and the results have now included a second downgrading and denial of cost of living increases applicable to both satisfactory and unsatisfactory performers. Given these new violations of what I perceive to be my civil rights, I was compelled to file the recent United States District Court case.

## X. RECENT MANIFESTATIONS
## OF THE DISCRIMINATORY POLICY AND PRACTICES:

In December 2005 and January 2006, GAO adopted a new series of actions designed to eliminate older persons from the staff.  These actions were named "Band II Restructuring".  This new plan worked as follows.  Band II's were split into two groups, Band II B (the highest) and Band II A.  The determining criteria were stated by management using the standard terminology for subjective ratings of personnel with the added factor being considered most important, that of "role model".  Since GAO's ongoing policy was to downgrade all older employees, and I had been continually subjected to being downgraded in leadership roles to a subservient position (along with all older persons similarly situated) it was inevitable that I would be downgraded into the lower category.  One key reason for this is that all experience except for the last three years was simply thrown out, placing older people at a major disadvantage of being placed in the Band II B.

As mentioned foregoing, one key component in the new discriminatory scheme was the emphasis of the new ratings factor of "role model", whatever that subjective and undefinable terms is supposed to mean.  As an older employee, who was predetermined to be on the way out, it was of course inevitable that as a "role model" I would be rated poorly.  The application of this factor to favor younger employees, standing alone, is, within the scope of GAO's statutory mission and activity, patently absurd as well as a manifestation of discrimination based upon age.

## XI. DISCRIMINATION AGAINST EXPERIENCED (OLDER) ANALYSTS
## IS HARMFUL TO THE AGENCY'S FULFILLMENT OF ITS STATUTORY MISSION

The reader should be aware that the statutory mission of this agency, and all of these

analysts, is highly technical and based in large measure upon objective and truthful measurements of information and data. GAO receives requests from Congress for technical review, audit and observations in difficult situations. The mission of the analysts is to respond, and respond correctly to the questions asked. The personality or perception of each analyst, one to the other internal to the organization, has little to do with the furnishing of correct answers. The looks and demeanor of each analyst, the color of skin or national origin has little to do with the analysis required. What counts are experience, training and skill in the necessary aspects of a particular job. GAO's system of evaluation and ratings of employees, simply discard experience and years of demonstrated success in favor of factors more appropriate in a personality contest than a technical analysts' position and duties.

Rating by a superior as "role model" being a matter of personality is akin to making good looks a prerequisite for retention on this technical job. As I started off, this aspect of GAO's mission is worse than poorly conceived, it is akin to preferring form over substance. And that is a very dangerous error in the context of GAO's mission, to truthfully and accurately report facts, not to please people by being a "role model".

I have developed my own opinion, based upon my 20 years experience as a counselor and my entire career experience at GAO as to the nature and effectiveness of GAO's ratings system. That opinion is-- that the term "role model", now used as a main determinant factor to decide job ratings and who gets to lead a team to answer the questions of congress to GAO, is nothing short of a device to continue GAO's discriminatory policies of age and racial discrimination.

That system and the other biased factors used by GAO build a false reason, i.e. false ratings, to accomplish that illegal objective with impunity. Certainly, that is the result about

which I complain, and which resulted in my filing of this case.  It is also the result of many

interviews that I have conducted over the 20 years I served as a counselor.

## XII.  MY ATTEMPTS TO MITIGATE DAMAGES TO ME:

In accordance with the intent of the scheme, in December 2005, I was notified that I had

been placed in Band II A, the lower group.  I appealed to Mr. Walker, about being placed in this

lower category and asked the CG to reconsider his decision.  On 2/7/06, I received the CG's

decision not to change his position of placing me in Band II A.

In attempting to redress these wrongs, I asked Mr. Walker for a meeting in person to

discuss his position on this issue.  He did not grant the personal meeting but spoke to me by

telephone on 2/16/06.  During this 45 minutes telephone meeting, I informed Mr. Walker that I

felt I had been treated wrong in being placed in II A.

