UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTHUR L. DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civil A. No. 06-1002 (EGS) (DAR) |
| | ) |
| GENE L. DODARO, Acting Comptroller | ) |
| General of the United States Government | ) |
| Accountability Office, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Although the plaintiffs filed a lengthy opposition and more than 250 pages of exhibits, they failed to address many of the arguments raised in the defendants' motion to dismiss. The plaintiffs did not dispute that: (1) their claims under the Equal Pay Act are misplaced because that statute does not cover *age*-based discrimination (Dkt. 34-2 at 13); (2) their constitutional claims lack merit because the ADEA is the exclusive remedy for a federal employee alleging age discrimination (*id.* at 14); and (3) their claims against the PAB fail because alleged deficiencies in the processing and handling of EEO complaints are not actionable under the ADEA (*id.* at 14-16). The Court should treat these arguments as conceded and dismiss these claims by the plaintiffs. *Tnaib v. Document Tech., Inc.*, 450 F. Supp.2d 87, 91 (D.D.C. 2006) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.")

The plaintiffs' remaining claims under the ADEA should also be dismissed because they are untimely. The plaintiffs try to justify their belated filing of the Complaint by invoking the doctrines of equitable estoppel and equitable tolling. But those doctrines are plainly inapplicable

here because the GAO did not make any representation that caused the plaintiffs to forego filing the Complaint in a timely manner, and because the plaintiffs were fully aware of their claims years before they actually filed suit. The plaintiffs have been represented by counsel since at least May 2000. There is no legitimate reason why they waited until May 2006 to file suit.

Moreover, the GAO explained in its opening memorandum why the claims raised in plaintiff Moses's January 18, 2002 administrative complaint should be dismissed under Rule 12(b)(6). (Dkt. 34 at 11-12.) Moses did not respond to the GAO's arguments in his opposition. (Dkt. 38.) The Court should, therefore, treat the GAO's arguments as conceded and dismiss Moses's ADEA claims predicated on that complaint. *Tnaib*, 450 F. Supp.2d at 91.

Although plaintiff Davis does not allege in the Complaint that he filed an administrative complaint, he asserts in the opposition that his ADEA claims are properly before this Court based on a January 2004 complaint that he filed with the GAO. (Dkt. 38 at 17.) However, in his January 2004 administrative complaint, Davis merely alleges that the GAO asked him to verify two time records and that the agency asked him to turn off his computer monitor before he went home for the evening. (Stroman Decl. Ex. 1.) These allegations are not raised in the Complaint and are, therefore, not properly before this Court. But even if these allegations were before the Court, they fall far short of stating a claim for age discrimination and should be dismissed pursuant to Rule 12(b)(6).

## LEGAL STANDARD

Plaintiffs contend that "[t]his motion should be deemed to be a motion for summary judgment" because the GAO "attached 18 pages of exhibits to their Motion." (Dkt. 38 at 1, n.1.) Courts routinely decide, however, whether a plaintiff has properly exhausted his administrative

remedies and whether the plaintiff's claims are time-barred in the context of a motion to dismiss. *See, e.g.*, *Marcelus v. CCA*, 540 F. Supp.2d 231, 235 (D.D.C. 2008); *Price v. Greenspan*, 374 F. Supp.2d 177, 185-86 (D.D.C. 2005).

Moreover, in ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). This includes an administrative complaint by the plaintiff. *Marcelus*, 540 F. Supp.2d at 235, n.5 (considering the plaintiff's EEOC Charge in granting defendant's motion to dismiss); *Marshall v. Honeywell Tech. Sol., Inc.*, 536 F. Supp.2d 59, 65-66 (D.D.C. 2008). The Court may, therefore, consider the exhibits attached to the GAO's motion to dismiss without converting the motion into a summary judgment motion. *Id.* The Court should not, however, consider the gratuitous exhibits attached to the plaintiffs' opposition. (Dkt. 38.) However, even if the Court considers this as a summary judgment motion under Rule 56 and considers all of the exhibits, the GAO should still prevail.

## ARGUMENT

### I.    PLAINTIFFS' ADEA CLAIMS ARE UNTIMELY

Plaintiffs' ADEA claims are time-barred because they did not file their Complaint within 90 days of submitting a Notice of Intent to Sue. Plaintiffs allege that they filed their Notices of Intent to Sue on June 10, 1999 (Dkt. 38 at 11); sometime "in the year 2000" (Compl. ¶ 7); and on April 6, 2005 (Dkt. 38 at 11). However, even if the plaintiffs filed a Notice of Intent to Sue on each of these dates, their ADEA claims would still be time-barred because they did not file the Complaint in this case until May 31, 2006 – well more than ninety days later. *See e.g.*, *Edwards*

3

*v. Shalala*, 64 F.3d 601, 605-06 (11th Cir. 1995) (90-day limitations period applies); *Long v. Frank*, 22 F.3d 54 (2d Cir. 1994) (same); *Lavery v. Marsh*, 918 F.2d 1022, 1025 (1st Cir. 1990) (same).  The plaintiffs do not dispute this argument in their opposition.  (*See generally* Dkt. 38.)

