IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - x
BENKAREDDY CHENAREDDY, et al.,:
                          :
      Plaintiffs,    :
                          :
      vs.            : Civil Action No. 87-3538
                          :
DAVID M. WALKER,      :
                          :
      Defendant.     :
- - - - - - - - - - - - - - x
ARTHUR L. DAVIS, et al.,  :
                          :
      Plaintiffs,    :
                          :
      vs.            : Civil Action No. 06-1002
                          :
DAVID M. WALKER,      :
                          :
      Defendant.     :
- - - - - - - - - - - - - - x
JAMES D. MOSES, et al.,   :
                          :
      Plaintiffs,    :
                          :
      vs.            : Civil Action No. 06-1712
                          :
DAVID M. WALKER,      :
                          : Washington, D.C.
      Defendant.     : July 22, 2008
- - - - - - - - - - - - - - x

TRANSCRIPT OF HEARING ON MOTION
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M2557V/dac

APPEARANCES:

  On Behalf of the Plaintiffs:

    WALTER T. CHARLTON, Esq.

  On Behalf of the Defendants:

    WALTER BLAKE HARWOOD, Esq.
    HEATHER D. GRAHAM-OLIVER, Esq.

<u>P R O C E E D I N G S</u>

1            THE COURT:  Civil Case Number 87-3538.  This is

2   in the matter of Benkareddy Chenareddy versus David M.

3   Walker.  Plaintiffs' counsel, Walter T. Charlton.  Present

4   in the courtroom for the Defendant is Christopher Blake

5   Harwood.

6            Case Number 06-1002, this is in the matter of

7   Arthur L. Davis versus David Walker.  Defendants' counsel,

8   Walter T. Charlton.  Defense for Mr. David Walker is Harry

9   D. Roback; standing in for him is Christopher Blake

10  Harwood.

11           Civil Case Number 06-1712, James D. Moses versus

12  David M. Walker.  Walter T. Charlton for the Plaintiff;

13  for the Defendant, present in the courtroom, is Heather D.

14  Graham-Oliver.  This is scheduled for a motion hearing.

15           THE MAGISTRATE JUDGE:  Now good morning to all of

16  you.

17           (Chorus of, "Good morning, Your Honor.")

18           THE MAGISTRATE JUDGE:  Pending in each case is a

19  motion to intervene.  The Court has reviewed each motion,

20  each opposition, and the two replies which were filed.

21  The Court has determined that no reply was filed in 06-

22  1712.  Am I correct, Mr. Charlton?

23           MR. CHARLTON:  Your Honor, I'm not sure whether

24  that's true or not.  I have that --

4

1          THE MAGISTRATE JUDGE:  Well, let me ask you to

2    have a seat then, and if you have the reply, I will

3    certainly read it before we get started, but we have --

4          MR. CHARLTON:  I think --

5          THE MAGISTRATE JUDGE:  We have very carefully

6    reviewed the ECF entries in each case and, indeed, I

7    believe my law clerk spoke to you earlier this morning to

8    ask this very question and we see no record that a reply

9    was filed.

10         Now if you have a copy of the reply there, I will

11   certainly make sure that Mr. Harwood gets a copy of it or

12   Ms. Graham-Oliver receives a copy of it.  This is your

13   case, is that correct, Ms. Graham-Oliver?

14         MS. GRAHAM-OLIVER:  Yes, it is, Your Honor.

15         THE MAGISTRATE JUDGE:  Very well, I will be sure

16   that you get a copy of it so that we can both read it, but

17   there is no record on ECF that a reply in 06-1712 was ever

18   filed.  Is that consistent with your understanding, Ms.

19   Graham-Oliver?

20         MS. GRAHAM-OLIVER:  That is consistent.

21         THE MAGISTRATE JUDGE:  Very well, thank you.  Do

22   you have it, Mr. Charlton?

23         MR. CHARLTON:  I have one for 06-1002.

24         THE MAGISTRATE JUDGE:  Okay, my question is

25   06-1712.  I'm treating each motion separately.  Did you

1  file a reply as to 06 -- did you intend to?  I can state

2  with certainty no reply has been filed, because we have

3  searched and searched again the ECF records and there is

4  no indication that a reply was filed.

5          MR. CHARLTON:  Well, Your Honor, I did --

6          THE MAGISTRATE JUDGE:  Did you intend to file

7  one?

8          MR. CHARLTON:  I did intend to file one.

9          THE MAGISTRATE JUDGE:  Do you have it?

10         MR. CHARLTON:  I don't have it with me.

11         THE MAGISTRATE JUDGE:  Well, then the Court will

12 have to proceed without the reply because the deadline for

13 filing the reply passed some time ago.  The date that the

14 Court set for the reply was June 6th and if my

15 recollection is correct, I set that date in open court.

16 So if no reply has been filed, it is not timely.  I just

17 wanted to be certain that you did not attempt to file a

18 reply --

19         MR. CHARLTON:  Your Honor, my --

20         THE MAGISTRATE JUDGE:  -- and that it was

21 misfiled, for example, under some other case number.  So

22 we'll have to proceed.

23         MR. CHARLTON:  Your Honor, I believe -- I mean

24 I'm not aware that I missed a deadline, so therefore,

25 there is two possibilities.  One is I filed it and it

6

didn't get in and the other one is that I didn't file it

and made an error and I do not know which it is right now.

        THE MAGISTRATE JUDGE:  Well, it is not filed,

and while I realize that Ms. Graham-Oliver is your

adversary with respect to this matter, she's represented

as an officer of the court that she didn't see it, either.

 Am I correct?

        MR. CHARLTON:  Well, that --

        MS. GRAHAM-OLIVER:   Yes, Your Honor, I checked

this morning on the ECF and I didn't see it.

        THE MAGISTRATE JUDGE:  Very well.  The Court has

checked repeatedly in an effort to prepare for this

hearing and simply put, it is not there.

        Now the Court has also determined that the three

motions, the one motion in each case, is in the category

of motion that the Court can determine pursuant to local

Civil Rule 72.2(a).  And the Court does intend to

determine each motion and, indeed, believes the Court will

be prepared, having already reviewed the motions, the

oppositions and the two replies, to rule from the bench.

In other words, the motions are not dispositive motions

and they are in the category of motion that the Court can

determine.

        Now Mr. Charlton, I'll ask you to come to the

bench, come to the podium, please, and we will first

1  address the motion which is pending in 87-3538.  I will

2  then hear your argument in opposition, Mr. Harwood; I will

3  hear your reply, Mr. Charlton.  And since the Court is

4  taking one motion at a time, I will ask you to confine

5  your argument to 87-3538.

6         MR. CHARLTON:  Yes, Your Honor.

7         THE MAGISTRATE JUDGE:  Now you may proceed.

8         MR. CHARLTON:  Now Your Honor, before I proceed,

9  I would definitely request leave to check my records and

10  to file a reply if I missed one and I --

11        THE MAGISTRATE JUDGE:  Well, the Court does not

12  believe --

13        MR. CHARLTON:  I'm not aware of that.  Could I

14  finish, Your Honor, please?