I informed the CG of my history of satisfactory employment and undiminished ability.  I

told him that I had achieved a GS-14 level prior to being grouped into Band II with younger and

less experienced GS-13's; that I was treated wrong then, and, again, unfairly and incorrectly with

the split and further downgrading .  I told him that I felt hostility, embarrassment and hurt by the

demotion to Band IIA, and that I was psychologically devastated.

I feel certain the Mr. Walker understood my pain, but there were no positive results from

Mr. Walker.  I knew that I had no chance of relief in the normal complaint channels, and also

knew that GAO's own internal personnel system, and purportedly independent personnel

oversight agency are both dysfunctional.

## XIII. THE LATEST ADMINISTRATIVE COMPLAINT

18

On March 30, 2006, I filed another discrimination complaint with GAO's Office of Opportunity and Inclusiveness (formerly the Civil Rights Office). Again I alleged race and age discrimination. In that administrative complaint I alleged, based upon my own information and knowledge, that the Band II split has had negative impact on me and about 300 hundred others who were and are similarly situated with me on the band II split demotion. All of those persons are 50 years old or older.

Not only have virtually all of those older workers been embarrassed, demoted, and psychologically hurt, and denied, by virtue of downgrading, any opportunity for future promotions, most egregiously, myself and all other similarly situated, were demoted in status and reduced in salary by denial of cost of living increases. It is critical to note that neither I, nor anyone similarly situated failed to meet performance expectations for that ratings period. This fact as I understand the law, makes these actions an illegal event, a prohibited personnel practice and a violation of the equal pay act. That denial, standing alone, is a denial of equal treatment of the law and, I believes, a discriminatory event.

But the entire continuing process is one that has been of long standing and represents nothing less than overt intentional discrimination based upon age. And both the timing and substance of actions by the entire administrative process at GAO does not comport with the standards applicable to other government agencies as set out by the EEOC regulations. This current complaint is under investigation and the previous one, filed in 2002, has not been resolved which is a violation of GAO's own regulations requiring timely resolution of complaints and a discrimination free workplace. These actions are supposed to be over within 180 days. It simply has not happened. On 7/6/2006, I amended my latest complaint to add the following: I applied for the first Band IIB promotion after the split and did not make the BQ list.

19

I requested that this be added to my current discrimination case.  In addition to Race and Age discrimination, I believe that GAO Retaliated against me for filing an individual discrimination complaint and a class action complaint against the agency.  I was really surprised when I didn't even make the BQ list because when I talked to Mr. Walker on February 16, 2006, about the Band II split, he practically assured me that I would get a Band IIB in the first round of promotions.  I believe that GAO is continuing the pattern of discriminating against me on the basis of Race, Age, and now Retaliation for exercising my rights.

Also, I want the discrimination complaint that I filed in 2002 to be reactivated and included along with my new complaint.  It has never been resolved and is long overdue for a final agency decision.

### XIV. GAO HAS INTENTIONALLY MISLED THE COURT AND I TS OWN OVERSIGHT AGENCY IN AN EFFORT TO ESCAPE REVEALING THE DISCRIMINATION RAMPANT IN ITS RANKS

I have learned from my counsel and from filings in this court that for more than 20 years GAO has maintained a secret personnel data base and comprehensive system containing ratings and demographic data on each analyst and key employee.  From this data and system GAO can, and has, made this data available to its ratings and promotions panels during the entire 20 year period of age litigation by GAO employees.

GAO has misinformed the Court, and continues to misinform the Court, and its own oversight agency, the PAB, and opposing counsel in related cases.  The misinformation is to the effect that no GAO employee personnel profile data base existed, and no such comprehensive systems were available for quantitative and qualitative analysis of that data.  In fact this representation is false.  In fact those systems and data did and do exist and was a part of the

mechanism and tools available to GAO management. Those tools were in daily usage to bring about and measure the intentional discriminatory results about which I and hundreds of others have complained.