Instead, the plaintiffs invoke the doctrines of equitable tolling and equitable estoppel to justify their belated filing of the Complaint.  (Dkt. 38 at 2, 5-9, 12, 14-15, 20-24.)  Equitable estoppel precludes a defendant from asserting the statute of limitations as a defense if he has caused the plaintiff to refrain from filing suit "because of his own inequitable misconduct – such as promising not to raise the statute of limitations defense."  *Chung v. Dep't of Justice*, 333 F.3d 273, 278-79 (D.C. Cir. 2003).  "[N]either the Supreme Court nor this Circuit has ever upheld a finding of equitable estoppel against the Government."  *United States v. Philip Morris et al.*, 300 F. Supp.2d 61, 70 (D.D.C. 2004); *Office of Personnel Mgt. v. Richmond*, 496 U.S. 421, 427 (1999).  The Supreme Court and the D.C. Circuit have cautioned that there are "substantial" arguments for not applying the doctrine against the United States.  *Id.*; *Rann v. Chao*, 346 F.3d 192, 197 (D.C. Cir. 2003) (noting that there are "powerful cautions" against applying the doctrine against the United States).  If applicable, equitable estoppel stops the limitations period from running "for as long as is necessary to prevent the defendant from benefitting from his misconduct[.]"  *Chung*, 333 F.3d at 278-79.

Equitable tolling, in contrast, applies "when the plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim."  *Id.*; *Currier v. Radio Free Europe*, 159 F.3d 1363, 1367 (D.C. Cir. 1998).  "[A] party must demonstrate extraordinary circumstances to invoke a court's power to toll the statute of limitations."  *Strong-Peters v. Fisher*, 2008 WL 2138161, at * 4 (D.D.C. May 22, 2008).  Unlike equitable estoppel, "equitable

tolling merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a 'reasonable time' in which to file suit." *Chung*, 333 F.3d at 278-79. As the GAO demonstrates below, neither doctrine applies in this case.

**Equitable Estoppel.** The plaintiffs attempt to justify the untimely filing of the Complaint by asserting that the GAO withheld information from the plaintiffs in the lawsuits captioned *Chennareddy et al. v. Walker*, 87-3538 (D.D.C.) and *Vant Leven et al. v. Walker*, 00-2686 (D.D.C.). (Dkt. 38 at 2, 5-9, 12, 14-15, 20-24.) Specifically, Davis, Gilbert, and Moses – who have been represented by the same counsel as the plaintiffs in *Chennareddy* and *Vant Leven* – assert that the GAO did not disclose until 2002 the fact that it possesses electronic data files containing employee personnel information. (*Id.*; *see also* Dkt. 38-3 at 8-10.) This assertion is not only demonstrably false, as the GAO produced records from these data files to the *Chennareddy* plaintiffs in the 1990s (*see* Ex. 1), it is also irrelevant to the inquiry of whether the GAO made representations to the plaintiffs in *this* case on which *they* relied in deciding not to file suit within 90 days of submitting their Notice of Intent to Sue. Plaintiffs Davis, Gilbert, and Moses do not allege that the GAO told them that the agency would refrain from asserting the statute of limitations as a defense to their ADEA claims. And the plaintiffs cannot point to any statement or conduct by the GAO that would reasonably have caused them to delay filing suit. Thus, even assuming that the doctrine of equitable estoppel could apply to the United States, the doctrine is not applicable in this case. *Chung*, 333 F.3d at 278-79.