15        THE MAGISTRATE JUDGE:  Well, Mr. Charlton, we'll

16  have to proceed with the argument the deadline was June

17  6th and I don't know whether this will be clear on the

18  record, today is July 22d.  There is no motion for

19  extension of time in which to file a reply that is

20  pending.  The Court can only assume that any such motion

21  would be vigorously opposed by the Defendant.  But the

22  Court has been presented with no circumstance which would

23  constitute excusable neglect which would warrant granting

24  a motion for extension of time, the time having already

25  passed.

1    What you've told me is that you thought you filed
2    it.  It is not filed.  Any number of judges of this court
3    have indicated that counsel are expected to monitor the
4    ECF entries to be certain that we have a common
5    understanding regarding the status of cases.  And simply
6    put, there is no reply in 06-1712.
7        MR. CHARLTON:  Your Honor, I just want to say one
8    thing, and I certainly am not arguing with the Court.  I
9    did not get a call from your law clerk this morning, this
10   is the first I've known of this.  It is probable that
11   you're correct.
12       THE MAGISTRATE JUDGE:  I did not indicate that
13   she called.  I was under the impression that she came in
14   an inquired.  If I'm wrong, it has no significance because
15   the critical point is that the Court has looked at the ECF
16   entries and no reply was filed.
17       I made that inquiry of you simply because I
18   wanted to be certain that you do not have in your
19   possession what I'll call a file stamped copy that for
20   some reason is not appearing on ECF.  And I gave you the
21   opportunity to look through your things and you've
22   indicated that you don't have a reply over there on your
23   table.  So we will have to proceed, beginning first with
24   87-3538.
25       MR. CHARLTON:  Yes, Your Honor.  As Your Honor

knows, this case goes back a long way.  I think the proper

way to start 87-3538 is to talk about the law in the

District of Columbia that applies to motions to intervene,

just so we're all on the same page.

There's a recent case of Carsner versus Lothian,

a 2008 case, I believe it came out the 15th of July, where

the Circuit Court ruled, "We have identified four

prerequisites to intervene as of a right.  One, the

application to intervene must be timely; two, the

applicant must demonstrate a legally protected interest in

the action; three, the action must threaten to impair that

interest; and four, no party to the action can be an

adequate representative for the applicant's interests."

Now this case that is 3538, which I will call the

Chenareddy case with the Court's permission, starting in

1987.  And our theory of the case at that time was that it

was a class action and the class action contained

continuing violations, which was good law at the time.

And a number of people intervened into the case, including

Dr. Chenareddy as the lead plaintiff, and the case

proceeded in time.

Then there came a time -- and I am assuming that

we are arguing this motion on the pleadings because it's a

dispositive motion with respect to certain of the

intervenors' rights.

1          THE MAGISTRATE JUDGE:  The Court has already

2    ruled that none of the motions on which I am hearing

3    argument this morning are dispositive motions.  The Court

4    has consulted 28 U.S. Code, Section 636 and local Civil

5    Rule 72.2(a).  They are not dispositive motions and the

6    Court does intend to rule on them from the bench.

7          MR. CHARLTON:  Yes, Your Honor.  In any case, the

8    law changed.  Along came the case of Morgan versus -- or

9    Amtrak versus Morgan, a Supreme Court case, which ruled

10   with disfavor on the continuing violations doctrine and

11   adopted, instead, a hostile work environment or the

12   equivalent thereof before each time clock starts running

13   on each event.

14         Now what Plaintiffs allege in their amended

15   complaint in the Chenareddy case, the fourth amended

16   complaint, which is the live complaint before the Court

17   which was filed I think about the beginning of this year,

18   January 3d as I recall, is that there is a de facto

19   hostile work environment at GAO, it has been in effect

20   since 1987 with varying names and varying degrees, and

21   that this system of intentional discriminatory conduct has

22   affected every single employee in a professional category

23   at GAO since that time.

24         Now the intervenors have a problem and the

25   problem is this.  The intervenors -- and what we're trying

1    to do is to intervene, Davis, Moses and Gilbert and James

2    Moses, also, and Robert Wagner, into, eventually into the

3    Chenareddy case.  And we are alleging in each one of these

4    intervening -- motions to intervene essentially the

5    identical pattern of hostile work environment that amounts

6    to a bar against older persons, regardless of race,

7    regardless of gender.  When you hit a certain age at GAO,

8    you do not get promoted and --

9          THE MAGISTRATE JUDGE:  Let me ask you, Mr.

10   Charlton, to address the standards governing intervention

11   as they are set forth in the Federal Rules of Civil

12   Procedure.

13          MR. CHARLTON:  Yes, Your Honor.  I think I just

14   talked about the way they were in the D.C. Circuit.  I'll

15   just read the rule.  We're talking about intervention of

16   right and what we allege is that we have intervention of

17   right in each one of these cases.

18          THE MAGISTRATE JUDGE:  Well, we're only talking

19   about the first one right now.

20          MR. CHARLTON:  I understand.  However, that is

21   the case into which these other folks are seeking to

22   merge, ultimately.

23          THE MAGISTRATE JUDGE:  When I say the first one,

24   I mean the motion pending in the 87 case, excuse me --

25          MR. CHARLTON:  I understand.

1              THE MAGISTRATE JUDGE:  -- the motion which bears

2    Document Number 364.  What is your argument with respect

3    to the extent to which the applicants for intervention

4    satisfy the requirements for intervention of right under

5    Federal Rule of Civil Procedure 24(a)?

6              MR. CHARLTON:  Yes, Your Honor, and our argument,

7    our factual argument is this.  Davis, Moses and Gilbert

8    filed that motion to intervene and they filed it because

9    Dr. Chenareddy retired.  He was the last one of the

10   original 13 and he retired on January 3d, 2006.

11             They, "they," the intervenors, Davis, Moses and

12   Gilbert, began attempting to intervene into the Chenareddy

13   case in 1999 at a time when the motion to certify the

14   class had been denied a number of times without prejudice

15   and I was their counsel and I said, "Look, we don't know

16   whether this case is ever going to be certified or not.

17   To protect your interests, we should intervene you."  And

18   so they filed a motion to intervene in '99, they filed

19   another motion to intervene in 2002, and they filed this

20   latest motion whenever they filed it, I don't recall right

21   now, but recently.

22             Now they pled when they filed the latest -- their

23   complaints and when they filed their latest motion, when

24   they filed their complaints in 2006, they pled exactly the

25   same pattern, at least I attempted to describe the pattern

1    exactly the same as in Chenareddy.

2         And however, there's a gap, there's a gap where

3    if their intervention into Chenareddy is not allowed, the

4    damages and the coverage on the people, those three

5    intervenors, Davis, Moses and Gilbert, and all similarly

6    situated to them has a lapse between 2000 -- excuse me,

7    1999 and 2006, when they moved to intervene and when they

8    also filed their own cases.

9         So that the purpose of the intervention by those

10   three is twofold.  The first one is if no class action is

11   ever certified, and we certainly intend to bring it up at

12   the very first opportunity, they have a lapse in their

13   coverage because they were denied intervention back when

14   it should have been, we argue, it should have been granted

15   many years ago.  And the reason it was not granted I'm not

16   going to go into right now, but I have a very, I feel, a

17   very strong argument that the Court was misled in that

18   particular transaction where intervention was denied.