The existence of those systems and data and access to that data and systems is of primary importance to my claims and the claims of many others which are now ongoing. According to the testimony of the professional who maintain those systems, any pattern or practice which exists in the data may be readily extracted and reported upon. For example, either the GAO discriminates against older persons or it does not. This system and data, the existence of which was withheld from the PAB and falsely denied to exist to the United States District Court, would definitively prove the pattern and practice of bias against older employees. If the age data were used, as testimony demonstrates that it is, in ratings panels and in promotion determinations, the apparent exclusion of older employees will be definitively explained, as a matter of cause and effect.

The result would be unequivocal proof of the Plaintiffs' case in this case, and in all of the related cases before the United States District Court for the District of Columbia,.

Therefore, the failure of the PAB to be effective in its oversight function and misleading by GAO of persons and federal courts having the power to correct the massive malfunction of this agency's personnel practices came about becomes understandable. GAO has obstructed justice for its older employees for more than 20 years, and gotten away with it.

## XV. GAO'S PERSONNEL OVERSIGHT AGENCY (THE PAB) IS A FAILURE:

I have learned that GAO's internal policies and procedures are intentionally designed to frustrate the oversight process. See copies of attached letters from the former General Counsel

of GAO's purported personnel oversight agency, the PAB (Attachment A, hereto).  See also the list of investigations of the PAB over the years (Attachment B) and note that NONE pertain to the multiplicity of charges of age discrimination.  Please note also the one meaningful report of the PAB which was issued on the subject of Age Discrimination (Attachment C, hereto) covered the period of time from 1991 to 1995.   That report contained important comments upon the apparent pattern of "race, gender and age disparities" (Report Pg 25 final paragraph, and Pg. 26 final paragraph), consistent with my opinion as contained in this affidavit.  However, no follow up by either GAO or the PAB has ever occurred despite a 10 year lapse in any investigation.  I believe, based upon all of these circumstances that this is because the PAB was ordered *not* to so investigate by GAO upper management.

In addition, again, GAO for all this time had a complete system of employee data and a comprehensive data base system which could analyze the actual patterns of alleged discrimination and determine from actual real data what did or did not occur.  Instead, in a demonstration of lack of candor, GAO simply denied that this vital data (and comprehensive systems) even existed.  It not only denied it to the Federal Court, it failed to fulfill its responsibilities to be candid pursuant to the Federal Rules of Discovery (F.R.Civ). P. 26 (a) (1) and to his own oversight agency the PAB.  The PAB investigation therefore had to be done at great expense for an already overextended captive agency whose budget is completely controlled by the Agency it is supposed to have oversight over, the GAO.  No wonder that it (the PAB) lacks all integrity and effectiveness.

However, that data system was secret, and its existence kept from both the PAB and the Federal Courts by false representations to those entities with the power to correct these illegal happenings.  As a result the discrimination continues to this day without diminution.

On information and belief, and my own observations, I allege that the hostility against older employees is uniform among my co-workers, and the extent of the bias is nearly 100%. I believe that available statistics will confirm the universal bias I have observed since I reached the age of about 50. I also believe that the same pattern has existed for over 20 years, however, it used to start earlier at about the age of 43. The general aging of the staff at GAO has increased that "top acceptable age" to about 50 now.

It is my belief and opinion, based upon all of the information at my disposal, that any reasonable investigation, with access to the GAO's secret data base on employee performance, ratings, and age, among other factors, like race, will undoubtedly support my conclusion that age discrimination is rampant at GAO. It is nearly 100% practiced and nearly 100% effective based upon my personal experiences and observations as a civil rights counselor.

In addition, I am aware of no credible information contradicting these conclusions of unequal treatment of older persons in all aspects of personnel management at this agency despite the representations of GAO management.

**SIGNATURE AND NOTARIZATION:**

I declare under the penalties of perjury that the foregoing statements are true and correct and that all attachments to this affidavit are genuine or true and/or correct copies of genuine documents.

_____          _____

James D. Moses

Signature                                          Date

Subscribed and sworn to before me this _____ day of _____

NOTARY PUBLIC, STATE OF _____

MY COMMISSION EXPIRES _____