Moreover, even if the doctrine of equitable estoppel applied in this case based on the GAO's withholding of pertinent information until 2002, the doctrine would not justify these plaintiffs waiting until May 2006 to file their Complaint. Equitable estoppel tolls the limitations

period "for as long as is necessary to prevent the defendant from benefitting from his misconduct." *Id.*  Here, the plaintiffs – and their counsel – knew about these databases by no later than 2002.  There is no basis to toll the statute of limitations period until May 2006.[1]

**Equitable Tolling.**  The plaintiffs also assert that the limitations period should be equitably tolled.  (Dkt. 38 at 6.)  However, equitable tolling would only apply if the allegedly concealed information precluded the plaintiffs from knowing about their claims.  *Chung*, 333 F.3d at 278-79.  Here, the plaintiffs have clearly known about their ADEA claims since at least May 2000, as that is when they first sought to intervene in the *Chennareddy* case.  (Dkt. 38 at 15, 17-18.)  The plaintiffs have been represented by the same counsel since that time who has also known about their claims and who should have been aware of the statute of limitations for them.  In addition, the plaintiffs filed a Notice of Intent to Sue in April 2005 that specifically stated that plaintiffs Davis, Gilbert, and Moses were "alleg[ing] age discrimination in employment."  (Dkt. 38-8.)  In these circumstances, the doctrine of equitable tolling is clearly not applicable because the plaintiffs were fully aware of their claims under the ADEA more than one year before they filed suit.[2]  The plaintiffs have fallen far short of making the type of "extraordinary" showing that is necessary to toll the limitations period.  *Strong-Peters*, 2008 WL 2138161, at * 4.

---

[1] The plaintiffs assert that in March 2005 the GAO in the *Chennareddy* case orally stated that the agency did not have a "database per se" that contains personnel information.  (Dkt. 38 at 21.)  But plaintiffs' own exhibit demonstrates that the GAO indicated in March 2005 (as it had in 2002) that the GAO electronically maintains personnel information. (Dkt. 38-2.)

[2] Plaintiffs allege that the GAO's EEO office failed to inform them of the pertinent deadlines.  But this argument is unavailing because plaintiffs Moses and Gilbert were civil rights counselors, and plaintiff Davis was "the elected representative of an approved GAO employee organization, the Advisory Council for Civil Rights."  (Compl. at 7-9.)  Their roles in the administrative process – as well as the fact that they were represented by counsel – belies their claim that they were unaware of their claims and the process for asserting the claims.

Moreover, even if doctrine applied, the limitations period would only be tolled to give the plaintiffs a reasonable period of time to file suit. *Chung*, 333 F.3d 273, 278-79. Here, the plaintiffs waited more than one year to file suit after their April 2005 Notice of Intent to Sue. The plaintiffs have not provided *any* explanation for why they waited so long to file suit or why they could not have filed suit within ninety days of submitting their April 2005 Notice of Intent to Sue. Thus, there is no basis to toll the limitations period until May 2006 in this case.

## II.    THE PLAINTIFFS FAILED TO COMPLY WITH THE ADEA'S NOTICE REQUIREMENTS

The plaintiffs do not dispute that to be timely a Notice of Intent to Sue must be filed with the GAO's Office of Opportunity and Inclusiveness within 180 days of a discriminatory act. (Dkt. 38.) The Court should dismiss the Complaint because none of the three plaintiffs timely filed a Notice of Intent to Sue in this case.

### A.    The Plaintiffs Did Not File A Notice of Intent To Sue in 1999 or 2000

In the Complaint, the plaintiffs each allege that they filed a Notice of Intent to Sue sometime "in the year 2000." (Compl. ¶ 7.) They now contend in their opposition that they each filed a Notice of Intent to Sue on June 10, 1999. (Dkt. 38 at 15-18.) In reality, however, they did neither. (2008 Stroman Decl. ¶ 6.) The plaintiffs have failed to present the GAO or this Court with any Notice of Intent to Sue from 1999 or 2000. Simply alleging that they filed a Notice of Intent to Sue is insufficient to defeat a motion to dismiss. *Cf. McReynolds v. United States*, 2007 WL 521889, at * 1 (D.D.C. Feb. 14, 2007).

In addition, the plaintiffs' own Notice of Intent to Sue from April 6, 2005 belies their contention that they filed a notice at an earlier date. (Dkt. 38-8.) The April 2005 Notice references a June 10, 1999 Notice, but then identifies Davis, Gilbert, and Moses as "three

additional persons" that plan to bring suit under the ADEA. (*Id.*) If the plaintiffs had been named in the 1999 Notice or in a 2000 Notice, they would not have had to be listed as "three additional persons" in the April 2005 Notice.

Moreover, the plaintiffs do not appear to have identified any discriminatory act that took place within 180 days of June 10, 1999. Thus, even if they filed a Notice of Intent to Sue on that date, it would be untimely unless the plaintiffs can identify a specific discriminatory act that took place within 180 days before they submitted it. *See* 29 U.S.C. § 633a(c)-(d).