19        But in any case, we are alleging an intentional,

20   invidious system of discrimination that harms all old

21   people, "old," over 43, and it applies equally to Davis,

22   Moses and Gilbert as to Chenareddy and these original

23   plaintiffs.  So the purpose of that is to fill the gap and

24   we feel, I feel strongly that we can meet all of the

25   requirements of intervention of right in that they claim

an interest and a similarity amounting to an identity of

interest with the invidious practices as described in the

complaint of Chenareddy, et al., as it now appears as

Amended Complaint Number 4 before the Court.  Now I

believe that explains our position as to those three

plaintiffs.

THE MAGISTRATE JUDGE:  Now in this case, there

was also a request for permissive intervention, should the

Court determined that intervention of right will not be

allowed.  What is your argument with respect to permissive

intervention?

MR. CHARLTON:  My argument is that permissive

intervention definitely should be allowed and this

requires me to get into the reasons for it.  And the

reason is this.  In discovery, first of all, the situation

on discovery is that there has been no discovery in Case

Number 3, Moses; there has been no discovery in Case

Number 2, Davis, Moses and Gilbert.  There has been only

precertification discovery in generic.

Now I personally did that discovery many years

ago and the discovery amounted to asking for all of the

electronic records of the agency with respect to each

employee.  What we got back was a batch of printouts and

disks, unformatted in terms of machine manipulable form.

With a great deal of effort, we developed a set of

statistics that were astounding in uniformity.

As an old CPA auditor type guy, me, and I had 14 people who were the plaintiffs working for me, the uniformity of bar in the promotions in those early statistics were virtually 100 percent. And I could not possibly, I couldn't understand how this could possibly be physically accomplished and said so. And I personally believe that the Honorable Judge Penn denied class certification because he knew there was something wrong with all that, but that's --

THE MAGISTRATE JUDGE: Now you'd agree that that is not an issue that this Court can revisit at this time.

MR. CHARLTON: I do agree with that, Your Honor, except --

THE MAGISTRATE JUDGE: Very well.

MR. CHARLTON: -- except for one thing, that how we got in this spot is the question you asked, how come we're entitled to permissive intervention. And to shorten this discussion down, the answer is this. All of this time, starting in 1986 through 1999, through 2002, GAO had the detailed statistics, the detailed records for every single employee in an SAS file that would have shown Davis, Moses and Gilbert entitled to intervene under Rule 24, Permission of Right, at that time, had those files been disclosed to the Court and they were not disclosed.

1          And therefore, Davis, Moses and Gilbert were

2     denied important rights and the magnitude of those

3     important rights is another question.  But the fact of the

4     denial, the fact that the transactions were identical, the

5     fact, the extent of the damage to each one of those and

6     the fact that each one of those three intervenors was

7     identically situated, transactionwise, with the existing

8     case is now provable as a matter of fact and the results

9     are in the SAS data files of Mr. Mowbry.

10         So that as a matter of permissive intervention,

11    if what I'm saying is true, and it's very easily checked,

12    it cannot be said that they are not identically or

13    similarly situated in the transaction aspect of things,

14    and if they aren't, there will only be a slight variation.

15     And I say that because Davis, Moses and Gilbert are in

16    the age group where I know from the statistics I've seen,

17    admittedly a sample, the ones I've seen and Dr. Chenareddy

18    has seen, but those statistics show a virtual, 100 percent

19    exclusion and it's an exclusion biased on age and a little

20    bit -- not a little bit, but to a lesser extent, race, so

21    that --

22         And I am certainly not attempting to revisit Your

23    Honor's decision on discovery, but what I'm saying is as a

24    matter of intervention, the rule of -- bear with me just a

25    second, Your Honor.  I think the standard is such that

1    essentially, the allegations of the plaintiffs has to be

2    taken as true for purposes of this motion.  And I am

3    saying that I will stake this whole case on the facts,

4    that they are true, because I know they're true because of

5    the background I have in the whole case.

6         And therefore, I think as a matter of

7    intervention of right -- and it applies to all the cases

8    because all the cases are attempting to be intervened into

9    Chenareddy -- that what we have here is one pattern and

10   only one pattern.

11        Now I now want to jump to the next case because

12   it directly relates --

13        THE MAGISTRATE JUDGE:  No, the Court has already

14   determined that it will hear one at a time, so you may

15   have a seat and Mr. Harwood, I'll hear your opposition.

16        MR. HARWOOD:  Thank you, Your Honor.

17        THE MAGISTRATE JUDGE:  Thank you.

18        MR. HARWOOD:  Good morning, Your Honor.  It's the

19   Government's position that the motion to intervene in the

20   Chenareddy action should be denied for two primary reasons

21   and I'll address them both in turn.  The first is that the

22   intervenors cannot satisfy the requirements of Rule 24(a)

23   or (b) and the second is that intervention at this time

24   would be premature, particularly where there are

25   dispositive motions, motions to dismiss that are fully

1    briefed and pending in the Davis and Moses action and

2    before the defendant in Chenareddy has had an opportunity

3    to respond and test the allegations of the fourth amended

4    complaint.

5         So it would be the Government's position that the

6    issue of intervention is more appropriately addressed, if

7    at all, after the issues are -- after it is determined

8    what the issues that are appropriately will be litigated

9    are, so after the dispositive motions are addressed in all

10   the cases.

11        With respect to Rule 24, Intervention of Right,

12   intervention of right requires that the intervenor show

13   that they, they themselves, will be prejudiced if

14   intervention is denied and that they filed a timely motion

15   to intervene, among other things, and I'm going to address

16   those two matters specifically.

17        With respect to the first, the intervenors cannot

18   show that their interests will be impaired or impeded

19   without intervention.  They want to intervene into the

20   Chenareddy action, but that action is an individual action

21   at the moment, it's not a class action.  Therefore,

22   however the Chenareddy action is resolved, it will not

23   affect the intervenors' rights to litigate their

24   respective claims in their respective actions, the Davis

25   and Moses actions.

1        If a class is ultimately certified in Chenareddy,

2    the Government believes that it won't be, but if one is,

3    then the intervenors could at that time join the

4    Chenareddy class action.  If no class is certified, the

5    intervenors could continue to litigate their claims in

6    their separate actions.  So the disposition of the

7    Chenareddy action is not going to prejudice or impair the

8    intervenors' ability to litigate and preserve their

9    respective claims.  Courts routinely deny intervention as

10   a right in disputed class actions for this very reason and

11   the Government cites some of those cases in its brief.

12        The second reason why the intervenors should not

13   be permitted to intervene as a right is because they

14   simply did not file a timely motion.  The considerations

15   for whether a motion to intervene is timely is the amount

16   of time that has elapsed since the inception of the suit,

17   whether the intervenors need to intervene to preserve

18   their rights, and the possibility of prejudice to those

19   already parties to the action of the intervenors who want

20   to intervene into.

21        With respect to the time elapsed, assuming the

22   intervenors initially moved in 1999, that was more than 12

23   years after the inception of the Chenareddy action.  I've

24   already addressed why the intervenors don't need to

25   intervene in order to protect their own rights.  And the

1    probability of prejudice to those already parties in the

2    Chenareddy action?  Well, if intervention is allowed, it

3    will delay and confuse the issues in the Chenareddy

4    action.