**B.    The Plaintiffs' April 6, 2005 Notice Is Untimely**

The plaintiffs submitted a Notice of Intent to Sue on April 6, 2005. (Dkt. 38-8.) However, plaintiffs Gilbert and Davis both stopped working for the GAO more than 180 days prior to April 6, 2005. (Compl. ¶¶ 2, 11.) Thus, they cannot identify (and have not identified) any discriminatory act that took place within 180 days of that date.

Moses is a current employee of the GAO, but he does not appear to identify any specific discriminatory act that took place within the 180-day period preceding April 6, 2005. (Compl. ¶ 12.) Moses alleges that a discriminatory act took place *after* he filed the April 2005 Notice, *see* Compl. ¶ 12, but he may not rely on his April 2005 Notice to exhaust that claim. *Cf. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (holding that a new charge must be filed for each discriminatory incident); *Romero-Ostolaza v. Ridge*, 370 F. Supp.2d 139, 149 (D.D.C. 2005) (same).[3]

---

[3] Moses notes in his opposition that he filed a Notice of Intent to Sue in 2006. (Dkt. 38-9.) But that Notice of Intent to Sue is the subject of a different lawsuit. *See Moses v. Walker*, 06-1712 (EGS).

**C.    The Continuing Violations Theory Does Not Apply To Plaintiffs' ADEA Claims**

Plaintiffs allege that their failure to promote, termination, and unequal pay claims are timely under the continuing violations doctrine.  (Compl. at ¶¶ 15-40; Dkt. 38 at 3-4.)  As the GAO noted in its opening memoranda, however, this argument is foreclosed by the Supreme Court's decisions in *Morgan* and *Ledbetter*.  *Morgan*, 536 U.S. 101, 113-115 (2002) (holding that "discrete acts such as termination [and] failure to promote . . . are easy to identify.");  *Ledbetter*, 127 S. Ct. 2162, 2175 (2007) (applying *Morgan* rule to unequal pay claims).  These cases make clear that the alleged discriminatory acts in this case against Davis, Gilbert, and Moses were discrete events, and not part of a continuing violation.  *Id.*

But even assuming that the plaintiffs' claims are based on a continuing violation, at least one alleged discriminatory act must occur within the 180-day period preceding the Notice of Intent to Sue.  *Morgan*, 536 U.S. at 116-17; 29 U.S.C. § 633a(d).  Here, plaintiffs Davis and Gilbert have not identified any specific discriminatory practice that took place within 180 days of their filing a Notice of Intent to Sue in April 2005.  Nor could they.  Gilbert stopped working for the GAO in 1999 and Davis stopped working for the agency in June 2004 – well more than 180 days before they filed the April 6, 2005 Notice.

**D.    Plaintiffs Cannot Now Convert Their Disparate Treatment Claims Into Hostile Work Environment Claims**

A plaintiff's opposition to a defendant's motion to dismiss is plainly not the appropriate means for the plaintiff to change his claims in the case.  Yet that is precisely what the plaintiffs have done here.  Counts 1-2 of the Complaint assert disparate treatment claims against the GAO.  Specifically, the plaintiffs challenge the GAO's decisions regarding "promotions" and

9

"terminations," and the GAO's job restructuring decision that the plaintiffs contend resulted in lower compensation for older workers. (Compl. ¶¶ 49-61.) Even though the Supreme Court has concluded that these are discrete acts of alleged discrimination, *see Morgan*, 536 U.S. at 113-115; *Ledbetter*, 127 S. Ct. at 2175, plaintiffs assert in their opposition that they are actually making these allegations as part of a hostile work environment claim. (Dkt. 38 at 1-2, 10-11.) For example, the plaintiffs contend that "each year, as the promotion cycle proceeds, a new bar to their advancement is created, all over again. . . . If that is not hostile to a career, what is?" (Dkt. 38 at 10-11.)

The plaintiffs fail to understand that there is a difference between a disparate treatment claim that is predicated on a discrete act (e.g., failure to promote) and a hostile work environment claim that is based on offensive conduct permeating the workplace with discriminatory intimidation, ridicule, and insult. *Lester v. Natsios* 290 F. Supp.2d 11, 32-33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims [e.g., failure to promote] . . . are different in kind from a hostile work environment claim that must be based on severe or pervasive discriminatory intimidation or insult."); *Wada v. Tomlinson*, 517 F. Supp.2d 148, 211 (D.D.C. 2007) (same). The plaintiffs' non-promotion, termination, and pay claims cannot "be transformed, without more, into a hostile work environment claim." *Id.* And the claims certainly cannot be changed in the plaintiffs' opposition to the GAO's motion to dismiss.