5          The intervenors have their own unique set of

6    claims.  They have claims from, for example, posts that

7    arise post-2006, when no named plaintiff currently in the

8    Chenareddy action was employed at the GAO.  Thus, the

9    intervenors have claims that nobody in the Chenareddy

10   action has standing to bring.  So allowing them to

11   intervene would require additional discovery, it would

12   require additional briefing, it would delay the resolution

13   of the Chenareddy action, not to mention complicate the

14   issues that are in the action.

15         With respect to permissive intervention,

16   permissive intervention requires that the intervenors and

17   the Chenareddy action share common questions of law or

18   fact.  It also requires that the motion to intervene be

19   timely and it requires the Court to consider whether

20   intervention would prejudice those already parties to the

21   Chenareddy action.

22         The first issue is that the intervenors have not

23   met the requirements that I've just described of Rule

24   24(b), Permissive Intervention.  I addressed the

25   timeliness with respect to my prior discussion of Rule

1    24(a), but with respect to common questions of law or

2    fact, the intervenors have not shown that their claims and

3    the claims of the Chenareddy plaintiffs share such common

4    questions of law or fact.  What they have alleged in

5    conclusory fashion is that they share allegations of age

6    discrimination.

7         But just the fact that two sets of plaintiffs

8    both allege age discrimination on the part of a single

9    defendant doesn't mean that there are common questions of

10   law or fact.  In fact, the intervenors and the Chenareddy

11   plaintiffs were employed in different GAO field offices at

12   different times and are presumably, therefore, challenging

13   decisions made by different GAO managers.  Therefore,

14   there's not a commonality of questions of law or fact,

15   there's no allegation of -- there's a conclusory

16   allegation of a common GAO-wide practice of

17   discrimination, but there's been no evidence presented to

18   that and, in fact, none such exists.

19        Now even if the intervenors did show that they

20   met the requirements as stated in the rule, Rule 24(b),

21   this Court has broad discretion to deny intervention and

22   it should do so.  The intervenors can't show that a denial

23   of intervention will prejudice their rights; they have

24   their own putative class actions which they can litigate

25   their claims in.  They can't show that a denial of

1  intervention will prejudice the Chenareddy plaintiffs;

2  they have the Chenareddy action in which they'll continue

3  to litigate their claims in.

4           They also can't show that a denial of

5  intervention would prejudice any member of the putative

6  class that either the intervenors or the Chenareddy

7  plaintiffs seek to represent.  If a class is appropriate

8  and is certified in either of those actions, the class

9  will proceed.  The putative members of the class that both

10  the intervenors and the Chenareddy plaintiffs seek to

11  represent will therefore, their interests will be

12  represented if a class is deemed appropriate.

13           And finally, intervention, if granted, as I've

14  stated earlier, would prejudice the parties already in the

15  Chenareddy action, which is an important consideration for

16  Rule 24(b).

17           THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

18  Harwood.

19           MR. HARWOOD:  Thank you, Your Honor.

20           THE MAGISTRATE JUDGE:  Now, Mr. Charlton, if you

21  wish a reply to Mr. Harwood's arguments, I will hear your

22  reply.  I would only ask that you limit your reply to no

23  more than the time that Mr. Harwood's argument in

24  opposition to the motion consumed, which I believe was

25  approximately seven minutes.

1    MR. CHARLTON:  Yes, Your Honor.  Your Honor, Mr.

2    Harwood, my honorable opponent, is wrong when he says it

3    will not affect the intervenors' rights because of the gap

4    I explained to Your Honor.  If Moses, Davis and Gilbert

5    get to go back to 1999, instead of when they filed their

6    complaint, their calculation of damages is entirely

7    different; that is it's greater than for the shorter

8    period when they actually filed their claim.  The statue

9    of limitations in an age case is two years and if it's

10   intentional, as we intend to prove, it's three years.

11   And Davis, Moses and Gilbert are long-term, 30-

12   year employees, the same as the other people, so that the

13   calculation of their rights if liability is found will be

14   greatly affected by not allowing them to intervene as

15   individuals.  The same principle applies for anyone that

16   they may represent in the class or classes as that all

17   shakes down.

18   The second, Mr. Harwood is also wrong, GAO is

19   wrong when they said there is no timely motion to

20   intervene.  I explained that this process began in 1999

21   and I am prepared to argue at length and I want to spend a

22   couple of minutes on why the doctrine of equitable

23   estoppel or equitable tolling should apply to this,

24   because GAO has not responded in good faith.

25   THE MAGISTRATE JUDGE:  Let me stop you just one

moment, Mr. Charlton.  Where in your motion did you raise

an issue regarding equitable tolling?

        MR. CHARLTON:  Your Honor, I'm sure I raised it.

        THE MAGISTRATE JUDGE:  Just one minute, Mr.

Charlton.

        MR. CHARLTON:  I can't point my finger to it,

Your Honor.

        THE MAGISTRATE JUDGE:  Well, Mr. Charlton, the

Court wants the record to be clear with respect to

whether, as part of your motion to intervene pursuant to

Rule 24, in addressing the question of whether the motion

is timely, you raised any concern regarding equitable

tolling.

        MR. CHARLTON:  Your Honor, I can't say --

        THE MAGISTRATE JUDGE:  Would you get your motion,

please, so that you can point the Court --

        MR. CHARLTON:  I can't say whether I did it or

not, I don't know.  I know that the equitable tolling has

been raised in these cases all along.

        THE MAGISTRATE JUDGE:  Well, Mr. Charlton, the

only context in which the Court could consider equitable

tolling at this time is with respect to the motion to

intervene.

        MR. CHARLTON:  I can't say whether it's in there

or not, it may well not be in there, in the motion.  And I

1  have in front of me the motion to intervene from Moses,

2  we're now talking about --

3          THE MAGISTRATE JUDGE:  We're only talking at this

4  time about Document Number 364, filed in 87-3538.  And my

5  question to you, because you've raised the term, you just

6  interjected the term "equitable tolling," is where in the

7  motion --

8          MR. CHARLTON:  I have the document.

9          THE MAGISTRATE JUDGE:  -- do you raise a

10 question, do you raise the issue of equitable tolling?

11         MR. CHARLTON:  Well, it's certainly discussed in

12 our complaint.  Now I've been through this motion, it's

13 not reraised in here.

14         THE MAGISTRATE JUDGE:  Very well, you --

15         MR. CHARLTON:  I don't know that I have to

16 reraise it, but maybe I do, I don't know.

17         THE MAGISTRATE JUDGE:  Very well, you may

18 continue with your reply.  I interrupted you and will not

19 count that against the time that --

20         MR. CHARLTON:  Thank you, Your Honor.

21         THE MAGISTRATE JUDGE:  You have a couple of

22 minutes left.