### III.    THE PLAINTIFFS' ADMINISTRATIVE COMPLAINTS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

#### A.    Jimmie Gilbert

Plaintiff Gilbert did not file an administrative complaint in which he asserted a claim under the ADEA. (Compl. ¶ 7; Dkt. 38 at 25.) Therefore, Gilbert may not avail himself of this

jurisdictional route to federal court. *See* 29 U.S.C. § 633a(b).

    **B.    James Moses**

Plaintiff Moses filed an administrative complaint on January 18, 2002. (Compl. ¶ 12.) In the complaint, Moses alleged that the GAO discriminated against him based on his age by lowering his performance appraisals for 2000 and 2001. (Dkt. 34-3.) As the GAO explained in its opening memorandum, Moses's January 2002 administrative complaint failed to assert a claim on which relief can be granted. (Dkt. 34 at 11-12.) Specifically, Moses's disparate treatment claim fails because the alleged lowering of his performance appraisals do not constitute an adverse employment action. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Runkle v. Gonzales*, 391 F. Supp.2d 210, 225-226 (D.D.C. 2005).

Moses also alleges that he filed an administrative complaint on February 17, 2006 based on a "Band II restructuring" at the GAO. (Compl. ¶ 12.) As the GAO explained in its opening memorandum, although an employee who submits an administrative complaint may file suit in district court after 180 days have passed, *see* GAO Order 2713.2, Ch. 3, part 9(c)(1), Moses filed the instant complaint on May 31, 2006, which is less than 180 days later. A plaintiff may not file suit before 180 days has passed. *Cf. Martini v. Nat'l Mort. Ass'n.*, 178 F.3d 1336, 1338 (D.C. Cir. 1999). Claims brought before the 180-day period lapses are not considered timely filed. *Id.*; *Tariq v. Director of Court Servs.*, 2006 WL 2380688, * 2-3 (D.D.C. Aug. 14, 2006). Thus, Moses has not exhausted his administrative remedies with regard to his 2006 EEO complaint.

Moses's opposition is bereft of any response to these arguments. (Dkt. 38.) The Court should, therefore, treat them as conceded and dismiss the claims raised in Moses's January 18, 2002 and his February 17, 2006 complaints. *Tnaib*, 450 F. Supp.2d at 91.

**C.      Arthur Davis**

Plaintiff Davis does not allege in the Complaint that he filed an administrative complaint

before bringing this lawsuit.  (Compl. ¶ 7.)  In his opposition, however, Davis now contends that

he has filed many administrative complaints.  (Dkt. 38 at 17.)  The GAO's records reflect that

Davis filed a single administrative complaint on January 7, 2004.  (Stroman Decl. Ex. 1.)

Without evidence that he filed any other administrative complaints, the Court should only

consider the one he submitted on January 7, 2004.  *McReynolds*, 2007 WL 521889, at * 1.

In that administrative complaint, Davis alleged that the GAO discriminated against him

based on his race, color, disability, and age, and that the agency retaliated against him.  (*Id.*)

Specifically, Davis alleged that the GAO (1) questioned his time and attendance sheets for two

pay periods in April and July 2003; and (2) that the GAO told him not to leave his computer

monitor on at night.  (*Id.*)  But neither of these issues is raised in the Complaint in this case.  (*See*

*generally* Compl.)  Moreover, neither issue constitutes an adverse action.  *Cf. Brown*, 199 F.3d at

452.  Thus, even if the Court considers these claims to have been raised in the Complaint, they

should be dismissed pursuant to Rule 12(b)(6).

**D.      Class Allegations**

The plaintiffs contend in their opposition that Davis and Moses can assert claims on

behalf of a class of GAO employees over the age of 40 based on their administrative complaints.

(Dkt. 38 at 1, 25.)  But even if the Court considers the claims raised in their respective

administrative complaints, these plaintiffs have plainly not exhausted *class* claims because they

did not make any class allegations at the administrative level.  Moses's January 18, 2002

administrative complaint and Davis's January 2004 administrative complaint only assert

individual claims.  The GAO has a separate procedure for asserting class claims, that neither

Davis nor Moses followed here with respect to these administrative complaints.[4]  *See* GAO

Order 2713.2.

## CONCLUSION

For the foregoing reasons, the defendants request that the Court dismiss the plaintiffs'

Complaint in this action.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
HARRY B. ROBACK, D.C. Bar # 485145
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
Tel: 202-616-5309
June 6, 2008                           harry.roback@usdoj.gov

---

[4] As noted above, Moses's 2006 administrative complaint regarding the Band II restructuring is part of a separate lawsuit.  *See Moses v. Walker*, 06-1712 (EGS).  In addition, the 2006 administrative complaint does not allege class claims on behalf of GAO employees over the age of 40.

13