23         MR. CHARLTON:  But in any case, we -- and I'm

24 about to come to the third question.  With agreement of

25 counsel, I took the deposition of Mr. William Mowbry on

1    the 15th or 16th of May 2008.  And Mr. Harwood said that

2    we could not prove the identity of the transactions on the

3    timeliness.  All of these details are in the data base

4    that has existed all this time and which was denied to

5    exist before this court, not you, Your Honor, not Judge

6    Sullivan, but Judge Penn repeatedly and briefed

7    repeatedly.  And the fact is that information is

8    misleading and wrong.

9         And we did not have the benefit of it, Mr. Moses,

10   Mr. Davis, Mr. Gilbert did not have the benefit of this

11   information that was wrong, that the data does not exist,

12   and in fact, it does exist, and in fact, Mr. Mowbry

13   identified the data elements, about 96 of them in three

14   different -- four different data files for each year that,

15   had they been given to the court, would have in a "but

16   for" context, would have allowed for intervention back at

17   that time.  So that as a matter of the facts of record,

18   maybe not in this motion to intervene, but in the facts of

19   record at this moment, we can prove this case.

20        THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

21   Charlton.

22        MR. CHARLTON:  Thank you, Your Honor.

23        THE MAGISTRATE JUDGE:  Mr. Charlton, I'll ask you

24   now to turn your attention to 06-1002.  If you need a

25   moment to get your materials from the table, please do so

1    before you proceed.

2            MR. CHARLTON:  I would like just a few minutes.

3            THE MAGISTRATE JUDGE:  Certainly.  Very well, are

4    you ready to proceed?

5            MR. CHARLTON:  Yes, Your Honor.

6            THE MAGISTRATE JUDGE:  Thank you, you may.  I

7    will hear your argument now with respect to the motion

8    which bears Document Number 35, filed in 06-1002.

9            MR. CHARLTON:  Your Honor, does that bear a date

10   of April 29th, '08?

11           THE MAGISTRATE JUDGE:  No.  The ECF records

12   indicate that Motion Number 35, Document Number 35, was

13   filed on April 22d, 2008, and that is in 06-1002.

14           MR. CHARLTON:  Oh, 1002.  I'm looking at 1712.

15           THE MAGISTRATE JUDGE:  My request was that you

16   prepare to address 06-1002.  I'm attempting to take --

17           MR. CHARLTON:  Oh, I'm sorry, I misunderstood

18   Your Honor.

19           THE MAGISTRATE JUDGE:  -- the matter, take the

20   cases in chronological order.  That's all right.  Is this

21   a convenient point for a brief recess or do you need just

22   a moment or two to --

23           MR. CHARLTON:  I wouldn't mind a recess --

24           THE MAGISTRATE JUDGE:  -- get the materials?

25           MR. CHARLTON:  -- at this moment, just a short.

1    I would like to visit the men's room.

2              THE MAGISTRATE JUDGE:  Very well, let's take a

3    brief recess then, and when we return, Mr. Charlton and

4    Mr. Harwood, we will address 06-1002 --

5              MR. CHARLTON:  Yes, Your Honor.

6              THE MAGISTRATE JUDGE:   -- the motion which bears

7    Document Number 35, which was filed on April 22d, 2008.

8              MR. CHARLTON:  Yes, Your Honor.

9              THE MAGISTRATE JUDGE:  Very well, thank you very

10   much.

11             (Whereupon, a recess is taken from 10:54 a.m. to

12   11:03 a.m.)

13             THE CLERK:  This Honorable Court is back in

14   session.

15             THE MAGISTRATE JUDGE:  Now we will turn our

16   attention to 06-1002.  I will again hear your argument,

17   Mr. Charlton.  Mr. Harwood, I'll hear your opposition and

18   Mr. Charlton, I'll allow you, of course, to respond to Mr.

19   Harwood's opposition.

20             MR. CHARLTON:  Yes, Your Honor.  I'm now speaking

21   about the document, the renewal of motion to intervene and

22   consolidate this case into Case Number 87-3538, filed on

23   April 22d, '08.

24             THE MAGISTRATE JUDGE:  That is correct.

25             MR. CHARLTON:  I hope I have the right document.

1        THE MAGISTRATE JUDGE:   That is correct.

2        MR. CHARLTON:   Your Honor, I have already made

3    the bulk of my arguments pertaining to this motion.   This

4    addresses a consolidation and I think the factual question

5    -- it's our position that the factual questions in these

6    cases are identical.   That is when we get to the Moses

7    case, we'll get to it in a minute and we have slightly

8    different issues, but up until this point in time, the

9    legal issues are the same for Davis, Moses and Gilbert and

10   in Chenareddy and the factual issues are the same.

11       And I stated this on Page 3 of our Points and

12   Authorities and Judge Sullivan was kind enough to allow us

13   to amend the complaint in Chenareddy which we attached and

14   adopted for Davis, Moses and Gilbert.

15       Now the only one left of Davis, Moses and Gilbert

16   at the agency is Moses and he's still there.   He's

17   reaching the end of his career, I think he's something

18   like 68 years old, but he still seeks to represent people

19   for the class action.   He feels very strongly about it, he

20   thinks the facts support the case.   We believe the facts

21   support the case because of the data files that were

22   withheld.   And he, as joined by Mr. Davis and Mr. Gilbert,

23   seeks to represent the people that Chenareddy cannot

24   represent any more, that is the present employees, because

25   Dr. Chenareddy retired on January 3d, 2006.   And that is

1    essentially the position here.

2              THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

3    Charlton.  Mr. Harwood?

4              MR. HARWOOD:  Thank you, Your Honor, I'll be

5    brief.  For the same reasons that the Government stated

6    before, the individuals in Moses, Davis -- in the Davis

7    action, Davis, Moses and Gilbert, cannot satisfy the

8    requirements for Rule 24 intervention, but more

9    importantly, there's a motion to dismiss that's fully

10   briefed in the Davis matter.

11             And so the Government feels that it's premature

12   to address the issue of intervention, even if intervention

13   would ever be appropriate, prior to the resolution of that

14   motion to dismiss.  The Government doesn't believe the

15   Court has to reach the issue of the motion to dismiss

16   because it believes that intervention should be denied as

17   a result of failure to meet Rule 24.  But for this

18   additional reason, the Government believes that the

19   motions to intervene are not appropriately brought at this

20   time.

21             It's unclear what would happen if the motion to

22   intervene were granted, whether we would just rebrief the

23   same motions to dismiss that have already been filed in

24   Davis under the Chenareddy caption.

25             In terms of my opposing counsel's arguments, he

raised the issue of the factual questions being identical.
But again, as I mentioned before, all that I've seen thus
far, conclusory statements of identical factual questions,
there have been no allegations. And the focus must be on
the facts alleged; there have been no facts alleged in the
Davis matter that shows a commonality of factual issues
between the Davis matter and the Chenareddy matter.

It would be one thing if the Davis plaintiffs and
all the Chenareddy plaintiffs were alleging that they
worked in the same GAO office at the same time and were
the recipients of identical personnel actions by the same
GAO managers, but that's simply not the case, that has not
been alleged. There have been no such common factual
questions that would lead to common legal questions
alleged.

Finally, the fact that Moses is the only one
still at the agency is irrelevant to the question of
intervention here. Moses can represent whomever he wants
in whatever putative class he wants in his separately
brought putative class action in either the Davis case or
the Moses case. Thank you, Your Honor.

THE MAGISTRATE JUDGE: Very well, thank you, Mr.
Harwood. Mr. Charlton, as I indicated, I will hear your
reply confined in time to no more than the time that Mr.
Harwood's --

1          MR. CHARLTON:  Sure.

2          THE MAGISTRATE JUDGE:  -- opposition consumed.

3          MR. CHARLTON:  Your Honor, I'm a bit surprised

4    that the agency's relying on the motion to dismiss, that's

5    a whole different set of issues.  We have vigorously

6    opposed the motion to dismiss.  As a matter of fact, if

7    the transactions constitute a hostile work environment, as

8    we alleged, and it is a fact that each one of those

9    people, Davis, Moses and Gilbert, filed a 30-day notice of

10   intent to sue, the statute of limitations does not apply

11   and they will timely --

12          THE MAGISTRATE JUDGE:  Well, I'm going to

13   interrupt just one moment to make the following

14   observation and finding.  First, the Court did not

15   understand Mr. Harwood to have relied upon the motion to

16   dismiss as a reason that the motion to intervene should be

17   denied.  My understanding was that as counsel for the

18   defendant, he simply noted that there is such a motion.

19          My finding, of course, is that I -- perhaps this

20   is more a parameter than a finding.  But the Court does

21   not intend to take into account in any way the fact that

22   there is a motion to dismiss pending.  I have not reviewed

23   the motion to dismiss, I made no findings, I will make no

24   findings with respect to the motion to dismiss this

25   morning.  I do not intend to stay my decision regarding

1    the motion to intervene and consolidate because there is a
2    motion to dismiss pending.  So for all of those reasons,
3    you need not address the motion to dismiss, it is of no
4    significance at this time.
5        MR. CHARLTON:  Thank you, Your Honor, we
6    certainly agree with that.  I want to get away from the
7    motion to consolidate.  The gravamen of what we're -- the
8    motion to consolidate is one for convenience and I think
9    it's obvious, should be obvious, I think it's obvious to
10   the Court that dealing with three cases when we could be
11   dealing with one is awkward.  And frankly, as a person who
12   has to deal with all three cases, as you do, it's mind
13   boggling, I don't mind admitting it.
14       Now that having been said, the motion to
15   intervene is the critical motion and I think that we have
16   in fact satisfied the prerequisites of intervention of
17   right if the facts are taken to most favor the plaintiffs
18   that in fact, the pattern is identical.  And we talk about
19   the pattern being identical, GAO all these years has
20   talked about a different office and different managers and
21   different this and different that.
22       The fact is when you put this all together in a
23   nice, neat, little box of those statistics, the pattern is
24   the same in all offices, everywhere, for every person.
25   And I know now how they do it and I'll be happy to expound

on that.  I can prove how they manipulate the ages.  And

the result is what we view in the Mowbry data systems --

And Mr. Mowbry gave us documents, he gave us

documents showing the data elements that are the same for

every office, for every year, for every person.  And those

data elements contain the performance ratings and the

promotions and the 14 different items that Dr. Chenareddy

asked for and did not get and we did not get because they

didn't exist, purportedly.

And this business about independent and fair

ratings is frankly, Your Honor, is just so much garbage,

it's unbelievable.  Because when you have thousands and

thousands of decisions on employees that are all the same,

there is a control mechanism and we have stated what it

is.  It's a centrally controlled management set of systems

and documents that I have gotten copies of over the years

and the end result of all of this is sitting there in

those data files and it just ain't so and I'd love the

opportunity to prove it to you.

THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

Charlton.  Now Mr. Charlton and Ms. Graham-Oliver, I will

ask you to please turn your attention to 06-1712 and the

motion which bears Document Number 54.  Are you ready to

proceed, Mr. Charlton?

MR. CHARLTON:  I think so, Your Honor.  Just as

1    an aside, I did not bring my copies with the ECF stamp

2    across the top, so I learned something today, I should

3    have brought the ones with the copy.  Anyway --

4           THE MAGISTRATE JUDGE:  This is the motion which

5    was filed on April 29th, 2008, and bears --

6           MR. CHARLTON:  Yes.

7           THE MAGISTRATE JUDGE:  -- the caption Motion to

8    Intervene --

9           MR. CHARLTON:  Moses into Chenareddy.  Oh, are

10    you talking about Wagner?  I guess that's Wagner, yes.  We

11    filed a motion to intervene Robert W. Wagner into the

12    Moses case.  I think that's probably what we're talking

13    about.  I have it with me, but I also have --

14           THE MAGISTRATE JUDGE:  If you wish to get it from

15    the table, you may certainly --

16           MR. CHARLTON:  Yes.

17           THE MAGISTRATE JUDGE:  -- take a moment and do

18    so.

19           MR. CHARLTON:  All right, this one was filed on

20    April 22d, that's the proper -- right?

21           THE MAGISTRATE JUDGE:  The file date is April

22    29th, 2008, Document Number 54, in Case Number 06-1712.

23           MR. CHARLTON:  I have picked up the wrong one.

24           THE MAGISTRATE JUDGE:  The first line reads,

25    "Comes now Robert W. Wagner, Jr., a former Band II

1  employee."

2        MR. CHARLTON:  Yes, Your Honor.  Yes, yes.  I'm

3  sorry about that, Your Honor.

4        THE MAGISTRATE JUDGE:  That's all right.  Now

5  that you have that one, are you ready to proceed or do you

6  wish a brief recess before we proceed?

7        MR. CHARLTON:  I think I'm ready to proceed, Your

8  Honor.

9        THE MAGISTRATE JUDGE:  Very well, you may

10  proceed.

11        MR. CHARLTON:  The situation with Wagner is --

12  well, I have to go back because this is confusing.

13  Starting at the end of 2005, GAO adopted a brand new

14  program with a different name and this program was called

15  the Band II Split.  And Mr. Walker, as comptroller

16  general, this is one of his pets, and what he did was call

17  for an analysis of all the people in what was called Band

18  II, of which Moses was one of the senior members and

19  Robert Wagner was one of the senior members and there were

20  approximately 308 of these people.

21        And they were reevaluated and then the band was

22  split in half and some of the people were given --

23  essentially stayed at the same level of employment and the

24  other people were demoted, essentially, to Band IIA and

25  Moses was one of these and Robert Wagner was one of these

1   and there were approximately 308 all together people, I

2   believe, that were so demoted.

3       Now I want to tie -- these people also appear in

4   the data base we're talking about, so it's all still in

5   there in terms of facts.  Now Moses is the only one now

6   out of all the folks I've talked about who still is at the

7   agency.  And in fact, Moses was first denied his -- he was

8   first demoted and since and after a lapse of a year and a

9   half or so, Mr. Moses was given his promotion back to

10  where he was to start off with.  There are about 60, 80

11  people in that same boat.

12      Mr. Wagner and a lot of others, approximately a

13  hundred, 150, I believe -- I don't have exact numbers on

14  this -- were so discouraged -- Dr. Chenareddy was one.  He

15  saw it coming and he quit, he took early retire -- took

16  retirement.  But they were so discouraged, Wagner was so

17  discouraged by the demotion and the slight of his

18  professional reputation and record that he resigned.  And

19  there are approximately, I think there are approximately

20  80 people in his position.

21      Now all this time, timewise, starting in '99 and

22  all that, Mr. Wagner did not even know of the existence of

23  the class actions that had been filed, he did not know of

24  the existence of the Moses class action that had been

25  filed.  And he learned of the ongoing actions and

approached me to represent him and to attempt to intervene

him into the case, so that is what we did.  So that Robert

Wagner seeks to intervene to represent people that are in

that particular little boat.

Now if the interventions into Chenareddy happens

and Your Honor determines that all of this is one

spectrum, which the statistics show that it is, it's kind

of a moot point, anyway.  But if the class action is not

granted, if intervention is not granted, Mr. Wagner and

many people just like him stand to forfeit their improper

demotion that we so allege.

And just as an additional little complication in

the thing, the Congress has held hearings on this and

Congress has essentially sent down orders to, and there's

a bill pending, to pay off all of the GAO employees who

still remain there, but people like Wagner again are

forfeited, but for this motion to intervene.

THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

Charlton.

MR. CHARLTON:  Thank you, Your Honor.

THE MAGISTRATE JUDGE:  Ms. Graham-Oliver.

MS. GRAHAM-OLIVER:  Good morning, Your Honor.

THE MAGISTRATE JUDGE:  Good morning.

MS. GRAHAM-OLIVER:  I intend to be brief.  Mr.

Wagner's application in 06-1712 is not only premature, but

it's also untimely.  Mr. Wagner seeks to intervene as a
class representative for those who are part of the Band II
restructuring and has since retired from the agency.
There has never been any class certification in 06-1712.

And individually, Mr. Wagner may not intervene
because he has failed to fulfill the statutory
prerequisites for a civil action under the ADA.  That is
he has neither exhausted, he has not exhausted any of the
administrative requirements that are necessary in order to
bring a claim under the ADA.  Consequently, Mr. Wagner, as
an individual, may not now intervene in this case as his
application is untimely.

Mr. Wagner also brings his application as a
putative class representative.  He brings it two years
after the fact.  He has yet to notify the agency of his
claim and it is a requirement that even as a class
representative, one is required to notify the agency that
one is seeking to bring an administrative claim.  Mr.
Wagner has not done that.

So as a class representative, Mr. Wagner is
required to either file a notice of intent to sue or
otherwise exhaust by filing an EEO complaint.  And as
stated previously, he has failed to do either one.
Accordingly, the Government is requesting that his
application for intervention should be denied as untimely.

1      THE MAGISTRATE JUDGE:  Very well, thank you, Ms.

2   Graham-Oliver.  Does that complete your argument?

3      MS. GRAHAM-OLIVER:  Yes, Your Honor.

4      THE MAGISTRATE JUDGE:  Very well, thank you.  Mr.

5   Charlton, as I indicated, there is no written reply to the

6   defendant's opposition in this motion, but I will permit

7   you an opportunity to reply to Ms. Graham-Oliver's oral

8   argument, again limiting the duration of your reply to no

9   more than the time that Ms. Graham-Oliver took to make her

10  argument.

11     MR. CHARLTON:  Thank you, Your Honor.  Your

12  Honor, I would respectfully disagree with Ms. Oliver as to

13  the need to exhaust administrative remedies.  Cook versus

14  Boorstein, 753 Federal 2d, 1462, D.C. Circuit, 1985, is a

15  landmark case for vicarious exhaustion of administrative

16  remedies.  Under conditions such as exist in this case, no

17  administrative exhaustion is necessary as to an

18  intervenor.  I shepherdized this case, there are many,

19  many cases following that, and it's just not the law in

20  this circuit at this time.  Thank you, Your Honor.

21     THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

22  Charlton.  Now as the Court indicated at the outset, the

23  Court has determined that the three motions as to which we

24  have heard argument are motions that this Court can

25  determine in accordance with local Civil Rule 72.2(a).

1       The Court, before the hearing commenced, reviewed

2  the three motions, the three oppositions, and the two

3  replies.  The Court has considered very carefully the

4  arguments made on the record throughout the morning and

5  having done so, the Court is at this time prepared to

6  rule.

7       The Court will articulate its ruling, although

8  the Court has heard oral argument with respect to each

9  motion, one motion at a time.  The Court's ruling is with

10  respect to all three motions.

11       For the reasons articulated by the Defendants,

12  both orally this morning and in writing -- and by "in

13  writing," I mean the three written oppositions to the

14  three pending motions -- the Court will deny each of the

15  three pending motions.

16       More specifically, the Court finds as follows.

17  The motions as to which the Court has heard argument are

18  governed, as we know, by Rule 24 of the Federal Rules of

19  Civil Procedure.  The Court finds that the proposed

20  intervenors have failed to make the showing required by

21  the rule.

22       The Court cannot doubt the passion with which

23  counsel for the proposed intervenors has argued here this

24  morning.  The Court finds, however, that the argument is

25  largely with respect to the merits of the proposed

1    intervenors' claims or is with respect to an effort to

2    obtain reconsideration of various rulings having to do

3    with class certification, some of which are ten years or

4    more removed from today's proceedings.

5         The arguments with respect to the merits or with

6    respect to reconsideration of rulings on issues having to

7    do with class certification, however, do not provide a

8    means to satisfy the rigorous requirements of Rule 24(a),

9    Intervention of Right, or Subsection (b), Permissive

10    Intervention.

11         Put another way, the Court simply cannot, under

12    the rubric of Rule 24, address the merits of the proposed

13    intervenors' claims or issues having to do with class

14    certification or take those issues into account in

15    deciding whether or not the proposed intervenors have made

16    the requisite showing.  For these reasons, each of the

17    three pending motions will be denied.

18         The clerk will include in the ECF record of each

19    of the three cases that the motion to intervene is denied

20    for the reasons set forth by the Court on the record.  And

21    coupled with the findings the Court has articulated on the

22    record, that will constitute the extent of the ruling with

23    respect to the three motions.

24         Now thank you very much, Counsel, you may all be

25    excused at this time.

1    MR. HARWOOD:  Your Honor, could I address one

2  procedural matter?

3    THE MAGISTRATE JUDGE:  Well, Mr. Charlton, I see

4  you coming.  I will hear from you first.

5    MR. CHARLTON:  Your Honor, I would request -- do

6  you intend to have what you just said filed in the ECF

7  record?

8    THE MAGISTRATE JUDGE:  The ECF record will note

9  -- and when I say the "motion," there will be a notation

10  in each of the three case numbers, indicating that the

11  motion -- well, first, it will indicate that oral argument

12  was conducted this morning and that the motion was denied

13  for the reasons set forth by the Court on the record.

14    MR. CHARLTON:  All right, thank you, Your Honor.

15    THE MAGISTRATE JUDGE:  The Court is confident

16  that such procedure is consistent with both the local rule

17  and the federal rule.  By the local rule, I mean, of

18  course, 72.2.  This is a motion -- 72.2(a) -- in that this

19  is a motion, each of the motions is a motion which can be

20  determined by a magistrate judge.  In other words, it is

21  not a dispositive motion.

22    The Court has articulated its findings on the

23  record and there is no authority which suggests that any

24  further findings are required by either the local rule or

25  the federal rule.  So that will be the extent of the

1  findings that the Court makes.

2      You are, of course, free to order a transcript of

3  the entire proceeding.  The deputy clerk will confer with

4  you after we recess and she will tell you who it is that

5  you should contact regarding a transcript of today's

6  proceeding if it is your desire to obtain a transcript.

7      MR. CHARLTON:  Yes, Your Honor.  I would just

8  like to note that we would respectfully disagree with your

9  conclusion that this not a dispositive motion.  It

10  certainly is or potentially is in terms of at least Mr.

11  Wagner.

12      THE MAGISTRATE JUDGE:  Well, the Court has, as I

13  indicated, the Court consulted 72.2(a) of the local rule

14  and with respect to the statute which provides authority

15  for the promulgation of the local rules governing duties

16  of magistrate judges, the Court consulted 28 U.S. Code,

17  Section 636, and is satisfied and, indeed, finds that a

18  motion to intervene, a Rule 24 motion, is not a

19  dispositive motion for which a magistrate judge or as to

20  which a magistrate judge must proceed by report and

21  recommendation.

22      I do not suggest that the Court's ruling does not

23  have implications for both sides of a civil action.  But

24  as defined by 28 U.S. Code, Section 636, and local Rule

25  72.2(a), it is not a dispositive motion, and therefore,

the Court is not required to proceed by report and

recommendation.

MR. CHARLTON:  Thank you, Your Honor.

THE MAGISTRATE JUDGE:  Very well, thank you.  Now

Mr. Harwood.

MR. HARWOOD:  Thank you, Your Honor.  Pursuant to

the Court's May 20th, 2008 order, the defendant in the

Chenareddy action, 87-3538, is required to submit its

response to the fourth amended complaint within two weeks

of the resolution of the motion to intervene in that

matter.  And I respectfully request that I be afforded

until August 22 for the response.  I took a look at my own

obligations and I'd request an additional two weeks, about

approximately 30 days.  It would also give -- I don't know

if plaintiffs' counsel is intending to appeal this.

THE MAGISTRATE JUDGE:  Well, let's take one thing

at a time.  You seek leave until -- you see a brief

extension of the time to answer or otherwise move.

MR. HARWOOD:  Until August 22d.

THE MAGISTRATE JUDGE:  Until August 22d.  And

that is in the oldest of the three cases.

MR. HARWOOD:  Yes.

THE MAGISTRATE JUDGE:  Very well.  Is that

without objection?

MR. CHARLTON:  No, Your Honor.

1            THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

2     Charlton.  The record in 87-3538 will indicate that

3     without objection, the date for the defendant to answer or

4     otherwise move with respect to the fourth amended

5     complaint is August --

6            MR. CHARLTON:  Pardon me, pardon me, Your Honor.

7            THE MAGISTRATE JUDGE:  -- is August 22d, 2008.

8            MR. HARWOOD:  Thank you, Your Honor.

9            MR. CHARLTON:  Your Honor, I believe you said

10    "without objection."  I do object, I do object to the

11    extension requested and I would like to explain why.

12           THE MAGISTRATE JUDGE:  Mr. Charlton, I apologize.

13     I thought you said, when I asked was that without

14    objection, that you said, "No."

15           MR. CHARLTON:  I said no, it was not without

16    objection.

17           THE MAGISTRATE JUDGE:  I apologize, perhaps I had

18    a double negative in my question.  Very well, what is the

19    basis of your opposition to Mr. Harwood's request for a

20    two-week extension of time to answer or otherwise move

21    with respect to the fourth amended complaint in 87-3538?

22           MR. CHARLTON:  Your Honor, I want to preface this

23    by saying I almost never object, but the situation at GAO

24    is right now, GAO is in the process of settling some of

25    these putative class member cases on their own.  It's a

1   matter requiring me filing an injunction and time is

2   definitely of the essence.

3          Now I can't stand before you and say this makes a

4   difference with what Mr. Harwood is filing because I don't

5   know that.  But timing on these matters right now has

6   reached a critical stage.  I filed for an injunction a

7   year ago and now it's all -- it's happening and I do

8   object to any extensions at all in the light of not this,

9   but the surrounding facts.

10          THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

11   Charlton.  The Court will treat Mr. Harwood's motion as a

12   timely motion for extension of time, requiring only a

13   showing of good cause.  The Court finds that counsel's

14   reference to matters scheduled in other cases constitutes

15   good cause for the continuance and accordingly, will

16   extend the date for the defendants to answer or otherwise

17   move with respect to the fourth amended complaint to

18   August 22d, 2008.

19          The Court has taken into account the extent to

20   which plaintiffs in that case might be prejudiced by this

21   brief enlargement.  The Court finds that there has been no

22   showing that the plaintiffs would be prejudiced.  And to

23   the extent that the plaintiffs intend to move for

24   injunctive relief, the absence of an answer to the fourth

25   amended complaint would have no bearing upon such motion,

1    at least not as the Court is able to discern at this time.

2         So the plaintiffs are not precluded from  taking

3    whatever steps they believe are appropriate and consistent

4    with the applicable rules by the extension of time for the

5    defendant to file the answer or to otherwise move with

6    respect to the fourth amended complaint.

7         MR. HARWOOD:  Thank you, Your Honor.

8         THE MAGISTRATE JUDGE:  Now is there anything

9    further with respect to the ruling on the three pending

10   motions or the related scheduling issue that the defendant

11   in 0 -- excuse me, in 87-3538 has addressed.  Mr.

12   Charlton?

13        MR. CHARLTON:  I'm not aware of anything at the

14   moment.

15        THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

16   Charlton.  Mr. Harwood?

17        MR. HARWOOD:  No, Your Honor.

18        THE MAGISTRATE JUDGE:  Ms. Graham-Oliver?

19        MS. GRAHAM-OLIVER:  No, Your Honor.

20        THE MAGISTRATE JUDGE:  Very well.  Thank you very

21   much, counsel, you may all be excused.

22        MR. CHARLTON:  Thank you, Your Honor.

23        THE MAGISTRATE JUDGE:  If any of you wish to

24   confer with the deputy clerk regarding a transcript, I

25   believe she'll be available for a few minutes to assist

1    you.

2          MR. CHARLTON:  Thank you.

3          MR. HARWOOD:  Thank you, Your Honor.

4          THE MAGISTRATE JUDGE:  Thank you very much.  All

5    of you please have a good day.

6          (Whereupon, the proceeding concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES OF AMERICA    )
                           )
DISTRICT OF COLUMBIA       )


          I, PAUL R. CUTLER, do hereby certify that a
recording of the foregoing proceedings in the above
matters was duplicated from an original recording by the
Office of the Clerk, United States District Court for the
District of Columbia, and that said duplicate recording of
the proceedings was transcribed under my direction to
typewritten form.


___                               PAUL R. CUTLER

                       - - -


     I, DORIS A. CUTLER, do hereby certify that the
foregoing transcript was typed by me and that said
transcript is a true record of the recorded proceedings to
the best of my ability.


___                               DORIS A. CUTLER